UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

United States District Court
Southern District of Texas
FILED

SEP 2 3 2003

Michael N. Milby, Clerk

| | |
|---|---|
| ABB KRAFTWERKE AKTIENGESELLSCHAFT, and ABB ALSTOM POWER (SWITZERLAND) LTD., formerly known as ABB POWER GENERATION, LTD.<br>Plaintiffs<br>VS.<br>C. H. ROBINSON COMPANY<br>Defendant | Civil Action No. G:03-CV-505<br><br>B-03-192 |

### PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE OF JUDGE OF SAID COURT:

NOW COME, ABB KRAFTWERKE AKTIENGESELLSCHAFT and ABB ALSTOM POWER (SWITZERLAND) LTD., formerly known as ABB POWER GENERATION, LTD., Plaintiffs (hereinafter referred to as "ABB") and file this their First Amended Original Complaint against C. H. ROBINSON COMPANY, Defendant, (hereinafter referred to as "C. H. Robinson") and would show this Honorable Court as follows:

### A. PARTIES

1. Plaintiff, ABB Kraftwerke Aktiengesellschaft, is a foreign corporation organized and existing under the laws of the Republic of Germany. Plaintiff, ABB Alstom Power Switzerland) Ltd., formerly known as ABB Power Generation, Ltd., is a foreign corporation which is organized and existing under the laws of Switzerland.

2. Defendant, C. H. Robinson, is a Delaware corporation with its principle place of business in the State of Minnesota doing business in the State of Texas. Defendant has been served and has filed an appearance.

### B. JURISDICTION

3. The court has jurisdiction over this lawsuit as a result of diversity of citizenship between the parties, Plaintiffs are foreign citizens and Defendant is a Delaware corporation with its principle place of business in the State of Minnesota. Venue is proper because all or part of the causes of action arose in the Southern District of Texas. Defendant maintains an agent for service of process in the Southern District of Texas.

### C. FACTUAL BACKGROUND

4. On or about February 16, 1999, ABB and C. H. Robinson entered into a contract for the transportation of various heavy electrical components, specifically a gas turbine, generator and transformer from barges at the Port of Brownsville to Monterrey, Mexico.

5. The equipment was to be transported from Manheim, Germany, to the Port of Brownsville. This part of the voyage was the responsibility of ABB. From Brownsville the equipment was to go by rail to Monterrey, Mexico. This was the responsibility of C. H. Robinson.

6. The scope of work outlined in the contract was the transportation of a gas turbine, generator and transformer from lash barges at the Port of Brownsville, Brownsville, Texas,

to railcar for transport to the Monterrey power plant project. These were to arrive at separate times by separate barge.

7. The basis of the order was the C. H. Robinson Company "January 30, 1999 and February 5, 1999" letters or proposals. Included in the quotation was the loading and unloading of the three hundred twenty-five (325) ton generator from the lash barge to railcar, as well as the tie down to railcars for all three (3) pieces, at the Port of Brownsville..

8. C. H. Robinson was responsible under the contract for all arrangements involving the transfers from the lash barge to Monterrey. This included hiring of contractors, obtaining permits, providing technical information, obtaining insurance, management of the movement of the generator, etc., for the generators transportation from the lash barge to Monterrey. C. H. Robinson was responsible for the management of the project on behalf of ABB, acting as ABB's agent. The contract labels C. H. Robinson (THE OPERATOR).

9. The turbine generator was transported by cargo ship to the Port of New Orleans where the lash barge was unloaded and towed to the Port of Brownsville. Prior to that time, C. H. Robinson had made arrangements with Schaefer Stevedoring in Brownsville to provide Stevedoring services to move the generator from the lash barge to a railcar which was to be situated dock side at the port.

10. Schaefer Stevedoring, C.H. Robinson's contractor, was provided various drawings which included the lifting points of the generator and the technical specifications of the turbine generator. Schaefer Stevedoring contracted with Brownsville Barge & Crane for the

use of the "Atlantic Giant" a barge mounted crane to lift the turbine generator from the lash barge and place it on the railcar.

11. The "Atlantic Giant" was the only crane available at the port with sufficient lifting capacity to move the turbine generator from the lash barge to the railcar.

12. C. H. Robinson obtained the necessary rail permits to allow the transportation of the generator from Brownsville to Monterrey.

13. The lash barge arrived in the Port of Brownsville and the initial lift was canceled due to inclement weather. A representative from C. H. Robinson was on location to manage the lift and provide information and directions to C. H. Robinson's sub-contractors, Schaefer Stevedoring and through Schaefer Stevedoring, Brownsville Barge & Crane. A representative of ABB was on location to answer any questions with regard to the generators.

14. On or about March 23, 1999, a representative of Brownsville Barge & Crane presented to C. H. Robinson's representative and ABB's representative an addendum to the Lifting Services Agreement between Schaefer Stevedoring and Brownsville Barge & Crane which required ABB and/or C. H. Robinson to provide indemnity to Brownsville Barge & Crane for any accident which might occur during the lift. The C. H. Robinson representative, despite the fact that they were responsible by contract for the transportation of the generator from lash barge to Monterrey refused to sign the indemnity agreement. Brownsville Barge & Crane informed the ABB representative that if they did not sign the indemnity agreement that the "Atlantic Giant" could not be used to make the lift.

15. C. H. Robinson was at all times aware that the contract between ABB involving the Monterrey Power Plant project was time sensitive and contained liquidated damages clauses. No arrangements had been made by C. H. Robinson to transport the generator by any means other than from railcar at the Port of Brownsville to Monterrey. The appropriate permits had been obtained by C. H. Robinson for the rail transport and clearances for the oversized generator had been met for the Brownsville/Monterrey rail journey. Rail clearances were known to be problematic from Houston/Galveston to Monterrey. More importantly other than the Atlantic Giant, there was no crane with sufficient lifting capacity to make the lift between the Port of Tampico and the Port of Houston/Port of Galveston.

16. The result was C. H. Robinson's sub-contractor had ABB over an economic barrel. Therefore, ABB's representative signed the indemnity agreement.

17. On the morning of the lift, C. H. Robinson's sub-contractors, Schaefer Stevedoring and Brownsville Barge & Crane had still not familiarized themselves with the generator. Appropriate lifting procedures were not in place and the contractor's were still unclear as to how they would place the generator on the railcar. All of these resulted from improper management of the project by C. H. Robinson and resulted in Schaefer employees removing two (2) bolts holding together a lifting lug which fell and killed one of the Schaefer Stevedoring longshoreman, Oscar Zamora, Sr.

18. As a result of this accident, C. H. Robinson, ABB and Brownsville Barge & Crane were sued by the Zamora Plaintiffs. The Zamora Plaintiffs settled with C. H. Robinson early on

in the litigation. Prior to trial, ABB settled the litigation with the Zamora Plaintiffs. Brownsville Barge & Crane was dismissed from the litigation by Plaintiffs. Brownsville Barge & Crane filed a Cross-claim against ABB for contractual indemnity. Following Motion for Summary Judgment hearings the Cross-claim was granted and Brownsville Barge & Crane obtained a judgment against ABB for attorney's fees and costs of defense as well as attorney's fees for pursing their Cross-claim. That judgment is currently on appeal.

19. Following the actions of C. H. Robinson and its subcontractors on the aforementioned shipment, Plaintiff was required to re-evaluate the management of the project by its agent, Defendant.

20. Plaintiff ABB Alstom Power performed services which were the contractual responsibility of Defendant following the Zamora accident.

21. Plaintiff ABB Altstom Power was required to perform tasks of THE OPERATOR under the contract.

### D. BREACH OF CONTRACT

22. C. H. Robinson was contractually bound to manage the project on behalf of ABB. C. H. Robinson breached this portion of the contract and is both vicariously liable for a portion of Plaintiffs' damages and directly liable to Plaintiffs for a portion of Plaintiff's damages as a result of this breach.

23. C. H. Robinson was ABB's agent for all purposes under the contract. Defendant failed to live up to the terms of this agency relationship and is liable to Plaintiffs as a result of this breach.

24. C. H. Robinson breached its contract with ABB by failing to perform the work it contracted for in a good and workmanlike manner.

25. C. H. Robinson breached its contract with ABB by promising to perform services that they did not perform.

26. C. H. Robinson breached its contract with ABB by failing to properly ensure that its sub-contractors were competent to perform the work for which they contracted.

27. C. H. Robinson breaks its contract with ABB by failing to ensure that the sub-contractors were familiar with the equipment and the technical specifications of the generator they were to lift from the lash barge to the railcar.

28. C. H. Robinson breached its contract with ABB by failing to exercise proper managerial skills and control over its sub-contractors.

29. C. H. Robinson breached its contract with ABB by providing inexperienced personnel to supervisor the job in question. Jim Hamilton, the C. H. Robinson employee, who signed the contract, provided the proposals and sold ABB on his company, partly due to his experience in heavy lifts, was not on location supervising the lift. Instead C. H. Robinson relied on inexperienced personnel, not familiar with the type of equipment involved or this type of heavy lift to supervise the operation.

30. C. H. Robinson breached its contract with ABB by failing to ensure that all contractual requirements were in place prior to the lift, resulting in ABB being forced to sign an indemnity agreement on the docks just prior to the lift.

31. C. H. Robinson breached its contract with ABB by not providing proper managerial expertise to ensure that proper plans and preparation were in place to smoothly transport the generator from the lash barge to Monterrey.

32. No legal harm resulted to Plaintiffs until May of 2000. Defendant's actions were not in and of themselves unlawful or of such a nature to cause damage to Plaintiffs solely based on their nature.

33. Defendant was in the unique position of knowing what actions it had or hadn't taken to perform under the contract. Defendant's mismanagement was such that it constituted a continuing tort, not simply occurring at one time or instance.

### E. DAMAGES

34. ABB seeks return of all money paid to C. H. Robinson under the contract as a result of their breach of contract. C. H. Robinson is directly liable to Plaintiffs for this element of damage.

35. ABB seeks all monies paid on behalf of defending Brownsville Barge & Crane's Cross-claim, that may be paid in any judgment obtained by Brownsville Barge & Crane, and for all costs and expenses involved in the same as a result of C. H. Robinson's breach of contract. C. H. Robinson has direct liability for this element of damages.

36. ABB seeks all amounts paid in settlement and defense of the Zamora litigation as a result of C. H. Robinson's breach of contract. C. H. Robinson is both directly and vicariously liable to Plaintiff for this element of damages.

37. ABB seeks attorney's fees for bringing this breach of contract suit, pre- and post-judgment interest at the legal rate and all other damages to which they may show themselves justly entitled.

38. All of the above damages were proximately caused by C. H. Robinson's breach of contract and were foreseeable results of the various actions of Robinson.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendant be acquired to appear herein and that Plaintiffs obtain judgment against Defendant C. H. Robinson for all damages sought as a result of their breach of contract, including attorney's fees and pre- and post-judgment interest and for which such other and further relief to which this Honorable Court deems just and equitable.

Respectfully submitted,

The Law Office of Justin L. Williams, P.C.
600 Leopard Street, Suite 1810
Corpus Christi, Texas 78473
Telephone: (361) 888-7702
Facsimile: (361) 888-7717

By: _____
Justin L. Williams
State Bar Number 00795384

ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was forwarded on this the 19th day of September, 2003, to all counsel of record, as listed below and in the manner designated:

**CERTIFIED MAIL, RRR:**
Mr. Steven J. Watkins
Ms. Karan C. Ciotti
McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
3200 One Houston Center
1221 McKinney Street
Houston, Texas 77010

_____
Justin L. Williams