# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### GALVESTON DIVISION

United States District Court
Southern District of Texas
FILED

SEP 2 3 2003

Michael N. Milby, Clerk

| | | |
|---|---|---|
| ABB KRAFTWERKE | § | |
| AKTIENGESELLSCHAFT, and | § | |
| ABB ALSTOM POWER (SWITZERLAND) | § | |
| LTD., formerly known as ABB POWER | § | |
| GENERATION, LTD. | § | |
| Plaintiffs | § | Civil Action No. G:03-CV-505 |
| VS. | § | |
| | § | |
| C. H. ROBINSON COMPANY | § | B - 0 3 - 1 9 2 |
| Defendant | § | |

## PLAINTIFFS' RESPONSE TO DEFENDANT C.H. ROBINSON COMPANY'S RULE 12(b)(6) MOTION TO DISMISS PLAINTIFFS' CLAIMS IN THEIR ENTIRETY, AND BRIEF IN SUPPORT THEREOF

Respectfully submitted,

The Law Office of Justin L. Williams, P.C.
600 Leopard Street, Suite 1810
Corpus Christi, Texas 78473
Telephone:   (361) 888-7702
Facsimile:   (361) 888-7717

By: _____
Justin L. Williams
State Bar Number 00795384

ATTORNEY FOR PLAINTIFFS

# TABLE OF CONTENTS

I.      Nature and State of the Proceedings ................................. 5

II.     Issues for the Court and Standard of Review ......................... 5

III.    Summary of Argument .............................................. 5

IV.     Background ....................................................... 8

V.      Argument and Authorities .......................................... 9

     A.      Plaintiffs' claims are not barred by limitations .................... 9

     B.      Plaintiffs' claims are supported under Texas law as a .............. 14
         breach of contract

     C.      Plaintiffs' claim regarding Brownsville Barge & Crane is ........... 16
         clearly not an indemnity or contribution claim, nor is the
         claim for damages for mismanagement of the project.

VI      Conclusion ....................................................... 16

VII     Request for Relief ................................................ 17

## TABLE OF AUTHORITIES

### Cases

Acceptance Insurance Company v. Life Care Corp., . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
89 S.W.3d 773 (Tex.App.–Corpus Christi 2002, no pet. h.)

American Alloy Steel, Inc. v. ARMCO, Inc., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
777 S.W.2d 173 (Tex.App.–Houston [14th Dist.] 1989, no writ)

Astra Oil Co., Inc. v. Diamond Shamrock Rfg. Co., L.P., . . . . . . . . . . . . . . . . . . . . . . 15
89 S.W.3d 702, 706 (Tex. App.–Houston [1st] 2002, pet. denied)

Aviation Office of America, Inc. v. Alexander & Alexander, . . . . . . . . . . . . . . . . . . . 14
751 S.W.2d 179 (Tex. 1988).

B & B Auto Supply, Sand Pit & Trucking Co. v. Central Freight Lines, Inc., . . . . . . 14
603 S.W.2d 814, 817 (Tex. 1980)

Bonniwell v. Beech Aircraft Corp., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16
663 S.W.2d 816, 820 (Tex. 1984)

Compton v. Texaco, Inc., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
42 S.W.3d 354, 361-362 (Tex. App.–Houston [14th Dist.] 2001, pet denied)

F.D. Stella Products Co. v. Scott, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
875 S.W.2d 462, 464 (Tex. App.–Austin 1994, no writ)

Goss v. Bobby D. Associates, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
94 S.W.3d 65 (Tex.App.–Tyler 2001, no pet. h.)

Guzman v.Ugly Duckling Car Sales of Texas, L.L.P., . . . . . . . . . . . . . . . . . . . . . . . 10
63 S.W.3d 522 (Tex.App.–San Antonio 2001, no pet. h.)

Harrison v. Bass Enterprise Prod. Co., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
888 S.W.2d 532, 537 (Tex.App.–Corpus Christi 1994, no writ)

Houston Endowment, Inc. v. Atlantic Richfield Co., . . . . . . . . . . . . . . . . . . . . . . . . . 13
972 S.W.2d 155, 159 (Tex.App.–Houston [14th Dist.] 1998, no pet.)

Houston Water-Works Co. v. Kennedy, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
70 Tex. 233, 8 S.W. 36 (1888)

Johnson & Higgins v. Kenneco Energy, Inc., . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 11
962 S.W.2d 507, 514 (Tex. 1998)

La Villa Independent School District v. Loomez Garza Design, Inc., . . . . . . . . . . . . . 10
79 S.W.3d 217 (Tex.App.–Corpus Christi 2001, no pet. h.)

Matthieson v. Schafer, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
900 S.W.2d 792, 796-797 (Tex.App.--San Antonio 1995, writ denied)

Pair-A-Dice Acquisitions Partners, Inc. v. Board of Trustees of Galveston, . . . . . . . 10
185 F.Supp.2d 783(S.D. Tex.2002)

Palmer v. Espey Houston & Associates, Inc., . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
84 S.W.3d 345 (Tex.App.–Corpus Christi 2002, no pet. h.)

Runge v. Raytheon E-Systems, Inc., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
57 S.W.3d 562 (Tex.App.–Waco 2001, no pet. h.)

Ryland Group, Inc. v. Hood, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
924 S.W.2d 120, 121 (Tex. 1996); see, generally.

Sutton v. Hisaw & Associates General Contractors, Inc., . . . . . . . . . . . . . . . . . . . 10
65 S.W.3d 281 (Tex.App.–Dallas 2001, pet. denied)

Trinity River Authority v. URS Consultants, Inc.–Texas
f/k/a URS Forest and Cotton, Inc., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
889 S.W.2d 259 (Tex. 1994)

United States Fidelity & Guaranty Co. v. San Diego State Bank, . . . . . . . . . . . . . . 12
155 S.W.2d 411 (Tex.Civ.App.–El Paso 1941, writ ref'd)

Valero Marketing & Supply Co. v. Kalama International, L.L.C., . . . . . . . . . . . . . . 10
51 S.W.3d 345 (Tex.App.–Houston [1ᵃ Dist.] 2001, no pet. h.)

## PLAINTIFFS' RESPONSE TO DEFENDANT C.H. ROBINSON COMPANY'S RULE 12(b)(6) MOTION TO DISMISS PLAINTIFFS' CLAIMS IN THEIR ENTIRETY, AND BRIEF IN SUPPORT THEREOF

**I.      Nature and Stage of the Proceedings**

1.      Plaintiffs filed their suit for breach of contract against C. H. Robinson. Defendant C. H. Robinson has filed a 12(b)(6) Motion to Dismiss Plaintiffs' Claims and has not filed any other responsive pleading.

**II     Issues for the Court and Standard of Review**

      **A.      Issues for the Court**

            1.      Whether Plaintiffs' claims are barred by the statute of limitations;

            2.      Whether Plaintiffs' claims are recognizable under Texas law; and,

            3.      Plaintiffs' claims as a result of the signing of Brownsville Barge & Crane's indemnity contract are not addressed by Defendants and are recognizable under Texas law.  Plaintiffs' claims for mismanagement of the project is not barred by Texas law.

2.      Plaintiffs do not disagree with Defendant's contentions regarding the Standard of Review.

**III     Summary of Argument**

3.      When a Defendant moves for summary judgment on an affirmative defense, the Defendant must prove each essential element of the defense as a matter of law, leaving no issue of material fact.  Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 121 (Tex. 1996).

This rule requires Defendant to prove each element of its defense in its Federal 12(b)(6) Motion.

4.      A cause of action generally accrues and the statute of limitations begins to run when facts come into existence that authorize a claimant to seek a judicial remedy. <u>Johnson & Higgins v. Kenneco Energy, Inc.</u>, 962 S.W.2d 507, 514 (Tex. 1998); <u>see</u>, generally.  The limitations period for trespass begins to run when the claim accrues or when damages are sustained. <u>F.D. Stella Products Co. v. Scott</u>, 875 S.W.2d 462, 464 (Tex. App.–Austin 1994, no writ).

5.      The statute of limitations for breach of contract as for any other claim does not accrue until all elements of the cause of action have accrued, unless the breach was unlawful or of such nature to cause legal damage.  The events leading to the breach of contract in this case accumulated over several months.  They did not end with the events of March 23, 1999.  This is not a case where one party contracted to deliver goods on a certain date and did not perform.  Plaintiffs suffered no damage as a result of the mismanagement of the project on March 23, 1999.  The Statue of Limitations does not begin to run in a breach of contract case, as any other case until all elements have accrued which would give rise to a remedy, unless the breach is of such a nature to cause legal damage. <u>Johnson</u>, <u>supra</u>.  Plaintiffs' damages did not occur until a year after the date cited by Defendant.  The mismanagement of the project began prior to March 23, 1999.  To say the statute runs from that date, without all elements, makes no sense.  Unless, the breach is unlawful or authorizes a claimant to seek

Page 6 of  17

a judicial remedy. <u>Johnson</u>, <u>supra</u>. Neither is the case here. The discovery rule cases relied upon by Defendant are not on point. This is a cause of mismanagement of a project by an agent. Mismanagement could occur without legal damage to Plaintiffs. If that was so, then no act would have occurred that allows Plaintiffs to seek judicial relief as all elements as of a cause of action for beach of contract would not satisfied. You cannot win a suit without damage.

6.      Plaintiffs' breach of contract claim is not barred by Texas law. Plaintiff's have cited the court to no Texas case which deals with breach of contract under these circumstances but rather to cases which deal with common law contribution and contractual indemnity. Defendant is liable as Plaintiffs' agent, managing the project from the Port of Brownsville to Monterrey. Cases against agents are not barred by the cases Defendant cited, but approved by the courts.

7.      Plaintiffs' claim for breach of contract as a result of Defendant C. H.Robinson failing to secure the services of all the contractors, requiring Plaintiff to sign an indemnity contract with Brownsville Barge & Crane on the dock on the day prior to the lift of the turbine generator from the lash barge to the railroad car, is in no way barred by any Texas law. The continued mismanagement resulting in Plaintiffs being required to perform work contracted to C. H. Robinson is not barred by limitations or other Texas law.

## IV    Background

8.    ABB Power Generation, Ltd. entered into a contract for the transportation of power equipment from Brownsville, Texas to Monterrey, Mexico. The contract covered several shipments of equipment, not just the shipment of March 23, 1999. Earlier ABB had entered into a contract with the Monterrey Power Company for delivery of the equipment. ABB made an inter-company transfer from the manufacturing company, ABB Kraftwerke, which manufactured the generator in Manheim, Germany to ABB Power Generation. ABB Power Generation through the transportation department was responsible for the transportation of the generator from Manheim to the Port of Brownsville.

9.    By the terms of the contract, C. H. Robinson became responsible for the transfer of the generator from the lash barge upon which it arrived in Brownsville, to Monterrey, Mexico. C. H. Robinson was: THE OPERATOR. This included providing all sub-contractors to perform the work necessary for the transportation and acquiring all permits required for the move by rail from Brownsville to Monterrey. It also included providing all necessary information to Robinson's subs and ensuring they were knowledgeable enough or had enough information to successfully perform the work required. C. H. Robinson was to manage the project including having a superior on the dock in Brownsville Barge & Crane for each lift that as to take place.

10.    C. H. Robinson was Plaintiffs' agent, managing the project. C. H. Robinson is vicariously liable as Plaintiffs' agent and project manager.

11.    In order to accomplish the aforementioned, C. H. Robinson sub-contracted with Schaefer Stevedoring, who contracted with Brownsville Barge & Crane which had the only barge mounted crane between Tampico, Mexico and Houston with sufficient lifting capacity to lift the turbine generators.

12.    For several months after the contract was signed in Switzerland, various information was passed back and forth between the parties with regard to the technical and engineering details required for the transfer, the sub-contractors who would perform the job, the rail route which would be used and various details which had to be communicated in order to manage a project of this size.

13.    As a result of Defendant's actions, Plaintiffs eventually performed tasks that under the contract, were Defendant's responsibilities.  This occurred after the date cited by Defendant in their 12(b)(6) Motion.

**V.    Argument and Authorities**

**A.    Plaintiffs' claims are not barred by limitations**

14.    Defendant has taken the logically inconsistent position that because of the nature of Plaintiffs' claims, they have no claims, but that the events that gave rise to these claims are barred by the statute of limitations.  If there was no claim it could not have accrued when Defendant states.  Their argument is partially right, Plaintiffs' cause of action did not accrue when Defendant claims.  The actions Defendant claims constituted a breach of contract and started limitations running, did not in and of themselves give rise to a cause

of action on behalf of Plaintiffs. Instead, it was the mismanagement of the project which gives rise to the cause of action. Part of the damages consist of the amounts paid by Plaintiffs to Defendant under the contract. Plaintiffs are suing in part to have its money returned because of Defendant's performance.

15.    It is undisputed in Texas that there are four elements to a cause of action for breach of contract.

a.    The existence of a valid contract;

b.    Performance or tendered performance by Plaintiffs;

c.    Breach of contract by the Defendant; and,

d.    Damages sustained by the Plaintiffs as a result of the breach.

Pair-A-Dice Acquisitions Partners, Inc. v. Board of Trustees of Galveston, 185 F.Supp.2d 783 (S.D. Tex. 2002); Sutton v. Hisaw & Associates General Contractors, Inc., 65 S.W.3d 281 (Tex.App.–Dallas 2001, pet. denied); Guzman v.Ugly Duckling Car Sales of Texas, L.L.P., 63 S.W.3d 522 (Tex.App.–San Antonio 2001, no pet. h.); Valero Marketing & Supply Co. v. Kalama International, L.L.C., 51 S.W.3d 345 (Tex.App.–Houston [1st Dist.] 2001, no pet. h.); Runge v. Raytheon E-Systems, Inc., 57 S.W.3d 562 (Tex.App.–Waco 2001, no pet. h.); Goss v. Bobby D. Associates, 94 S.W.3d 65 (Tex.App.–Tyler 2001, no pet. h.); Acceptance Insurance Company v. Life Care Corp., 89 S.W.3d 773 (Tex.App.–Corpus Christi 2002, no pet. h.); Palmer v. Espey Houston & Associates, Inc., 84 S.W.3d 345 (Tex.App.–Corpus Christi 2002, no pet. h.); La Villa Independent School

District v. Loomez Garza Design, Inc., 79 S.W.3d 217 (Tex.App.–Corpus Christi 2001, no
pet. h.).

16.     Without all of the above elements, a cause of action could not accrue on the
date Defendant states.  Plaintiffs were not damaged on that date and the mismanagement of
the project had not led to Plaintiffs taking over Defendant's contractual responsibilities at
that time.  Defendant's mismanagement of the project caused an accident on that date.
Plaintiffs had not experienced a legal wrong and had no legal remedy available on that date.
Limitations cannot accrue from that date as no legal action was warranted on that date by
these Plaintiffs against this Defendant. Plaintiffs were simply not injured on that date.
Plaintiffs did not have a cause of action for the personal injury that occurred on that date.
The mismanagement of the project continued after the date cited by Defendant, which would
have been a continuing tort.  Plaintiffs suffered no legal injury that would give rise to a
cause of action on the date cited by Defendant.  Johnson, supra.

17.     As stated previously, Plaintiffs' claims for mismanagement of the project did
not accrue until after the period claimed by Defendant.  Defendant has not established the
factual elements necessary to prevail on their limitations defense.  The mismanagement was
ongoing.  Plaintiffs had to step-in and take over management duties of C. H. Robinson
involving other shipments after the date cited by Defendant in their Motion.

18.     Brownsville Barge & Crane did not file a claim against Plaintiff under the
indemnity attachment to their contract until well after July 1999.  A judgment was not

obtained against Plaintiffs until well after July 1999.  These claims are not barred by limitations.

19.    At the time of the alleged accrual of the statute of limitations, Plaintiffs were unaware of any claim that would be made against Plaintiffs and held no legal claim in their own right.  The contractual management of the project was in the hands of Defendant.  In fact, Plaintiffs, Swiss and German Corporations, did not know of the possibility of damages as a result of C. H. Robinson's actions until after the mishaps on the dock.  The decision to make other arrangements regarding the contract had not been made on that date.  Signing of an amendment to the Brownsville Barge & Crane/Schaefer contract does not fulfill the requirement of a breach of contract in and of itself.

20.    Defendant cites Matthieson v. Schafer, 900 S.W.2d 792, 796-797 (Tex.App.--San Antonio 1995, writ denied); Houston Endowment, Inc. v. Atlantic Richfield Co., 972 S.W.2d 155, 159 (Tex.App.–Houston [14th Dist.] 1998, no pet.); and, Harrison v. Bass Enterprise Prod. Co., 888 S.W.2d 532, 537 (Tex.App.–Corpus Christi 1994, no writ), for the proposition that the limitation period runs from the date of the alleged breach.

21.    Matthieson, supra, cites United States Fidelity & Guaranty Co. v. San Diego State Bank, 155 S.W.2d 411 (Tex.Civ.App.–El Paso 1941, writ ref'd), for the above proposition.  U.S. Fidelity & Guaranty, supra, was decided before the discovery rule and on the same facts today would have been decided differently.  It should not control.

22.    Houston Endowment, and Harrison, supra, cite each other and Trinity River Authority v. URS Consultants, Inc.–Texas f/k/a URS Forest and Cotton, Inc., 889 S.W.2d 259 (Tex. 1994), for the above proposition.

23.    Trinity River, supra, holds that the traditional rule in Texas is that the cause of action occurs when the injury occurs, supporting Plaintiffs' position. Trinity River at 262-263. The court in Trinity River, supra, cites Houston Water-Works Co. v. Kennedy, 60 Tex. 233, 8 S.W. 36 (1888) for the definition of injury, or legal injury...–"by which is meant an injury giving cause of action by reason of it being an invasion of a Plaintiff's right..." Trinity, 262. The Houston Water-Works court held there must be damage, however slight for there to be an invasion of Plaintiff's right. Here there was no damage on the date claimed by Defendant and, therefore, no invasion of Plaintiff's right and no injury. The statute could not run from that date.

24.    Defendant admits they are not entitled to dismissal in paragraph 10 of their motion.

25.    Defendant is incorrect in their position as to Plaintiffs' assertions in paragraph 11 of their motion.

26.    Defendant has not established that Plaintiffs' causes of action are barred by limitations. Defendant has not addressed elements of Plaintiffs' cause of action and is not entitled to dismissal based upon its alleged limitations defense.

27.    Plaintiffs believe the statute would not begin to run in this case until injury occurred, or in the alternative when Plaintiffs sustained damage for which they could seek legal redness.  Neither date is barred by limitations.

**B.    Plaintiffs' claims are supported under Texas law as a breach of contract**

28.    Defendant asserts that Plaintiffs' claim is one for contribution or indemnity and as such is barred by Texas law.  However, where liability is purely vicarious common law indemnity survives.  Bonniwell v. Beech Aircraft Corp., 663 S.W.2d 816, 820 (Tex. 1984).  Aviation Office of America, Inc. v. Alexander & Alexander, 751 S.W.2d 179 (Tex. 1988).  Defendant has attached the contract in question to its Motion.  On the title page under C. H. Robinson is listed as:  (THE OPERATOR).

29.    Plaintiffs have sued Defendant as their agent for mismanagement of the project made the basis of this suit.  As such, Plaintiffs were vicariously liable for Defendant's failures in the underlying litigation.  "Those cases that do recognize an implied right of indemnification do so on the basis of agency or surety principles."  American Alloy Steel, Inc. v. ARMCO, Inc., 777 S.W.2d 173 (Tex.App.–Houston [14th Dist.] 1989, no writ).

30.    It is undisputed that the negligence, or in this case  mismanagement, of an agent or operator can result in liability to the principle.

31.    Defendant recognizes that vicarious indemnity still exists in Texas, citing, B & B Auto Supply, Sand Pit & Trucking Co. v. Central Freight Lines, Inc., 603 S.W.2d 814, 817 (Tex. 1980), but ignores this issue and deals only with contractual indemnity and contribution in its Motion.

32.    Defendant cites <u>Astra Oil Co., Inc. v. Diamond Shamrock Rfg. Co., L.P.</u>, 89 S.W.3d 702, 706 (Tex. App.–Houston [1ˢᵗ] 2002, pet. denied) for the proposition that there is no authority to support vicarious liability based solely on a contractual relationship. The court in <u>Astra</u> held that there was no relationship to support a vicarious liability theory or to show Plaintiffs were entitled to common law indemnity, <u>Id</u> at 706, not that it was never available if established by proper evidence. The contract between Astra and Diamond Shamrock was one to deliver petroleum on one side and provide safe berth, and of course pay for the product on the other. For some reason Astra did not sue Diamond Shamrock for breach of contract when the allegedly failed to provide safe berth for Astra's time chartered vessel, but instead "vouched in" Diamond Shamrock after an arbitration proceeding in London and then sought only to enforce under indemnity law the arbitration award. No relationship such as project manager/agent existed as in our case. <u>Astra,</u> holds that vicarious liability under a contract "could" be established under the proper circumstances was not established under the facts which were present in that case.

33.    Likewise in <u>Compton v. Texaco, Inc.</u>, 42 S.W.3d 354, 361-362 (Tex. App.–Houston [14ᵗʰ Dist.] 2001, pet denied) the court held that the facts of the case did not give rise to vicarious liability because Compton the Plaintiff was liable in the underlying case under strict liability theories.

34.    Defendant contracted to be responsible for the project from the Port of Brownsville to Monterrey. Plaintiffs were not required to have any representative in Brownsville at any time during the project. Plaintiffs' representative in Brownsville was

there strictly to observe. As a result of the inexperienced manager, C. H. Robinson, sent to Brownsville and his lack of familiarity with the equipment, Plaintiffs' mostly German (some English) speaking representative was required to answer some of Robinson subcontractor's questions on the move. The subcontractor who was not provided the information needed to safely perform the lift by Robinson or not competent, for some reason misinterpreted the answers. All of this resulted from the fault of the agent. In this case Bonniwell, supra, and its prodigy do not apply.

C.      **Plaintiffs' claim regarding Brownsville Barge & Crane is clearly not an indemnity or contribution claim, nor is the claim for damages for mismanagement of the project.**

35.      Defendant's Rule 12(b)(6) Motion does not address Plaintiffs' claims for return of the amount paid to Defendant resulting from their breach of contract and Plaintiffs being required to perform certain duties required of Defendant under the contract or the claim resulting from the signing of Brownsville Barge & Crane's indemnity amendment to their contract with Schaefer Stevedoring after C. H. Robinson refused to sign that amendment. Accordingly, these claims stand on their own merit. Defendant only states they are barred by limitations because they occurred on a certain date. This prospect ignores the fact that Plaintiffs possessed no cause of action against Defendant on that date. Both of these claims involve directly liability and are not the subject of contribution or indemnity.

**VI      Conclusion**

36.      Defendant has not met their burden and established that Plaintiffs' claims are barred by the statute of limitations.

37.    Plaintiffs' claims are valid under Texas law.

38.    Defendant does not address all of Plaintiffs' claims.

**VII    Request for Relief**

39.    Plaintiffs pray Defendant's 12(b)(6) Motion be denied in its entirely.

Respectfully submitted,

The Law Office of Justin L. Williams, P.C.
600 Leopard Street, Suite 1810
Corpus Christi, Texas 78473
Telephone:    (361) 888-7702
Facsimile:    (361) 888-7717

By:    _____
Justin L. Williams
State Bar Number 00795384

ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was

forwarded on this the 19th day of September, 2003, to all counsel of record, as listed below

and in the manner designated:

**CERTIFIED MAIL, RRR:**
Mr. Steven J. Watkins
Ms. Karan C. Ciotti
McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
3200 One Houston Center
1221 McKinney Street
Houston, Texas 77010

Justin L. Williams

use of the "Atlantic Giant" a barge mounted crane to lift the turbine generator from the lash barge and place it on the railcar.

11. The "Atlantic Giant" was the only crane available at the port with sufficient lifting capacity to move the turbine generator from the lash barge to the railcar.

12. C. H. Robinson obtained the necessary rail permits to allow the transportation of the generator from Brownsville to Monterrey.

13. The lash barge arrived in the Port of Brownsville and the initial lift was canceled due to inclement weather. A representative from C. H. Robinson was on location to manage the lift and provide information and directions to C. H. Robinson's sub-contractors, Schaefer Stevedoring and through Schaefer Stevedoring, Brownsville Barge & Crane. A representative of ABB was on location to answer any questions with regard to the generators.

14. On or about March 23, 1999, a representative of Brownsville Barge & Crane presented to C. H. Robinson's representative and ABB's representative an addendum to the Lifting Services Agreement between Schaefer Stevedoring and Brownsville Barge & Crane which required ABB and/or C. H. Robinson to provide indemnity to Brownsville Barge & Crane for any accident which might occur during the lift. The C. H. Robinson representative, despite the fact that they were responsible by contract for the transportation of the generator from lash barge to Monterrey refused to sign the indemnity agreement. Brownsville Barge & Crane informed the ABB representative that if they did not sign the indemnity agreement that the "Atlantic Giant" could not be used to make the lift.

15. C. H. Robinson was at all times aware that the contract between ABB involving the Monterrey Power Plant project was time sensitive and contained liquidated damages clauses. No arrangements had been made by C. H. Robinson to transport the generator by any means other than from railcar at the Port of Brownsville to Monterrey. The appropriate permits had been obtained by C. H. Robinson for the rail transport and clearances for the oversized generator had been met for the Brownsville/Monterrey rail journey. Rail clearances were known to be problematic from Houston/Galveston to Monterrey. More importantly other than the Atlantic Giant, there was no crane with sufficient lifting capacity to make the lift between the Port of Tampico and the Port of Houston/Port of Galveston.

16. The result was C. H. Robinson's sub-contractor had ABB over an economic barrel. Therefore, ABB's representative signed the indemnity agreement.

17. On the morning of the lift, C. H. Robinson's sub-contractors, Schaefer Stevedoring and Brownsville Barge & Crane had still not familiarized themselves with the generator. Appropriate lifting procedures were not in place and the contractor's were still unclear as to how they would place the generator on the railcar. All of these resulted from improper management of the project by C. H. Robinson and resulted in Schaefer employees removing two (2) bolts holding together a lifting lug which fell and killed one of the Schaefer Stevedoring longshoreman, Oscar Zamora, Sr.

18. As a result of this accident, C. H. Robinson, ABB and Brownsville Barge & Crane were sued by the Zamora Plaintiffs. The Zamora Plaintiffs settled with C. H. Robinson early on

in the litigation.  Prior to trial, ABB settled the litigation with the Zamora Plaintiffs.
Brownsville Barge & Crane was dismissed from the litigation by Plaintiffs.  Brownsville
Barge & Crane filed a Cross-claim against ABB for contractual indemnity.  Following
Motion for Summary Judgment hearings the Cross-claim was granted and Brownsville
Barge & Crane obtained a judgment against ABB for attorney's fees and costs of defense
as well as attorney's fees for pursing their Cross-claim.  That judgment is currently on
appeal.

19.    Following the actions of C. H. Robinson and its subcontractors on the aforementioned
shipment, Plaintiff was required to re-evaluate the management of the project by its agent,
Defendant.

20.    Plaintiff ABB Alstom Power performed services which were the contractual
responsibility of Defendant following the Zamora accident.

21.    Plaintiff ABB Altstom Power was required to perform tasks of THE OPERATOR
under the contract.

## D.  BREACH OF CONTRACT

22.    C. H. Robinson was contractually bound to manage the project on behalf of ABB.
C. H. Robinson breached this portion of the contract and is both vicariously liable for a
portion of Plaintiffs' damages and directly liable to Plaintiffs for a portion of Plaintiff's
damages as a result of this breach.

23.    C. H. Robinson was ABB's agent for all purposes under the contract. Defendant failed to live up to the terms of this agency relationship and is liable to Plaintiffs as a result of this breach.

24.  C. H. Robinson breached its contract with ABB by failing to perform the work it contracted for in a good and workmanlike manner.

25.  C. H. Robinson breached its contract with ABB by promising to perform services that they did not perform.

26.  C. H. Robinson breached its contract with ABB by failing to properly ensure that its sub-contractors were competent to perform the work for which they contracted.

27.  C. H. Robinson breaks its contract with ABB by failing to ensure that the sub-contractors were familiar with the equipment and the technical specifications of the generator they were to lift from the lash barge to the railcar.

28.  C. H. Robinson breached its contract with ABB by failing to exercise proper managerial skills and control over its sub-contractors.

29.  C. H. Robinson breached its contract with ABB by providing inexperienced personnel to supervisor the job in question. Jim Hamilton, the C. H. Robinson employee, who signed the contract, provided the proposals and sold ABB on his company, partly due to his experience in heavy lifts, was not on location supervising the lift. Instead C. H. Robinson relied on inexperienced personnel, not familiar with the type of equipment involved or this type of heavy lift to supervise the operation.

30. C. H. Robinson breached its contract with ABB by failing to ensure that all contractual requirements were in place prior to the lift, resulting in ABB being forced to sign an indemnity agreement on the docks just prior to the lift.

31. C. H. Robinson breached its contract with ABB by not providing proper managerial expertise to ensure that proper plans and preparation were in place to smoothly transport the generator from the lash barge to Monterrey.

32. No legal harm resulted to Plaintiffs until May of 2000. Defendant's actions were not in and of themselves unlawful or of such a nature to cause damage to Plaintiffs solely based on their nature.

33. Defendant was in the unique position of knowing what actions it had or hadn't taken to perform under the contract. Defendant's mismanagement was such that it constituted a continuing tort, not simply occurring at one time or instance.

## E.  DAMAGES

34. ABB seeks return of all money paid to C. H. Robinson under the contract as a result of their breach of contract. C. H. Robinson is directly liable to Plaintiffs for this element of damage.

35. ABB seeks all monies paid on behalf of defending Brownsville Barge & Crane's Cross-claim, that may be paid in any judgment obtained by Brownsville Barge & Crane, and for all costs and expenses involved in the same as a result of C. H. Robinson's breach of contract. C. H. Robinson has direct liability for this element of damages.

36.  ABB seeks all amounts paid in settlement and defense of the Zamora litigation as a result of C. H. Robinson's breach of contract.  C. H. Robinson is both directly and vicariously liable to Plaintiff for this element of damages.

37.  ABB seeks attorney's fees for bringing this breach of contract suit, pre- and post-judgment interest at the legal rate and all other damages to which they may show themselves justly entitled.

38.  All of the above damages were proximately caused by C. H. Robinson's breach of contract and were foreseeable results of the various actions of Robinson.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendant be acquired to appear herein and that Plaintiffs obtain judgment against Defendant C. H. Robinson for all damages sought as a result of their breach of contract, including attorney's fees and pre- and post-judgment interest and for which such other and further relief to which this Honorable Court deems just and equitable.

Respectfully submitted,

The Law Office of Justin L. Williams, P.C.
600 Leopard Street, Suite 1810
Corpus Christi, Texas 78473
Telephone:   (361) 888-7702
Facsimile:   (361) 888-7717

By:  _____
Justin L. Williams
State Bar Number 00795384

ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was forwarded on this the 19th day of September, 2003, to all counsel of record, as listed below and in the manner designated:

**CERTIFIED MAIL, RRR:**
Mr. Steven J. Watkins
Ms. Karan C. Ciotti
McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
3200 One Houston Center
1221 McKinney Street
Houston, Texas 77010

Justin L. Williams

Page 10 of 10

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was forwarded on this the 19th day of September, 2003, to all counsel of record, as listed below and in the manner designated:

**CERTIFIED MAIL, RRR:**
Mr. Steven J. Watkins
Ms. Karan C. Ciotti
McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
3200 One Houston Center
1221 McKinney Street
Houston, Texas 77010

Justin L. Williams

**Page 3 of 3**