30

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

DEC 0 9 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ABB KRAFTWERKE | § | |
| AKTIENGESELLSCHAFT, and | § | |
| ABB ALSTOM POWER (SWITZERLAND) | § | |
| LTD., formerly known as ABB POWER | § | |
| GENERATION, LTD. | § | |
| | § | |
| Plaintiffs | § | Civil Action No. B:03-CV-192 |
| | § | |
| VS. | § | |
| | § | |
| | § | |
| C. H. ROBINSON COMPANY | § | |
| Defendant | § | |

**PLAINTIFFS' PARTIAL REPLY TO DEFENDANT
C. H. ROBINSON COMPANY'S RESPONSE TO
PLAINTIFFS' MOTION FOR APPLICATION OF SWISS LAW**

# TABLE OF CONTENTS

I.      Statement of the Nature and State of the Proceedings ...................... 1

II.     Statement of Issues to be Ruled on by the Court ......................... 2

III.    Summary of the Argument .......................................... 2

IV.     Standard of Review ............................................... 3

V.      Argument and Authorities .......................................... 3

        Limitations issues must be decided under the laws of the forum ............. 3

        Indemnity issues are governed by the same law as the underlying claim ....... 4

        Section 188: The Most Significant Relationship ......................... 5

        Place of law provisions ............................................ 8

        Place of the Contract ............................................. 11

        Place of Performance ............................................. 11

        Location of the subject matter of the contract .......................... 12

        Domicile, residence and place of business of the parties .................. 13

        Texas vicarious liability .......................................... 14

        Differences between Texas and Swiss Law ............................. 15

VI.     Conclusion .................................................... 16

VII.    Request for Relief ............................................... 16

# TABLE OF AUTHORITIES

## Cases

Baker Hughes, Inc. V. Keco R. & D., Inc., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
12 S.W.3d 1, 4 (Tex. 1999)

Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc., . . . . . . . . . . . . . . . . . . 5, 6, 7
94 S.W.3d 163 (Tex. App.– Houston [14th Dist.] 2002

Culpepper v. Daniel Industries,  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
560 S.W.2d 958, 959 (Tex. App.–Houston [1st Dist.] 1973, writ ref'd, n.r.e.).

Hardy v. Gulf Oil Corp., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6
949 F.2d 826, 830 n. 7 (5th Cir. 1992)

In re Dearborn Marine Service, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7
499 F.2d 263, 287 (5th Cir. 1974)

Johansen v. E.I. Dupont De Nemours & Co., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
810 F.2d 1377, 1381 (5th Cir. 1987) cert. denied, 484 U.S. 849,
108 S.Ct. 148, 98 L.Ed.2d 104

Marathon Pipe Line Co. v. Drilling Rig Rowan/Odessa,  . . . . . . . . . . . . . . . . . . . . 5, 6, 7
761 F.2d 229, 235 (5th Cir. 1985)

Maxus Exploration Co. v. Moran Bros., Inc., . . . . . . . . . . . . . . . . . . . . . . 5, 8, 9, 11
817 S.W.2d 50, 56 (Tex. 1991)

McLennan v. American Eurocopter Corp., Inc., . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
245 F.3d 403, 425 (5th Cir. 2001)

Tri-State Oil Tool Indus., Inc. v. Delta Marine Drill Co., . . . . . . . . . . . . . . . . . . . . . 5, 7
410 F.2d 178, 186 (5th Cir. 1969)

## Statutes

Restatement (Second) of Conflicts § 187  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Restatement (Second) of Conflicts § 188  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

I.    **Statement of the Nature and Stage of the Proceedings**

1.    Following the filing of Plaintiffs' Original Petition, Defendant C. H. Robinson filed a Rule 12(b)(6) Motion seeking dismissal of Plaintiffs' claims based on their being barred by Texas Law or by the applicable Statute of Limitations. These issues have been fully brief with the exception of the issue of the indemnity claim for vicarious liability asserted by Plaintiffs to which C. H. Robinson has responded by claiming that Plaintiffs' had not plead a vicarious cause of liability against Robinson attaching the 13th Amended Original Petition by Plaintiffs in the Zamora lawsuit. Plaintiffs would only briefly respond to that issue at the end of their reply as it has been raised once again in Defendant's Response to the Motion for Application of Swiss Law.

2.    Prior to a ruling on the 12(b)(6) Motions before the Federal Court in Galveston, Plaintiffs' filed a Motion for Application of Swiss Law. Prior to the December 9, 2003 scheduling conference the Scheduling Order was due which was signed by the parties on November 24, 2003. The November 24th Scheduling Order indicated the parties believed that the issues raised by the 12(b)(6) Motion and the Motion for Application of Swiss Law could be resolved at the December 9, 2003 Scheduling Conference. Since that time, Plaintiffs' have filed a Motion for Extension for Time to File Affidavits and a Motion to Delay the Ruling on the Application of Swiss Law until these Affidavits can be filed.

3.    Out of abundance of caution, Plaintiffs file this Partial Response to C. H. Robinson's Reply to Plaintiffs' Motion for Application of Swiss Law so that it will be

considered by the court at the December 9th hearing, if the court does not grant Plaintiffs'

Motion for Extension of Time and Delay of Ruling.

## II.    Statement of Issues to be Ruled on by the Court

4.    Plaintiffs will address the three (3) issues based by Defendant in their response

as follows:

        a.    Whether Swiss law or Texas law applies to the procedural issues of
limitations;

        b.    Whether Swiss law or Texas law applies to the indemnity issues, given
that the Plaintiffs seek indemnification for amounts paid or adjudged
on claims brought under Texas law; and

        c.    Assuming *arguendo* that Texas law does not, as a matter of law, apply
to the limitations and indemnity issues, whether Plaintiffs have satisfied
their burden on choice of law by producing evidence of a substantial
connection between this controversy and Switzerland.

## III.    Summary of the Argument

5.    Texas law is very clear that Statute of Limitations may or may not be considered

procedural based on the Statute of Limitations of the forum selected by the court in its choice

of law determination and based upon the Statute of Limitations of the forum selected.  The

statement of C. H. Robinson, that Statutes of Limitations are procedural in nature and hence,

Texas statutes of limitation apply to Plaintiffs' claim, regardless of whether the laws of

another State might determine substantive aspects of the case is an erroneous statement of Texas law.

6.     Similarly, Plaintiffs' indemnity claim is not as a matter of law governed by the laws of the State of Texas as stated by Defendant C. H. Robinson.  The cases relied on by Robinson do not confirm their position.  Instead, the cases relied on by Robinson indicate that the choice of law determination on the indemnity issue must be made under the guidelines adopted by the Texas Supreme Court based upon the restatement of second of conflicts.

7.     There is substantive difference between Swiss and Texas law that requires the court to undertake the choice of <u>law analysis</u>.

## IV.     Standard of Review

8.     The district court's choice of law determination is reviewed de novo.  <u>McLennan v. American Eurocopter Corp., Inc.</u>, 245 F.3d 403, 425 (5th Cir. 2001).

## V.     Argument and Authorities

### *Limitations issues must be decided under the laws of the forum*

9.     The Defendant in this case starts out with the erroneous assertion that all Statutes of Limitations are procedural and that the Statutes of Limitation in a forum state controls the determination of Statute of Limitations issues.  The correct statement of the law in Texas, is that Statute of Limitations are considered procedural, except when the statute which creates the cause of action incorporates a Statute of Limitation thereby creating a substantive right

whereby the Statute of Limitations provision is considered substantive. "Only when the very statute that created a right of action incorporates an express limitations upon the time within which the suit could be brought is the Statute of Limitations considered substantive." Culpepper v. Daniel Industries, 560 S.W.2d 958, 959 (Tex. App.–Houston [1st Dist.] 1973, writ ref'd, n.r.e.).   The distinction between procedural and substantive is not only the law in Texas but the law adopted by the Fifth Circuit setting in diversity cases which analyzed Texas, choice of law regarding Statutes of Limitations. Johansen v. E.I. Dupont De Nemours & Co., 810 F.2d 1377, 1381 (5th Cir. 1987) cert. denied, 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104. The only possible distinction between the procedural and substantive analysis that goes on in Statute of Limitation cases does not apply to the facts of this case. When as here, there is a choice of law to be made to determine whether the Statute of Limitations of the forum state, in this case Texas, or the choice of law state would be applied depends upon the substantive vs. procedural analysis. When, however, there is an analysis of whether or not a Statute of Limitation issue is prescribed, i.e. the Statute of Limitations extending a cause of action did not arise prior to the time of the cause of action would have been extinguished by prior statute, then it is strictly procedural in nature as discussed by the Supreme Court in Baker Hughes, Inc. V. Keco R. & D., Inc., 12 S.W.3d 1, 4 (Tex. 1999). This analysis does not apply to choice of law questions involving Statute of Limitations.

**Indemnity issues are governed by the same law as the underlying claim**

10.    C. H. Robinson incorrectly states, that the indemnity issues is governed by the

same laws of the state of the underlined claim.  Hardy v. Gulf Oil Corp., 949 F.2d 826, 830

n. 7 (5th Cir. 1992); Marathon Pipe Line Co. v. Drilling Rig Rowan/Odessa, 761 F.2d 229,

235 (5th Cir. 1985); Tri-State Oil Tool Indus., Inc. v. Delta Marine Drill Co., 410 F.2d 178,

186 (5th Cir. 1969); and In re Dearborn Marine Service, Inc., 499 F.2d 263, 287 (5th Cir.

1974).

   11.  Defendant failed to cite Chesapeake Operating, Inc. v. Nabors Drilling USA,

Inc., 94 S.W.3d 163 (Tex. App.– Houston [14th Dist.] 2002:

> C.  Choosing the Law - Because of these differences, this appeal turns on
>
> which state's law applies.  In determining the law applicable to oilfield
>
> indemnity clauses, Texas courts look to sections 187 and 188 of the
>
> Restatement (Second) of Conflict of Laws.  Maxus Exploration Co. v. Moran
>
> Bros., Inc., 817 S.W.2d 50, 56 (Tex. 1991) at 53.

<b>Section 188: The Most Significant Relationship</b>

12. A.  The Contracts

Restatement section 188 provides that "an issue in contract [is] determined by

the local law of the state which, with respect to that issue, has the most

significant relationship to the transaction and the parties," taking into account

the following five (5) contracts:

> (1)  the place of contracting,
>
> (2)  the place of negotiation of the contract,

(3)    the place of performance,

(4)    the location of the subject matter of the contract, and

(5)    the domicile, residence, nationality, place of incorporation and place of business of the parties.

Restatement § 188 (2).  Chesapeake at 169, 170.

13.    Obviously under Chesapeake, choice of law in indemnity situations is determined in Texas the same way as choice of law in contract which is determined by the Restatement (Second) of Conflicts.

14.    Hardy v. Gulf Oil Corp., at footnote 7 cited by Defendant, actually states: "The body of law that governs a claim for indemnity or contribution usually is the same body of law that establishes the indemnities primary liability to the Plaintiffs.  Hardy at 830, the court goes on to state, "Rather than attempt to resolve a difficult choice of question, this court will examine the availability of indemnity and contribution under both Texas and maritime law." Hardy at 830-31.  Essentially, the Hardy case holds that the law that governs a claim for indemnity or contribution usually is the same body of law that establishes indemnities primary liability but instead of following the usual course the Hardy court interpreted the issue under both Texas and maritime law.  The court did not follow the course Defendant suggests.

15.    Likewise, Marathon Pipe Line cited by Defendant. at page 235 states as follows:  "We follow the same reasoning, noting that the restatement indicates the same result.  Under its principles, the indemnity and contribution claims are determined by the

local law of the state that has the most significant relationship to the issue." <u>Marathon</u> at 235. The court in <u>Marathon</u> applies the restatement principles determining maritime law governs, as opposed to as the Defendant states, simply saying that the body of law under which the indemnity is liable is the governing law for the claim at hand. When these two cases are read in their entirely and combined with <u>Chesapeake</u> it is clear that the law of the State of Texas is not what Defendant C. H. Robinson's states it is, but instead indemnity claims are to be determined under the Restatement (Second)'s choice of law principles.

16.    It is even more interesting to go back and look at the <u>Tri-State</u> and <u>In re Dearborn</u> cases which predate the Restatement (Second) of Conflicts being written in the one case and adopted in the other. If the rules of <u>Tri-State</u> and <u>In re Dearborn</u> are followed and the cases are brought to their logical conclusion then ABB would be entitled to indemnity under the technical or passive negligence doctrine. <u>Tri-State</u> entitles tort feasors guilty of only technical or passive negligence such as in this case, indemnity from one guilty of active or affirmative negligence as in the case of C. H. Robinson. <u>In re Dearborn</u> at 287, citing <u>Tri-State</u>. If Defendant wishes to adopt these cases predating the Restatement or the Texas analysis or the later Texas cases involving choice of law indemnity issues then their reasoning involving technical and passive active or affirmative negligence should also be adopted by this court.

17.    Therefore, the indemnity issue like choice of law issue must be governed the Restatement principles.

**Place of law provisions**

18.    Plaintiffs will not respond to a number of the issues raised by C. H. Robinson in its response as they are either irrelevant to the issues before this court or intelligible to Plaintiffs. Specifically, with regard to the tort analysis contained within the response since both the Restatement and Texas law is clear that indemnity issues are not decided under tort analysis but under those contained in the contract portions of the Restatement. This is not only the law but it is a logical extension and C. H. Robinson's argument with regard to the tort portion of the Restatement is unintelligible.

19.    Throughout C. H. Robinson's response it should be apparent to the court that they place great stock in the "lex loci" doctrine. This doctrine which as applied to this case would have Texas law apply simply because a portion of the breach of contract and indemnity issues occurred in Brownsville, has been rejected by both the Restatement (Second) of Conflicts and by the Texas courts in adopting the restatement. C. H. Robinson attempts to define the contract between Robinson and ABB as a contract for personal services under the Restatement (Second), and then erroneously cites a case for the proposition that personal services contracts are to determined solely under the lex loci doctrine or based upon the place where the services are to be rendered. Citing Maxus Exploration Co. v. Moran Bros., Inc., 817 S.W.2d 50, 53 (Tex. 1991). Unfortunately for Defendant, the Maxus case stands for the proposition that choice of law under service contracts, even if the management contract fits this definition, are to be determined based on

the Restatement (Second). "What we consider first is the indemnity provisions of the drilling contractor governed by Texas or Kansas law. In deciding which state law should govern the construction of contractual rights we have previously looked to the principles of the Restatement (Second) of Conflicts of Laws (1971). ... We look to those principles again here." <u>Maxus Exploration Co.</u> at 53.

20.    C. H. Robinson has indicated in its brief that more certainly with regard to transactions such as those involving in this case would occur with the application of Texas law since Texas is the state where the <u>Zamora</u> lawsuit occurred. The Restatement (Second) of Conflicts was developed for the very reason that certainty does not occur based on the gratuitous nature of the place of occurrence when a transaction involves more than one jurisdiction. The equipment involved in the management of this project was manufactured in Manheim, Germany. The company involved in the intra-company transfer, purchasing the equipment and who made arrangements for its transfer to the location of its installation in Monterrey, Mexico was based in Baden, Switzerland. The equipment traveled from Manheim, Germany to Rotterdam by barge, then to New Orleans by ocean transport and from New Orleans to Brownsville by barge. From the Port of Brownsville the equipment was moved onto railcars where it was transferred to the location of the power plant outside of Monterrey, Mexico, where it was unloaded and installed. If the location of a particular incident was the determining factor in a contract case, then the Restatement (Second) would

not have been adopted. The location of an occurrence does not create certainty that is why Texas adopted the Restatement's most significant relationship test.

21.    C. H. Robinson in their brief acknowledged that the contract was signed in Switzerland but denies the negotiations of the contract occurred primarily in Switzerland. It is expected that the affidavit of Sandro Lepori will establish the negotiation of the contract occurred primarily in Mexico and Switzerland. As C. H. Robinson acknowledges the contract was signed in Switzerland. Since C. H. Robinson claims that the contract was partially negotiated in Texas as a result of the sending of documents from an office which is no longer in existence in Texas, the court should consider that no face to face meetings took place in Texas. These occurred in Mexico and in Switzerland. No face to face meetings or negotiations occurred in Texas. The best Defendant will be able to show is that Texas served as a conduit for transmission of terms negotiated other places. Obviously, if no negotiations occurred in Switzerland, the contract would have simply been signed by ABB in Switzerland and transmitted for signature to C. H. Robinson. There was no need and would be no need for a representative of C. H. Robinson to travel to Switzerland if contractual terms were not subject to negotiations at that point. It is outrageous, outlandish and unbelievable that C. H. Robinson takes the position without citing any evidence that no negotiations of the contract occurred in Switzerland. Defendant may attack a lack of proof by Plaintiffs of a particular piece of evidence, but to tell the court something that the court can determine from circumstantial evidence is incorrect, is not proper.

22.     **Place of the contract**. It is undisputed that the place where the contract was signed was Switzerland. C. H. Robinson combines the concepts of place of contract and negotiation in order to try to limit the impact that these concepts have on the Restatement analysis.

23.     **Place of performance**. C. H. Robinson has erroneously cited <u>Maxus Exploration Co</u>. as controlling stating that place of performance of the contract is controlling. The place of performance without doubt includes Texas. The contract is for the management of the transfer of the equipment from the Port of Brownsville to Monterrey, Mexico. The factors considered in managing this project, however, are not limited to Texas or Mexico. For some reason Robinson denies that the documentation with regard to the subject matter of the management of the project was either obtained by Defendant when in Switzerland or sent to Defendant from Switzerland. With the exception of obtaining permits for the rail travel which was required by the Mexican government for the Mexican portion of the transportation of the heavy equipment, the documents necessary for insuring that the management of this project could be successfully undertaken all originated in Switzerland or were sent from Switzerland. These were either obtained by Jim Hamilton when he was in Switzerland, negotiating and signing the contract or were sent from Switzerland at a later date. None of these documents originated in Texas. Defendant is attempting to confuse the court by stating that the management of the project is the "subject of the contract". The subject of the contract is the management of the transportation of the equipment. It is by

definition not limited to the management of the project. In order to successfully manage the project, which constitutes ensuring that the equipment is successfully transported from Brownsville to Monterrey, it is necessary to both obtain and understand the documentation with regard to the equipment. Once again C. H. Robinson is erroneous in the basic concepts applicable to this case.

24.    **Location of the subject matter of the contract.**  The subject matter of the contract is management of the transfer of the equipment. If the place of the transfer was of paramount importance it would without question be Mexico. Sandro Lepori, the ABB representative in overall charge of the department contracting with C. H. Robinson has testified that the reason C. H. Robinson was selected to manage this project is because of their expertise in dealing with the Mexican rail permitting process.   The vast majority of time and distance involved in the transportation of the project was in Mexico. The shortest amount of distance or time involved in the movement of the project was from the Port of Brownsville to the Mexican border.  The court can take judicial notice of the different distances between the Port of Brownsville and Mexican border and the Mexican border and Monterrey. In additional, if C. H. Robinson is going to claim that the lift in question from the Port of Brownsville to the railcars is the most significant portion of their management, then they ignore the fact that they were responsible for the unloading of the equipment and set up of the equipment in Monterrey, which was actually much more important to the management of the project than the lift in Brownsville. Therefore, dominant location under

Robinson's analysis would be Mexico.

25.    **Domicile, residence and place of business of the parties**.  In the original

12(b)(6) Motion the Defendant C. H. Robinson denies that the manufacture of the project has

any claim against them for breach of the contract or indemnity.  The German manufacturer

of the product was sued by the Plaintiff in the Zamora lawsuit.  However, ABB agrees with

C. H. Robinson that as a result of the inter-company transfer as a result of that the proper

party to bring this lawsuit and the real party at interest is the Swiss corporation.  The domicile

and place of contract of the Plaintiffs is Switzerland.   The domicile and place of

incorporation of C. H. Robinson is Delaware.  Attached to this response is correspondence

regarding C. H. Robinson Company from the Secretary of State listing C. H. Robinson's

address as Mitchell Road, Suite 200, Eden Prairie, Minnesota.  In addition, the Secretary of

State has five other listings under C. H. Robinson none of which are in the State of Texas.

The only listing in the Secretary of State's office regarding Texas for C. H. Robinson are the

agents for service of process.  The nationality of the corporations would be American or

Swiss (Minnesotian).  The place of incorporation for C. H. Robinson which is Delaware.

Nowhere does the Restatement mention as a significant factor each office maintained by a

party.  C. H. Robinson Company is incorporated in Delaware and has it principle place of

business in Minnesota.  C. H. Robinson's business, domicile and place of incorporation for

purposes of the Restatement analysis are not Texas.  Since Minnesota has no connection to

this lawsuit, the overwhelming factors involved in this portion of the restatement

determination is Switzerland. Only under the lex loci doctrine can Texas be found to have the most significant relationships to this controversy. The overwhelming analysis under the most significant relationship indicate that the laws of Switzerland should control this case.

26.   **Texas vicarious liability**.  Since the 13th Amended Original Petition in the Zamora lawsuit has once again been attached to Defendant's filings, Plaintiffs will make one comment on this issue.  Under Texas law, as the pleadings have exhaustively indicated, Plaintiff is entitled to indemnity against C. H. Robinson as their agent managing the project under vicarious liability which is one of the vestiges of common law indemnity which is left available to Plaintiffs in Texas.  The Statute of Limitations on this claim clearly is not involved as the claim was brought long within the statute.  In fact, part of the claim for indemnity is still on-going and in front of the Texas Supreme Court Petition for Review in the Texas Supreme Court was filed on November 12, 2003.   Defendant C. H. Robinson claims that there is no claim for vicarious liability because the Zamora Plaintiffs did not use vicarious liability language in their suit against ABB.

27.   C. H. Robinson does not cite any law for the above proposition.  The court is entitled to read the pleadings as a whole.  The 13th Amended Petition which was attached was a petition filed after C. H. Robinson had settled with Plaintiff.  The only difference in the 13th Petition and the original petitions whereby C. H. Robinson was a Defendant is that they had settled.  Plaintiffs complaint against ABB is for product liability based on the fact that there was no warnings that a particular bolt held a jacking plate or that the equipment itself

was defective as a result of the design of the bolt and the jacking plate. It is clear the allegations Plaintiffs make against C. H. Robinson is ordering the removable of the bolt. The court is not limited in its analysis to the fact that Plaintiffs did not use the term vicarious liability but can look into the entirety of the pleadings. In doing so, it will see that it is clear what ABB is being sued for resulted from the actions of C. H. Robinson. Simply put the accident would not have occurred if C. H. Robinson had not ordered the removal of the bolt. Simply put if C. H. Robinson had familiarized themselves and their contractors with the equipment they would not have ordered the removal of the bolt at the time and in the manner they did or not allowed that to have taken place and the accident would not have occurred. Simply put if C. H. Robinson had properly managed the project the accident would not have occurred. Under all of these scenarios ABB is and was basically liable as a result of the mismanagement of its agent and seeks vicarious liability which should be granted by this court.

28. **Differences between Texas and Swiss Law**. The court can take judicial notice of the fact Swiss law is based on the civil law system and Texas law has its origins in English common law. A party with a sense of humor would know there are great differences between the two. Plaintiffs have filed a Motion for additional time to File Affidavits in Support of their Motion for Application of Swiss Law. C. H. Robinson has claimed that in absence of the proof of differences, that Texas Law and Swiss Law are the same. Plaintiffs believe that they should have adequate time to prove the differences in the two laws once the court has

made the most significant relationship determination, however, Plaintiffs would state that on information and belief which will be supported by Affidavits that (1) Swiss statute of limitations is for all substantive causes of actions, and therefore applies; (2) that the Swiss statute of limitations which applies to all actions involved in this lawsuit is ten years; (3) that Swiss law does not extinguish any rights based on the settling tort feasor doctrine; and (4) Swiss law does not limit breach of contract claims such as those being brought by Plaintiffs to one where there is an indemnity clause or one based strictly on vicarious liability.

29.     The Defendant would undoubtedly argue that the above information and belief is not sufficient evidence to show the difference between Texas and Swiss law. These differences are based on arguments and affidavits which will be supplied to the court from Swiss lawyers. Plaintiffs obviously does not believe the court should rule Swiss law to this case based on the presumption that Swiss law and Texas law is the same without adequate opportunity to obtain Affidavits from Switzerland. A court is aware this is time consuming.

30.     The court may take judicial notice that Texas law is based upon the English common law and that Switzerland is a "civil law" country. These concepts in themselves are enough to indicate there will be a difference in the laws of the two jurisdictions.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that their Motion for Application for Swiss Law is in all things granted. That the court deny C. H. Robinson's Rule 12(b)(6) Motion for Dismissal or in the alternatively, that either Plaintiffs' Motion for Extension of Time to File Affidavits and for a delay on the ruling for Application for Swiss

law be granted and that Plaintiffs be allowed to obtain the affidavits necessary to support ant

portion of this motion which the court feels needs support; and that the Plaintiff be able to

obtain the Affidavits necessary to support its Motion for Application of Swiss Law.

Respectfully submitted,

The Law Office of Justin L. Williams, P.C.
600 Leopard Street, Suite 1810
Corpus Christi, Texas 78473
Telephone:    (361) 888-7702
Facsimile:    (361) 888-7717

By:   _____
      Justin L. Williams
      State Bar Number 00795384

ATTORNEY FOR PLAINTIFFS

Page 17 of 18

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was forwarded on this the 10th day of December, 2003, to all counsel of record, as listed below and in the manner designated:

**FACSIMILE AND HAND DELIVERED:**
Mr. Steven J. Watkins
Ms. Karan C. Ciotti
McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
3200 One Houston Center
1221 McKinney Street
Houston, Texas 77010

Justin L. Williams

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697



Geoffrey S. Connor
Secretary of State

## Office of the Secretary of State

The undersigned, as Secretary of State of Texas, does hereby certify that the attached is a true and correct copy of each document on file in this office as described below:

C. H. ROBINSON COMPANY
Filing Number: 3013506

Public Information Report (PIR)                      December 31, 2002

In testimony whereof, I have hereunto signed my name officially and caused to be impressed hereon the Seal of State at my office in Austin, Texas on December 04, 2003.





Geoffrey S. Connor
Secretary of State

3333

b.

02306151337

05-102
(Rev. 3-02/20)

☐ 1 Case  ☒ ■ 13196  Franchise  ☐ ■ 16196  Bank

**TEXAS FRANCHISE TAX**
**PUBLIC INFORMATION REPORT**
MUST be filed with your Corporation Franchise Tax Report

Corporation name and address

C.H. Robinson Company
8100 Mitchell Road, Suite 200
Eden Prairie                          MN    55344

| c. Taxpayer identification number | d. Report year |
|---|---|
| ■ 14106800486 | ■ 02 |

Do not write in the space above

e. PIR / IND  ■          1, 2, 3 4

Secretary of State file number or,
if none, Comptroller number

Item k on Franchise  g ■          ■
Tax Report
form, Page 1          20030135-06          5

The following information MUST be provided for the Secretary of State (S.O.S.) by each corporation that files a Texas Corporation Franchise
Tax Report. The information will be available for public inspection.

"SECTION A" MUST BE COMPLETE AND ACCURATE.
If preprinted information is not correct, please type or print the correct information.
☐ Check here if there are currently no changes to the information preprinted in Sections A, B, and C of this report.

Corporation's principal office
8100 MITCHELL ROAD  EDEN PRAIRIE, MN 55344

Principal place of business  14100 Southwest Freeway, Suite 320  Sugarland, TX  77478

**SECTION A.** Name, title and mailing address of each officer and director. Use additional sheets, if necessary.

| NAME | TITLE | DIRECTOR | Social Security No. (Optional) |
|---|---|---|---|
| D.R. Verdoorn | Chairman | ☐ YES | 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 |
| MAILING ADDRESS 29210 Woodside Rd., Excelsior, MN  55331 | | | Expiration date (mm-dd-yy) |
| NAME John Niehoff | TITLE President, COO | DIRECTOR ☐ YES | Social Security No. (Optional) 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 |
| MAILING ADDRESS 971 Lake Susan Hills Drive, Chanhassen, MN  55317 | | | Expiration date (mm-dd-yy) |
| NAME Greg Goren | TITLE Vice President | DIRECTOR ☐ YES | Social Security No. (Optional) 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 |
| MAILING ADDRESS 887N Reneca Pointe, Eden Prairie, MN  55347 | | | Expiration date (mm-dd-yy) |
| NAME Owen Gleason | TITLE Secretary | DIRECTOR ☐ YES | Social Security No. (Optional) 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 |
| MAILING ADDRESS 6077 Chasewood Drive, Eden Prairie, MN  55344 | | | Expiration date (mm-dd-yy) |
| NAME Troy Renner | TITLE Treasurer | DIRECTOR ☐ YES | Social Security No. (Optional) 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 |
| MAILING ADDRESS 525 Greenview Drive, Chanhassen, MN  55317 | | | Expiration date (mm-dd-yy) |

**SECTION B.** List each corporation or limited liability company, if any, in which this reporting corporation or limited liability company owns an interest of ten
percent (10%) or more. Enter the information requested for each corporation. Use additional sheets, if necessary.

| Name of owned (subsidiary) corporation | State of incorporation | Texas S.O.S. file number | Percentage Interest |
|---|---|---|---|
| See Stmt 1 | | | |
| Name of owned (subsidiary) corporation | State of incorporation | Texas S.O.S. file number | Percentage Interest |
| | | | |

**SECTION C.** List each corporation or limited liability company, if any, that owns an interest of ten percent (10%) or more in this reporting corporation or limited
liability company. Enter the information requested for each corporation or limited liability company. Use additional sheets, if necessary.

| Name of owning (parent) corporation | State of incorporation | Texas S.O.S. file number | Percentage Interest |
|---|---|---|---|
| C.H. Robinson Worldwide, Inc. | DE | | 100.00% |

Registered agent and registered office currently on file (Changes must be filed separately with the Secretary of State.)
Agent:  Scott Douthitt
Office:  14100 Southwest Freeway Suite 320 Sugarland, TX 77478          ☐ Check here if you need forms
                                                                        to change this information

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief and that a copy of this
report has been mailed to each person named in this report who is an officer or director and who is not currently employed by this corporation
or a related corporation.

| sign here ▶ Officer, director, or other authorized person  *Troy C. Renner* | Title Treasurer | Date 10-23-02 | Daytime phone (Area code and number) (952) 937-8500 |

F 02/07/02                                                                                                      AA