34

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

DEC 2 3 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ABB KRAFTWERKE AKTIENGESELLSCHAFT, and ABB ALSTOM POWER (SWITZERLAND) LTD., formerly known as ABB POWER GENERATION, LTD. | § § § § § § | |
| **Plaintiffs** | § § | CIVIL ACTION NO. B-03-CV-192 |
| vs. | § § | |
| C.H. ROBINSON COMPANY | § § | |
| **Defendant** | § | |

## DEFENDANT C.H. ROBINSON COMPANY'S AMENDED RULE 12(b)(6) MOTION TO DISMISS PLAINTIFFS' CLAIMS IN THEIR ENTIRETY AND BRIEF IN SUPPORT THEREOF

Respectfully submitted,

McGINNIS, LOCHRIDGE & KILGORE, L.L.P.

By: _Karen C. Ciotti_____

Steven J. Watkins
ATTORNEY-IN-CHARGE
State Bar No. 20927700
So. Dist. Bar No. 146

3200 One Houston Center
1221 McKinney Street
Houston, Texas 77010
Telephone: (713) 615-8500
Facsimile: (713) 615-8585

ATTORNEYS FOR DEFENDANT
C.H. ROBINSON COMPANY

OF COUNSEL:

Karan C. Ciotti
State Bar No. 05226300
So. Dist. Bar No. 16874
MCGINNIS, LOCHRIDGE & KILGORE, L.L.P.
3200 One Houston Center
1221 McKinney Street
Houston, Texas 77010
Telephone:  (713) 615-8500
Facsimile:  (713) 615-8585

ATTORNEYS FOR DEFENDANT
C.H. ROBINSON COMPANY

## TABLE OF CONTENTS

I.  Background ..................................................................................................... 1

II.  Nature and Stage of the Proceedings ................................................................ 2

III.  Issues for the Court and Standard of Review ................................................... 5

    A.  Issues for the Court.................................................................................... 5

    B.  Standard of review on appeal .................................................................... 5

    C.  Standard for dismissal under Fed. R. Civ. P. 12(b)(6) .............................. 5

IV.  Summary of Argument....................................................................................... 6

V.  Argument and Authorities ................................................................................. 7

    A.  Limitations bars Plaintiffs' breach of contract claim................................. 7

    B.  Plaintiffs have failed to allege a breach of contract. ............................... 10

    C.  The law does not support Plaintiffs' indemnity claim............................. 11

VI.  Conclusion ...................................................................................................... 16

VII.  Request for Relief............................................................................................ 17

# TABLE OF AUTHORITIES

## Cases

*Astra Oil Co., Inc. v. Diamond Shamrock Rfg. Co.,*
    89 S.W.3d 702 (Tex. App. – Houston [1st] 2002, pet. denied) ....................................... 13

*B&B Auto Supply, Sand Pit & Trucking Co., v. Central Freight Lines, Inc.,*
    603 S.W.2d 814 (Tex. 1980).......................................................................................... 12

*Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816 (Tex. 1984) ......................................... 12, 13

*Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496 (5th Cir. 2000)......................................... 1

*Compton v. Texaco, Inc.,* 42 S.W.3d 354
    (Tex. App. – Houston [14th Dist.] 2001, pet. denied) ................................................ 13, 14

*Davis  v. Bayless,* 70 F.3d 367 (5th Cir. 1995), *appeal after remand,*
    149 F.3d 1179 (5th Cir. 1998)....................................................................................... 15

*Matter of Fender,* 12 F.3d 480 (5th Cir. 1994), *cert denied,*
    *Transamerican Natural Gas Corp. v. Zapata Partnership, Ltd.,*
    511 U.S. 1143, 114 S.Ct. 2165, 128 L.Ed.2d 888 (1994)..................................................... 15

*Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278 (5th Cir. 1993)................................. 6, 11

*Geraghty and Miller, Inc. v. Conoco, Inc.,* 234 F.3d 917 (5th Cir. 2000),
    *cert. denied, Arcadis Geraghty & Miller, Inc. v. Conoco, Inc.,*
    533 U.S. 950 (2001) ........................................................................................................ 7

*Hardy v. Gulf Oil Corp.,* 949 F.2d 826 (5th Cir. 1992) ......................................................... 11, 13

*Harrison v. Bass Enters. Prod. Co.,* 888 S.W.2d 532
    (Tex. App. – Corpus Christi 1994, no writ)....................................................................... 7

*Houston Endowment, Inc. v. Atlantic Richfield Co.,*
    972 S.W.2d 156 (Tex. App. – Houston [14th Dist.] 1998, no pet.)................................... 7

*Houston Lighting & Power Co. v. Atchison, Topeka & Santa Fe Ry. Co.,*
    890 S.W.2d 455 (Tex. 1994)........................................................................................... 12

*Jones v. Greninger,* 188 F.3d 322 (5th Cir. 1999) ......................................................................... 16

*Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.,*
    677 F.2d 1045 (5th Cir. 1982), *cert. denied,* 459 U.S. 1105 (1983)................................... 5

*L.C.L. Theaters, Inc. v. Columbia Pictures Indus., Inc.*, 566 F.2d 949 (5th Cir. 1978)
 *appeal after remand* 619 F.2d 455 (5th Cir. 1978)...................................................... 10

*Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015 (5th Cir. 1996).................................... 15

*Matthiessen v. Schaefer*, 900 S.W.2d 792
 (Tex. App. – San Antonio 1995, writ denied)............................................... 7, 10

*Mowbray v. Cameron Co., Texas*, 274 F.3d 269
 (5th Cir. 2001), *cert. denied*, 535 U.S. 1055 (2002) ................................................ 5

*St. Anthony's Hospital v. Whitfield*, 946 S.W.2d 174
 (Tex. App. – Amarillo 1997, writ denied) ................................................ 13, 14

*Scanlan v. Texas A&M Univ.*, 343 F.3d 533 (5th Cir. 2003)............................................ 15

*Smith v. Fairbanks, Morse & Co.*, 101 Tex. 24, 102 S.W. 908  (1907) ............................ 7

*Stine v. Stewart*, 80 S.W.3d 586 (Tex. 2002) .................................................................. 7, 10

*Tel-phonic Services v. TBS Int'l*, 975 F.2d 1134 (5th Cir. 1992)...................................... 7, 10

*Temple Eastex, Inc. v. Old Orchard Creek Partners, Ltd.*,
 848 S.W.2d 724 (Tex. App. – Dallas 1992, writ denied) ................................................ 12

*Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382 (5th Cir. 2001).................................. 11

## Statutes

TEX. CIV. PRAC. & REM. CODE § 82.002 (Vernon 1997)............................................ 13

TEX. CIV. PRAC. & REM. CODE § 16.051 (Vernon 1997)............................................ 7

TEX. CIV. PRAC & REM. CODE § 33.015(d) .................................................................. 11

## Rules

FED. R. EVID. 201(b)(2)........................................................................................... 15

FED. R. CIV. P. 15(a).................................................................................................. 5

### DEFENDANT C.H. ROBINSON COMPANY'S RULE 12(b)(6) MOTION TO DISMISS PLAINTIFFS' CLAIMS IN THEIR ENTIRETY, AND BRIEF IN SUPPORT THEREOF

## I.    Background

1.    On February 16, 1999, Plaintiff ABB Alstom Power (Switzerland) Ltd., then know as ABB Power Generation Ltd. (hereinafter "ABB Alstom"), contracted with C.H. Robinson Company ("C.H. Robinson") for the transport of heavy equipment from Brownsville, Texas to Monterrey, Mexico. The agreement did not include an indemnity provision. *See* **Ex. A,** Contract between ABB Power Generation Ltd and C.H. Robinson, dated February 16, 1999 ("the Contract").[1] Plaintiff ABB Kraftwerke Aktiengesellschaft ("ABB Kraftwerke") was not a party to the contract. *Id.*

2.    On March 23, 1999, in the course of transferring a generator manufactured by Plaintiff ABB Kraftwerke from a barge to a rail car at the Port of Brownsville, an accident occurred that resulted in the death of Oscar Zamora, Sr. Mr. Zamora's family brought suit against ABB Kraftwerke, ABB Alstom, Defendant C.H. Robinson, Brownsville Barge and Crane, and others.[2] ABB Kraftwerke and ABB Alstom eventually settled the Zamora family's claims against them, as did C.H. Robinson. Brownsville Barge and Crane filed a cross-action for indemnity against ABB Kraftwerke

---

[1]    Although it was not attached to Plaintiffs' Amended Complaint, the agreement between ABB Alstom and C.H. Robinson is repeatedly referred to in Plaintiffs' complaint. See *Amended Complaint* at ¶¶ 4, 6, 7, 8, 14, 15, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 33, 34, 35, 36, 37. Documents not physically attached to a complaint may nevertheless be considered by the court on a 12(b)(6) motion if the complaint refers to the documents and they are "central" to the complaint. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-499 (5th Cir. 2000).

[2]    The claims were brought in a suit styled Cause No. 99-04-1644-E, *Graciela Zamora, et al. v. ABB Kraftwerke Aktiengesellschaft, et al.,* In the 357th Judicial District Court of Cameron County, Texas (hereinafter "the Zamora Lawsuit").

and ABB Alstom in the same suit and obtained a judgment against ABB Kraftwerke and ABB Alstom that was recently affirmed by the Corpus Christi Court of Appeals.[3]

## II.    Nature and Stage of the Proceedings

3.    Four years and four months after the accident, ABB Kraftwerke and ABB Alstom filed this suit against C.H. Robinson.    In their Original Complaint, Plaintiffs alleged that the parties entered into the Contract on or about February 16, 1999, and further alleged facts concerning only the transfer of the generator and the accident that occurred during the transfer of the generator from a barge to a rail car on March 23, 1999. *Complaint,* ¶¶ 4-18.  Plaintiffs then alleged that C.H. Robinson breached its Contract with Plaintiffs by

> (a) failing to perform the work it contracted for in a good and workmanlike matter;
>
> (b) promising to perform services that it did not perform;
>
> (c) failing to properly ensure that its sub-contractors were competent to perform the work for which they contracted;
>
> (d) failing to ensure that the subcontractors were familiar with the equipment and the technical specifications of the generator they were to lift from the lash barge to the railcar;
>
> (e) failing to exercise proper managerial skills and control over its sub-contractors;
>
> (f) providing inexperienced personnel to supervisor [sic] the job in question;
>
> (g) failing to ensure that all contractual requirements were in place prior to the lift; and

---

[3]    *ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.,* 115 S.W.3d 287 (Tex. App. -- Corpus Christi 2003, pet. filed Nov. 12, 2003), attached hereto as **Ex. B**.

> (h) failing to provide proper managerial expertise to ensure that proper plans and preparation were in place to smoothly transport the generator from the lash barge to Monterrey.

*Original Complaint* at ¶¶ 19-26.

4.    Defendant C.H. Robinson filed a Rule 12(b)(6) Motion to Dismiss on August 25, 2003, the bases of which were (a) Plaintiffs' claim for breach of contract was barred by the four-year statute of limitations, and (b) Plaintiffs' claim for breach of contract, to the extent that it was actually a claim for indemnity, was not supported by Texas law.

5.    Plaintiffs filed a Motion for Leave to File First Amended Original Complaint on or about September 19, 2003. That motion was granted on December 9, 2003.   The Amended Complaint makes the following new allegations of breach of contract, in addition to those listed *supra,* ¶ 3.

> 22.    C.H. Robinson was contractually bound to manage the project on behalf of ABB. C.H. Robinson breached this portion of the contract and is both vicariously liable for a portion of Plaintiffs' damages and directly liable to Plaintiffs for a portion of Plaintiff's [sic] damages as a result of this breach.
>
> 23.    C.H. Robinson was ABB's agent for all purposes under the contract.  Defendant failed to live up to the terms of this agency relationship and is liable to Plaintiffs as a result of this breach.

*Amended Complaint* at ¶¶ 22, 23.

6.    In the "Factual Background" section of their Amended Complaint, Plaintiffs have added the following allegations:

> 19.    Following the actions of C. H. Robinson and its subcontractors on the aforementioned shipment, Plaintiff was required to re-evaluate the management of the project by its agent, Defendant.
>
> 20.    Plaintiff ABB Alstom Power performed services which were the contractual responsibility of Defendant following the Zamora accident.

-3-

>    21.    Plaintiff ABB Altstom [sic] Power was required to perform
>    tasks of THE OPERATOR under the contract.

*Amended Complaint* at ¶¶ 19-21.    Plaintiffs have also added allegations that C.H.

Robinson was acting as their agent on the project, *Amended Complaint* at ¶¶ 8 and 19,

and have alleged that C.H. Robinson was responsible for transporting a gas turbine and

transformer, in addition to the generator. *Id.* at ¶¶ 4-6.

>    7.    Although it is not readily apparent from Plaintiffs' Amended Complaint,

Plaintiffs contend that this pleading alleges a cause of action for indemnity.[4]    Plaintiffs

also appear to be asserting a claim for contribution ("C.H. Robinson . . . is vicariously

liable for a portion of Plaintiffs' damages and directly liable to Plaintiffs for a portion of

Plaintiff's [sic] damages . . . ." *Amended Complaint* at ¶ 21).    The Amended Complaint

also alleges that "Defendant's mismanagement was such that it constituted a continuing

tort." *Amended Complaint* at ¶ 33.

>    8.    Plaintiffs seek the following damages in their Amended Complaint:
>
>    (a) recovery of all sums paid to C.H. Robinson under the terms of the
>    contract;
>
>    (b) recovery of the amount of the judgment rendered against them and all
>    defense costs incurred in the indemnity cross-action brought by
>    Brownsville Barge & Crane in the Zamora Lawsuit; and

---

[4]    "Plaintiffs have amended their complaint to clarify some of their causes of action based upon vicarious liability which is the remaining vestige of common law indemnity." *Response to Defendant C.H. Robinson Company's Reply to Plaintiffs' Response to C.H. Robinson Company's Rule 12(b)(6) Motion to Dismiss* at ¶ 3.  Plaintiffs counsel made clear in his arguments to the Court on December 9, 2003 that Plaintiffs intended to seek indemnity from C.H. Robinson.

(c) recovery of the amount of the settlement they paid the Zamora family, and the defense costs they incurred in the Zamora Lawsuit.

*Amended Complaint* at ¶¶ 34-36.

9.    In accord with Federal Rule of Civil Procedure 15(a), Defendant C.H. Robinson files this Amended Rule 12(b)(6) Motion to Dismiss in response to Plaintiffs' Amended Complaint.

## III.    Issues for the Court and Standard of Review

### A.    Issues for the Court

(1) Whether Plaintiffs' claim for breach of contract is barred by limitations;

(2) Whether Plaintiffs' claim for indemnity is supported by Texas law; and, in the alternative,

(3) Whether Plaintiffs' Amended Complaint satisfies the fair notice requirements of the Federal Rules of Civil Procedure.

### B.    Standard of review on appeal

10.    The appellate standard of review of a Rule 12(b)(6) dismissal is *de novo*. Questions of fact are viewed in the light most favorable to the plaintiff; questions of law are reviewed *de novo*.    *Mowbray v. Cameron Co., Texas*, 274 F.3d 269, 276 (5th Cir. 2001), *cert. denied*, 535 U.S. 1055 (2002).

### C.    Standard for dismissal under Fed. R. Civ. P. 12(b)(6)

11.    Rule 12(b)(6) provides for the dismissal of a complaint when a plaintiff's pleading fails to state a claim for which relief can be granted.    Complaints are considered in the light most favorable to the plaintiff and with the assumption that the allegations in plaintiff's pleadings are true.    *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale*

*Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105 (1983). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

## IV.    Summary of Argument

12.    Plaintiffs' claim for breach of contract is barred by Texas' four-year statute of limitations. Plaintiffs complain of events that occurred on or about March 23, 1999. Plaintiffs filed their suit for breach of contract on July 16, 2003. Despite C.H. Robinson's prior motion to dismiss, based in part on limitations, Plaintiffs' Amended Complaint still fails to allege any acts or omissions by C.H. Robinson that took place after March 23, 1999 – the date of the accident resulting in Mr. Zamora's death – and that could conceivably constitute a breach of contract.  More relevantly, Plaintiffs fail to allege any acts or omissions by C.H. Robinson occurring after July 16, 1999, i.e., within the limitations period.

13.    Moreover, an examination of Plaintiffs' allegations and of the Contract makes clear that Plaintiffs have not even alleged that C.H. Robinson breached the Contract.   The Contract requires C.H. Robinson, in return for consideration paid, to transport heavy components from Brownsville to Monterrey before the end of July 1999. **Ex. A** at p. 1. Plaintiffs have made vague and conclusory allegations concerning C.H. Robinson's conduct, but have not alleged that C.H. Robinson failed to meet any provision of the Contract.

14.    Plaintiffs' purported claim for indemnity is not supported by Texas law. There was no contract of indemnity between Plaintiffs and C.H. Robinson. Plaintiffs have no claim for common-law indemnity because Plaintiffs have never been found

-6-

vicariously liable for C.H. Robinson's negligence, nor have Plaintiffs settled any claims for vicarious liability based on any purported negligence of C.H. Robinson.

## V.    Argument and Authorities

### A.    Limitations bars Plaintiffs' breach of contract claim

15.    The limitations period on a cause of action for breach of contract is four years. TEX. CIV. PRAC. & REM. CODE § 16.051 (Vernon 1997); *Geraghty and Miller, Inc. v. Conoco, Inc.,* 234 F.3d 917, 931 (5th Cir. 2000), *cert. denied, Arcadis Geraghty & Miller, Inc. v. Conoco, Inc.,* 533 U.S. 950 (2001). The limitations period runs from the date of the alleged breach. *Tel-phonic Services v. TBS International,* 975 F.2d 1134, 1142-43 (5th Cir. 1992); *Stine v. Stewart,* 80 S.W.3d 586, 592 (Tex. 2002), *citing Smith v. Fairbanks, Morse & Co.,* 101 Tex. 24, 102 S.W.908, 909 (1907); *Matthiessen v. Schaefer,* 900 S.W.2d 792, 796-97 (Tex. App. – San Antonio 1995, writ denied); *Houston Endowment, Inc. v. Atlantic Richfield Co.,* 972 S.W.2d 156, 159 (Tex. App. – Houston [14th Dist.] 1998, no pet.); *Harrison v. Bass Enters. Prod. Co.,* 888 S.W.2d 532, 537 (Tex. App. – Corpus Christi 1994, no writ).

16.    Plaintiffs filed this action on July 16, 2003. The only affirmatively stated cause of action in the Amended Complaint is for breach of contract. If Plaintiffs' claim for breach of contract is based on acts or omissions that occurred before July 16, 1999, their claim is barred by the four-year statute of limitations.

17.    All purported acts or omissions of C.H. Robinson alleged by Plaintiffs in their Amended Complaint occurred well before July 16, 1999. Plaintiffs allege that they and C.H. Robinson entered into a contract in February 1999 for the transport of heavy electrical components, and that the scope of work outlined in the contract was the transportation of a gas turbine, generator and transformer from lash barges at the Port of

Brownsville to railcar for transport to Monterrey. *Amended Complaint* at ¶¶ 4-6. The attempted transfer of the generator from the lash barge to a rail car, and the resulting death of Oscar Zamora, Sr., occurred "on or about March 23, 1999." *Amended Complaint* at ¶¶ 14-17.[5]  Plaintiffs allege that C.H. Robinson "made arrangements with Schaefer Stevedoring . . . to provide Stevedoring services to move the generator," *Id.* at § 9; that "C.H. Robinson obtained the necessary rail permits to allow the transportation of the generator from Brownsville to Monterrey," *Id.* at § 12; that a C.H. Robinson representative failed to sign an indemnity agreement with Brownsville Barge & Crane on or about March 23, 1999, prior to the lift, *Id.* at § 12 [6]; and that, on the morning of the lift, i.e., March 23, 1999, "appropriate lifting procedures were not in place," because of the "improper management of the project by C.H. Robinson, *Id.* at § 17.   All allegations of any acts or omissions by C.H. Robinson concern events that took place on or before March 23, 1999.

18.    Indeed, all allegations of fact concern events that took place on or before March 23, 1999, with one possible exception. In paragraphs 19–21 of their Amended Complaint, Plaintiffs vaguely allege that they were required to reevaluate the

---

[5]    Although Plaintiffs do not explicitly state that the accident occurred on March 23, 1999 (See Complaint at ¶ 17), they do complain that, because of the time-sensitive nature of the contract, C.H. Robinson had them "over an economic barrel" when, on March 23, 1999, C.H. Robinson refused to sign an indemnity agreement between Brownsville Barge and Crane and Schaefer Stevedoring. *Complaint* at ¶¶ 14, 15, 16. Plaintiffs then allege that they were forced to sign the indemnity agreement "on the docks just prior to the lift." *Complaint* at ¶ 25. Logic dictates that the accident occurred on March 23, 1999.

C.H. Robinson submits that it is undisputed that the accident resulting in Mr. Zamora's death occurred on March 23, 1999.

[6]    The Contract between C.H. Robinson and ABB Alstom did not obligate C.H. Robinson to sign any indemnity agreement, much less the indemnity agreement presented by Brownsville Barge and Crane. *See* Ex. A.

management of the project by C.H. Robinson, and then performed services that were the "contractual responsibility" of C.H. Robinson. Assuming for purposes of this Rule 12(b)(6) motion that these allegations are true (which C.H. Robinson denies), and that they refer to events that took place after March 23, 1999, Plaintiffs' claim for breach of contract should still be dismissed pursuant to Rule 12(b)(6) because Plaintiffs have failed to allege anything that could conceivably constitute a breach of contract by C.H. Robinson. The decision by Plaintiff to take over any unspecified "contractual responsibilities" of C.H. Robinson does not constitute a breach of the Contract by C.H. Robinson. Plaintiffs may be alleging that they decided not to use the services of C.H. Robinson after the events of March 23, 1999, but they are not alleging that C.H. Robinson breached any term of the Contract.

19.    Again, as in their Original Complaint, Plaintiffs' allegations of any wrongdoing by C.H. Robinson all concern (a) the circumstances of the transfer of the generator, which occurred on March 23, 1999, or (b) preparations for the transfer for the transfer of the generator, which necessarily occurred on or prior to March 23, 1999. In other words, all alleged acts purportedly constituting a breach of contract occurred at least four years and four months before Plaintiffs filed this suit. Plaintiffs' cause of action for breach of contract is therefore barred by limitations.

20.    Plaintiffs have contended in response to C.H. Robinson's previous motion to dismiss that their suit is not barred by limitations because limitations does not begin to run until a claimant has suffered some "legal harm," and that Plaintiffs did not suffer any legal harm until May 2000.[7] *Amended Complaint* ¶ 32. There is, quite simply, no law to

---

[7]    Plaintiffs do not state what occurred in May 2000 that constituted "legal harm," nor do they state why they failed to file suit in May 2000, or in the 37 months following May 2000.

support this contention.  Absent an allegation of fraudulent concealment, limitations on a

breach of contract claim begins to run on the date of breach.  *L.C.L. Theatres, Inc. v.*

*Columbia Pictures Indus., Inc.,* 566 F.2d. 494 (5th Cir. 1978), *appeal after remand,* 619

F.2d 455 (5th Cir. 1980); *Matthiessen*, 900 S.W.2d at 796-97.  Plaintiffs have not alleged

or stated any facts that would support an allegation that C.H. Robinson fraudulently

concealed any purported breach from Plaintiffs.  On the contrary, Plaintiffs have pleaded

that a "representative of ABB" was on site at the time of the March 23, 1999 accident that

is the basis of Plaintiffs' claims.  *Amended Complaint,* ¶¶ 13-16.  Because there are no

allegations of fraudulent concealment, Plaintiffs' purported cause of action for breach of

contract accrued on the date of the alleged breach, and limitations began to run on that

date.  *Tel-phonic Services,* 975 F.2d at 1142-43; *Stine v. Stewart,* 80 S.W.3d at 592 ("A

party asserting a breach of contract claim must sue no later than four years after the day

the claim accrues. . . . It is well-settled law that a breach of contract claim accrues when

the contract is breached.")

### B.    Plaintiffs have failed to allege a breach of contract.

21.    Plaintiffs' breach of contract claim should be dismissed for the additional

reason that Plaintiffs, quite simply, fail to allege any facts that constitute a breach of any

provision of the Contract. Plaintiffs allege, *inter alia,* that C.H. Robinson failed to

perform the work it contracted for in a good and workmanlike manner, failed to do work

it promised to do, failed to "exercise proper managerial skills," failed to ensure

"contractual requirements" were in place prior to the lift, and failed to provide competent,

experienced personnel.  *Amended Complaint* at ¶¶ 24-31.  Plaintiffs do not cite to a

provision of the Contract that may have been breached by these alleged failures.  Such

broad, conclusory allegations, unsupported by any factual allegations, "do not suffice to

prevent a motion to dismiss." *Fernandez-Montes,* 987 F.2d at 284 (5th Cir. 1993); *see also Vulcan Materials Co. v. City of Tehuacana,* 238 F.3d 382, 387 (5th Cir. 2001).

### C.    The law does not support Plaintiffs' indemnity claim.

22.    To the extent that Plaintiffs have alleged a claim for indemnity, it should be dismissed because there is no basis in Texas law to support a claim for indemnity.

23.    Plaintiffs seek recovery of the following damages:

a.    "all money paid to C.H. Robinson under the contract as a result of their breach of contract." *Amended Complaint* at ¶ 34.

b.    "all monies paid on behalf of defending Brownsville Barge & Crane's Cross-claim, that may be paid in any judgment obtained by Brownsville Barge & Crane, and for all costs and expenses involved in the same as a result of C.H. Robinson's breach of contract," *Id.* at ¶ 35; and

c.    "all amounts paid in settlement and defense of the Zamora litigation as a result of C.H. Robinson's breach of contract." *Id.* at ¶ 36.

The first category of damages is for the purported breach of contract, which is either barred by limitations or unsupported by any factual allegations. The second and third categories of damages seek indemnity. Plaintiffs seek to shift their own liability for all costs, fees and settlement amounts incurred in the Zamora lawsuit, including the judgment rendered against them on the cross-claim brought by Brownsville Barge and Crane, to C.H. Robinson. This is a request for indemnification. *Hardy v. Gulf Oil Corp.,* 949 F.2d 826, 829-830 (5th Cir. 1992) ("When a trial court applies indemnity principles, it permits one tortfeasor to shift all of the loss onto another tortfeasor, provided that the latter should appropriately answer for the entirety of the loss.").[8]

---

[8]    Plaintiffs state in paragraph 22 of their Amended Complaint that C.H. Robinson is vicariously liable for a portion of their damages and directly liable for a portion of their damages. To the extent that Plaintiffs are seeking contribution, i.e., a partial recovery of the damages they paid or incurred in the

24.    Texas law recognizes two categories of indemnity: contractual and common law. *Id.* at 830; *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 819 (Tex. 1984) (recognizing survival of "a vestige of common-law indemnity," for purely vicarious liability); *B&B Auto Supply, Sand Pit & Trucking Co., v. Central Freight Lines, Inc.*, 603 S.W.2d 814, 817 (Tex. 1980) (holding that comparative fault system eliminated common law right of indemnity between joint tortfeasors, but did not bar contractual indemnity or indemnity for purely vicarious liability).

*Contractual indemnity*

25.    Plaintiffs' claim for indemnity is not supported by the Contract between Plaintiff ABB Alstom and C.H. Robinson because the Contract does not contain any provision that addresses indemnity, much less a provision that meets the specificity requirements state law imposes on indemnity provisions. *See* **Ex. A**; *Houston Lighting & Power Co. v. Atchison, Topeka & Santa Fe Ry. Co.*, 890 S.W.2d 455, 458-459 (Tex. 1994) (discussing the requirement that indemnity agreements clearly and specifically express the intent to encompass negligence, product liability and strict liability claims).

26.    Plaintiff ABB Kraftwerke's claim for indemnity is not supported by the Contract for the additional reason that ABB Kraftwerke is not a party to the contract. *Temple Eastex, Inc. v. Old Orchard Creek Partners, Ltd.*, 848 S.W.2d 724, 730 (Tex. App. – Dallas 1992, writ denied) ("Generally, only parties to a contract have the right to complain of its breach.")

---

Zamora Lawsuit, that claim is barred by statute.  Tex. Civ. Prac. & Rem. Code § 33.015(d) ("No defendant has a right of contribution against any settling person.")

*Common-law indemnity*

27.    Texas law allows common-law indemnity only in negligence actions, to protect defendants whose liability is purely vicarious in nature. *Hardy,* 949 F.2d at 831.[9] These circumstances are not present in this case. Plaintiffs have not alleged, nor can they truthfully allege, that the Zamora family or Brownsville Barge and Crane made any claims for vicarious liability against them. Consequently, a common-law claim for indemnity is unavailable to them. *Compton v. Texaco, Inc.,* 42 S.W.3d 354, 361-362 (Tex. App. – Houston [14th Dist.] 2001, pet. denied) (holding common-law indemnity unavailable to party that settled claims of direct liability, as opposed to being held vicariously liable for the conduct of another); *cf. St. Anthony's Hospital v. Whitfield,* 946 S.W.2d 174, 178 (Tex. App. – Amarillo 1997, writ denied) (holding that hospital's common-law claim for indemnity was not extinguished where sole theory of liability against hospital in underlying lawsuit was respondeat superior liability for negligence of employee); *see also Astra Oil Co., Inc. v. Diamond Shamrock Rfg. Co., L.P.,* 89 S.W.3d 702, 706 (Tex. App. – Houston [1st] 2002, pet. denied) (finding no authority to support vicarious liability based solely on a contractual relationship, and hence no basis for common law indemnity);

28.    Plaintiffs have contended outside their Amended Complaint that, because C.H. Robinson was their agent, they have stated "causes of action based upon vicarious liability, which is the remaining vestige of common-law indemnity." *Plaintiffs' (Second)*

---

[9]    The common-law right to indemnity available to innocent retailers in products liability actions, discussed in *Hardy,* 949 F.2d at 831, and *Bonniwell,* 663 S.W.2d at 819, was supplanted by statute on September 1, 1993. *See* TEX. CIV. PRAC. & REM. CODE § 82.002 (Vernon 1997).

*Response,* filed October 3, 2003, at ¶ 3. This is not a fully accurate statement of the law. Agency is not dispositive of Plaintiffs' purported right to common-law indemnity. The dispositive issue is whether, in the Zamora Lawsuit, Plaintiffs were either found vicariously liable for the negligence of C.H. Robinson, or settled claims for vicarious liability for the purported negligence of C.H. Robinson. *Compton,* 42 S.W.3d at 361-362; *St. Anthony's Hospital,* 946 S.W.2d at 178. Nowhere in their Amended Complaint do Plaintiffs allege that their liability in the Zamora Lawsuit was solely vicarious, nor can Plaintiffs truthfully make such an allegation.

29.    C.H. Robinson attaches hereto copies of the Thirteenth Amended Original Petition and Fourteenth Amended Original Petition in the Zamora Lawsuit. **Exs. C and D**.[10] These are the last petitions filed by the Zamora family against ABB Kraftwerke and ABB Alstom. The case was settled, save for a dispute concerning payment of costs in accord with the settlement agreement, after the Zamoras filed the Thirteenth Amended Original Petition and before they filed their Fourteenth Amended Original Petition, as is apparent from the Fourteenth Amended Original Petition. The petitions establish that the Zamora family made no allegation of vicarious liability against Plaintiffs, **Ex. C** at ¶ IV, and ABB Kraftwerke and ABB Alstom settled only claims for direct liability, for products liability and negligence. Because ABB Kraftwerke and ABB Alstom settled claims of direct liability, as opposed to claims of vicarious liability for any alleged conduct of C.H. Robinson, they have no claim for common-law indemnity against C.H. Robinson. *Compton,* 42 S.W.3d at 361-362; *cf. St. Anthony's Hospital,* 946 S.W.2d at 178.

---

[10]    The original certified copies of these pleadings are attached to C.H. Robinson's Surreply to Plaintiffs' Second Response to C.H. Robinson's Rule 12(b)(6) Motion to Dismiss, filed October 21, 2003.

30.     The Court may consider the attached petitions without converting C.H. Robinson's Motion to Dismiss to a motion for summary judgment.  The Court's review is normally restricted to the complaint, *Scanlan v. Texas A&M University,* 343 F.3d 533, 536 (5th Cir. 2003), but may be extended to include matters of public record and matters of which the Court may take judicial notice. *Davis v. Bayless,* 70 F.3d 367, 372 n.3 (5th Cir. 1995), *appeal after remand,* 149 F.3d 1179 (5th Cir. 1998); *Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1017-18 (5th Cir. 1996).

31.     The petitions are public records.  *Matter of Fender,* 12 F.3d 480, 486 (5th Cir. 1994), *cert. denied, Transamerican Natural Gas Corp. v. Zapata Partnership, Ltd.,* 511 U.S. 1143, 114 S.Ct. 2165, 128 L.Ed.2d 888 (1994).

32.     The Court may also take judicial notice of the petitions.  Federal Rule of Evidence 201 allows the Court to take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2).  C.H. Robinson submits that the nature of the Zamora family's claims against Plaintiffs at the time of settlement can be accurately and readily determined by a review of the petition on file at the time of settlement, and that certification of the petition by the District Clerk of Cameron County prevents any reasonable question as to whether the copy accurately represents the claims pending at the time of settlement.

33.     Nor did the claims brought by Brownsville Barge and Crane against Plaintiffs include a cause of action for vicarious liability for the negligence of C.H. Robinson.   The judgment Brownsville Barge and Crane obtained against Plaintiffs was based on the contract of indemnity between Plaintiffs and Brownsville Barge and Crane.

This is apparent from the opinion of the Corpus Christi Court of Appeals, also a public record, affirming the summary judgment entered by the trial court in favor of Brownsville Barge and Crane. **Ex. B,** *ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.,* 115 S.W.3d 287, 290 (Tex. App. – Corpus Christi 2003, pet. filed Nov. 12, 2003) ("Brownsville Barge and Crane filed a cross-claim against ABB, asserting ABB owed it contractual indemnity for the legal fees it incurred in defending against the Zamora family's claims.")

34.     The Court may conclude that Plaintiffs, having twice attempted to state cognizable claims and failing to do so, are unable to state an actionable claim, and may dismiss Plaintiffs' suit pursuant to Rule 12(b)(6). *Jones v. Greninger,* 188 F.3d 322, 327 (5th Cir. 1999) (dismissing *pro se* plaintiff's action because court could perceive of no viable claim plaintiff could include in an amended complaint based on the underlying facts).

## VI.    Conclusion

35.     Plaintiffs' claim for breach of contract should be dismissed because it is barred by the four-year statute of limitations for breach of contract actions.    Plaintiffs' claim for breach of contract should be dismissed for the additional reason that it consists of vague and conclusory allegations that do not support a breach of contract claim.

36.     Plaintiffs' claim for indemnity should be dismissed because it has no basis in common law or in the contract between ABB Alstom and C.H. Robinson.

## VII.    Request for Relief

37.    For these reasons, C.H. Robinson requests that this Court dismiss Plaintiffs' claims with prejudice, dismiss the suit in its entirety, and grant C.H. Robinson such other and further relief to which it is justly entitled.

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the above and foregoing Defendant C.H. Robinson Company's Amended Rule 12(b)(6) Motion to Dismiss Plaintiffs' Claims in their Entirety and Brief in Support Thereof by facsimile and by certified mail, return receipt requested, on this the 22nd day of December, 2003, to the following:


Justin L. Williams
The Law Office of Justin L. Williams, P.C.
600 Leopard Street, Suite 1810
Corpus Christi, Texas 78473

Karan C. Ciotti

_____
Karan C. Ciotti

| AGREEMENT: | Pr▢ ▢t MONTERREY MEXICO | off shore | 1/13 |
| --- | --- | --- | --- |

| AGREEMENT NO. | : | 159 |
| --- | --- | --- |
| DATE OF AGREEMENT SIGNATURE | : | February 16, 1999 |
| DATE OF AGREEMENT REVISIONS | : | |

# Original

## TRANSPORTATION OF HEAVY COMPONENTS

DEPOSITION EXHIBIT

6

for

## MONTERREY, MEXICO

between

## ABB POWER GENERATION LTD
## BADEN, SWITZERLAND
### (THE COMPANY)

and

## C.H. ROBINSON
## KELLER, TEXAS – U.S.A.

### (THE OPERATOR)



EXHIBIT

A

Revision 4.0, 98-02-26

| AGREEMENT: | Pr  ct MONTERREY | | |
|---|---|---|---|
| | MEXICO | off shore | 2/13 |

| AGREEMENT NO. | : | 159 | |
|---|---|---|---|
| DATE OF AGREEMENT SIGNATURE | : | February 16, 1999 | |
| DATE OF AGREEMENT REVISIONS | : | | |

## INDEX:

1.   Preamble

2.   Basis of Order

3.   Scope of Work

4.   Time Schedule

5.   Price

6.   Terms of Payment

7.   Liability

8.   Correspondence

9.   Signatures

Revision 4.0, 98-02-26

| AGREEMENT: | ject MONTERREY MEXICO | off shore | 3/13 |

| AGREEMENT NO. | : | 159 |
| DATE OF AGREEMENT SIGNATURE | : | February 16, 1999 |
| DATE OF AGREEMENT REVISIONS | : | |

## 1.    PREAMBLE

The Operator and the Company enter into this Agreement for the execution of heavy components for the MONTERREY Power Plant, N.L., Mexico, as per attached drawings HDST 301865 / HDST 201552 / HDST 301865.

## 2.    BASIS OF ORDER

The following conditions and documents form an integral part of this Agreement:

- ◆ C.H. ROBINSON COMPANY quotation dated January 30, 1999 and February 5, 1999, the latter to cover the quotation for two (2) transformers 526x269x370 cm / 49`969 grosskos, each.

## 3.    SCOPE OF WORK

Transport from Brownsville, Texas via Matemoros / Apodaca to the MONTERREY Power Plant Project in full accordance with Mexican Law and Operator's quotations as defined in Par. 2.

## 4.    TIME SCHEDULE

Between February 27, 99 up to approx end of July, 99 as per Company's specific schedule to provide in due course.

## 5.    PRICE + 6. Termins of payments

1st payment: USD 258`902.00 after contract signature
2nd payment: USD 54`222.69 after delivery of 2nd Thermal Block

## 6.    TERMS OF PAYMENT

Payable net 10 days.

| AGREEMENT: | P__ ect MONTERREY MEXICO | off shore | 4/13 |
|---|---|---|---|

| AGREEMENT NO. | : | 159 |
|---|---|---|
| DATE OF AGREEMENT SIGNATURE | : | February 16, 1999 |
| DATE OF AGREEMENT REVISIONS | : | |

## 7.    LIABILITY

The Operator will provide the following proof of liability coverage:

- AMFELS, BROWNSVILLE
   (Crane Operator)
- SCHAEFER BROWNSVILLE
   (Stevedoring / Rigger)
- BRI,  Brownsville
      Rio Grande
      International
      (Railroad)

## 8.    CORRESPONDENCE

Unless otherwise agreed all correspondence to be addressed to:

ABB Power Generation Ltd
Dep. KWGP-L
CH-5401 Baden / Switzerland

att. Mr Sandro Lepori
General Manager / Transportlogistics
Gas Turbine and Combined-Cycle Power Plants

Tel.:    +41 56/ 205 58 02 or +41 56/ 205 30 86
Fax:    +41 56/ 205 61 82

## 8.    SIGNATURES

ABB Power Generation Ltd.
CH-5401 Baden

Executed for
and on behalf of
ABB Power Generation
Baden, Switzerland

)
)
)    Date:   February 16, 99

Agreed and accepted for
and on behalf of
C.H. ROBINSON

)
)(
)
)    Date:   February 16, 1999

Revision 4.0, 98-02-26

# C.H. ROBINSON COMPANY

10x5



January 30, 1999

Mr. Sandro Lepori
General Manager Transport Logistics
Gas Turbine and Combined-Cycle Power Plants
ABB Power Generation Ltd.
Dept. KWGP-L
CH-5401 Baden / Switzerland

129 Keller Hicks Road
Keller, TX
76248-4428
817.431.3146
fax 817.431.3425

Dear Sandro,

Please refer to your memo of January 19, 1999 concerning the movement of a generator, transformer and gas turbine from Brownsville, Texas to ABB plant site southeast of Huinala, Mexico. Below please find our price to A). Move pieces from Brownsville, Texas to the jobsite; and B). Set pieces on foundations:

*valid for 3 pieces*

A). $355,860* (Three Hundred Fifty Five Thousand Eight Hundred Sixty Dollars) U. S.
* Plus Mexican E. V. A. tax of 15%

Price Includes:
All transportation and logistics management plan
3 Heavy Duty Rail Cars (12 Axle)
Unloading 325 Ton Generator from lash barge to rail car
Tie down to rail cars for all 3 pieces
Transloading (Jack and Skid) from rail cars to OTR Transporters
Tie down to OTR Transporters
All permits, grading, and re-conditioning of rail spur and overpass to site

B). $225,285* (Two Hundred Twenty Five Thousand Two Hundred Eighty Five Dollars) U. S.
* Plus Mexican E. V. A. tax of 15%

*valid fi 4 pieces*

Price Includes:
1). Supply of Gantry, Labor, and all temporary materials required to perform the rigging operations.
2). Price is based on having no interferences at job site so as to allow setting of gantry in the area required for the rigging operations.
3). Price is based on having transformers module along side of the foundation which calls for only one operation.

*Above quotation subject to attached qualification sheet*

In closing please find a plan overview. We look forward to discussing any questions you may have.

Best Regards,

Jim Hamilton
General Manager - Multimodal Heavy Transport

H. ROBINSON COMPANY



129 Keller Hicks Road
Keller, TX
76248-4438
817.431.3146
fax 817.431.3435

January 30, 1999

Sandro,

As we have discussed, our plan is to receive the turbine and transformer from the MV Jumbo Spirit in Brownsville February 2. We have secured 2 rail cars that will be spotted on track 2, Dock 11 at the port. Attached please find the port drawing, as well as a photo of the vessel Petrel Arrow which is docked at Dock 11. From the side of the vessel to the track center is 25 feet. We need to ensure the vessel gear has enough reach to set pieces on rail cars.

We have also secured a 700 ton barge crane to unload the generator from a lash barge at the same location. We are in need of a date to identify which rail car we will utilize for this movement.

We have met with the Brownsville & Rio Grande International Railroad, who will provide the service from the Port to the TFM in Matamoros. All pieces have been cleared from the Port to the siding at Apodoca, Mexico.

With our award of the project, we will immediately begin formal planning which will include detailed timeline, procedures, calculations, and drawings as required.

Please do not hesitate to call me at home on Sunday (817) 431-9401 to discuss any thoughts, questions or ideas you may have. I will be watching the Super Bowl, so have your team selected and ready to wager.

Warmest Regards,





Port of
Brownsville
Dock 11, TRACK 2
25' From SHIPS



## Transportation Bid Qualifications

Rates based upon weights and dimensions supplied by customer. Changes or omission of details from shipper's original information can affect pricing and ability to provide clearance.

Subject to further technical drawings and/or details, including projection orientations and center of gravity.

Rates are contingent upon clearance of participating carriers.

Cargo is to be loaded per AAR, Federal, State and Local Rules and Regulations.

Loading and unloading to be the responsibility of others, unless specifically defined in our quotation.

This proposal does not include tarps or covers to lading. If required, service may be provided at additional cost.

Charges relating to excess demurrage or detention is responsibility of shipper and /or consignee.

Shipping delays due to weather and acts of God are at risk and expense of shipper.

Price does not include any liability. Liability is the responsibility of shipper unless liability has been requested and specifically provided in quotation.

~~All quotations are subject to availability of equipment and personnel.~~

Unless stated otherwise, this quotation is effective for 45 days from date of issuance.

~~The coordination of equipment and clearances for this movement will require 30 days.~~

Payment terms are 35% down, net balance 10 days from job completion.

Activities related to this movement will begin upon receipt of a purchase order or written authorization to proceed from the shipper.

Qualifications _____

_____
_____

Quotation Submitted By:                     Accepted & Authorized By: ABB Power Generation Ltd.
                                            Transport Logistics
Name _____                        Name        Dept. KWGP-L
                                                        CH-5401 Baden
C. H. Robinson, Company                     Company

Date   1/30/99                              Date   2/1/99

# C. H. Robinson Company



129 Keller Hicks Road
Keller, TX
76248-4438
817.431.3146
fax 817.431.3425

February 5, 1999

Mr. Sandro Lepori
General Manager Transport Logistics
Gas Turbine and Combined-Cycle Power Plants
ABB Power Generation Ltd.
Dept. KWGP-L
CH-5401 Baden / Switzerland

Dear Sandro,

Please refer to your fax of February 3, 1999, concerning the transportation of 2 transformers, dims of 526 x 269 x 370 cm, weighing 49,969 kilos each, from ships hook, Brownsville, Texas to job site at Huimila.

We are pleased to provide OTR transport for $14,000 each, plus I. V. A. tax of 15%. Price includes all securing to transporters, permits, etc.

Please provide notification if you wish us to handle.

Regards,

Jim Hamilton
General Manager - Multimodal Heavy Transport

115 S.W.3d 287                                                                                                          Page 1
(Cite as: 115 S.W.3d 287)

**H**

Court of Appeals of Texas,
Corpus Christi-Edinburg.

ABB KRAFTWERKE AKTIENGESELLSCHAFT
and ABB Alstom Power (Switzerland)
Ltd., f/k/a ABB Power Generation, Ltd., Appellants,
v.
BROWNSVILLE BARGE & CRANE, INC.,
Appellee.

No. 13-01-00756-CV.

Aug. 28, 2003.
Rehearing Overruled Oct. 2, 2003.

Family of longshoreman who was fatally injured during the lifting of a 325- metric-ton generator from a barge onto a railway car brought action against manufacturer of generator, transportation company hired by manufacturer, and owner of the floating crane that made the lift. Crane owner filed cross-claim against manufacturer, seeking contractual indemnity for its legal fees. After underlying lawsuit settled, the 404th District Court, Cameron County, Abel C. Limas, J., entered summary judgment for crane owner on the indemnity claim. Manufacturer appealed. The Court of Appeals, Hinojosa, J., held that: (1) indemnity agreement was a valid and enforceable contract; (2) manufacturer's promise to indemnify crane owner in exchange for owner's lifting services was valid consideration for indemnity agreement; and (3) crane owner's refusal to provide crane lifting services without indemnification agreement did not amount to economic duress, as would invalidate agreement.

Affirmed.

West Headnotes

**[1] Indemnity** 27
208k27 Most Cited Cases

**[1] Indemnity** 30(8)
208k30(8) Most Cited Cases

Indemnity agreement between manufacturer of 325-metric-ton generator and owner of floating crane used to lift generator from barge to railway car, by which manufacturer agreed to indemnify crane owner for liability resulting from crane owner's own future negligence, was a valid and enforceable contract,

even though crane owner did not sign the contract, where crane owner made it clear that execution of lift was dependent on manufacturer's signing of indemnity agreement, and manufacturer's representative did sign agreement and return it to crane owner.

**[2] Indemnity** 31(1)
208k31(1) Most Cited Cases

A contract of indemnity is an original obligation between the contracting parties, independent of other agreements.

**[3] Indemnity** 31(1)
208k31(1) Most Cited Cases

Indemnity contracts are construed under normal rules of contract construction.

**[4] Indemnity** 27
208k27 Most Cited Cases

An indemnity agreement must meet the criteria of a binding contract to be an original obligation and stand on its own.

**[5] Contracts** 15
95k15 Most Cited Cases

**[5] Contracts** 16
95k16 Most Cited Cases

**[5] Contracts** 34
95k34 Most Cited Cases

**[5] Contracts** 42
95k42 Most Cited Cases

The requirements of a binding contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding.

**[6] Contracts** 47
95k47 Most Cited Cases

Consideration is a fundamental element of a valid contract.

**[7] Indemnity** 30(1)
208k30(1) Most Cited Cases

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works


EXHIBIT
B

The "express negligence doctrine" requires that the intent of the party seeking indemnity from the consequences of that party's own future negligence must be expressed in unambiguous terms within the four corners of the contract.

**[8] Indemnity** ☞30(1)
208k30(1) Most Cited Cases

The conspicuousness requirement for an indemnity agreement demands that significant terms must appear on the face of the agreement in such a way as to attract the attention of a reasonable person.

**[9] Contracts** ☞35
95k35 Most Cited Cases

The absence of a signature on a contract does not necessarily destroy its validity.

**[10] Contracts** ☞35
95k35 Most Cited Cases

As long as the parties give their consent to the terms of a contract, and there is no evidence of an intent to require both signatures as a condition precedent to it becoming effective as a contract, signatures are not a required factor in the making of a valid contract.

**[11] Indemnity** ☞27
208k27 Most Cited Cases

Generator manufacturer's promise to indemnify owner of floating crane, which was used to lift generator from barge to railway car, for liability resulting from owner's negligence in exchange for crane owner's lifting services was valid "consideration" for indemnity agreement.

**[12] Contracts** ☞10(1)
95k10(1) Most Cited Cases

A contract must be based upon a valid consideration, in other words, mutuality of obligation.

**[13] Contracts** ☞50
95k50 Most Cited Cases

"Consideration," as an element of contract, is defined as either a benefit to the promisor or a loss or detriment to the promisee.

**[14] Contracts** ☞50
95k50 Most Cited Cases

Surrendering a legal right represents valid "consideration" for a contract.

**[15] Contracts** ☞10(1)
95k10(1) Most Cited Cases

**[15] Contracts** ☞85
95k85 Most Cited Cases

A contract that lacks consideration lacks mutuality of obligation and is unenforceable.

**[16] Contracts** ☞88
95k88 Most Cited Cases

There is a presumption that a written contract is supported by consideration.

**[17] Indemnity** ☞100
208k100 Most Cited Cases

The party asserting lack of consideration had the burden to prove that there was no consideration for an indemnity agreement.

**[18] Indemnity** ☞27
208k27 Most Cited Cases

Lifting services contract between owner of crane and provider of stevedoring services for lifting 325-metric-ton generator from a barge onto a railway car did not already obligate crane owner to perform lifting services at time crane owner, as indemnitee, and generator's manufacturer, as indemnitor, entered into indemnity agreement, and thus, indemnity agreement did not fail for lack of consideration, where lifting services contract stated that its terms would apply if manufacturer elected to use crane services and if crane owner agreed to provide such services.

**[19] Indemnity** ☞27
208k27 Most Cited Cases

Floating crane owner's refusal to provide crane to lift generator from barge to railway car unless generator's manufacturer signed indemnity agreement did not amount to a threat to commit an act that crane owner had no legal right to do, and crane owner was not a party to manufacturer's financial distress occasioned by delay in delivering generator to purchasers, and thus, indemnity agreement was not coerced by economic duress, as would invalidate agreement, where manufacturer and crane owner were not parties

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

to any prior agreement, and manufacturer's compulsion to deliver generator without further delay was due to its third-party contract with purchasers; manufacturer was not forced to sign indemnity agreement against its free will.

**[20] Contracts ☞95(1)**
95k95(1) Most Cited Cases

The elements of economic duress, as may invalidate a contract, are: (1) a threat to do something that a party has no legal right to do; (2) illegal exaction or some fraud or deception; and (3) imminent restraint such as to destroy free agency without present means of protection.

**[21] Contracts ☞95(1)**
95k95(1) Most Cited Cases

Economic duress, which may invalidate a contract, may be claimed only when the party against whom it is claimed was responsible for claimant's financial distress.

**[22] Contracts ☞95(1)**
95k95(1) Most Cited Cases

A claim of economic duress, as may invalidate a contract, must be based on the acts or conduct of the opposite party and not merely on the necessities of the purported victim or on a fear of what a third person might do.

**[23] Contracts ☞95(1)**
95k95(1) Most Cited Cases

The mere fact that a person enters into a contract with reluctance or as a result of the pressures of business circumstances does not, of itself, constitute economic duress invalidating the contract.
***289** Justin L. Williams, Corpus Christi, for Appellants.

Javier Gonzalez, Keith N. Uhles, Royston, Razyor, Vickery & Williams, Brownsville, Jon D. Brooks, Rangel Law Firm, P.C., Corpus Christi, for Appellee.

Before Justices HINOJOSA, CASTILLO, and CHAVEZ. [FN1]

> FN1. Retired Justice Melchor Chavez, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to

Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

## OPINION

Opinion by Justice HINOJOSA.

This case requires us to determine the validity of an indemnity agreement. In three issues, appellants, ABB Kraftwerke Aktiengesellschaft and ABB Alstom Power (Switzerland) Ltd., f/k/a ABB Power Generation, Ltd. ("ABB"), contend the trial court erred in granting the motions for summary judgment of appellee, Brownsville Barge & Crane, Inc. ("Brownsville Barge"). We affirm.

### A. BACKGROUND AND PROCEDURAL HISTORY

This case arises from the shipment of a large turbine generator from Manheim, Germany to Monterrey, Mexico, through the Port of Brownsville. ABB manufactured and arranged for the shipment of the 325-metric-ton generator from Germany to the Port of Brownsville. ABB contracted with C.H. Robinson ("Robinson") to transport the generator from the Port of Brownsville to Monterrey.

Robinson contracted with Schaefer Stevedoring ("Schaefer") to provide stevedoring services at the Port of Brownsville. Schaefer was to offload the generator from a lash barge and load it onto a railway car alongside the dock. Schaefer entered into a "Lifting Services Agreement" with Brownsville Barge for its floating crane barge, the "Atlantic Giant," to make the lift. The Atlantic Giant was the only floating crane between Houston, Texas and Tampico, Mexico, capable of lifting this ***290** generator because of its size and configuration. In the months preceding the lift, Brownsville Barge was given partial payment for the use of the Atlantic Giant. All necessary arrangements and permits to move the generator into Mexico were also obtained.

Just before the lift, Brownsville Barge approached representatives of ABB and Robinson and asked them to sign an indemnity agreement, attached as an exhibit to the Lifting Services Agreement entered into between Brownsville Barge and Schaefer. Brownsville Barge informed the representatives that it would not provide the lifting equipment if ABB's representative did not sign the indemnity agreement. ABB signed the indemnity agreement; Robinson refused.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Oscar Zamora, Sr., was a longshoreman at the Port of Brownsville. Zamora was the gang foreman of the longshoremen hired by Schaefer to perform the lift. During the lift, while the generator was suspended by the crane, a jacking plate fell from the generator and fatally injured Zamora. Zamora's family filed suit against ABB, Robinson, and Brownsville Barge for wrongful death. The lawsuit eventually settled.

Brownsville Barge filed a cross-claim against ABB, asserting ABB owed it contractual indemnity for the legal fees it incurred in defending against the Zamora family's claims. Brownsville Barge filed a motion for partial summary judgment and a no evidence motion for summary judgment, and the trial court granted both motions. ABB also filed a motion for summary judgment, which the trial court denied. This appeal ensued.

### B. ISSUES PRESENTED

In three issues, ABB contends the trial court erred in granting Brownsville Barge's motions for summary judgment because: (1) Brownsville Barge did not have a valid contract with ABB; (2) there was no valid consideration for the indemnity agreement; and (3) the indemnity agreement was an unenforceable adhesion contract. ABB does not complain of the trial court's denial of its motion for summary judgment.

### C. STANDARD OF REVIEW

We review the grant of a traditional summary judgment de novo. *Alejandro v. Bell,* 84 S.W.3d 383, 390 (Tex.App.-Corpus Christi 2002, no pet.). To sustain a summary judgment, we must determine that the pleadings and summary judgment evidence establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *McFadden v. Am. United Life Ins. Co.,* 658 S.W.2d 147, 148 (Tex.1983). We accept all evidence favorable to the nonmovant as true, indulge the nonmovant with every reasonable inference, and resolve any doubt in the nonmovant's favor. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 549 (Tex.1985). Summary judgment is proper if the movant disproves at least one element of each of the plaintiff's claims or affirmatively establishes each element of an affirmative defense to each claim. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997).

By contrast, a no-evidence summary judgment presented under Texas Rule of Civil Procedure 166a(i) is equivalent to a pretrial directed verdict, and

this Court applies the same legal sufficiency standard on review. *Zapata v. The Children's Clinic,* 997 S.W.2d 745, 747 (Tex.App.-Corpus Christi 1999, pet. denied). A no-evidence motion for summary judgment must be granted if: (1) the moving party asserts that there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the **\*291** burden of proof at trial; and (2) the respondent produces no summary judgment evidence raising a genuine issue of material fact on those elements. *See* Tex.R. Civ. P. 166a(i). In reviewing a no-evidence summary judgment, we review the record in the light most favorable to the nonmovant to determine whether more than a scintilla of evidence was presented on the challenged elements of the nonmovant's claim. *See Wal-Mart Stores, Inc. v. Rodriguez,* 92 S.W.3d 502, 506 (Tex.2002).

### D. LACK OF ENFORCEABLE CONTRACT

[1] In its first issue, ABB complains that the trial court erred in granting summary judgment on Brownsville Barge's indemnity claim because Brownsville Barge did not have a valid contract with ABB.

The indemnity agreement was attached as an exhibit to the Lifting Services Agreement. ABB asserts the Lifting Services Agreement was only between Brownsville Barge and Schaefer. ABB argues that it was not a party to the Lifting Services Agreement.

[2][3][4] Whether ABB was a party to the Lifting Services Agreement becomes relevant to our analysis only if we find that the indemnity agreement cannot stand on its own as a contract between ABB and Brownsville Barge. A contract of indemnity is an original obligation between the contracting parties, independent of other agreements. *Joseph Thomas, Inc. v. Graham,* 842 S.W.2d 343, 346 (Tex.App.-Tyler 1992, no writ). Indemnity contracts are construed under normal rules of contract construction. *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 284 (Tex.1998). The indemnity agreement at issue must meet the criteria of a binding contract to be an original obligation and stand on its own.

[5][6] Under Texas law, the requirements of a binding contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Labor Ready Cent. III, L.P. v. Gonzalez,* 64 S.W.3d 519,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

522 (Tex.App.-Corpus Christi 2001, no pet.). Consideration is also a fundamental element of a valid contract. *Fed. Sign v. Tex. So. Univ.*, 951 S.W.2d 401, 408-09 (Tex.1997).

[7][8] Because indemnity agreements involve an extraordinary shifting of risk, the supreme court has imposed certain fair-notice requirements. *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex.1993). These requirements incorporate the express negligence doctrine and mandate conspicuousness. *Id.* The express negligence doctrine requires that the intent of the party seeking indemnity from the consequences of that party's own future negligence must be expressed in unambiguous terms within the four corners of the contract. *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex.1987). The conspicuous requirement demands that significant terms must appear on the face of the agreement in such a way as to attract the attention of a reasonable person. *Dresser Indus.*, 853 S.W.2d at 508.

Brownsville Barge's representative approached Roland Schneider, ABB's authorized representative, with an indemnity agreement containing the following terms:

> ABB and or C.H. Robinson Company shall release, defend, indemnify and hold Brownsville Barge & Crane, Inc., its directors, officers, employees, agents and subcontractors (Contractor Group) harmless from and against all liability, claims and losses, damages, punitive *292 damages, costs, expenses, attorney's fees, demands, suits, and causes of action of every kind (the "claims"), arising on account of personal injury or death or damage to property in any way incident to or in connection with or arising out of the "Lifting Services Agreement" dated March 22, 1999 between Schaefer Stevedoring, Inc. and Brownsville Barge & Crane, Inc. regardless of the sole, joint or concurrent negligence, negligence per se, gross negligence, statutory fault, or strict liability of any member of the Contractor Group or the unseaworthiness of any vessel owned operated or chartered by any member of the Owner Group without limit and without regard to the cause or causes thereof that may have caused or contributed to the claim, to the extent such indemnity obligations are not prohibited by applicable law.

By its very terms, the agreement purports to indemnify Brownsville Barge for liabilities resulting from its own future negligence. The agreement provides that ABB would "indemnify and hold harmless Brownsville Barge & Crane, Inc .... from

and against all liability ... arising on account of personal injury or death ... arising out of the 'Lifting Services Agreement' ... regardless of the sole, joint or concurrent negligence" of Brownsville Barge employees. Brownsville Barge's intent as to what risk it intended to shift to ABB is clear from the four corners of the document. *See Atlantic Richfield Co. v. Petroleum Personnel, Inc.*, 768 S.W.2d 724, 726 (Tex.1989) (holding that language which sufficiently defines the parties' intent meets the requirements of the express negligence rule).

At the presentment of the indemnity agreement, the record reflects that Brownsville Barge made clear its position that execution of the lift was dependent on ABB signing the agreement. Thereafter, Schneider, ABB's Deputy General Manager, duly executed the indemnity agreement. It is undisputed that Schneider had full authority to bind ABB and to negotiate or consent to the terms of the indemnity agreement. Following execution of the agreement, Schneider consulted with Sandro Lepori, his supervisor in Switzerland. Lepori agreed that Schneider had appropriately signed the agreement. Thus, ABB accepted the offer when it returned the signed indemnity agreement to Brownsville Barge.

[9][10] ABB argues that Brownsville Barge did not sign the indemnity provision. However, the absence of a signature on a contract does not necessarily destroy its validity. *Simmons & Simmons Constr. Co., Inc. v. Rea*, 155 Tex. 353, 286 S.W.2d 415, 418 (1955); *Williams v. Brown & Root, Inc.*, 947 S.W.2d 673, 677 (Tex.App.-Texarkana 1997, no writ). As long as the parties give their consent to the terms of the contract, and there is no evidence of an intent to require both signatures as a condition precedent to it becoming effective as a contract, signatures are not a required factor in the making of a valid contract. *Rea*, 286 S.W.2d at 417-18.

There is no evidence in the record that Brownsville Barge did not consent to the terms of the indemnity agreement. The offer was presented with the clear understanding that Brownsville Barge would offer the services of the Atlantic Giant on the condition that ABB signed the indemnity agreement.

Thus, based on the foregoing objective evidence, we hold there was a proper offer, acceptance, consent to the terms of the agreement, and intent of the parties that the contract be mutual and binding. *See Sutton v. Estate of McCormick*, 47 S.W.3d 179, 182 (Tex.App.-Corpus Christi 2001, no pet.) (using an objective standard to examine whether there was a meeting of the *293 minds). Appellant's first issue is

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

overruled.

### E. LACK OF CONSIDERATION

[11] In its second issue, ABB contends the trial court erred in granting Brownsville Barge's motion for summary judgment because there was no consideration to validate the indemnity agreement. ABB asserts that Brownsville Barge was already obligated to perform the lift under the terms of the Lifting Services Agreement signed between Brownsville Barge and Schaefer, and that the indemnity agreement is void for lack of new consideration.

[12][13][14][15] A contract must be based upon a valid consideration, in other words, mutuality of obligation. *Fed. Sign.*, 951 S.W.2d at 408. Consideration is defined as "either a benefit to the promisor or a loss or detriment to the promisee. Surrendering a legal right represents valid consideration." *Northern Natural Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603, 607 (Tex.1998). A contract that lacks consideration lacks mutuality of obligation and is unenforceable. *Fed. Sign*, 951 S.W.2d at 409.

[16][17] There is a presumption that a written contract is supported by consideration. *Cortez v. Nat'l Bank of Commerce*, 578 S.W.2d 476, 479 (Tex.Civ.App.-Corpus Christi 1979, writ ref'd n.r.e.). As the party asserting lack of consideration, ABB had the burden to prove that there was no consideration for the indemnity agreement. *See Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex.1991); *Rodriguez v. Southwestern Drug Corp.*, 619 S.W.2d 469, 472 (Tex.Civ.App.-Houston [14th Dist.] 1981, no writ).

Brownsville Barge's summary judgment evidence established that Brownsville Barge told ABB's representative that Brownsville Barge would not provide the Atlantic Giant unless ABB signed the indemnity agreement. In exchange for its agreement to indemnify Brownsville Barge, ABB received the benefit of the use of Brownsville Barge's lifting equipment so that its generator could be timely transported to Monterrey. We conclude that the exchange of consideration that passed between the parties, consisting of a promise to indemnify in exchange for the lifting services, was valid consideration to support the indemnity agreement.

[18] ABB's contention that Brownsville Barge was already obligated to perform the lift under the Lifting Services Agreement misinterprets the terms of the

Lifting Services Agreement which provided that "[a]t such time as [Schaefer] may request [Brownsville Barge] to perform lifting services and provided [Brownsville Barge] accepts to perform such services for [Schaefer], [Schaefer] shall issue to [Brownsville Barge] a work order setting forth the particulars of the lifting services to be performed.... All work ... for lifting services shall be governed by the terms and conditions of this Agreement...." The Lifting Services Agreement did not obligate Brownsville Barge to perform any services; rather, it stated the terms that would apply if ABB elected to use Brownsville Barge's services and Brownsville Barge agreed to provide such services.

We hold that ABB has failed to meet its burden to prove that there was no valid consideration for the written indemnity agreement. Accordingly, appellant's second issue is overruled.

### F. ECONOMIC DURESS

[19] In its third issue, ABB contends the trial court erred in granting Brownsville Barge's motion for summary judgment because the indemnity agreement was coerced by economic duress.

**\*294** [20] The elements of economic duress are: (1) a threat to do something that a party has no legal right to do; (2) illegal exaction or some fraud or deception; and (3) imminent restraint such as to destroy free agency without present means of protection. *King v. Bishop*, 879 S.W.2d 222, 223 (Tex.App.-Houston [14th Dist.] 1994, no writ); *Simpson v. MBank Dallas, N.A.*, 724 S.W.2d 102, 109 (Tex.App.-Dallas 1987, writ ref'd n.r.e.).

ABB contends that Brownsville Barge "put a gun to ABB's head" and forced it to sign the indemnity agreement in the face of Brownsville Barge's refusal to otherwise provide the Atlantic Giant. Brownsville Barge's "threat" to the ABB representative may have been constraining to ABB, but it was not necessarily a threat to commit an act Brownsville Barge had no legal right to do. ABB and Brownsville Barge were not parties to any agreement at the time the offer was made. Therefore, there was no legal obligation for Brownsville Barge to break.

Additionally, the record does not indicate that ABB was forced to accept the indemnity agreement against its will. ABB could have refused to execute the indemnity agreement as Robinson chose to do. This action may have caused ABB to incur additional expenses in procuring the services of a crane comparable to the Atlantic Giant, yet this

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

115 S.W.3d 287
(Cite as: 115 S.W.3d 287)

Page 7

inconvenience does not amount to a destruction of free will. *See* *Simpson, 724 S.W.2d at 109*.

[21][22][23] Finally, Brownsville Barge is not the party responsible for ABB's financial distress. Economic duress may be claimed only when the party against whom it is claimed was responsible for claimant's financial distress. *Deer Creek Ltd. v. North Am. Mortgage Co., 792 S.W.2d 198, 203 (Tex.App.-Dallas 1990, no writ)*. A claim of economic duress must be based on the acts or conduct of the opposite party and not merely on the necessities of the purported victim, or on a fear of what a third person might do. *First Tex. Sav. Ass'n of Dallas v. Dicker Ctr., Inc., 631 S.W.2d 179, 186 (Tex.App.- Tyler 1982, no writ)*. The mere fact that a person enters into a contract with reluctance, or as a result of the pressures of business circumstances, does not, of itself, constitute economic duress invalidating the contract. *Id.*

The record evidence shows that ABB's compulsion to deliver the generator without further delay to the original purchasers in Mexico was due to its original agreement with the purchasers. According to the terms of the purchase agreement, a delay in delivery would commence the accrual of liquidated damages. Because this financial distress originated from a party other than Brownsville Barge, it fails to support a claim of economic duress. *See* *Simpson, 724 S.W.2d at 109*.

Brownsville Barge merely presented ABB with a business decision-sign the indemnification agreement or face the loss of Brownsville Barge's lifting equipment. Such a situation does not amount to economic duress.

We conclude that Brownsville Barge did not threaten to do any act that it had no legal right to do, ABB was not forced to sign the indemnity agreement against its free will, and any economic pressure arose from ABB's agreement with a third party. We hold that the trial court did not err in finding that essential elements of duress were absent as a matter of law. Appellant's third issue is overruled.

We affirm the trial court's order granting appellee's motions for summary judgment.

115 S.W.3d 287

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Date of Printing: DEC 18,2003

**KEYCITE**

CITATION:    **ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc., 115 S.W.3d 287 (Tex.App.-Corpus Christi, Aug 28, 2003) (NO. 13-01-00756-CV)**
History
Direct History

=>    1    **ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc., 115 S.W.3d 287** (Tex.App.-Corpus Christi Aug 28, 2003) (NO. 13-01-00756-CV), rehearing overruled (Oct 02, 2003), petition for review filed (Nov 12, 2003)

**Citing References**

No references were found within the scope of KeyCite's citing case coverage.

© Copyright 2003 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

**CERTIFIED COPY**

CAUSE NO. 99-04-1644-E

| | | |
|---|---|---|
| GRACIELA ZAMORA, INDIVIDUALLY AND; ON BEHALF OF THE ESTATE OF HER LATE HUSBAND OSCAR ZAMORA, SR. AND; ON BEHALF OF THEIR MINOR SURVIVING SON OSCAR ZAMORA, JR. AND; | § § § § § § | IN THE DISTRICT COURT |

OLIVIA ZAMORA, THE SURVIVING MOTHER OF THE LATE OSCAR ZAMORA, SR.

AND; ON BEHALF OF ALL THOSE ENTITLED TO RECOVER FOR THE TRAGIC, UNTIMELY DEATH OF THE LATE OSCAR ZAMORA, SR.

       **Plaintiffs**

and

ANGIE ZAMORA

       **Intervenor**

VS.

357TH JUDICIAL DISTRICT

ABB KRAFTWERKE AKTIENGESELLSCHAFT and

ABB ALSTOM POWER (SWITZERLAND) LTD, FORMERLY KNOWN AS ABB POWER GENERATION, LTD.

       **Defendants**

CAMERON COUNTY, TEXAS

## PLAINTIFFS' THIRTEENTH AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

     NOW COMES, GRACIELA ZAMORA, INDIVIDUALLY AND; ON BEHALF OF THE ESTATE OF HER LATE HUSBAND OSCAR ZAMORA, SR. AND; ON BEHALF OF THEIR MINOR SURVIVING SON OSCAR ZAMORA, JR. AND;



OLIVIA ZAMORA, THE SURVIVING MOTHER OF THE LATE OSCAR ZAMORA, SR. AND; ON BEHALF OF ALL THOSE ENTITLED TO RECOVER FOR THE TRAGIC, UNTIMELY DEATH OF THE LATE OSCAR ZAMORA, SR., hereinafter referred to as Plaintiffs, complaining of ABB KRAFTWERKE AKTIENGESELLSCHAFT and ABB ALSTOM POWER (SWITZERLAND) LTD., FORMERLY KNOWN AS ABB POWER GENERATION, LTD., hereinafter referred to as Defendants, and for cause of action would show unto this Honorable Court as follows:

## I.

Pursuant to Texas Rule of Civil Procedure 190.1, this case is to be governed by the provisions of Texas Rule of Civil Procedure 190.4 as discovery is intended to be conducted under Level 3 of Rule 190.1 of the Texas Rules of Civil Procedure.

All Plaintiffs are citizens and residents of the State of Texas.

Defendant, ABB KRAFTWERKE AKTIENGESELLSCHAFT, has appeared and answered herein and no written service of process is necessary. A copy of this pleading is being forwarded by certified mail, return receipt requested, through its attorney of record, Justin Williams, Williams, Kasperitis & Gowan, P.C., 5959 S. Staples, Suite 204, Corpus Christi, Texas 78413.

Defendant, ABB ALSTOM POWER (SWITZERLAND) LTD., FORMERLY KNOWN AS ABB POWER GENERATION, LTD., has appeared and answered herein and no written service of process is necessary. A copy of this pleading is being forwarded by certified mail, return receipt requested, through its attorney of

---

record, Justin Williams, Williams, Kasperitis & Gowan, P.C., 5959 S. Staples, Suite 204, Corpus Christi, Texas 78413.

## II.

Venue is proper in Cameron County, Texas pursuant to Section 15.002 of the Texas Civil Practice and Remedies Code in that the transaction and/or occurrence made the subject of this case and the acts or omissions giving rise to the cause of action all occurred in Cameron County, Texas.

## III.

On or about March 23, 1999, Decedent Oscar Zamora, Sr. while in the course and scope of his scope his employment as a longshoreman was instructed by Todd Stever in the course and scope of his employment and acting as a representative, agent, employee or manager of C.H. Robinson Company, was told to take off two bolts to a yellow shipping chock attached to a compressor which was manufactured by Defendants, ABB KRAFTWERKE AKTIENGESELLSCHAFT and ABB ALSTOM POWER (SWITZERLAND) LTD., FORMERLY KNOWN AS ABB POWER GENERATION, LTD. Upon removing the two bolts as instructed and not knowing that the two remaining bolts were not in fact attaching bolts, the yellow loading chock came loose and due to its weight in excess of 700 pounds, struck the Decedent in the head and neck, knocking him to the ground disabling him, and after a period of some conscious pain and suffering amounting to several hours, killed him.

CERTIFIED COPY

## IV.

Defendants ABB KRAFTWERKE AKTIENGESELLSCHAFT and ABB ALSTOM POWER (SWITZERLAND) LTD., FORMERLY KNOWN AS ABB POWER GENERATION, LTD. were and are the manufacturer in the business of designing, manufacturing and marketing generators and compressors including, but not limited to, the one to which the jacking plate in question was attached. It is foreseeable that in the release and shipping of those generators and/or compressors, the jacking plates will be attached for their transport. No decals, warnings or instructions were in place and as such the compressor/generator and jacking place in question were defective as designed, manufactured and/or marketed by Defendants.

In the further alternative, Defendants are in the business of design, manufacture and marketing of the jacking plates including, but not limited to, the "jacking plate" in question which was defective it its design, marketing and/or manufacture. Either or all of the aforementioned products liability tort which producing caused the injuries and damages complained of including the conscious pain and suffering of the deceased Oscar Zamora, Sr. and the injuries, damages and loss to his surviving family members as more particularly set forth below. Their conduct also amounted to negligence proximately causing, in the alternative, the injuries, death and damages to all Plaintiffs.

Each and all of the above Defendants ("ABB" Defendants) designed, manufactured and marketed the compressor or generator unit in question and

---

CERTIFIED COPY

participated in the decision to ship such unit with the "jacking plate" in place on the unit and which were ostensibly held on by two bolts a piece, to all outward appearances. In fact, two of such bolts were only adjusting bolts which should not penetrate the unit itself. Upon removal of the remaining bolts, the 750 pounds or so, jacking plate would and could fall, as it did upon the Plaintiffs' decedent, Mr. Zamora. The shipping of such unit without adequate instructions, labels, or warnings, and the presence of an ABB person, in Texas, all amount to specific acts committed in the course of commerce in Texas, as was reasonably foreseeable due to not only its design, manufacturer and marketing, but also due to the units being directly shipped to the Port of Brownsville in Texas and amounts to an act of commerce invoking subject matter and personal jurisdiction in Texas.

## V.

Suit is brought on behalf of the Estate and all Plaintiffs and on Behalf of all those entitled to bring suit for the death of the late Oscar Zamora, Sr., specifically Decedent's wife Graciela Zamora, Decedent's son Oscar Zamora, Jr., Decedent's mother Olivia Zamora, and Decedent's daughter Angie Zamora, as Plaintiffs are the only persons competent, capable and qualified as the surviving heirs, beneficiaries, and claimants pursuant to the Texas Wrongful Death and Survival Statutes to bring such claims as they are the only proper claimants as the sole surviving wife, mother and children of the deceased. They hereby brings claims for all damages at law and equity and actual to which they may be entitled. All Plaintiffs damages are far in excess of the Court's minimum jurisdictional requirements which were proximately

caused by the acts or omissions of the Defendants. Despite any higher amount, however justly found and decided, by a jury (which is hereby specifically requested, and for which the fee has separately already been tendered), Graciela Zamora, Individually and on Behalf of The Estate of Her Late Husband Oscar Zamora, Sr. and his Only Child Oscar Zamora, Jr. and on Behalf Of Olivia Zamora, the Surviving Mother and Only Surviving Parent of Oscar Zamora, Sr. and all Others Entitled to Bring a Cause of Death Action for his Death, hereby state that the maximum amount of damages pursuant to Rule 47 of the Texas Rules of Civil Procedure, will be limited to $20,000,000.00 as specifically requested by Defendants.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Defendants be cited to appear and answer herein, and for a trial by a jury, that they have judgment against the Defendants, as may be allowed by law, and such other and further relief to which Plaintiffs are entitled, at law and at equity.

Respectfully Submitted,

LAW OFFICE OF WILLIAM J. TINNING
1013 Bluff Drive
Portland, Texas 78374
Telephone:   (361) 643-9200
Facsimile:   (361) 643-9600

BY: _____
William J. Tinning
State Bar No. 20060500

**LEAD ATTORNEY FOR PLAINTIFFS**

A TRUE COPY I CERTIFY
AURORA DE LA GARZA, CLERK
DISTRICT COURT CAMERON COUNTY, TEXAS
OCT 16 2003
BY _____ DEPUTY

**CO-COUNSEL:**

**CERTIFIED COPY**

Louis S. Sorola
Attorney at Law
Post Office Box 5776
302 Kings Highway
Suite 112
Brownsville, Texas 78523-5776

Horacio Barrera
Law Offices of Martinez & Barrera
1201 E. Van Buren
Brownsville, Texas 78520

<u>**DEMAND FOR JURY TRIAL**</u>          **CERTIFIED COPY**

COMES NOW Plaintiffs in the above styled and numbered cause and

respectfully demands a jury for trial of all issues in this case.

Respectfully Submitted,

LAW OFFICE OF WILLIAM J. TINNING
1013 Bluff Drive
Portland, Texas 78374
Telephone:   (361) 643-9200
Facsimile:    (361) 643-9600

BY:    _____
William J. Tinning
State Bar No. 20060500

**LEAD ATTORNEY FOR PLAINTIFF**

**CO-COUNSEL:**

Louis S. Sorola
Attorney at Law
Post Office Box 5776
302 Kings Highway
Suite 112
Brownsville, Texas 78523-5776

Horacio Barrera
Law Offices of Martinez & Barrera
1201 E. Van Buren
Brownsville, Texas 78520

## CERTIFICATE OF SERVICE

**CERTIFIED COPY**

I hereby certify that a true and correct copy of the above and foregoing instrument was forwarded to all counsel of record by the method listed below on this the __13th__ day of June, 2000.

**CERTIFIED MAIL - RRR and/or FACSIMILE:**

Justin Williams
Williams, Kasperitis & Gowan, P.C.
5959 S. Staples, Suite 204
Corpus Christi, Texas  78413

Mr. Keith N. Uhles
ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.
55 Cove Circle
P. O. Box 3509
Brownsville, Texas  78523-3509

Michael D. Murphy
MURPHY & WALKER, L.L.P.
2425 West Loop South, Suite 200
Houston, Texas  77027

**FIRST CLASS MAIL and/or FACSIMILE:**

Mr. R. Bruce Tharpe
LAW OFFICES OF R. BRUCE THARPE
Professional Plaza
715 East Frontage, Suite D
Alamo, Texas  78516

Louis S. Sorola
Attorney at Law
Post Office Box 5776
302 Kings Highway
Suite 112
Brownsville, Texas 78523-5776

---

**CERTIFIED COPY**

Horacio Barrera
Law Offices of Martinez & Barrera
1201 E. Van Buren
Brownsville, Texas 78520

_____
William J. Tinning

**CERTIFIED COPY**

CAUSE NO. 99-04-1644-E

| | | |
|---|---|---|
| GRACIELA ZAMORA, INDIVIDUALLY AND; ON BEHALF OF THE ESTATE OF HER LATE HUSBAND OSCAR ZAMORA, SR. AND; ON BEHALF OF THEIR MINOR SURVIVING SON OSCAR ZAMORA, JR. AND; | § § § § § § | IN THE DISTRICT COURT |

GRACIELA ZAMORA, INDIVIDUALLY
AND; ON BEHALF OF THE ESTATE
OF HER LATE HUSBAND OSCAR
ZAMORA, SR. AND; ON BEHALF OF
THEIR MINOR SURVIVING SON
OSCAR ZAMORA, JR. AND;                          §        IN THE DISTRICT COURT

OLIVIA ZAMORA, THE SURVIVING
MOTHER OF THE LATE OSCAR
ZAMORA, SR.

AND; ON BEHALF OF ALL THOSE
ENTITLED TO RECOVER FOR THE
TRAGIC, UNTIMELY DEATH OF THE
LATE OSCAR ZAMORA, SR.

          **Plaintiffs**
and

ANGIE ZAMORA

          **Intervenor**

VS.

ABB KRAFTWERKE
AKTIENGESELLSCHAFT,

ABB ALSTOM POWER (SWITZERLAND)
LTD, FORMERLY KNOWN AS
ABB POWER GENERATION, LTD. and

JUSTIN WILLIAMS

          **Defendants**

357TH JUDICIAL DISTRICT

CAMERON COUNTY, TEXAS



## PLAINTIFFS' FOURTEENTH AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

    NOW COMES, GRACIELA ZAMORA, INDIVIDUALLY AND; ON BEHALF

OF THE ESTATE OF HER LATE HUSBAND OSCAR ZAMORA, SR. AND; ON



BEHALF OF THEIR MINOR SURVIVING SON OSCAR ZAMORA, JR. AND; OLIVIA ZAMORA, THE SURVIVING MOTHER OF THE LATE OSCAR ZAMORA, SR. AND; ON BEHALF OF ALL THOSE ENTITLED TO RECOVER FOR THE TRAGIC, UNTIMELY DEATH OF THE LATE OSCAR ZAMORA, SR., hereinafter referred to as Plaintiffs, complaining of ABB KRAFTWERKE AKTIENGESELLSCHAFT, ABB ALSTOM POWER (SWITZERLAND) LTD., FORMERLY KNOWN AS ABB POWER GENERATION, LTD. and JUSTIN WILLIAMS, hereinafter referred to as Defendants, and for cause of action would show unto this Honorable Court as follows:

I.

Pursuant to Texas Rule of Civil Procedure 190.1, this case is to be governed by the provisions of Texas Rule of Civil Procedure 190.4 as discovery is intended to be conducted under Level 3 of Rule 190.1 of the Texas Rules of Civil Procedure.

All Plaintiffs are citizens and residents of the State of Texas.

Defendant, ABB KRAFTWERKE AKTIENGESELLSCHAFT, has appeared and answered herein and no written service of process is necessary. A copy of this pleading is being forwarded by certified mail, return receipt requested, through its attorney of record, Justin Williams, Williams, Kasperitis & Gowan, P.C., 5959 S. Staples, Suite 204, Corpus Christi, Texas 78413.

Defendant, ABB ALSTOM POWER (SWITZERLAND) LTD., FORMERLY KNOWN AS ABB POWER GENERATION, LTD., has appeared and answered herein and no written service of process is necessary. A copy of this pleading is

---

split the costs for the court reporter, conference room and interpreter. Defendants' counsel paid $3,014.00 for the conference room and interpreter. Plaintiffs' counsel paid $1,299.12 for the court reporter. Plaintiffs still have not received the $649.56 for Defendants' half of the court reporter. Plaintiffs also still owe Defendants $1,507.00 for their half of the conference room and interpreter, but were instructed by the office manager for Defendants' counsel not to make this payment until Plaintiffs received the check from Defendants for their half of the court reporter.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Defendants be cited to appear and answer herein, and for a trial by a jury, that they have judgment against the Defendants, as may be allowed by law, and such other and further relief to which Plaintiffs are entitled, at law and at equity.

Respectfully Submitted,

LAW OFFICE OF WILLIAM J. TINNING
1013 Bluff Drive
Portland, Texas 78374
Telephone:    (361) 643-9200
Facsimile:    (361) 643-9600

BY: _____
William J. Tinning
State Bar No. 20060500

**LEAD ATTORNEY FOR PLAINTIFFS**

A TRUE COPY I CERTIFY
AURORA DE LA GARZA, CLERK
DISTRICT COURT CAMERON COUNTY, TEXAS

OCT 16 2003

BY _____ DEPUTY

---

**CERTIFIED COPY**

being forwarded by certified mail, return receipt requested, through its attorney of record, Justin Williams, Williams, Kasperitis & Gowan, P.C., 5959 S. Staples, Suite 204, Corpus Christi, Texas 78413.

Defendant, JUSTIN WILLIAMS, may be served with citation at his place of employment, WILLIAMS, KASPERITIS & GOWAN, 5959 S. Staples, Suite 204, Corpus Christi, Texas 78413.

## II.

Venue is proper in Cameron County, Texas pursuant to Section 15.002 of the Texas Civil Practice and Remedies Code in that the transaction and/or occurrence made the subject of this case and the acts or omissions giving rise to the cause of action all occurred in Cameron County, Texas.

## III.

On or about June 5, 2000, Plaintiffs reached a settled with Defendants ABB KRAFTWERKE AKTIENGESELLSCHAFT and ABB ALSTOM POWER (SWITZERLAND) LTD., FORMERLY KNOWN AS ABB POWER GENERATION, LTD. and their attorney JUSTIN WILLIAMS for the wrongful death of Oscar Zamora, Sr. As part of the settlement agreement Defendants agreed to pay court costs. As of today's date, the Plaintiffs still have not received the court costs in the amount of $10,234.15.

## IV.

In addition, on or about April 5, 2000, counsel for Plaintiffs and Defendants traveled to Venice, Italy to take depositions of Defendants' employees and agreed to

---

Plaintiffs' Fourteenth Amended Original Petition                    Page 3

split the costs for the court reporter, conference room and interpreter. Defendants' counsel paid $3,014.00 for the conference room and interpreter. Plaintiffs' counsel paid $1,299.12 for the court reporter. Plaintiffs still have not received the $649.56 for Defendants' half of the court reporter. Plaintiffs also still owe Defendants $1,507.00 for their half of the conference room and interpreter, but were instructed by the office manager for Defendants' counsel not to make this payment until Plaintiffs received the check from Defendants for their half of the court reporter.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Defendants be cited to appear and answer herein, and for a trial by a jury, that they have judgment against the Defendants, as may be allowed by law, and such other and further relief to which Plaintiffs are entitled, at law and at equity.

Respectfully Submitted,

LAW OFFICE OF WILLIAM J. TINNING
1013 Bluff Drive
Portland, Texas 78374
Telephone:  (361) 643-9200
Facsimile:   (361) 643-9600

BY: _____
William J. Tinning
State Bar No. 20060500
**LEAD ATTORNEY FOR PLAINTIFFS**

A TRUE COPY I CERTIFY
**AURORA DE LA GARZA, CLERK**
DISTRICT COURT CAMERON COUNTY, TEXAS

OCT 16 2003

BY_____ DEPUTY

*DISTRICT COURT CAMERON COUNTY, TEXAS*