UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 0 7 2004

Michael N. Milby
Clerk of Court

| | |
|---|---|
| ABB KRAFTWERKE §<br>AKTIENGESELLSCHAFT, and §<br>ABB ALSTOM POWER §<br>(SWITZERLAND) LTD., formerly known §<br>as ABB POWER GENERATION, LTD. §<br> §<br>      Plaintiffs §<br> §<br>Vs. §<br> §<br>C.H. ROBINSON COMPANY §<br> §<br>      Defendant § | CIVIL ACTION NO. B-03-192 |

C.H. ROBINSON COMPANY'S RESPONSE TO PLAINTIFFS' AMENDED
MOTION TO ATTACH AFFIDAVIT TO PREVIOUSLY FILED MOTION

C.H. Robinson Company ("C.H. Robinson") files this response to Plaintiffs'
Amended Motion to Attach Affidavit to Previously Filed Motion, filed by ABB
Kraftwerke Aktiengesellschaft ("ABB Kraftwerke") and ABB Alstom Power
(Switzerland) Ltd. ("ABB Alstom"), and would show the Court as follows:

I.      **Procedural Background**

1.      Plaintiffs filed their Motion for Application for Swiss Law on or about
October 31, 2003. On December 10, 2003, they filed a "Motion for Extension of Time to
File Affidavits in Support of the Application of Swiss Law and Motion for Delay on
Ruling on the Plaintiffs Motion for Application of Swiss Law," noting that the attorney
who was to provide affidavits in support of their motion for application of Swiss law was
out of town. Three months later, on March 16, 2004, Plaintiffs filed a motion to attach
the affidavit of David N. Huegin, "Swiss counsel for ABB" to their motion for

application of Swiss Law and Motion for Extension of Time to File Affidavits.   On March 19, 2004, Plaintiffs filed an amended version of the motion, which attached the original affidavit of Mr. Huegin.   C.H. Robinson is opposed to this motion for the following reasons.

## II.   Argument and Authorities

2.   There is no need for Plaintiffs to file an affidavit in support of their Motion for Application of Swiss Law, because the application of Texas law to the facts of this case is required as a matter of law.   See *Defendant C.H. Robinson's Response to Motion for Application of Swiss Law, filed 11/25/2003,* at ¶¶ 20-24[1].   There are no facts that might be contained in an affidavit that would have any bearing on the requirement that Texas law be applied, and therefore no reason for Plaintiffs to file Mr. Huegin's affidavit.

3.   Should the Court determine that the application of Texas law to the facts of this case is not required as a matter of law, and that the consideration of Mr. Huegin's affidavit is appropriate, Defendant C.H. Robinson objects to the affidavit because it constitutes insufficient notice of the substance of Swiss law, which Plaintiffs have failed to present despite the passage of over eight months since Plaintiffs filed this lawsuit.

4.   Federal Rule of Civil Procedure 44.1, "Determination of Foreign Law," provides:

> The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.   The court's determination shall be treated as a ruling on a question of law.

---

[1] Defendant C.H. Robinson has attached a copy of this pleading for the Court's convenience.

5.    The substance of foreign law is a question of law, not of fact. FED. R. CIV. P. 44.1 ("The court's determination shall be treated as a ruling on a question of law.") The court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. *Id.* However, the court is free to disregard affidavits such as that of Mr. Huegin, which fail to present clear proof of foreign law. *Haywin Textile Products, Inc. v. Int'l Finance Inv.,* 137 F.Supp.2d 431, 435 (S.D.N.Y. 2001), *judgment aff'd in unpublished opinion,* 38 Fed. Appx. 96, 2002 WL 1362978 (2d Cir. 2002). In *Haywin Textile Products,* the proponent of Bangladeshi law presented an expert affidavit that cited several cases and legal treatises in support of his conclusions, but failed to attach copies of the authorities, and offered only a cursory analysis of one of the issues before the court. The court held that the proponent had failed to adequately identify Bangladeshi law.

6.    Mr. Huegin's affidavit is even more deficient than the affidavit examined in *Haywin Textile Products.* In support of his assertion that the statute of limitations for a cause of action for breach of contract is ten years under Swiss law, he references a statute, but does not provide a translation or even a copy of the statute. He cites no judicial decisions or other authority in support of his assertion. Huegin further contends that the limitations provision is "an integral and substantive part of the cause of action" and that there was no right to sue for breach of contract in Switzerland before this statute was created. He cites no statutory language, case law, legal treatise or other scholarly authority to support these contentions. Likewise, he offers no support whatsoever for his assertions that "A breach of contract lawsuit is not prohibited under Swiss law by the fact that one of the parties has settled a lawsuit with a third party," and "Swiss law does not

3

limit a breach of contract or liability lawsuit between two parties who have not settled with each other to concepts such as indemnity or contribution or vicarious liability." Instead, Mr. Huegin simply presents these bald legal conclusions to the court, presumably with the expectation that the court will believe the unsupported contentions of an interested witness.[2]  Because Mr. Huegin is an interested witness, C.H. Robinson additionally objects to his affidavit for that reason. *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F.Supp.2d 118, 128 (S.D.N.Y. 1997), *aff'd, Farrell Lines Inc. v. Ceres Terminals Inc.*, 161 F.3d 115 (2nd Cir. 1998) (finding that the representations made by the proponent's Italian lawyer were insufficient evidence of foreign law because, *inter alia,* the lawyer was not a disinterested witness).

7.    Huegin's unsupported and biased statements are insufficient to establish, as a matter of law, the substance of Swiss law. *Haywin Textile Products, Inc.,* 137 F.Supp.2d at 435; *see also Carlisle Ventures, Inc. v. Banco Espanol de Credito,* 176 F.3d 601, 604 (rejecting construction of Spanish law offered by affidavit of "prominent Spanish attorney and former law professor" because he cited no cases or legal authority to support his construction); *Pfizer Inc. v. Elan Pharmacetical Research Corp.,* 812 F.Supp. 1352, 1360-61 (D.Del. 1993) (disregarding the affidavit of the proponent's foreign law expert, which "lacks any probative exposition of German principles of contract interpretation, and references no authority on German law principles").

8.    The proponent of the application of foreign law has the burden to prove the substance of foreign law to the court. *Banque Libaniase pour le Commerce v. Ahreich,* 915 F.2d 1000, 1006 (5th Cir. 1990).  Absent sufficient proof to establish with

---

[2] Mr. Huegin is identified in paragraph 1 of Plaintiffs' motion as "Swiss counsel for ABB." He identifies himself in his affidavit as "legal counsel to ABB Switzerland Ltd."

reasonable certainty the substance of the foreign principles of law, the district court should apply the law of the forum. *Id; United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.,* 210 F.3d 1207, 1223-24 (10th Cir. 2000), *aff'd,* 532 U.S. 588, 121 S.Ct. 1776, 149 L.Ed.2d 845 (2001) ("Wharf does not direct our attention to specific Hong Kong law that conflicts with the law of the forum. Contrary to Wharf's assertions, courts routinely decline to consider choice of law issues in the absence of a demonstrated conflict.") (emphasis added). Alternatively, the court is free to reject even uncontradicted conclusions of an expert witness and reach its own decision on the basis of independent examination of foreign legal authorities. *Arbitration between: Trans Chemical Ltd. and China Nat'l Machinery Import and Expert Corp.,* 978 F.Supp. 266, 275 (S.D. Tex. 1997), *aff'd,* 161 F.3d 314 (5th Cir. 1998), *citing Curtis v. Beatrice Foods Co.,* 481 F.Supp. 1275, 1285 (S.D.N.Y.), *aff'd mem.,* 633 F.2d 203 (2d Cir. 1980); *see also Pazcoguin v. Radcliffe,* 292 F.3d 1209, 1216 (9th Cir. 2002).

9.     The court's independent examination of the substance of Swiss law is unnecessary here. Even if sufficient proof of a conflict between Texas and Swiss law were presented, application of Texas law is required as a matter of law to the issues of limitations and indemnity. *Defendant C.H. Robinson's Response to Motion for Application of Swiss Law* at ¶¶ 20-24 (attached). In the alternative, the application of Texas law is required by application of the principles in the Restatement (Second) of Conflicts. *Defendant C.H. Robinson's Response to Motion for Application of Swiss Law* at ¶¶ 25-40 (attached).[3]

---

[3] Assuming the application of Restatement principles is required, Plaintiffs also have the burden of proving that the relevant facts predominate in favor of applying Swiss law, i.e., that Switzerland has the most significant relationship to Plaintiffs' claims. *McLennan v. American Eurocopter Corp., Inc.,* 245 F.3d 403, 426 (5th Cir. 2001); *Hughes Wood Products, Inc. v. Wagner,* 18 S.W.3d 202, 204-205 (Tex. 1999). They

### Request for Relief

10.    For these reasons, C.H. Robinson asks the Court to deny Plaintiffs'
Amended Motion to Attach Original Affidavit to Previously Filed Motions, to grant C.H.
Robinson's motion to dismiss Plaintiffs' suit in its entirety with prejudice, and to grant
C.H. Robinson such other and further relief to which it is justly entitled.

Respectfully submitted,

MCGINNIS, LOCHRIDGE & KILGORE, L.L.P.

By: /s/ Steven J. Watkins

Steven J. Watkins
ATTORNEY-IN-CHARGE
State Bar No. 20927700
So. Dist. Bar No. 146

3200 One Houston Center
1221 McKinney Street
Houston, Texas 77010
Telephone: (713) 615-8500
Facsimile: (713) 615-8585

ATTORNEYS FOR DEFENDANT
C.H. ROBINSON COMPANY

---

have failed to meet this burden. Even if Plaintiffs had provided competent evidence of the allegations in
their Motion for Application of Swiss Law, the contacts described in their own pleadings demonstrate that
Texas and not Switzerland has the most significant relationship to the controversy. *See Defendant C.H.
Robinson's Response to Motion for Application of Swiss Law* at ¶¶ 26-40.

OF COUNSEL:

Karan C. Ciotti
State Bar No. 05226300
So. Dist. Bar No. 16874
McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
3200 One Houston Center
1221 McKinney Street
Houston, Texas 77010
Telephone:  (713) 615-8500
Facsimile:   (713) 615-8585

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the above and foregoing C.H. Robinson Company's Response to Plaintiffs' Amended Motion to Attach Original Affidavit to Previously Filed Motions, by facsimile and certified mail, return receipt requested, on this the 6th day of April, 2004 to the following:

Justin L. Williams
The Law Office of Justin L. Williams, P.C.
600 Leopard Street, Suite 1810
Corpus Christi, Texas 78473

Karan C. Ciotti
Karan C. Ciotti

29

United States District Court
Southern District of Texas
FILED

NOV 2 5 2003

Michael N. Milby
Clerk of Court

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **ABB KRAFTWERKE** | § | |
| **AKTIENGESELLSCHAFT, and** | § | |
| **ABB ALSTOM POWER** | § | |
| **(SWITZERLAND) LTD., formerly known** | § | **B - 0 3 - 1 9 2** |
| **as ABB POWER GENERATION, LTD.** | § | |
| | § | |
| **Plaintiffs** | § | **CIVIL ACTION NO. B:03-CV-505** |
| | § | |
| **Vs.** | § | |
| | § | |
| **C.H. ROBINSON COMPANY** | § | |
| | § | |
| **Defendant** | § | |

## DEFENDANT C.H. ROBINSON COMPANY'S
## RESPONSE TO PLAINTIFFS' MOTION FOR APPLICATION OF SWISS LAW

## TABLE OF CONTENTS

I. Statement of the Nature and Stage of the Proceedings .......................................................... 1

II. Statement of Issues to be Ruled on by the Court ................................................................ 4

III. Summary of the Argument ....................................................................................................... 5

IV. Standard of Review .................................................................................................................. 6

V. Argument and Authorities ........................................................................................................ 6

Limitations issues must be decided under the laws of the forum ................................... 7

Indemnity issues are governed by the same law as the underlying claim ..................... 7

Plaintiffs' motion may be denied for the additional reason that
Plaintiffs have wholly failed to meet their burden of proof ........................................... 8

Contacts relevant to choice-of-law analysis for tort claims .......................................... 10

Contacts relevant to choice-of-law analysis for contract claims ................................... 12

VI. Conclusion ............................................................................................................................... 15

VII. Request for Relief .................................................................................................................. 16

# TABLE OF AUTHORITIES

## Cases

*ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.,*
    115 S.W.3d 287 (Tex. App. – Corpus Christi 2003, pet. filed Nov. 12, 2003) .... 1, 8, 10, 12

*Access Telecom, Inc. v. MCI Telecommunications Corp.,* 197 F.3d 694, 705
    (5th Cir. 1999), *cert. denied,* 531 U.S. 917, 121 S.Ct. 275, 148 L.Ed.2d 200 (2000) ......... 12

*Baker Hughes, Inc. v. Keco R. & D., Inc.,* 12 S.W.3d 1, 4 (Tex. 1999) ........................... 7

*Bass v. Phoenix Seadrill/78, Ltd.,* 749 F.2d 1154, 1164 (5th Cir. 1985) ......................... 15

*Compton v. Texaco, Inc.,* 42 S.W.3d 354, 361-362
    (Tex. App. – Houston [14[th] Dist.] 2001, pet. denied) ........................................... 3

*De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1413 (5th Cir. 1995),
    *cert. denied,* 516 U.S. 865, 116 S.Ct. 180, 133 L.Ed.2d 119 (1995) ......................... 6

*Dearborn Marine Service, Inc.,* 499 F.2d 263, 287 (5th Cir. 1974) ................................. 8

*Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 421 (Tex. 1984) ................................. 6

*Edward Valves, Inc. v. Cameron Iron Works, Inc.,* 286 F.2d 933, 938-39
    (5th Cir. 1961), *cert. denied,* 82 S.Ct. 55, 368 U.S. 833, 7 L.Ed.2d 34 ............... 15

*Gutierrez v. Collins,* 583 S.W.2d 312, 318 (Tex. 1979) ........................................... 6, 10

*Hardy v. Gulf Oil Corp.,* 949 F.2d 826, 830 n. 7 (5th Cir. 1992) ................................. 7

*Hill v. Perel,* 923 S.W.2d 636, 639 (Tex. App. – Houston [1[st] Dist.] 1995, no writ) ....................... 7

*Houston Casualty Co. v. Certain Underwriters at Lloyd's London,* 51 F.Supp.2d 789, 799
    (S.D. Tex. 1999), *aff'd without published opinion,* 252 F.3d 1357 ................... 6, 9

*Hughes Wood Products, Inc. v. Wagner,* 18 S.W.3d 202, 204-205 (Tex. 1999) ............... 9

*Johansen v. E.I. DuPont De Nemours & Co.,* 810 F.2d 1377, 1381
    (5th Cir. 1987) *cert. denied,* 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104 ......................... 7

*Kansa Reinsurance Co., Ltd. v. Congressional Mortgage Corp. of Tex.,*
    20 F.3d 1362, 1368 (5th Cir. 1994) ................................................................. 7

*Klaxon Co. v. Stentor Electric Mfg. Co.*,
    313 U.S. 487, 496, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941)..................................... 6

*Marathon Pipe Line Co. v. Drilling Rig Rowan/Odessa*, 761 F.2d 229, 235 (5th Cir. 1985) ........... 8

*Maxus Exploration Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 53 (Tex. 1991) ........................ 12, 13

*McLennan v. American Eurocopter Corp., Inc.*, 245 F.3d 403, 425 (5th Cir. 2001) .............. 6, 9, 10

*Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) ...................... 15

*Perez v. Alcoa Fujikura, Ltd.*, 969 F.Supp. 991, 1003 (W.D. Tex. 1997)...................................... 13

*Schneider Nat'l Transport v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002)..................... 6, 10

*Spence v. Glock*, 227 F.3d 308, 311 n. 6 (5th Cir. 2000).................................................... 6

*St. Anthony's Hospital v. Whitfield*, 946 S.W.2d 174, 178
    (Tex. App. – Amarillo 1997, writ denied) ............................................................... 3

*Tri-State Oil Tool Indus., Inc. v. Delta Marine Drill Co.*, 410 F.2d 178, 186 (5th Cir. 1969).......... 8

*U.S. Restaurant Properties Operating, L.P., v. Burger King Corp.*,
    2003 WL 21448389, *3 (N.D.Tex 2003)............................................................. 7

## Statutes

RESTATEMENT (SECOND) OF CONFLICTS § 6 ................................................................. 10

RESTATEMENT (SECOND) OF CONFLICTS § 145 ................................................................. 10

RESTATEMENT (SECOND) OF CONFLICTS § 188 ................................................................. 12

RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 196 ................................................. 14

TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(5) ....................................................... 7

I.     **Statement of the Nature and Stage of the Proceedings**

1.     Plaintiffs ABB Kraftwerke Aktiengesellschaft ("ABB Kraftwerke") and ABB Alstom Power (Switzerland) Ltd. ("ABB Alstom") filed this suit in the Galveston Division of the United States District Court for the Southern District of Texas on July 16, 2003.   In their Original Complaint, Plaintiffs allege that C.H. Robinson breached its contract with Plaintiffs. The contract, attached hereto as Exhibit A, was for the transportation of heavy equipment from Brownsville, Texas to Monterrey, Mexico.

2.     On March 23, 1999, in the course of transferring a turbine generator manufactured by one of the Plaintiffs, an accident occurred that resulted in the death of Oscar Zamora, Sr.  The Zamora family brought suit against Plaintiffs ABB Kraftwerke and ABB Alstom, C.H. Robinson, Brownsville Barge and Crane and others.[1]   ABB Kraftwerke and ABB Alstom eventually settled the Zamora family's claims against them, as did C.H. Robinson.  Brownsville Barge and Crane filed a cross-action for indemnity against ABB Kraftwerke and ABB Alstom in the same suit and obtained a judgment against them that was recently affirmed by the Corpus Christi Court of Appeals.[2]

3.     In this lawsuit, Plaintiffs seek to recover from C.H. Robinson the amount of the settlement they paid and the defense costs they incurred in the Zamora lawsuit.  They also seek the amount of the judgment rendered against them and all defense costs they incurred in the indemnity action brought by Brownsville Barge & Crane.  Plaintiffs also seek recovery of all

---

[1]  The claims were brought in a suit styled Cause No. 99-04-1644-E, *Graciela Zamora, et al. v. ABB Kraftwerke Aktiengesellschaft, et al.,* In the 357th Judicial District Court of Cameron County, Texas (hereinafter "the Zamora lawsuit").

[2]  *ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.,* 115 S.W.3d 287 (Tex. App. – Corpus Christi 2003, pet. filed Nov. 12, 2003).

1

sums paid to C.H. Robinson under the terms of the contract. *Plaintiffs' Original Complaint* at ¶¶ 27-29.

4.    Defendant C.H. Robinson was served with this suit on August 4, 2003, and filed a Rule 12(b)(6) motion to dismiss on August 25, 2003. The bases of C.H. Robinson's motion to dismiss are (a) Plaintiffs' claim for breach of contract arises from purported breaches that occurred on or before March 23, 1999 and is therefore barred by limitations since suit was not filed until July 16, 2003, and (b) Plaintiffs' claim for breach of contract is actually a claim for indemnity that is not supported by Texas law.

5.    Plaintiffs filed a Response to Defendant's Motion to Dismiss ("First Response") and a Motion for Leave to File First Amended Original Complaint on or about September 19, 2003.[3] The gist of Plaintiffs' First Response is that the limitations period on a claim for breach of contract does not begin to run from the date of the alleged breach but from the date the claimant suffers out-of-pocket damages.

6.    C.H. Robinson filed a reply to Plaintiffs' response on September 27, 2003, citing additional case law to support the long-standing rule of law in Texas that a cause of action for breach of contract accrues on the date of breach.

7.    On October 3, 2003, Plaintiffs filed a response to C.H. Robinson's reply ("Second Response"). The Second Response asserts that Plaintiffs "amended their complaint to clarify some of their causes of action based on vicarious liability which is the last vestige of common law indemnity," Second Response at ¶ 3, and that the limitations period for this indemnity claim did not begin to run until payment of settlement of the Zamora family's claims, or the date judgment was entered against them and in favor of Brownsville Barge and Crane. *Id.* at ¶¶ 4-5,

---

[3] The motion for leave to amend their complaint has not yet been ruled on, and the proposed amendment, if granted, would not preclude the granting of C.H. Robinson's Rule 12(b)(6) motion to dismiss.

14. Plaintiffs base this indemnity claim on their unsupported allegation that C.H. Robinson was acting as Plaintiffs' agent on the project during which the accident occurred. Plaintiffs' proposed Amended Complaint at ¶ 23.

8.       C.H. Robinson sought and obtained leave to file a surreply, which was filed on October 21, 2003. The basis of that Surreply is that, regardless of whether C.H. Robinson was acting as Plaintiffs' agent on the project in question (which C.H. Robinson denies), C.H. Robinson's Motion to Dismiss should still be granted. Agency is not dispositive of a right to common-law indemnity. To state a claim for common-law indemnity, it is not sufficient to simply allege that the indemnitor was acting as the indemnitee's agent. Plaintiffs have no claims for common-law indemnity unless the sole theory of liability against Plaintiffs in the Zamora lawsuit was vicarious liability for the purported negligence of C.H. Robinson. *See Compton v. Texaco, Inc.,* 42 S.W.3d 354, 361-362 (Tex. App. – Houston [14th Dist.] 2001, pet. denied) (holding common-law indemnity unavailable to party that settled claims of direct liability, as opposed to being held vicariously liable for the conduct of another); *St. Anthony's Hospital v. Whitfield,* 946 S.W.2d 174, 178 (Tex. App. – Amarillo 1997, writ denied) (holding that hospital's common-law claim for indemnity was not extinguished where sole theory of liability against hospital in underlying lawsuit was *respondeat superior* liability for negligence of employee). This is not the case. The Zamora family asserted claims against ABB Kraftwerke and ABB Alstom for negligence and products liability – claims of direct liability – and made no claim for vicarious liability. Ex. B, Thirteenth Amended Original Petition (in Zamora lawsuit) at ¶ IV. C.H. Robinson attached to its Surreply copies of the last two petitions filed in the Zamora lawsuit, thereby establishing the nature of the claims against Plaintiffs in the underlying litigation. C.H. Robinson asked the Court to take judicial notice of the petitions and provided

3

case law holding that submission of this evidence did not convert a Rule 12(b)(6) motion to dismiss into a motion for summary judgement.

9.      Plaintiffs then filed a motion for leave to file a third response, which the Honorable Samuel B. Kent denied on October 27, 2003. Plaintiffs then filed an amended motion to leave to file a third response, which was likewise denied, on October 29, 2003. The order stated there were sufficient pleadings on file to allow the Court to rule on the matters before it.

10.     Also on October 29, 2003, Judge Kent entered a *sua sponte* order of transfer. The order notes the controversy's "paucity of contacts with the Galveston Division" *and "substantial connections* to the Brownsville Division." (emphasis added)

11.     On November 1, 2003, Plaintiffs filed the motion at hand, urging the Court to apply Swiss law to this controversy. Defendant C.H. Robinson responds as follows:

## II.    Statement of Issues to be Ruled on by the Court

12.     (a)     Whether Swiss law or Texas law applies to the procedural issue of limitations;

        (b)     Whether Swiss law or Texas law applies to the indemnity issue, given that the Plaintiffs seek indemnification for amounts paid or adjudged on claims brought under Texas law; and

        (c)     Assuming *arguendo* that Texas law does not, as a matter of law, apply to the limitations and indemnity issues, whether Plaintiffs have satisfied their burden on choice of law by producing evidence of a substantial connection between this controversy and Switzerland.

### III.    Summary of the Argument

13.    Choice-of-law determinations are made on an issue by issue basis. The only issues in this case are (1) whether limitations bars Plaintiffs' cause of action for breach of contract, and (2) whether there is a cognizable basis for Plaintiffs' common-law indemnity claim. Texas law must apply to the determination of both these issues.

14.    Matters of procedure and remedy are determined by the laws of the forum State, regardless of whether the cause of action alleged arises under the laws of another State. Statutes of limitation are procedural in nature and hence, Texas statutes of limitation apply to Plaintiffs' claim, regardless of whether the laws of another State might determine substantive aspects of the case.

15.    Similarly, as a matter of law and without regard to whether Texas or Switzerland has the more substantial connection to this controversy, the viability of Plaintiffs' indemnity claim must be determined by Texas law. The Fifth Circuit has held that the body of law that governs a claim for indemnity is the same body of law that establishes the indemnitee's (here ABB Kraftwerke and ABB Alstom) primary liability to the plaintiff (here, the Zamora family and Brownsville Barge and Crane). Because Texas law governed ABB Kraftwerke and ABB Alstom's primary liability, it must also determine their right to indemnity.

16.    Even if the limitations and indemnity issues were not to be determined, as a matter of law, by Texas law, Plaintiffs' Motion for Application of Swiss law should still be denied. Plaintiffs have the burden but have failed to demonstrate the existence of an actual conflict between Swiss and Texas law. Assuming there is a conflict, Plaintiffs then have the burden of establishing by competent evidence that the laws of Switzerland have the most significant relationship to Plaintiffs' claims. Again, Plaintiffs have failed to meet this burden.

Indeed, Plaintiffs own pleadings demonstrate the Texas law has the most significant relationship to their claims.

**IV.     Standard of Review**

17.     The district court's choice-of-law determination is reviewed *de novo*. *McLennan v. American Eurocopter Corp., Inc.*, 245 F.3d 403, 425 (5th Cir. 2001).

**V.     Argument and Authorities**

18.     In diversity cases, federal courts apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1413 (5th Cir. 1995), *cert. denied*, 516 U.S. 865, 116 S.Ct. 180, 133 L.Ed.2d 119 (1995). Texas courts apply the "most significant relationship test" in deciding choice-of-law questions. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984); *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979). Choice-of-law determinations are made on an issue-by-issue basis. *Duncan*, 665 S.W.2d at 421; *Spence v. Glock*, 227 F.3d 308, 311 n. 6 (5th Cir. 2000). The choice-of-law determination is normally preceded by an analysis of the substantive law, so the court may assess whether the laws of the States conflict. If they do not, then no choice-of-law analysis is necessary. *Schneider Nat'l Transport v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002).

19.     Plaintiffs have the burden but have failed to demonstrate the existence of an actual conflict between Texas and Swiss law. *Houston Casualty Co. v. Certain Underwriters at Lloyd's London*, 51 F.Supp.2d 789, 799 (S.D. Tex. 1999), *aff'd without published opinion*, 252 F.3d 1357. Nor have they shown by competent evidence that Swiss law has the most significant relationship to their claims. Nor have they identified the issues to which they ask the Court to

apply Swiss law. Fortunately, given the nature of the two issues before the Court, Plaintiffs'
omissions do not prevent the Court's determination of Plaintiffs' motion.

### *Limitations issues must be decided under the laws of the forum*

20.     The first issue before the Court, raised in C.H. Robinson's motion to dismiss, is
whether limitations bars Plaintiffs' breach of contract claim. Texas law will determine this issue.

21.     The laws of the forum state govern matters of procedure, regardless of whether
the laws of another state may govern substantive matters. *Johansen v. E.I. DuPont De Nemours
& Co.,* 810 F.2d 1377, 1381 (5th Cir. 1987) *cert. denied,* 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d
104; *U.S. Restaurant Properties Operating, L.P., v. Burger King Corp.,* 2003 WL 21448389, *3
(N.D.Tex 2003*), citing Hill v. Perel,* 923 S.W.2d 636, 639 (Tex. App. – Houston [1st Dist.] 1995,
no writ). Texas choice-of-law rules regard statutes of limitation as procedural, and therefore
require the application of Texas statutes of limitation. *Baker Hughes, Inc. v. Keco R. & D., Inc.,*
12 S.W.3d 1, 4 (Tex. 1999); *Johansen,* 810 F.2d at 1381. Because Plaintiffs filed their claims in
a court sitting in Texas, Texas's four-year statue of limitation for breach of contract actions
applies to and bars Plaintiffs' purported breach of contract claim. TEX. CIV. PRAC. & REM.
CODE ANN. § 16.004(a)(5) (limitation statute for breach of contract); *Kansa Reinsurance Co.,
Ltd. v. Congressional Mortgage Corp. of Tex.,* 20 F.3d 1362, 1368 (5th Cir. 1994) (limitations for
breach of contract in Texas is four years).

### *Indemnity issues are governed by the same law as the underlying claim*

22.     The second issue before the Court, raised by C.H. Robinson's Motion to Dismiss,
is whether Plaintiffs have a viable indemnity claim. This issue, like limitations, must also be
decided by Texas law. The Fifth Circuit has held that indemnity issues are governed by the same
law that was applied in the underlying lawsuit. *Hardy v. Gulf Oil Corp.,* 949 F.2d 826, 830 n. 7

7

(5th Cir. 1992) (holding that because maritime law established the plaintiff's cause of action against defendant, it should govern defendant's claim for indemnity against a co-defendant); *Marathon Pipe Line Co. v. Drilling Rig Rowan/Odessa*, 761 F.2d 229, 235 (5th Cir. 1985) ("This court has held that the body of law establishing the indemnitee's primary liability governs his claim for indemnity or contribution against a third party."), *citing Tri-State Oil Tool Indus., Inc. v. Delta Marine Drill Co.*, 410 F.2d 178, 186 (5th Cir. 1969) and *In re Dearborn Marine Service, Inc.*, 499 F.2d 263, 287 (5th Cir. 1974).

23.    The Zamora lawsuit, including Brownsville Barge and Crane's claim for indemnity against Plaintiffs herein, was governed by Texas law. The Zamora family sought redress against both Plaintiffs and Defendant herein under Texas law. *See* Ex. B, Plaintiffs' Thirteenth Amended Original Petition at p. 5 (wherein the Zamora family seeks relief under the Texas Wrongful Death and Survival statutes). Likewise, Brownsville Barge and Crane sought and obtained a judgment against Plaintiffs herein under Texas law. *ABB Kraftwerke*, 115 S.W.3d at 291 ("Under <u>Texas</u> law, the requirements of a binding contract are . . ."). The Corpus Christi Court of Appeals, in determining all substantive issues in Plaintiffs' appeal of the judgment against them, cites 18 Texas cases, and makes no reference to the laws of any other State. *Id.* at pp. 291-94.

24.    Because Texas law governed the claims of the Zamoras and Brownsville Barge and Crane, Texas law must govern determination of the indemnity issue in this case.

> ***Plaintiffs' motion may be denied for the additional reason that Plaintiffs have wholly failed to meet their burden of proof.***

25.    Even if the limitations and indemnity issues were not to be determined, as a matter of law, by Texas law, Plaintiffs' motion should still be denied. Plaintiffs have not demonstrated the existence of a conflict between Texas and Swiss law, and they have failed to

show a connection between this controversy and Switzerland that outweighs the significant relationship between the controversy and the State of Texas.

26.     Plaintiffs are obligated to demonstrate the existence of an actual conflict between Texas and Swiss law. *Houston Casualty Co.,* 51 F.Supp.2d at 799. Plaintiffs do not even make mention of the substance of Swiss law in their motion, much less provide any comparison with Texas law. Plaintiffs also have the burden of proving that the relevant facts predominate in favor of applying Swiss law, i.e., that Switzerland has the most significant relationship to Plaintiffs' claims. *McLennan,* 245 F.3d at 426; *Hughes Wood Products, Inc. v. Wagner,* 18 S.W.3d 202, 204-205 (Tex. 1999). Again they have failed to meet this burden. Even if Plaintiffs had provided competent evidence of the allegations in their motion, the contacts described in their own pleadings demonstrate that Texas and not Switzerland has the most significant relationship to the controversy.

27.     The factors relevant to a determination of which State has the most significant relationship to the controversy are set out in Section 6 of the Restatement. They are:

        (a) the needs of the interstate and international systems,

        (b) the relevant policies of the forum,

        (c) the relevant policies of other interested states and the relative interests of these states in the determination of the particular issue,

        (d) the protection of justified expectations,

        (e) the basic policies underlying the particular field of law,

        (f) certainty, predictability, and uniformity of the result, and

        (g) ease in the determination and application of the law to be applied.

*Gutierrez v. Collins*, 583 S.W.2d 312, 318-319 (Tex. 1979); *citing* RESTATEMENT (SECOND) OF CONFLICTS § 6. The Restatement also sets out the contacts that should be taken into consideration in analyzing these factors for both tort and contract claims.

### *Contacts relevant to choice-of-law analysis for tort claims*

28. With regard to tort claims such as Plaintiffs' claim for common-law indemnity, the contacts to be taken into account in assessing the factors listed in Section 6 of the Restatement, and thereby the "most significant relationship," are:

> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil, residence, nationality, place of incorporation, and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.

*McLennan*, 245 F.3d at 425-26; *Gutierrez*, 583 S.W.2d at 319, *citing* RESTATEMENT (SECOND) OF CONFLICTS § 145. These all weigh in favor of application of Texas law.

29. **Place of injury.** The injury, as Plaintiffs would define it, is the payment of settlement to the Zamora family; the entry of judgment in favor of Brownsville Barge & Crane; and the accrual of attorney fees. *See* Plaintiffs' Second Response, ¶¶ 9, 11. All of these events occurred in Texas. Ex. B, Zamora Plaintiffs' Thirteenth Amended Original Petition (filed in Cameron County, Texas, and noting that the Zamora plaintiffs are citizens and residents of the State of Texas, and that ABB Kraftwerke and ABB Alstom's counsel of record is Justin Williams of Corpus Christi); *ABB Kraftwerke*, 115 S.W.3d at 287 ("[T]he 404th District Court, Cameron County . . . entered summary judgment for crane owner . . . ."; and also noting that Justin Williams of Corpus Christi is counsel for appellants); *see also Schneider Nat. Transport v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002) (holding, in a suit concerning interpretation of

an insurance policy and payment of defense costs in underlying litigation, that Texas law applied where all defense costs were incurred in Texas and involved Texas attorneys).

30.    **Place of conduct causing injury.**  The cause of Plaintiffs' injuries and the ultimate source of this lawsuit are the events of March 23, 1999, at the Port of Brownsville, that resulted in the death of Mr. Zamora and led to the filing of the underlying lawsuit.  The events took place in the State of Texas, as is clear from Plaintiffs' own Complaint.  Complaint at ¶¶ 3-18.

31.    **Residence and place of business.**  C.H. Robinson denies Plaintiffs' contention that it was not or is not a resident of the State of Texas.  C.H. Robinson had at least nine locations in Texas in early 1999.  All nine of those offices are still doing business in Texas.  Ex. A, Affidavit of Thomas J. Sandstrom, ¶ 6.  The C.H. Robinson representative who negotiated the contract at issue officed in Keller, Texas.  *Id.* at ¶ 5.    This is apparent from the face of correspondence exchanged between Plaintiff ABB Alstom (fka ABB Power Generation Ltd.) and C.H. Robinson, and on the face of the contract.  Ex. A.1 at CHR ABB 00041, 00045, 00047, 00050, 00054, 00058.

32.    **Place where relationship is centered.**  It is, again, apparent from Plaintiffs' Complaint, as well as from the contract between the parties, that the relationship between the parties was centered in Texas.   The C.H. Robinson representative who negotiated the contract officed in Texas (*Id.;* Ex. A at ¶ 6); ABB Alstom transferred possession of the generator to C.H. Robinson in Texas (Complaint at ¶ 5); C.H. Robinson's performance of the contract began in Texas (*Id.* at 6); the alleged "breaches" of which Plaintiffs complain purportedly took place at the Port of Brownsville, in Texas (*Id.* at ¶¶ 13-18); the Zamora family sought and obtained the relief for which Plaintiffs seeks indemnity in state court in Cameron County, Texas (*Id.* at ¶¶ 18,

11

29; Ex. B); Brownsville Barge and Crane obtained the judgment for which Plaintiffs seek indemnity in state court in Cameron County, Texas (Complaint at ¶¶ 18; 28; *ABB Kraftwerke,* 115 S.W.3d at 287); and Plaintiffs incurred attorney fees, generated by a Texas attorney, and for which Plaintiffs also seek indemnity, in Texas (Complaint at ¶¶28-30; Ex. B; *ABB Kraftwerke,* 115 S.W.3d at 287). Thus, the parties' relationship is centered in Texas, and this dispute has its most significant relationship with the State of Texas.

### *Contacts relevant to choice-of-law analysis for contract claims*

33.     If Plaintiffs' contentions can be seriously construed as a breach of contract claim, the factors to be considered are:

> (a) the place of contracting,
>
> (b) the place of negotiation of the contract,
>
> (c) the place of performance,
>
> (d) the location of the subject matter of the contract, and
>
> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties

*Access Telecom, Inc. v. MCI Telecommunications Corp.,* 197 F.3d 694, 705 (5th Cir. 1999), *cert. denied,* 531 U.S. 917, 121 S.Ct. 275, 148 L.Ed.2d 200 (2000); *Maxus Exploration Co. v. Moran Bros., Inc.,* 817 S.W.2d 50, 53 (Tex. 1991), *citing* RESTATEMENT (SECOND) OF CONFLICTS § 188. Plaintiffs have failed to present competent evidence to address any of these factors.

34.     Plaintiffs contend, without support, that the "place of contracting" is Switzerland, that "the place of negotiation of the contract is the country of Switzerland," that the location of some unidentified subject matter of the contract is Switzerland, and that the "domicil, residence, nationality, place of incorporation and place of business" of the "Plaintiffs' contracting party is Swiss." Plaintiffs' Motion for Application of Swiss Law at ¶ 4. Plaintiffs more specifically

12

contend that C.H. Robinson negotiated and signed the contract at issue in Switzerland, *Id.* at ¶ 6; that no party is a resident of the State of Texas and that Texas has no interest in applying its laws to the dispute, *Id.* at ¶ 7; that "all documentation with regard to the subject matter was either obtained by C.H. Robinson while in Switzerland or sent to Defendant from Switzerland," *Id.* at ¶ 8; that "the domicile of the Plaintiffs who has [sic] filed this lawsuit is Swiss," *Id.* at ¶ 9; and that C.H. Robinson maintains no resident or office in Texas, *Id.* at ¶ 12.

35.    **Place of contracting and negotiation of contract.**  C.H. Robinson acknowledges that the contract was signed in Switzerland, but denies that the negotiation of the contract occurred primarily in Switzerland.  It is apparent from attachments to the contract, incorporated into the contract by reference, and from correspondence between C.H. Robinson's Keller, Texas office and ABB Power Generaltion Ltd., that the contract was negotiated between C.H. Robinson in Texas and ABB Alstom's predecessor in Switzerland. Ex. A.1 at CHR ABB 00043, ¶ 2 (incorporating certain documents into contract), and at CHR ABB 00045, 00047, 00054-57. C.H. Robinson's representative submitted the quotation and other details concerning the project from the C.H. Robinson office in Keller, Texas, as is apparent from his letterhead.  Ex. A.. at CHR ABB 00045, 00047, 00050.  And ABB Power Generation returned its acceptance of C.H. Robinson's proposal to C.H. Robinson's Keller, Texas office, via facsimile.  Ex. A.1 at CHR ABB 00054-57.

36.    **Place of performance.**   Regardless of where the contract was signed and negotiated (and to the extent that Plaintiffs are actually asserting a claim for breach of contract), a contract for rendition of services is presumptively enforced under the laws of the state where the contract requires the services be rendered.  *Maxus Exploration Co. v. Moran Bros., Inc.,* 817 S.W.2d  50, 53 (Tex. 1991); *Perez v. Alcoa Fujikura, Ltd.,* 969 F.Supp. 991, 1003 (W.D. Tex.

1997); RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 196.  The contract called for performance in Texas and Mexico.  There is no mention in the contract of any services to be performed in Switzerland.  Ex. A, p. 3 at ¶ 3.  Plaintiffs' Complaint affirms that the C.H. Robinson's performance was limited to Texas and Mexico.  Plaintiffs' Original Complaint, ¶ 5. ("The generators were to be transported from Mannheim, Germany to the Port of Brownsville. This part of the voyage was the responsibility of ABB.  From Brownsville, the generator was to go by rail to Monterrey, Mexico.  This was the responsibility of C.H. Robinson.")

37.    **Location of the subject matter of the contract.**  The contract is a contract for services, and those services were to be performed by C.H. Robinson in Texas and Mexico.  C.H. Robinson denies Plaintiffs contention that "all documentation with regard to the subject matter was either obtained by Defendant while Switzerland or sent to Defendant from Switzerland," and also denies that documents exchanged between the parties are the subject matter of the contract.

38.    **Domicile, residence and place of business of the parties.**  Plaintiffs contend that "the domicile of the Plaintiffs who has [sic] filed this lawsuit is Swiss," and that their "contracting party" is Swiss.  Plaintiffs' Motion for Application of Swiss Law at ¶¶ 4, 9.  They fail to note that, by their own admission, ABB Kraftwerke is organized under the laws of the Republic of Germany.  Plaintiffs' Original Complaint at ¶ 1.  And again, C.H. Robinson, though domiciled in Minnesota, maintained an office in Texas at the time of the events giving rise to this suit.

39.    The factors set out in Section 6 of the Restatement, *supra* at ¶ 27, are satisfied by the application of Texas and not Swiss law.  Given that the underlying claims in the Zamora litigation, including Brownsville Barge & Crane's cross claim, were governed by Texas law,

14

Texas has a strong interest in the application of its own laws to this dispute.[4]  Application of Texas law protects the justified expectations of the parties, predictability and uniformity of results, and ease in determination and application of law.  To hold otherwise would discourage settlement of litigation, which public policy and the law always encourage.  *Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1164 (5th Cir. 1985); *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977); *Edward Valves, Inc. v. Cameron Iron Works, Inc.*, 286 F.2d 933, 938-39 (5th Cir. 1961), *cert. denied*, 82 S.Ct. 55, 368 U.S. 833, 7 L.Ed.2d 34.  C.H. Robinson settled its liability to the Zamora family with the understanding that, under Texas law, its co-defendants in that case could not later seek indemnity from C.H. Robinson for their own liability.  To allow C.H. Robinson's former co-defendant to seek indemnity for all its losses in the underlying suit by application of some unspecified Swiss law to a sham breach contract claim would discourage settlement and undermine the public policy favoring resolution of disputes.

40.    Any connection between this controversy and Switzerland is far outweighed by the controversy's significant relationship with the State of Texas.  This is established by the Plaintiffs' own pleadings and other documents of public record, including pleadings filed in the underlying case and the opinion issued by the Corpus Christi Court of Appeals, and by the contract and other documents in C.H. Robinson's contract file.

## VI.    Conclusion

41.    Plaintiffs' motion to apply Swiss law should be denied.  The law of Texas, the forum state, must be applied, as a matter of law, to limitations and indemnity issues.  Even if this were not the case, Plaintiffs' failure to demonstrate the existence of an actual conflict between Swiss and Texas law, and their failure to present competent evidence of significant contacts

---

[4] By failing to assert the applicability of Swiss law in the underlying lawsuit, Plaintiffs have waived the right to make that assertion here.

between this controversy and Switzerland, necessitate denial of their motion. Plaintiffs' own pleadings, the pleadings in the underlying case, and the contract documents demonstrate that the controversy's most significant relationship is with the State of Texas.

**VII.    Request for Relief**

42.    For these reasons, C.H. Robinson asks the Court to deny Plaintiffs' Motion for Application of Swiss Law, to dismiss Plaintiffs' suit in its entirety with prejudice, and grant C.H. Robinson such other and further relief to which it is justly entitled.

Respectfully submitted,

MCGINNIS, LOCHRIDGE & KILGORE, L.L.P.


By:    *Karen C. Ciotti*
_____
Steven J. Watkins
ATTORNEY-IN-CHARGE
State Bar No. 20927700
So. Dist. Bar No. 146

3200 One Houston Center
1221 McKinney Street
Houston, Texas 77010
Telephone:  (713) 615-8500
Facsimile:  (713) 615-8585

ATTORNEYS FOR DEFENDANT
C.H. ROBINSON COMPANY

16

OF COUNSEL:

Karan C. Ciotti
State Bar No. 05226300
So. Dist. Bar No. 16874
McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
3200 One Houston Center
1221 McKinney Street
Houston, Texas 77010
Telephone:  (713) 615-8500
Facsimile:  (713) 615-8585


## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the above and foregoing Defendant C.H. Robinson Company's Response to Plaintiffs' Motion for Application of Swiss Law by facsimile and by certified mail, return receipt requested, on this the 24th day of November, 2003 to the following:

Justin L. Williams
The Law Office of Justin L. Williams, P.C.
600 Leopard Street, Suite 1810
Corpus Christi, Texas 78473

Karan C. Ciotti

## AFFIDAVIT OF THOMAS J. SANDSTROM

STATE OF MINNESOTA            §
                                     §

COUNTY OF HENNEPIN            §

On this day, Thomas J. Sandstrom appeared before me, the undersigned notary public. After I administered an oath to him/her, upon his/her oath, he/ she said:

1. My name is Thomas Sandstrom. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I am the Assistant General Counsel for C.H. Robinson Company. In that capacity, I maintain the written contracts with our customers, including the contract file attached hereto and Bates-labeled CHR ABB 00041- 00058. C.H. Robinson's contract files, like the attached, contain documents relating to contracts between C.H. Robinson Company and its customers.

3. Attached to this affidavit are 18 pages of records, constituting the contract file for the contract entered into between C.H. Robinson Company and ABB Power Generation Ltd. in February 1999.

4. These records are kept by C.H. Robinson Company in the regular course of business. Also, it was the regular course of C.H. Robinson Company's business for an employee or representative of C.H. Robinson Company with knowledge of the acts, events, conditions, or opinions contained in the records to make the records or transmit information to be included in the records. The records attached to this affidavit were made at, near, or reasonably soon after the time of the acts, events, and conditions set forth by, or from information transmitted by, a person with knowledge of these matters. The attached records are the original records or exact duplicates of the original records.

5. As Assistant General Counsel for C.H. Robinson, I also have personal knowledge that C.H. Robinson Company maintained an office in Keller, Texas from 1995 until late 1999, when the company was restructured and the Keller office became part of C.H. Robinson Company, L.P. The Keller office moved to Fort Worth in 2000 and is still doing business. Jim Hamilton, who negotiated the contract with ABB Power Generation Ltd., was with C.H. Robinson's Keller office.

1

6. At the time of the accident that resulted in Mr. Zamora's death, C.H.
Robinson had at least nine locations in Texas. All nine of those offices are
now part of C.H. Robinson Company, L.P., and are still doing business in
Texas.

Name: Thomas J. Sandstrom
Title: Assistant General Counsel

SWORN TO and SUBSCRIBED before me by ___Thomas J. Sandstrom___ on 24th
November, 2003.

JANE M. RIEF
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES
JANUARY 31, 2005

Notary Public, State of Minnesota

Jane Rief

(Printed or Stamped Name of Notary)

My Commission Expires: 1-31- 05

2

| AGREEMENT: | Project MONTERREY MEXICO | off shore | 1/13 |
| --- | --- | --- | --- |

| AGREEMENT NO. | : | 159 |
| --- | --- | --- |
| DATE OF AGREEMENT SIGNATURE | : | February 16, 1999 |
| DATE OF AGREEMENT REVISIONS | : | |

# TRANSPORTATION OF HEAVY COMPONENTS

for

# MONTERREY, MEXICO

between

# ABB POWER GENERATION LTD
# BADEN, SWITZERLAND
## (THE COMPANY)

and

# C.H. ROBINSON
# KELLER, TEXAS – U.S.A.

## (THE OPERATOR)

CHR ABB 00041

APR 15 '99 16:55 FR ROBINSON     817 431 3425 TO 95776040     P.02/13

| AGREEMENT: | Project MONTERREY | | |
|---|---|---|---|
| | MEXICO | off shore | 2/13 |

| AGREEMENT NO. | : | 159 |
|---|---|---|
| DATE OF AGREEMENT SIGNATURE | : | February 16, 1999 |
| DATE OF AGREEMENT REVISIONS | : | |

## INDEX:

1.   **Preamble**

2.   **Basis of Order**

3.   **Scope of Work**

4.   **Time Schedule**

5.   **Price**

6.   **Terms of Payment**

7.   **Liability**

8.   **Correspondence**

9.   **Signatures**

CHR ABB 00042

Revision 4.0, 98-02-26

| AGREEMENT: | Project MONTERREY | | |
|---|---|---|---|
| | MEXICO | off shore | 3/13 |

| AGREEMENT NO. | : | 159 |
|---|---|---|
| DATE OF AGREEMENT SIGNATURE | : | February 16, 1999 |
| DATE OF AGREEMENT REVISIONS | : | |

## 1.    PREAMBLE

The Operator and the Company enter into this Agreement for the execution of heavy components for the MONTERREY Power Plant, N.L., Mexico, as per attached drawings HDST 301865 / HDST 201552 / HDST 301865.

## 2.    BASIS OF ORDER

The following conditions and documents form an integral part of this Agreement:

- ◆  C.H. ROBINSON COMPANY quotation dated January 30, 1999 and February 5, 1999, the latter to cover the quotation for two (2) transformers 526x269x370 cm / 49`969 grosskos, each.

## 3.    SCOPE OF WORK

Transport from Brownsville, Texas via Matemoros / Apodaca to the MONTERREY Power Plant Project in full accordance with Mexican Law and Operator's quotations as defined in Par. 2.

## 4.    TIME SCHEDULE

Between February 27, 99 up to approx end of July, 99 as per Company's specific schedule to provide in due course.

## 5.    PRICE + 6. Termins of payments

1st payment: USD 258`902.00 after contract signature
2nd payment: USD 54`222.69 after delivery of 2nd Thermal Block

## 6.    TERMS OF PAYMENT

Payable net 10 days.

CHR ABB 00043

Revision 4.0, 98-02-26

| AGREEMENT: | Project MONTERREY | | |
| | MEXICO | off shore | 4/13 |

| AGREEMENT NO. | : | 159 |
| DATE OF AGREEMENT SIGNATURE | : | February 16, 1999 |
| DATE OF AGREEMENT REVISIONS | : | |

## 7.  LIABILITY

The Operator will provide the following proof of liability coverage:

- AMFELS, BROWNSVILLE
   (Crane Operator)
- SCHAEFER BROWNSVILLE
   (Stevedoring / Rigger)
- BRI,  Brownsville
   Rio Grande
   International
   (Railroad)

## 8.  CORRESPONDENCE

Unless otherwise agreed all correspondence to be addressed to:

ABB Power Generation Ltd
Dep. KWGP-L
CH-5401 Baden / Switzerland

att. Mr Sandro Lepori
General Manager / Transportlogistics
Gas Turbine and Combined-Cycle Power Plants

Tel.:    +41 56/ 205 58 02 or +41 56/ 205 30 86
Fax:    +41 56/ 205 61 82

## 8.  SIGNATURES

Executed for            )
and on behalf of        )
ABB Power Generation    )    Date:
Baden, Switzerland

Agreed and accepted for )
and on behalf of        )
C.H. ROBINSON           )    Date: *February 16, 1999*

CHR ABB 00044

Revision 4.0. 98-02-26

**C.H. ROBINSON COMPANY**

$10\sqrt{5}$



January 30, 1999

Mr. Sandro Lepori
General Manager Transport Logistics
Gas Turbine and Combined-Cycle Power Plants
ABB Power Generation Ltd.
Dept. KWGF-L
CH-5401 Baden / Switzerland

129 Keller Hicks Road
Keller, TX
76248-4428
817.431.3146
fax 817.431.3425

Dear Sandro,

Please refer to your memo of January 19, 1999 concerning the movement of a generator, transformer and gas turbine from Brownsville, Texas to ABB plant site southeast of Huinala, Mexico. Below please find our price to A). Move pieces from Brownsville, Texas to the jobsite; and B). Set pieces on foundations:

valid for 3 pieces

A). **$355,860\* (Three Hundred Fifty Five Thousand Eight Hundred Sixty Dollars) U. S.**
\* Plus Mexican E. V. A. tax of 15%

Price Includes:
All transportation and logistics management plan
3 Heavy Duty Rail Cars (12 Axle)
Unloading 325 Ton Generator from lash barge to rail car
Tie down to rail cars for all 3 pieces
Transloading (Jack and Skid) from rail cars to OTR Transporters
Tie down to OTR Transporters
All permits, grading, and re-conditioning of rail spur and overpass to site

B). **$225,285\* (Two Hundred Twenty Five Thousand Two Hundred Eighty Five Dollars) U. S.**
\* Plus Mexican E. V. A. tax of 15%

valid for 4 pieces

Price Includes:
1). Supply of Gantry, Labor, and all temporary materials required to perform the rigging operations.
2). Price is based on having no interferences at job site so as to allow setting of gantry in the area required for the rigging operations.
3). Price is based on having transformers module along side of the foundation which calls for only one operation.

*Above quotation subject to attached qualification sheet*

In closing please find a plan overview. We look forward to discussing any questions you may have.

Best Regards,

Jim Hamilton
General Manager - Multimodal Heavy Transport

CHR ABB 00045

# Transportation Bid Qualifications

Rates based upon weights and dimensions supplied by customer. Changes or omission of details from shipper's original information can affect pricing and ability to provide clearance.

Subject to further technical drawings and/or details, including projection orientations and center of gravity.

Rates are contingent upon clearance of participating carriers.

Cargo is to be loaded per AAR, Federal, State and Local Rules and Regulations.

Loading and unloading to be the responsibility of others, unless specifically defined in our quotation.

This proposal does not include tarps or covers to lading. If required, service may be provided at additional cost.

Charges relating to excess demurrage or detention is responsibility of shipper and /or consignee.

Shipping delays due to weather and acts of God are at risk and expense of shipper.

Price does not include any liability. Liability is the responsibility of shipper unless liability has been requested and specifically provided in quotation.

~~All quotations are subject to availability of equipment and personnel.~~

Unless stated otherwise, this quotation is effective for 45 days from date of issuance.

~~The coordination of equipment and clearances for this movement will require 30 days.~~

Payment terms are 35% down, net balance 10 days from job completion.

Activities related to this movement will begin upon receipt of a purchase order or written authorization to proceed from the shipper.

Qualifications _____

_____

_____

| | |
|---|---|
| Quotation Submitted By: | Accepted & Authorized By: **ABB Power Generation Ltd.** Transport Logistics Dept. KWGP-L CH-5401 Baden |
| Name _____ | Name _____ |
| C. H. Robinson, Company | Company _____ |
| Date 1/30/99 | Date 2/1/99 |

CHR ABB 00046

C.H. ROBINSON COMPANY



129 Keller Hicks Road
Keller, TX
76248-4438
817.431.3146
fax 817.431.3125

January 30, 1999

Sandro,

As we have discussed, our plan is to receive the turbine and transformer from the MV Jumbo Spirit in Brownsville February 2. We have secured 2 rail cars that will be spotted on track 2, Dock 11 at the port. Attached please find the port drawing, as well as a photo of the vessel Petrel Arrow which is docked at Dock 11. From the side of the vessel to the track center is 25 feet. We need to ensure the vessel gear has enough reach to set pieces on rail cars.

We have also secured a 700 ton barge crane to unload the generator from a lash barge at the same location. We are in need of a date to identify which rail car we will utilize for this movement.

We have met with the Brownsville & Rio Grande International Railroad, who will provide the service from the Port to the TFM in Matamoros. All pieces have been cleared from the Port to the siding at Apodoca, Mexico.

With our award of the project, we will immediately begin formal planning which will include detailed timeline, procedures, calculations, and drawings as required.

Please do not hesitate to call me at home on Sunday (817) 431-9401 to discuss any thoughts, questions or ideas you may have. I will be watching the Super Bowl, so have your team selected and ready to wager.

Warmest Regards,



CHR ABB 00047



Port of
Brownsville
Dock 11, Track 2
25' From Ship

CHR ABB 00048



CHR ABB 00049

FEB-15-99 16:37 FR C.R. ROBINSON    817 431 3425 TO    29377840    P.10/13

C. H. Robinson Company



129 Keller Hicks Road
Keller, TX
76248-4438
817.431.3146
fax 817.431.3425

February 5, 1999

Mr. Sandro Lepori
General Manager Transport Logistics
Gas Turbine and Combined-Cycle Power Plants
ABB Power Generation Ltd.
Dept. KWGP-L
CH-5401 Baden / Switzerland

Dear Sandro,

Please refer to your fax of February 3, 1999, concerning the transportation of 2 transformers, dims of 526 x 269 x 370 cm, weighing 49,969 kilos each, from ships hook, Brownsville, Texas to job site at Huimila.

We are pleased to provide OTR transport for $14,000 each, plus I. V. A. tax of 15%. Price includes all securing to transporters, permits, etc.

Please provide notification if you wish us to handle.

Regards,

Jim Hamilton
General Manager - Multimodal Heavy Transport

CHR ABB 00050

** TOTAL PAGE.01 **

APR 15 '99 16:57 FR  ROBINSON    817 431 3425 TO  9377840    P.11/13



JACK AREA

1430

2820

#300

7400

2550

Centre of gravity:

Transportweight: 220'000kg
(without oil)

TRANSP: L=9592

5015

1840

1840

4577

2),4),6)

3)

4)

4)

3)

2),4),6)

7400

TRANSP: H=4682

2245

#60.

2820

80

TRANSP: W=3524

2855

3)

4)

3)

4)

1)

| No. | Remarks | | Coord - Oil |
|-----|---------|---|---|
| 1) | Support on this section only | | D-5 |
| 2) | Lifting lugs: Sling cable here only | | B-1,B-4 |
| 3) | Jacking point | | D-3,4,6,8 |
| 4) | Lashing point | | B-2,B-5 |
| 5) | Lifting Slings not to exceed 60° angle. | | A-3 |
| 6) | Lifting Transformer using Slings fitted ground lifting lugs. (Bollards) | | B-2,B-5 |

ABB

Transformer 300 MVA

TRANSPORT DRAWING

HDST30185

CHR ABB 00051

APR 15 '99 16:57 FR A ROBINSON    817 431 3425 TO 29377840    P.12/13





Center of gravity:
Transport weight:

716'500 lbs

325'000 kg

CHR ABB 00053

** TOTAL PAGE.13 **



# ABB POWER GENERATION LTD.

## 5401 Baden / Switzerland

| TO: | C.H. Robinson Company<br>Keller, Texas<br>att: Mr. James C. Hamilton<br>Genral Manager | FROM: | S. Lepori |
|---|---|---|---|
| | | DEPT.: | KWGP-L |
| cc | RS/SCH | PHONE:<br>FAX:<br>DATE: | +41 56 205 58 02<br>+41 56 205 61 82<br>February 1, 99 |
| FAX-No.: | 001 817 431 3425 | TOTAL<br>PAGES: | 4 |

Re.:   Project Monterrey, N.L. Mexico

Dear Jim,

thanks for the transport quotation covering the transport of six (6) heavy lifts , i.e.:

>   2 Transformers
>   2 Generators
>   2 Thermal Blocks (Gasturbine)

(details of the heavy lifts, as per our submittal to on January 19, 99)  from Brownsville Port  via Matamoros, Apodoca to the Monterrey Combi Cycle Power Plant located southeast of Huinala, Mexico.

Further to our telecon of yesterday, we wish to add/precise the following:

1. The quotation under Par. A) in the amount of USD 355'860.00 includes the transportationm costs for:

>   1 Transformer
>   1 Generator
>   1 Thermal Block, whereas

your quotation under Par. B) in the amount of USD 225'285.00 covers the installation works for all six heavy lifts

CHR ABB 0054

2. The eta of the two (2) Transformers on m/v Jumbo Spirit in Brownsville is indicated today February 28, 99 - the due date of the 1st Generator in Brownsville aboard a Lash Barge ex m/v Rhine Forest is March 7, 99 (the Lash ship has an eta NOLA Febr. 21, 99). As far as the other components are concerned we can indicate the following approx. eta's in Brownville:

    a) 2nd Generator week 13/14; 1999   3/29  4/5   4/19-4/26   1 of 2
    b) 1st Thermal Block week 20, 1999   5/17
    c) 2nd Thermal Block week 24, 1999   6/14

3. It is understood that the your quotation includes the lift - off of the two (2) Generators from the Lash Barge by means of a 700 ton barge crane which will be mobilized from Corpus Christi hence we will book the Generators to Brownville on free out terms.

4. In respect to the transport technical issues, please provide:

    a). layout sketch of the railcars suitable to transport a.m. heavy lifts, particularly in respect to the Thermal Block
    b) the minimum radius of the railtrack from Brownsville to      Apodoca, including the angle of inclination   for the purpose to calculate the tipping-moment
    c) layout sketch of the platform trailers
    d) transloading procedures from railcar onto platform trailer
    e) lashing and securing procedures of the heavy lifts onto railcar and platform trailer
    f) procedures of the installation work from arrival alongside foundation onto foundation
    g) during a recent telecon you assured that the rail - and road transport will be supervised by you - kindly be more specific on this subject.
    h) approx. transport schedule from arrival in  Brownsville to the site

5. We understand that the road carriage from Apodoca railside to the Power Station will be executed by Transportes Telleria, S.A. de C.V., including the installation works.

6. We will revert on your offer of the installation work, refer to Par. B) by end of this week, only.

7. We accept your offer for the transportation of the heavy lifts at USD 355'860 for three (3) heavy lifts and USD 711'720.00 for six (6) heavy lifts, respectively. We also took note that you have incorporated in your offer contingencies in the amount of USD 60'000 for all six heavy lifts to cover extras such as demurrage costs, etc. This amount maybe returned to ABB if such extra's are not used.

CHR ABB 00055

8. The following remarks in your Transportation Bid Qualifications shall be deleted:

> a) all quotations are subject to availability of equipment and personnel
> b) the coordination of equipment and clearances for this movement(s) will require 30 days (it is understood that you are already in possession of the rail and road clearances from Brownsville via Matemoros/Apodoca to the site)

9. Note that the customs clearance at the U.S. / Mexican border will be made by :

> A.A. Martha Beatriz Cano Solis
> 34 East Fronton Street
> Brownsville, Texas 78520
>
> Responsible person: Enrique Serralta Hernandez, Tel. (210) 541 8151
> Fax (210) 542 3766

10. As far as the payment between U.S. and Mexican portion is concerned , we shall revert in due course, refer to our telecon of last night.

11. Enclosed, please find the Transportation Bid Qualification, duly signed by ourselves.

Kindly let us have your comments as soon as possible.

With best regards

Enclosure: as mentioned

CHR ABB 00056

JAN 30 '99 18:37 FR    3INSON        817 431 3425 TO 01'    2056182   P.02/05

# Transportation Bid Qualifications

Rates based upon weights and dimensions supplied by customer. Changes or omission of details from shipper's original information can affect pricing and ability to provide clearance.

Subject to further technical drawings and/or details, including projection orientations and center of gravity.

Rates are contingent upon clearance of participating carriers.

Cargo is to be loaded per AAR, Federal, State and Local Rules and Regulations.

Loading and unloading to be the responsibility of others, unless specifically defined in our quotation.

This proposal does not include tarps or covers to lading. If required, service may be provided at additional cost.

Charges relating to excess demurrage or detention is responsibility of shipper and/or consignee.

Shipping delays due to weather and acts of God are at risk and expense of shipper.

Price does not include any liability. Liability is the responsibility of shipper unless liability has been requested and specifically provided in quotation.

~~All quotations are subject to availability of equipment and personnel.~~

Unless stated otherwise, this quotation is effective for 45 days from date of issuance.

~~The coordination of equipment and clearances for this movement will require 30 days.~~

Payment terms are 35% down, net balance 10 days from job completion.

Activities related to this movement will begin upon receipt of a purchase order or written authorization to proceed from the shipper.

Qualifications _____

_____

_____

_____

| Quotation Submitted By: | Accepted & Authorized By: **ABB Power Generation Ltd.** Transport Logistics Dept. KWGP-L CH-5401 Baden |
| --- | --- |
| Name | Name |
| C. H. Robinson, Company | Company |
| Date  1/30/99 | Date  2/1/99 |

CHR ABB 00057

10x5



January 30, 1999

Mr. Sandro Lepori
General Manager Transport Logistics
Gas Turbine and Combined-Cycle Power Plants
ABB Power Generation Ltd.
Dept. KWGP-L
CH-5401 Baden / Switzerland

129 Keller Hicks Road
Keller, TX
76248-4438
817.431.3146
fax 817.431.3425

Dear Sandro,

Please refer to your memo of January 19, 1999 concerning the movement of a generator, transformer and gas turbine from Brownsville, Texas to ABB plant site southeast of Huinala, Mexico. Below please find our price to A). Move pieces from Brownsville, Texas to the jobsite; and B). Set pieces on foundations:

### A). *$355,860\* (Three Hundred Fifty Five Thousand Eight Hundred Sixty Dollars) U. S.*
* Plus Mexican E. V. A. tax of 15%

Price Includes:

All transportation and logistics management plan
3 Heavy Duty Rail Cars (12 Axle)
Unloading 325 Ton Generator from lash barge to rail car
Tie down to rail cars for all 3 pieces
Transloading (Jack and Skid) from rail cars to OTR Transporters
Tie down to OTR Transporters
All permits, grading, and re-conditioning of rail spur and overpass to site

### B). *$225,285\* (Two Hundred Twenty Five Thousand Two Hundred Eighty Five Dollars) U. S.*
* Plus Mexican E. V. A. tax of 15%

Price Includes:

1). Supply of Gantry, Labor, and all temporary materials required to perform the rigging operations.
2). Price is based on having no interferences at job site so as to allow setting of gantry in the area required for the rigging operations.
3). Price is based on having transformers module along side of the foundation which calls for only one operation.

*Above quotation subject to attached qualification sheet*

In closing please find a plan overview. We look forward to discussing any questions you may have.

Best Regards,

Jim Hamilton
General Manager - Multimodal Heavy Transport

CHR ABB 00058

CERTIFIED COPY

CAUSE NO. 99-04-1644-E

| | | |
|---|---|---|
| GRACIELA ZAMORA, INDIVIDUALLY | § | IN THE DISTRICT COURT |
| AND; ON BEHALF OF THE ESTATE | § | |
| OF HER LATE HUSBAND OSCAR | § | |
| ZAMORA, SR. AND; ON BEHALF OF | § | |
| THEIR MINOR SURVIVING SON | § | |
| OSCAR ZAMORA, JR. AND; | § | |
| | § | |
| OLIVIA ZAMORA, THE SURVIVING | § | |
| MOTHER OF THE LATE OSCAR | § | |
| ZAMORA, SR. | § | |
| | § | |
| AND; ON BEHALF OF ALL THOSE | § | |
| ENTITLED TO RECOVER FOR THE | § | |
| TRAGIC, UNTIMELY DEATH OF THE | § | |
| LATE OSCAR ZAMORA, SR. | § | |
| | § | |
| Plaintiffs | § | |
| and | § | |
| | § | |
| ANGIE ZAMORA | § | |
| | § | |
| Intervenor | § | |
| | § | |
| VS. | § | 357TH JUDICIAL DISTRICT |
| | § | |
| ABB KRAFTWERKE | § | |
| AKTIENGESELLSCHAFT and | § | |
| | § | |
| ABB ALSTOM POWER (SWITZERLAND) | § | |
| LTD, FORMERLY KNOWN AS | § | |
| ABB POWER GENERATION, LTD. | § | |
| | § | |
| Defendants | § | CAMERON COUNTY, TEXAS |

## PLAINTIFFS' THIRTEENTH AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, GRACIELA ZAMORA, INDIVIDUALLY AND; ON BEHALF

OF THE ESTATE OF HER LATE HUSBAND OSCAR ZAMORA, SR. AND; ON

BEHALF OF THEIR MINOR SURVIVING SON OSCAR ZAMORA, JR. AND;

OLIVIA ZAMORA, THE SURVIVING MOTHER OF THE LATE OSCAR ZAMORA,

SR. AND; ON BEHALF OF ALL THOSE ENTITLED TO RECOVER FOR THE

TRAGIC, UNTIMELY DEATH OF THE LATE OSCAR ZAMORA, SR., hereinafter

referred to as Plaintiffs, complaining of ABB KRAFTWERKE

AKTIENGESELLSCHAFT and ABB ALSTOM POWER (SWITZERLAND) LTD.,

FORMERLY KNOWN AS ABB POWER GENERATION, LTD., hereinafter referred

to as Defendants, and for cause of action would show unto this Honorable Court as

follows:

## I.

Pursuant to Texas Rule of Civil Procedure 190.1, this case is to be governed by

the provisions of Texas Rule of Civil Procedure 190.4 as discovery is intended to be

conducted under Level 3 of Rule 190.1 of the Texas Rules of Civil Procedure.

All Plaintiffs are citizens and residents of the State of Texas.

Defendant, ABB KRAFTWERKE AKTIENGESELLSCHAFT, has appeared and

answered herein and no written service of process is necessary. A copy of this

pleading is being forwarded by certified mail, return receipt requested, through its

attorney of record, Justin Williams, Williams, Kasperitis & Gowan, P.C., 5959 S.

Staples, Suite 204, Corpus Christi, Texas 78413.

Defendant, ABB ALSTOM POWER (SWITZERLAND) LTD., FORMERLY

KNOWN AS ABB POWER GENERATION, LTD., has appeared and answered

herein and no written service of process is necessary. A copy of this pleading is

being forwarded by certified mail, return receipt requested, through its attorney of

CERTIFIED COPY

record, Justin Williams, Williams, Kasperitis & Gowan, P.C., 5959 S. Staples, Suite 204, Corpus Christi, Texas 78413.

## II.

Venue is proper in Cameron County, Texas pursuant to Section 15.002 of the Texas Civil Practice and Remedies Code in that the transaction and/or occurrence made the subject of this case and the acts or omissions giving rise to the cause of action all occurred in Cameron County, Texas.

## III.

On or about March 23, 1999, Decedent Oscar Zamora, Sr. while in the course and scope of his scope his employment as a longshoreman was instructed by Todd Stever in the course and scope of his employment and acting as a representative, agent, employee or manager of C.H. Robinson Company, was told to take off two bolts to a yellow shipping chock attached to a compressor which was manufactured by Defendants, ABB KRAFTWERKE AKTIENGESELLSCHAFT and ABB ALSTOM POWER (SWITZERLAND) LTD., FORMERLY KNOWN AS ABB POWER GENERATION, LTD. Upon removing the two bolts as instructed and not knowing that the two remaining bolts were not in fact attaching bolts, the yellow loading chock came loose and due to its weight in excess of 700 pounds, struck the Decedent in the head and neck, knocking him to the ground disabling him, and after a period of some conscious pain and suffering amounting to several hours, killed him.

---

CERTIFIED COPY

## IV.

Defendants ABB KRAFTWERKE AKTIENGESELLSCHAFT and ABB ALSTOM POWER (SWITZERLAND) LTD., FORMERLY KNOWN AS ABB POWER GENERATION, LTD. were and are the manufacturer in the business of designing, manufacturing and marketing generators and compressors including, but not limited to, the one to which the jacking plate in question was attached. It is foreseeable that in the release and shipping of those generators and/or compressors, the jacking plates will be attached for their transport. No decals, warnings or instructions were in place and as such the compressor/generator and jacking place in question were defective as designed, manufactured and/or marketed by Defendants.

In the further alternative, Defendants are in the business of design, manufacture and marketing of the jacking plates including, but not limited to, the "jacking plate" in question which was defective it its design, marketing and/or manufacture. Either or all of the aforementioned products liability tort which producing caused the injuries and damages complained of including the conscious pain and suffering of the deceased Oscar Zamora, Sr. and the injuries, damages and loss to his surviving family members as more particularly set forth below. Their conduct also amounted to negligence proximately causing, in the alternative, the injuries, death and damages to all Plaintiffs.

Each and all of the above Defendants ("ABB" Defendants) designed, manufactured and marketed the compressor or generator unit in question and

CERTIFIED COPY

participated in the decision to ship such unit with the "jacking plate" in place on the unit and which were ostensibly held on by two bolts a piece, to all outward appearances. In fact, two of such bolts were only adjusting bolts which should not penetrate the unit itself. Upon removal of the remaining bolts, the 750 pounds or so, jacking plate would and could fall, as it did upon the Plaintiffs' decedent, Mr. Zamora. The shipping of such unit without adequate instructions, labels, or warnings, and the presence of an ABB person, in Texas, all amount to specific acts committed in the course of commerce in Texas, as was reasonably foreseeable due to not only its design, manufacturer and marketing, but also due to the units being directly shipped to the Port of Brownsville in Texas and amounts to an act of commerce invoking subject matter and personal jurisdiction in Texas.

## V.

Suit is brought on behalf of the Estate and all Plaintiffs and on Behalf of all those entitled to bring suit for the death of the late Oscar Zamora, Sr., specifically Decedent's wife Graciela Zamora, Decedent's son Oscar Zamora, Jr., Decedent's mother Olivia Zamora, and Decedent's daughter Angie Zamora, as Plaintiffs are the only persons competent, capable and qualified as the surviving heirs, beneficiaries, and claimants pursuant to the Texas Wrongful Death and Survival Statutes to bring such claims as they are the only proper claimants as the sole surviving wife, mother and children of the deceased. They hereby brings claims for all damages at law and equity and actual to which they may be entitled. All Plaintiffs damages are far in excess of the Court's minimum jurisdictional requirements which were proximately

caused by the acts or omissions of the Defendants. Despite any higher amount, however justly found and decided, by a jury (which is hereby specifically requested, and for which the fee has separately already been tendered), Graciela Zamora, Individually and on Behalf of The Estate of Her Late Husband Oscar Zamora, Sr. and his Only Child Oscar Zamora, Jr. and on Behalf Of Olivia Zamora, the Surviving Mother and Only Surviving Parent of Oscar Zamora, Sr. and all Others Entitled to Bring a Cause of Death Action for his Death, hereby state that the maximum amount of damages pursuant to Rule 47 of the Texas Rules of Civil Procedure, will be limited to $20,000,000.00 as specifically requested by Defendants.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Defendants be cited to appear and answer herein, and for a trial by a jury, that they have judgment against the Defendants, as may be allowed by law, and such other and further relief to which Plaintiffs are entitled, at law and at equity.

Respectfully Submitted,

LAW OFFICE OF WILLIAM J. TINNING
1013 Bluff Drive
Portland, Texas 78374
Telephone: (361) 643-9200
Facsimile: (361) 643-9600

BY: _____

William J. Tinning
State Bar No. 20060500

**LEAD ATTORNEY FOR PLAINTIFFS**

A TRUE COPY I CERTIFY
AURORA DE LA GARZA, CLERK
DISTRICT COURT CAMERON COUNTY, TEXAS
OCT 16 2003
BY_____ DEPUTY

DISTRICT COURT CAMERON COUNTY, TEXAS

**CO-COUNSEL:**

**CERTIFIED COPY**

Louis S. Sorola
Attorney at Law
Post Office Box 5776
302 Kings Highway
Suite 112
Brownsville, Texas 78523-5776

Horacio Barrera
Law Offices of Martinez & Barrera
1201 E. Van Buren
Brownsville, Texas 78520

---

## DEMAND FOR JURY TRIAL

**CERTIFIED COPY**

COMES NOW Plaintiffs in the above styled and numbered cause and respectfully demands a jury for trial of all issues in this case.

Respectfully Submitted,

**LAW OFFICE OF WILLIAM J. TINNING**
1013 Bluff Drive
Portland, Texas 78374
Telephone:   (361) 643-9200
Facsimile:   (361) 643-9600

BY: _____

William J. Tinning
State Bar No. 20060500

**LEAD ATTORNEY FOR PLAINTIFF**

**CO-COUNSEL:**

Louis S. Sorola
Attorney at Law
Post Office Box 5776
302 Kings Highway
Suite 112
Brownsville, Texas 78523-5776

Horacio Barrera
Law Offices of Martinez & Barrera
1201 E. Van Buren
Brownsville, Texas 78520

---

**CERTIFICATE OF SERVICE**          CERTIFIED COPY

    I hereby certify that a true and correct copy of the above and foregoing

instrument was forwarded to all counsel of record by the method listed below on

this the __13th__ day of June, 2000.

    **CERTIFIED MAIL - RRR and/or FACSIMILE:**

Justin Williams
Williams, Kasperitis & Gowan, P.C.
5959 S. Staples, Suite 204
Corpus Christi, Texas 78413

Mr. Keith N. Uhles
ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.
55 Cove Circle
P. O. Box 3509
Brownsville, Texas 78523-3509

Michael D. Murphy
MURPHY & WALKER, L.L.P.
2425 West Loop South, Suite 200
Houston, Texas 77027

    **FIRST CLASS MAIL and/or FACSIMILE:**

Mr. R. Bruce Tharpe
LAW OFFICES OF R. BRUCE THARPE
Professional Plaza
715 East Frontage, Suite D
Alamo, Texas 78516

Louis S. Sorola
Attorney at Law
Post Office Box 5776
302 Kings Highway
Suite 112
Brownsville, Texas 78523-5776

---

CERTIFIED COPY

Horacio Barrera
Law Offices of Martinez & Barrera
1201 E. Van Buren
Brownsville, Texas 78520

_____
William J. Tinning

---

**Plaintiffs' Thirteenth Amended Original Petition**                            Page 10