**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

FEB 2 8 2005

Michael N. Milby
Clerk of Court

| | |
|---|---|
| ABB KRAFTWERKE AKTIENGESELLSCHAFT, and ABB ALSTOM POWER (SWITZERLAND) LTD., formerly known as ABB POWER GENERATION, LTD. | § § § § § |
| **Plaintiffs** | § § |
| vs. | § § § |
| C.H. ROBINSON COMPANY | § § § |
| **Defendant** | § |

CIVIL ACTION NO. B-03-192

**DEFENDANT C.H. ROBINSON COMPANY'S**

**<u>AMENDED MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

I.    Factual Background ..................................................................................................... 1

II.   Nature and Stage of the Proceedings ......................................................................... 5

III.  Statement of the Issues ............................................................................................... 6

IV.   Summary of the Argument ......................................................................................... 7

V.    Arguments and Authorities ........................................................................................ 7

    A.   Breach of Contract Claim ..................................................................................... 8

    B.   Indemnity Claim ................................................................................................. 10

        i. ABB was not vicariously liable to the Zamora family or to Brownsville Barge
           & Crane. .......................................................................................................... 11

        ii. No agency relationship existed between C.H. Robinson and ABB. .................. 12

            (1)   No Agreement to Act as ABB's Agent. ................................................ 12

            (2)   Independent Nature of Business ............................................................ 13

            (3)   Obligation to Furnish Materials ............................................................ 13

            (4)   No Right of Control over Details of Work ............................................ 14

            (5)   Hired for a Limited Time to Perform a Specific Task .......................... 15

            (6)   Method of Payment ............................................................................... 16

        iii. ABB was directly liable to the Zamora family. ............................................. 16

VI.   Conclusion ............................................................................................................... 18

VII.  Prayer for Relief ...................................................................................................... 18

    Appendix Table of Contents ........................................................................................ 20

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S. Ct. 1598 (1970)....................................7

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986) ......................................7

*Hardy v. Gulf Oil Corp.*, 949 F.2d 826 (5th Cir. 1992) ..................................................10

*Northwinds Abatement, Inc. v. Employers Ins. of Wausau*, 258 F.3d 345 (5th Cir. 2001).............12

### STATE CASES

*ABB Kraftwerke AG. v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287 (Tex. App. - Corpus Christi 2003, pet. denied) ..............................................................4, 5, 11

*Anchor Cas. Co. v. Hartsfield*, 390 S.W.2d 469 (Tex. 1965)..................................15, 16

*B & B Auto Supply v. Central Freight Lines, Inc.*, 603 S.W.2d 814 (Tex. 1980) .........................10

*Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816 (Tex. 1984) ...................................10

*Chandler v. Cash*, 20 S.W.3d 69 (Tex. App.—Texarkana 2000, pet. denied) ..............................13

*Compton v. Texaco, Inc.*, 42 S.W.3d 354 (Tex. App. - Houston [14th Dist.] 2001, pet. denied)...........................................................................................10

*Gutierrez v. Cayman Islands Firm of Deloitte & Touche*, 100 S.W.3d 261 (Tex. App.— San Antonio 2002, pet. dism'd) .......................................................................14

*Hanna v. Vastar Resources, Inc.*, 84 S.W.3d 372 (Tex. App.—Beaumont 2002, no pet.).............14

*Indust. Indemnity Exch. v. Southard*, 160 S.W.2d 905 (Tex. 1942) ........................................12, 16

*Limestone Products Distribution, Inc. v. McNamara*, 71 S.W.3d 308 (Tex. 2002) ......................12

*Lone Star Partners v. NationsBank Corp.*, 893 S.W.2d 593 (Tex. App.—Texarkana 1994, writ denied) ..............................................................................................12

*Newspapers, Inc. v. Love*, 380 S.W.2d 582 (Tex. 1964) ...............................................14

*Pitchfork Land & Cattle Co. v. King*, 346 S.W.2d 598 (Tex. 1961) .......................................12, 16

*Poseidon Oil Pipeline Co., L.L.L. v. Transocean Sedco Forex, Inc.*, 2002 WL 1919797, at *3 (E.D. La. 1002) ..................................................................................8

*Royal Mortg. Corp. v. Montague*, 41 S.W.3d 721 (Tex. App.—Fort Worth 2001, no pet.) .........12

*St. Anthony's Hospital v. Whitfield*, 946 S.W.2d 174 (Tex. App. - Amarillo 1997, writ denied)....................................................................................................................................10

*Texas A & M Univ. v. Bishop*, 2005 WL 120068, 48 Tex. Sup. Ct. J. 361 (Tex. 2005)..........15, 16

*United States v. Taylor,* 166 F.R.D. 356, 362 (M.D.N.C. 1996) .......................................................8

*Vecellio Ins. Agency, Inc. v. Vanguard Underwriters Ins. Co.*, 127 S.W.3d 134 (Tex.App. - Houston [1st Dist.] 2003, no pet.) ................................................................................10

## FEDERAL STATUTES

FED. R. CIV. P. 30(b)(6) .....................................................................................................................8
FED. R. CIV. P. 56(b).........................................................................................................................1
FED. R. CIV. P. 56(c).........................................................................................................................8

## STATE STATUTES

TEX. CIV. PRAC. & REM. CODE § 82.002....................................................................................10

## MISCELLANEOUS

RESTATEMENT (FIRST) OF AGENCY §1 .......................................................................................14

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ABB KRAFTWERKE | § | |
| AKTIENGESELLSCHAFT, and | § | |
| ABB ALSTOM POWER | § | |
| (SWITZERLAND) LTD., formerly known | § | |
| as ABB POWER GENERATION, LTD. | § | |
| | § | |
| **Plaintiffs** | § | CIVIL ACTION NO. B-03-192 |
| | § | |
| vs. | § | |
| | § | |
| C.H. ROBINSON COMPANY | § | |
| | § | |
| **Defendant** | § | |

DEFENDANT C.H. ROBINSON COMPANY'S
AMENDED MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(b), Defendant C.H. Robinson Company ("C.H. Robinson"), makes this amended motion for summary judgment on the Plaintiffs' remaining claims and would show the Court as follows:

## I. Factual Background

1.     This matter arises out of another lawsuit involving the death of a longshoreman at the Port of Brownsville on March 23, 1999. Mr. Oscar Zamora was fatally injured when a jacking plate fell from a generator being lifted from the barge onto a rail car. The generator belonged to ABB Alstom, then known as ABB Power Generation Ltd.

2.     Prior to the accident, on February 16, 1999, ABB Power Generation Ltd. entered into an agreement with C.H. Robinson for the transportation of heavy components, including the generator, from Brownsville, Texas to Monterrey, Mexico. The agreement did not include an indemnity provision. *See* **Ex. 1**. ABB Kraftwerke was not a party to the contract. *Id.*

3.      C.H. Robinson, in turn, subcontracted with Schaefer Stevedoring to provide stevedoring services for the lift of the generator from a barge to a rail car at the Port of Brownsville. Schaefer hired several longshoremen, including Mr. Zamora, to assist in the lift of the generator from the barge to the rail car.

4.      Schaefer Stevedoring subcontracted with Brownsville Barge & Crane for the use of the Atlantic Giant, a 700-ton floating crane.

5.      ABB Power Generation sent Roland Schneider, an engineer from its Baden, Switzerland location, to Brownsville, "for consulting and advising purposes" with regards to the transfer of the generator from the barge to the railcar. *Deposition of Roland Schneider dated April 7, 2000*, **Ex. 2**, 20:23 – 21:12. His purpose was to act "as an advisor for C.H. Robinson" and to "act as a consultant double-checking with Todd Strever at all times with the subcontractors." *Deposition of Roland Schneider dated April 7, 2000*, **Ex. 2**, 45:20-23; *see also Deposition of Sandro Lepori dated April 7, 2000*, **Ex. 3**, 5:24 – 6:10 (wherein Schneder's immediate supervisor states Schneider "was there not to supervise but to answer questions.")

6.      Prior to the day of the accident, Schneider came to Brownsville and participated "in several talks and meetings with Mr. Charles Cherrington and Todd Strever…about how to transfer the generator from the barge to the [rail] car," including in particular whether or not to remove the bolts that held the jacking plate in place and "exactly how to proceed to remove the jacking lug" by "tak[ing] out the bottom bolts." *Deposition of Roland Schneider dated April 7, 2000*, **Ex. 2**, at 11:1-25; 16:11 – 17:9; 17:21 – 18:4.

7.      On the day of the accident, March 23, 1999, Schneider was present at the Port. *Deposition of Roland Schneider dated April 7, 2000*, **Ex. 2**, 21:1-5; *Deposition of Sandro Lepori dated April 7, 2000*, **Ex. 3**, 6:1-10; *Deposition of Andreas Rebholz dated April 7, 2000*, **Ex. 4**,

8:7-11[1]; *Deposition of Charles E. Cherrington dated January 7, 2000*, **Ex. 5**, 18:24 – 19:8.  At some point, Schneider realized that workers had either loosened or removed the nuts on the bolts securing the jacking places to the generator.  Schneider spoke directly to Charles Cherrington, operations manager for Schaefer Stevedoring, and to Mr. Zamora, and told them not to take off the bolts.  *Deposition of Roland Schneider dated April 7, 2000*, **Ex. 2**, at 14:13 – 15:16; 26:21 – 27:5.  *Deposition of Charles Cherrington dated January 7, 2000*, **Ex. 5**, 20:22 – 21:20; 27:7-14.  Mr. Cherrington had already removed one bolt from the jacking plate that later fatally injured Mr. Zamora.  *Deposition of Charles Cherrington dated January 7, 2000*, **Ex. 5**, 26:19 – 27:18.

8.      According to one eyewitness, a mechanic for AMFELS, Zamora removed the second bolt and the jacking plate then fell on him.  *Deposition of Rigoberto Zavala dated March 13, 2000*, **Ex. 6**, 8:25 – 9:2.

9.      On April 26, 1999, C.H. Robinson was served with a lawsuit arising out of this incident and brought by the Zamora family against C.H. Robinson, ABB Alstom, ABB Kraftwerke, and Brownsville Barge & Crane ("the Zamora lawsuit").  C.H. Robinson settled the Zamora family's claims against C.H. Robinson for $1 million.  **Ex. 7**, *Compromise, Settlement and Release Agreement, at* CHR/ABB 001954-1955.  In return, the Zamora family dismissed all claims against C.H. Robinson and agreed to

> "forever indemnify and hold harmless [C.H. Robinson], from and against each and every claim, demand, cause of action, lawsuit, judgment or award by or in favor of any other person or entity which relates to, results from, is based on or arises out of or in connection with any claim, cause of action, act, transaction, or occurrence which is the subject of this lawsuit and arises by, through or under the releasing parties whether asserted directly or indirectly, by way of contribution, *common law indemnity, contractual indemnity, statutory indemnity,* liens or otherwise, either in this suit or any other lawsuit".

---

[1] Rebholz was an employee of ABB at the time of the incident involving Zamora. *Deposition of Andreas Rebholz dated April 7, 2000*, **Ex. 4**, 5:7-11.

**Ex. 7** *Compromise, Settlement and Release Agreement, at* CHR/ABB 001956-57. (emphasis added); **Ex. 8,** *Rule 11 Agreement concerning Compromise, Settlement and Release Agreement, at* CHR/ABB 002276-80. The Zamora family also voluntarily dismissed their claims against Brownsville Barge & Crane.

10.    On November 30, 1999, ABB filed a cross-action for contribution and indemnity against C.H. Robinson. **Ex. 9.** In December 1999, ABB's counsel agreed to a non-suit of these claims against C.H. Robinson in return for an agreement that C.H. Robinson assist ABB with the lawsuit against ABB by participating in informal discovery. **Ex. 10.**

11.    In June 2000, ABB Alstom and ABB Kraftwerke settled with the Zamora family. *See* **Ex. 11** and **Ex. 12.** The attached petitions are the last petitions filed by the Zamora family against ABB Kraftwerke and ABB Alstom. The case was settled, save for a dispute concerning payment of costs in accord with the settlement agreement, after Plaintiffs filed the Thirteenth Amended Petition and before Plaintiffs filed the Fourteenth Amended Petition, as the Fourteenth Amended Original Petition makes apparent. The petitions establish that the Zamora family made no allegation of vicarious liability against Plaintiffs, **Ex. 11** at ¶ IV, and that ABB Kraftwerke and ABB Alstom settled only claims for direct liability – for products liability (defects in design, manufacture and marketing of the generator) and negligence.

12.    Brownsville Barge & Crane brought a claim for indemnity against ABB Alstom and ABB Kraftwerke (hereinafter collectively referred to as "ABB") seeking recovery of legal fees incurred in defending the Zamora lawsuit. This indemnity claim was based on a contract entered into between Brownsville Barge & Crane and ABB, shortly before the lift of the generator, containing an express indemnity provision. **Ex. 13; Ex. 14,** *ABB Kraftwerke AG v. Brownsville Barge & Crane, Inc.,* 115 S.W.3d 287, 290 (Tex. App. – Corpus Christi 2003, pet.

- 4 -

denied). That claim was tried to a verdict in favor of Brownsville Barge & Crane, and the verdict was upheld by the appellate court. **Ex. 14**, *ABB Kraftwerke AG v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287, 294 (Tex. App. – Corpus Christi 2003, pet. denied).

## II. Nature and Stage of the Proceedings

13.    On July 16, 2003, four years and four months after the date of the accident, ABB filed this suit against C.H. Robinson, alleging a claim for breach of contract. Although not stated, ABB also appears to seek indemnity for amounts paid to Brownsville Barge & Crane and indemnity for amounts paid in settlement of the Zamora family's claims.

14.    On December 22, 2003, C.H. Robinson filed an Amended Rule 12(6) Motion to Dismiss Plaintiffs' Claims in Their Entirety. The bases for that motion were (a) that Plaintiffs' claim for breach of contract was barred by the four-year limitations period, and (b) that Plaintiffs' claims for indemnity was not supported by Texas law.

15.    On September 30, 2004, this Court signed an order granting in part C.H. Robinson's Amended Rule 12(b)(6) Motion to Dismiss. In its Order, this Court held that the Plaintiffs' cause of action for breach of contract accrued before March 1999 even if no actual damages occurred at that time and "to the extent...that Plaintiffs allege breach(es) of contract that occurred before March, 1999, they are barred by the statute of limitations." **Ex. 15** at 18-19. The Court, "[i]n an abundance of caution," did not dismiss any contract claims concerning breaches arising <u>after</u> July 1999, though it stated it was dubious that ABB had pleaded any breaches occurring after July 1999, within the applicable four-year statute of limitations. **Ex. 15** at 19.

16.    The Court also held that ABB cannot have a claim for contractual indemnity against Robinson because no such agreement exists. **Ex. 15** at 20. The Court held that ABB's indemnity claim could be based only on a theory of vicarious liability founded in an agency

- 5 -

relationship, and further stated, "Frankly the court does not see how Plaintiffs will prove that an agency relationship exists based solely on the contract, or that Plaintiffs were sued in the underlying lawsuit under a theory of vicarious liability." **Ex. 15** at 21. The Court recognized in its holding that in order to prevail on this vicarious theory of indemnity, ABB would ultimately have to prove, *inter alia,* that C.H. Robinson acted as the agent of ABB in connection with the subject transaction. **Ex. 15** at 21.

17. There is no genuine issue of material fact existing as to ABB's remaining causes of action, and C.H. Robinson is entitled to judgment as a matter of law. C.H. Robinson had completed its contractual obligations to ABB by July 16, 1999. Plaintiffs' corporate representative has testified that he knows of no action taken by C.H. Robinson after July 16, 1999 that would constitute a breach of contract. Therefore, limitations bars any breach of contract claim and ABB was not found vicariously liable for any actions of C.H. Robinson, nor was any allegation of vicariously liability even made against ABB in the Zamora lawsuit or in the suit brought against by Brownsville Barge & Crane against ABB. Even as a theoretical matter, ABB could not have been held vicariously liable for any purported acts or omissions of C.H. Robinson as C.H. Robinson was not ABB's agent. For these reasons C.H. Robinson is entitled to judgment as a matter of law on all of ABB's remaining claims.

### III. Statement of the Issues

18. C.H. Robinson seeks summary judgment of all of Plaintiffs' remaining claims on the following two bases:

(1) There is no evidence to support Plaintiffs' contention that C.H. Robinson breached its contract with ABB, and moreover, any claim for breach of contract is barred by the four-year statute of limitations.

(2) Plaintiffs' claim for indemnity is not supported by Texas law or the evidence.

## IV. Summary of the Argument

18.    Plaintiffs' claim for breach of contract should be denied as a matter of law. Plaintiffs are unable identify any act of C.H. Robinson that constituted a breach, nor, in particular, any act constituting a breach within the limitations period.

19.    Plaintiffs' claim for indemnity should also be denied as a matter of law because Plaintiffs have no legal basis for an indemnity claim.  Because there was no indemnity contract between ABB and C.H. Robinson, the only possible basis for indemnity would be in the common law.  The only form of common-law indemnity that survived Texas' enactment of a comparative negligence scheme is indemnity for defendants whose liability is purely vicarious.  This form of indemnity is unavailable to ABB because ABB was directly liable – not vicariously liable – to the Zamora family and to Brownsville Barge & Crane in the underlying lawsuit.  Neither the Zamoras nor Brownsville Barge & Crane even alleged that ABB was vicariously liable to them for the acts of C.H. Robinson.  Even if one assumes that vicarious liability was alleged by any claimant against ABB in the underlying lawsuit, ABB would still not be entitled to indemnity from C.H. Robinson because the facts do not support ABB's contention that C.H. Robinson was ABB's agent.

## V. Arguments and Authorities

20.    Summary judgment is proper where the moving party shows that there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608 (1970).  The purpose of summary judgment is to dispose of factually unsupported claims.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2553 (1986).  The judgment sought is to be rendered if the pleadings, depositions, discovery responses and affidavits show that there is no material issue of fact to be

decided, and therefore, that the movant is entitled to judgment as a matter of law. FED. R. CIV.

P. 56(c).

## A.    Breach of Contract Claim

21.    In order to survive C.H. Robinson's limitations defense, ABB must present

evidence that C.H. Robinson breached its contract with ABB Power Generation, Ltd. sometime

after July 16, 1999.[2] There is no evidence that C.H. Robinson breached the contract at anytime,

and ABB's corporate representative has testified that he is unaware of any breach of contract

after July 16, 1999.

22.    On December 15, 2004, counsel for C.H. Robinson took the deposition of ABB's

corporate representative, John Barry ("Barry").  Pursuant to Federal Rule of Civil Procedure

30(b)(6), C.H. Robinson requested in its deposition notice that ABB present a witness with

knowledge of "any purported breaches of the February 19, 1999 contract, which Plaintiff

contends occurred on or after July 16, 1999." *See* **Ex. 16**.  In response to this notice, ABB

presented Barry for deposition.[3]  Barry testified that he did not know of "anything that C.H.

Robinson was supposed to do under th[e] contract that they didn't do or that they did improperly

---

[2] C.H. Robinson contends that ABB has failed to even allege in its live pleading that C.H. Robinson did or failed to day anything that would constitute a breach of contract after July 16, 1999.  The Court commented on this deficiency, which Plaintiffs have failed to correct, in its September 30, 2004 order granting in part Defendant's Amended Motion to Dismiss. **Ex. 15** at 19. ("[T]he Court is dubious that Plaintiffs have adequately pled breach of contract claims occurring after July 1999 . . . .")

[3] This Court, in its November 16, 2004 order, admonished that it was ""[Plaintiffs'] duty to designate a witness 'who can answer questions regarding the subject matter listed in the notice' and which are 'known or reasonably available' to the corporation.'" *Order dated November 16, 2004* at 6, citing *Poseidon Oil Pipeline Co., L.L.C. v. Transocean Sedco Forex, Inc.*, 2002 WL 1919797, at *3 (E.D. La. 2002).  The Court stated that such preparation was necessary to avoid the "sandbagging of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial." *Order dated November 16, 2004* at 5, *citing United States v. Taylor*, 166 F.D.R. 356, 362 (M.D.N.C. 1996).  Barry was able to offer little relevant testimony at his deposition, and that which was offered was favorable to C.H. Robinson.  Shortly thereafter, ABB noticed the depositions of two former ABB employees, Sandro Lepori and Roland Schneider, whom ABB had previously represented as unavailable for deposition and not subject to ABB's control.  ABB's purpose was to avoid being bound by the testimony of the corporate representative they chose to present.  C.H. Robinson believes this is exactly the sort of "sandbagging" the Court warned ABB against.

after July 16, 1999." *Deposition of John Barry dated December 15, 2004,* **Ex. 17**, 19:4-7. As Barry was designated by Plaintiffs to be the representative with knowledge of those items identified in the notice of deposition, and as he possesses no knowledge of any breach by C.H. Robinson occurring after July 1999, ABB has no evidence of any breach by C.H. Robinson within the limitations period.

23.   Also, in response to interrogatories served by C.H. Robinson, ABB asserted that it was unaware of any services performed by C.H. Robinson pursuant to the contract after July 16, 1999. **Ex. 18,** *Response to Request for Interrogatory No. 3.*

24.   As additional evidence that C.H. Robinson completed all services rendered under its contract with ABB, and that there is no possibility that a breach could have occurred after July 16, 1999, C.H. Robinson attaches herewith a copy of its final invoice to ABB, dated Monday, July 19, 1999. **Ex. 19,** *Affidavit of Ben G. Campbell,* and **Ex. 19A,** *July 19, 1999 Final Invoice,* CHR/ABB 000308, 000309, 000311. Any work performed on the project was completed, at the latest, during the previous week. As the last business day of the previous week was Friday, July 16, 1999, there is no genuine issue of material fact as to whether any breach occurred after July 16, 1999 upon which ABB can base its claims. The entire contract was performed by July 16, 1999, as evidenced by the final bill being sent out the following Monday, July 19, 1999.

25.   Since ABB has no evidence of any breach occurring after July 16, 1999, and since the evidence demonstrates that, in fact, the contract was completely performed by this time, there is no genuine issue of material fact to support a contention by ABB that C.H. Robinson breached its contract with ABB within the limitations period, and C.H. Robinson is entitled to judgment as a matter of law on ABB's claim for breach of contract.

**B.    Indemnity Claim**

26.    As there is no contractual indemnity agreement between ABB and C.H. Robinson, the only viable basis for indemnity would be based on the common law.  In *Hardy v. Gulf Oil Corp.,* the Fifth Circuit Court of Appeals recognized the extremely limited availability of common-law indemnity.  *Hardy,* 949 F.2d 826, 830-31 (5th Cir. 1992).  The court of appeals stated therein,

> The Texas Supreme Court has recognized only two exceptions to the rule that common law indemnity between joint tortfeasors is unavailable. First, common law indemnity survives in products liability actions to protect an innocent retailer in the chain of distribution.[4] [Citations omitted.] Second, common law indemnity survives in negligence actions to protect a defendant whose liability is purely vicarious in nature.

*Id.* at 831 (emphasis added); *see also B & B Auto Supply v. Central Freight Lines, Inc.,* 603 S.W.2d 814 (Tex.1980) (holding that there is no common-law right to indemnity between joint tortfeasors and stating, "Our holding is not intended to bar indemnity in cases in which there is a contractual basis for indemnity or cases in which one party's liability is **purely** vicarious.") (emphasis added); *Vecellio Ins. Agency, Inc. v. Vanguard Underwriters Ins. Co.,* 127 S.W.3d 134, 138 (Tex.App. – Houston [1[st] Dist.] 2003, no pet.). ("Therefore, in a case in which one defendant's liability is premised **solely** on *respondeat superior*, that defendant's liability is purely vicarious, and a claim for common law indemnity exists.") (emphasis added); *Compton v. Texaco, Inc.,* 42 S.W.3d 354, 361-362 (Tex. App. – Houston [14[th] Dist.] 2001, pet. denied) (holding common-law indemnity unavailable to party that settled claims of direct liability, as opposed to being held vicariously liable for the conduct of another), *citing Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 819-20 (Tex. 1984); *St. Anthony's Hospital v. Whitfield,* 946 S.W.2d 174, 178 (Tex. App. – Amarillo 1997, writ denied) (holding that hospital's common-law

---

[4] This right to indemnity has since been codified. TEX. CIV. PRAC & REM CODE §82.002.

claim for indemnity was not extinguished where **sole** theory of liability against hospital in underlying lawsuit was *respondeat superior* liability for negligence of employee) (emphasis added).

### i.   ABB was not vicariously liable to the Zamora family or to Brownsville Barge & Crane.

27.   The Zamora family made no claim at all for vicarious liability against ABB in the underlying lawsuit. **Ex. 11** (alleging claims against ABB for products liability based on a defective product and negligence); **Ex. 12** (establishing that all claims by the Zamora family against ABB were settled except for a dispute concerning ABB's payment of court costs and deposition costs pursuant to the settlement agreement). Moreover, the Zamora family would not have agreed to indemnify C.H. Robinson against all future claims "whether asserted directly or indirectly, by way of contribution, common law indemnity, contractual indemnity, statutory indemnity, liens or otherwise, either in this suit or any other lawsuit," if they had believed ABB was vicariously liable for the acts of C.H. Robinson and could pursue C.H. Robinson for indemnity, thereby exposing the Zamora family to liability for contractual indemnity. **Ex. 7.**

28.   Nor did Brownsville Barge & Crane pursue ABB for vicarious liability. Brownsville Barge & Crane was granted judgment against ABB for contractual indemnity, and that judgment was upheld on appeal. **Ex. 14,** *ABB Kraftwerke AG v. Brownsville Barge & Crane, Inc.,* 115 S.W.3d 287, 294 (Tex. App. – Corpus Christi 2003, pet. denied).

29.   Any argument as to whether C.H. Robinson was ABB's agent is irrelevant given the fact that the Zamora family did not pursue a claim for vicarious liability against ABB, nor did Brownsville Barge & Crane, whose judgment against ABB was based solely on a claim for contractual indemnity. However, since ABB has expended an inordinate amount of the parties'

time and other resources in a pointless and futile effort to prove that C.H. Robinson was ABB's agent, C.H. Robinson will address the issue of agency.

ii.    **No agency relationship existed between C.H. Robinson and ABB.**

30.    A question of agency is generally one of fact, though where a set of facts is established, the existence of such a relationship can be determined as a matter of law. *Royal Mortg. Corp. v. Montague*, 41 S.W.3d 721, 733 (Tex. App.—Fort Worth 2001, no pet.). In order for an agency relationship to exist, there must be an agreement between the parties, either express or implied, indicating that there was a meeting of the minds as to the agency relationship. *Northwinds Abatement, Inc. v. Employers Ins. of Wausau*, 258 F.3d 345, 351 (5th Cir. 2001); *Lone Star Partners v. NationsBank Corp.*, 893 S.W.2d 593, 599-600 (Tex. App.—Texarkana 1994, writ denied). Other factors used to determine whether such an agency relationship existed include (1) the independent nature of the business; (2) the obligation of the contractor to furnish necessary tools, supplies, and material to perform the job; (3) the right of control over the details and progress of the work, not including details as to final results; (4) the time for which the contractor is hired; and (5) the method of payment, whether it be by time or by the job. *Limestone Products Distribution, Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002); *Pitchfork Land & Cattle Co. v. King*, 346 S.W.2d 598, 603 (Tex. 1961); *Indust. Indemnity Exch. v. Southard*, 160 S.W.2d 905, 907 (Tex. 1942).

(1)    **No Agreement to Act as ABB's Agent.**

31.    The only evidence of any agreement governing the relationship between C.H. Robinson is the February 16, 1999 contract between the two parties, which contains no requirement that C.H. Robinson act as ABB's agent. **Ex. 1.**

- 12 -

### (2)   Independent Nature of Business

32.     C.H. Robinson was an independent contractor, employed by ABB to handle the logistics of transporting heavy components from Texas to Monterrey, Mexico, and acted independently of ABB in securing subcontractors for the various aspects of this undertaking. *Deposition of Jim Hamilton dated April 25, 2000*, **Ex. 20**, 94:1-2.   C.H. Robinson was responsible for determining what rail equipment to use, for procuring clearance for transporting the equipment and for complying with American Association of Railroads guidelines. *Deposition of Todd Strever dated January 21, 2005*, **Ex. 21**, 27:8-13; 28:14-16.   ABB did not have the requisite expertise in the applicable railroad, port or customs regulations, thus necessitating the hiring of C.H. Robinson for these tasks.   *Deposition of Todd Strever dated January 21, 2005*, **Ex. 21**, 28:17-19 and 30:11-25.   It is undisputed that ABB is not in the business of transportation logistics.   Throughout the duration of the ABB project, C.H. Robinson continued to engage in business with other companies.   *Deposition of Todd Strever dated January 21, 2005*, **Ex. 21**, 33:3-6.   In fact, the business that was being performed for ABB did not make up a very significant portion of C.H. Robinson's business at that time. *Deposition of Todd Strever dated January 21, 2005*, **Ex. 21**, 33:7-13.

### (3)   Obligation to Furnish Materials

33.     Also inconsistent with ABB's contention that C.H. Robinson acted as its agent is the fact that ABB did not provide any of the equipment associated with the transport of the generator, other than the generator that was the subject of the parties' contract and some packing materials for the generator.   *Deposition of Todd Strever dated January 21, 2005*, **Ex. 21**, 33:14-24; *see Chandler v. Cash*, 20 S.W.3d 69, 73 (Tex. App.—Texarkana 2000, pet. denied) (fact that emergency room did not provide doctor with equipment evidenced that doctor was independent contractor).   In fact, the equipment was provided by Brownsville Barge & Crane, the

subcontractor of C.H. Robinson's subcontractor, Schaefer Stevedoring. *Deposition of Charles Cherrington dated January 7, 2000*, **Ex. 5**, 15:11-17.

### · (4)    No Right of Control over Details of Work.

34.     The hallmark of the agency relationship is the extent of control over the detail of the assigned task exercised by the principal. *Hanna v. Vastar Resources, Inc.*, 84 S.W.3d 372, 376 (Tex. App.—Beaumont 2002, no pet.). In fact, "the 'right to control' remains the 'supreme test'" of an agency relationship. *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 590 (Tex. 1964); RESTATEMENT (FIRST) OF AGENCY §1 (defining the agency relationship as that which results from the "consent by one person to another that the other shall act…subject to his control."). This control includes the right to assign tasks and dictate the means and details of accomplishing the task. *Gutierrez v. Cayman Islands Firm of Deloitte & Touche*, 100 S.W.3d 261, 271 (Tex. App.—San Antonio 2002, pet. dism'd).

35.     In his 2000 deposition taken in the Zamora lawsuit, Roland Schneider, a transport technician for ABB Alstom Power, testified that his purpose in being present on the day of the lift was not to exercise control, but rather to "see firsthand how C.H. Robinson…and everybody in the Brownsville port were doing their jobs for the future; and secondly…for *consulting* and *advising* purposes in case there had been any questions." *Deposition of Roland Schneider dated April 7, 2000*, **Ex. 2**, 21:1-5 (emphasis added). Schneider testified that he "was the only person from ABB, and [his] function there was that of an *advisor*." *Deposition of Roland Schneider dated April 7, 2000*, **Ex. 2**, 23:1-2. Schneider testified in 2000 that he "didn't really give instructions the day I was there in Brownsville. My role was that of a consultant. I was just simply there." *Deposition of Roland Schneider dated April 7, 2000*, **Ex. 2**, 43:19-21.

36.    Todd Strever, the C.H. Robinson on site at the time of the accident, testified consistently with Mr. Schneider.   Strever testified that Roland Schneider's purpose in being present at the lift was "to advise on information that [C.H. Robinson] needed regarding the pieces themselves." *Deposition of Todd Strever dated January 21, 2005,* **Ex. 21**, 31:13-17.

37.    John Barry, ABB's corporate representative, testified that C.H. Robinson "had...total control and responsibility for the execution" of the contract.   *Deposition of John Barry dated December 15, 2004,* **Ex. 17**, 25:14-16.   C.H. Robinson was responsible for "all requirements, services, needs that [were] necessary." *Deposition of John Barry dated December 15, 2004,* **Ex. 17**, 14:16-17.   C.H. Robinson also assumed "a lot of risk in connection with" the services they were providing, including risks such as potential "labor issues and soil conditions and political risks" up until the time that the subject of the contract was "turned over to the owner," up until which point "the obligations and risks are with that turnkey contractor [C.H. Robinson]." *Deposition of John Barry dated December 15, 2004,* **Ex. 17**, 15:18-19; 15:25; 16:1-2; and 16:4-5.   The level of control exercised by C.H. Robinson, as described by ABB's corporate representative, over the project details and execution are inconsistent with a claim that C.H. Robinson was the agent of ABB.

### (5)    Hired for a Limited Time to Perform a Specific Task

38.    C.H. Robinson was hired to perform a specific task and its contract was concluded upon completion of that project.   **Ex. 1**.   This fact also tends to show that C.H. Robinson was an independent contractor with respect to the work in performed for ABB, and therefore was not ABB's agent. *Texas A & M Univ. v. Bishop,* 2005 WL 120058, *5, 48 Tex. Sup. Ct. J. 361 (Tex. 2005); *Anchor Cas. Co. v. Hartsfield,* 390 S.W.2d 469, 471 (Tex. 1965).

### (6)    **Method of Payment**

39.    ABB paid C.H. Robinson for the performance of the job, the price being determined by the job and not on a time basis. **Ex. 1.** "ABB hire[d] C.H. Robinson on a fixed price...[a]nd for X number of dollars, they were to take the generator from its position on the LASH barge to its ultimate destination in Mexico." *Deposition of Sandro Lepori dated May 1, 2001*, **Ex. 22**, 14:17-23. This is further evidence that C.H. Robinson was an independent contractor and not ABB's agent. *See generally, Texas A & M Univ. v. Bishop*, 2005 WL 120058, *5, 48 Tex. Sup. Ct. J. 361 (Tex. 2005) (where contractor is paid by the job this is evidence that he is an independent contractor and not an agent); *Anchor Cas. Co. v. Hartsfield*, 390 S.W.2d 469, 471 (Tex. 1965); *Pitchfork Land & Cattle Co. v. King*, 346 S.W.2d 598, 603 (Tex. 1961); *Indust. Indemnity Exch. v. Southard*, 160 S.W.2d 905, 907 (Tex. 1942).

### iii.    **ABB was directly liable to the Zamora family.**

40.    Neither the Zamoras nor Brownsville Barge & Crane pursued vicarious liability against ABB, because there was simply no basis for it. Nonetheless, assuming again for the sake of argument that ABB was sued for vicarious liability, that its sole source of liability was vicarious liability, and that C.H. Robinson was an agent of ABB in some capacity related to the generator lift, C.H. Robinson (and ultimately, the Zamora family) cannot be made to pay for the misfeasance or malfeasance of ABB, for which ABB was directly liable. First, Roland Schneider was present the day of the lift at all relevant times leading up to Mr. Zamora's death. *Deposition of Roland Schneider dated April 7, 2000*, **Ex. 2**, 21:1-5; *Deposition of Sandro Lepori dated April 7, 2000*, **Ex. 3**, 6:1-10; *Deposition of Andreas Rebholz dated April 7, 2000*, **Ex. 4**, 8:7-11; *Deposition of Charles E. Cherrington dated January 7, 2000*, **Ex. 5**, 18:24 – 19:8. Schneider was not only present, but gave instruction directly to Charles Cherrington and Zamora on how to handle the nuts and bolts securing the jacking plates. *Deposition of Roland Schneider*

- 16 -

dated *April 7, 2000*, **Ex. 2**, at 14:13 – 15:16; 26:21 – 27:5. *Deposition of Charles Cherrington dated January 7, 2000*, **Ex. 5**, 20:22 – 21:20; 27:7-14; *Deposition of Jose Cruz Garcia dated March 13, 2000*, **Ex. 23**, 30:3 – 31:7; 47:17-20. Schneider's confused instructions, in addition to ABB's failure to place any warning label on the generator, ultimately led to the accident that killed Mr. Zamora. *Deposition of Alfredo Arteaga dated March 13, 2000*, **Ex. 24**, 13:20-23 ("But I still feel that this accident would not have happened if in the topside of the motor right here, they would have put a warning that these bolts were not fastened on the unit."); *Deposition of Jose Cruz Garcia dated March 13, 2000*, **Ex. 23**, 21:14 – 22:14.[5]

41.    ABB was involved in pre-lift meetings intended to educate the subcontractors about how to transfer the generator from the barge to the rail car. *Deposition of Roland Schneider dated April 7, 2000*, **Ex. 2**, at 10:24 – 11:25; 16:11 – 17:9; 17:21 – 18:4. The morning of the lift, Schneider met with Todd Strever from C.H. Robinson and Charles Cherrington from Schaefer Stevedoring for what was referred to by Cherrington as a "safety meeting." *Deposition of Charles Cherrington dated January 7, 2000*, **Ex. 5**, 18:24 – 19:15. At this meeting, before the lift took place, the parties "went over what [they] were going to do." *Deposition of Charles Cherrington dated May 16, 2001*, **Ex. 25**, 39:19-21. Within the context of this safety meeting the men discussed the removal of the jacking plates, and Schneider, the individual with the most knowledge of the configuration of the generator, made no comment about the safety or propriety of so doing. *Deposition of Charles Cherrington dated January 7, 2000*, **Ex. 5**, 47:24 – 8:6; 150:16-22; *Deposition of Todd Strever dated April 26, 2000*, **Ex. 26**, 23:24 – 24:7; 82:21 – 83:1.

---

[5] Arteaga and Garcia were crane operators employed by AMFELS at the time of the incident involving Zamora. *Deposition of Afredo Arteaga dated March 13, 2000*, **Ex. 24**, 8:23; 10:17-18; *Deposition of Jose Cruz Garcia dated March 13, 2000*, **Ex. 23**, 10:24-11:1.

42.    The allegations of liability against ABB in the underlying lawsuit were for direct liability, for ABB's own actions and failures to act, that contributed to Mr. Zamora's death, and not for any responsibility ABB now claims to have for the actions of C.H. Robinson. The direct liability asserted against ABB in the Zamora's pleadings and supported by the depositions of witnesses in the underlying lawsuit precludes any believable contention by ABB that their liability was purely vicarious in nature and based solely on the actions of C.H. Robinson.

## VI. Conclusion

43.    Because Plaintiffs have not alleged any breach of contract occurring after July 16, 1999, Plaintiffs' claim for breach of contract is barred by the four-year limitations period. Plaintiffs' claim for indemnity fails because Plaintiffs were directly liable for all sums which they paid to both the Zamora family and to Brownsville Barge & Crane in the underlying lawsuit Neither the Zamora family nor Brownsville Barge & Crane even alleged that ABB was vicariously liable for the acts of C.H. Robinson. Moreover, even if such allegations had been made, they are not supported by the evidence, which establishes that C.H. Robinson was not an agent of ABB, and therefore ABB could not have been vicariously liable for the acts of C.H. Robinson.

## VII. Prayer for Relief

44.    For these reasons, Defendant C.H. Robinson, respectfully requests that this Court grant summary judgment to C.H. Robinson on all of ABB's remaining claims. C.H. Robinson further requests all relief, both in law and equity, to which it may be entitled.

Respectfully submitted,

McGINNIS, LOCHRIDGE & KILGORE, L.L.P.

By: _Karan C. Ciotti_

    Steven J. Watkins
    State Bar No. 20927700
    So. Dist. Bar No. 146
    Karan C. Ciotti
    State Bar No. 05226300
So. Dist. Bar No. 16874
3200 One Houston Center
1221 McKinney Street
Houston, Texas  77010-2009
Telephone:  (713) 615-8500
Facsimile:   (713) 615-8585

ATTORNEYS FOR DEFENDANT
C.H. ROBINSON COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the above and foregoing Defendant C.H. Robinson Company's Amended Motion for Summary Judgment has been served via Federal Express on this the 26th day of February, 2005, to the following:

Justin L. Williams
The Law Office of Justin L. Williams, P.C.
600 Leopard Street, Suite 1810
Corpus Christi, Texas  78473

_Karan C. Ciotti_
Karan C. Ciotti

- 19 -