CERTIFIED COPY

CAUSE NO. 99-04-1644-E

| | | |
|---|---|---|
| GRACIELA ZAMORA, INDIVIDUALLY AND; ON BEHALF OF THE ESTATE OF HER LATE HUSBAND OSCAR ZAMORA, SR. AND; ON BEHALF OF THEIR MINOR SURVIVING SON OSCAR ZAMORA, JR. AND; | § § § § § § | IN THE DISTRICT COURT |

GRACIELA ZAMORA, INDIVIDUALLY AND; ON BEHALF OF THE ESTATE OF HER LATE HUSBAND OSCAR ZAMORA, SR. AND; ON BEHALF OF THEIR MINOR SURVIVING SON OSCAR ZAMORA, JR. AND; §§§§§§ IN THE DISTRICT COURT

OLIVIA ZAMORA, THE SURVIVING MOTHER OF THE LATE OSCAR ZAMORA, SR. §§§§

AND; ON BEHALF OF ALL THOSE ENTITLED TO RECOVER FOR THE TRAGIC, UNTIMELY DEATH OF THE LATE OSCAR ZAMORA, SR. §§§§§

                    Plaintiffs          §

and §

ANGIE ZAMORA §

                    Intervenor          §

VS.                                      §          357TH JUDICIAL DISTRICT

ABB KRAFTWERKE AKTIENGESELLSCHAFT and §§§

ABB ALSTOM POWER (SWITZERLAND) LTD, FORMERLY KNOWN AS ABB POWER GENERATION, LTD. §§§§

                    Defendants          §          CAMERON COUNTY, TEXAS

## PLAINTIFFS' THIRTEENTH AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, GRACIELA ZAMORA, INDIVIDUALLY AND; ON BEHALF

OF THE ESTATE OF HER LATE HUSBAND OSCAR ZAMORA, SR. AND; ON

BEHALF OF THEIR MINOR SURVIVING SON OSCAR ZAMORA, JR. AND;

EX. 11

OLIVIA ZAMORA, THE SURVIVING MOTHER OF THE LATE OSCAR ZAMORA, SR. AND; ON BEHALF OF ALL THOSE ENTITLED TO RECOVER FOR THE TRAGIC, UNTIMELY DEATH OF THE LATE OSCAR ZAMORA, SR., hereinafter referred to as Plaintiffs, complaining of ABB KRAFTWERKE AKTIENGESELLSCHAFT and ABB ALSTOM POWER (SWITZERLAND) LTD., FORMERLY KNOWN AS ABB POWER GENERATION, LTD., hereinafter referred to as Defendants, and for cause of action would show unto this Honorable Court as follows:

I.

Pursuant to Texas Rule of Civil Procedure 190.1, this case is to be governed by the provisions of Texas Rule of Civil Procedure 190.4 as discovery is intended to be conducted under Level 3 of Rule 190.1 of the Texas Rules of Civil Procedure.

All Plaintiffs are citizens and residents of the State of Texas.

Defendant, ABB KRAFTWERKE AKTIENGESELLSCHAFT, has appeared and answered herein and no written service of process is necessary. A copy of this pleading is being forwarded by certified mail, return receipt requested, through its attorney of record, Justin Williams, Williams, Kasperitis & Gowan, P.C., 5959 S. Staples, Suite 204, Corpus Christi, Texas 78413.

Defendant, ABB ALSTOM POWER (SWITZERLAND) LTD., FORMERLY KNOWN AS ABB POWER GENERATION, LTD., has appeared and answered herein and no written service of process is necessary. A copy of this pleading is being forwarded by certified mail, return receipt requested, through its attorney of

---

record, Justin Williams, Williams, Kasperitis & Gowan, P.C., 5959 S. Staples, Suite 204, Corpus Christi, Texas 78413.

## II.

Venue is proper in Cameron County, Texas pursuant to Section 15.002 of the Texas Civil Practice and Remedies Code in that the transaction and/or occurrence made the subject of this case and the acts or omissions giving rise to the cause of action all occurred in Cameron County, Texas.

## III.

On or about March 23, 1999, Decedent Oscar Zamora, Sr. while in the course and scope of his scope his employment as a longshoreman was instructed by Todd Stever in the course and scope of his employment and acting as a representative, agent, employee or manager of C.H. Robinson Company, was told to take off two bolts to a yellow shipping chock attached to a compressor which was manufactured by Defendants, ABB KRAFTWERKE AKTIENGESELLSCHAFT and ABB ALSTOM POWER (SWITZERLAND) LTD., FORMERLY KNOWN AS ABB POWER GENERATION, LTD. Upon removing the two bolts as instructed and not knowing that the two remaining bolts were not in fact attaching bolts, the yellow loading chock came loose and due to its weight in excess of 700 pounds, struck the Decedent in the head and neck, knocking him to the ground disabling him, and after a period of some conscious pain and suffering amounting to several hours, killed him.

---

CERTIFIED COPY

## IV.

Defendants ABB KRAFTWERKE AKTIENGESELLSCHAFT and ABB ALSTOM POWER (SWITZERLAND) LTD., FORMERLY KNOWN AS ABB POWER GENERATION, LTD. were and are the manufacturer in the business of designing, manufacturing and marketing generators and compressors including, but not limited to, the one to which the jacking plate in question was attached.  It is foreseeable that in the release and shipping of those generators and/or compressors, the jacking plates will be attached for their transport.  No decals, warnings or instructions were in place and as such the compressor/generator and jacking place in question were defective as designed, manufactured and/or marketed by Defendants.

In the further alternative, Defendants are in the business of design, manufacture and marketing of the jacking plates including, but not limited to, the "jacking plate" in question which was defective it its design, marketing and/or manufacture.  Either or all of the aforementioned products liability tort which producing caused the injuries and damages complained of including the conscious pain and suffering of the deceased Oscar Zamora, Sr. and the injuries, damages and loss to his surviving family members as more particularly set forth below.  Their conduct also amounted to negligence proximately causing, in the alternative, the injuries, death and damages to all Plaintiffs.

Each and all of the above Defendants ("ABB" Defendants) designed, manufactured and marketed the compressor or generator unit in question and

participated in the decision to ship such unit with the "jacking plate" in place on the unit and which were ostensibly held on by two bolts a piece, to all outward appearances. In fact, two of such bolts were only adjusting bolts which should not penetrate the unit itself. Upon removal of the remaining bolts, the 750 pounds or so, jacking plate would and could fall, as it did upon the Plaintiffs' decedent, Mr. Zamora. The shipping of such unit without adequate instructions, labels, or warnings, and the presence of an ABB person, in Texas, all amount to specific acts committed in the course of commerce in Texas, as was reasonably foreseeable due to not only its design, manufacturer and marketing, but also due to the units being directly shipped to the Port of Brownsville in Texas and amounts to an act of commerce invoking subject matter and personal jurisdiction in Texas.

## V.

Suit is brought on behalf of the Estate and all Plaintiffs and on Behalf of all those entitled to bring suit for the death of the late Oscar Zamora, Sr., specifically Decedent's wife Graciela Zamora, Decedent's son Oscar Zamora, Jr., Decedent's mother Olivia Zamora, and Decedent's daughter Angie Zamora, as Plaintiffs are the only persons competent, capable and qualified as the surviving heirs, beneficiaries, and claimants pursuant to the Texas Wrongful Death and Survival Statutes to bring such claims as they are the only proper claimants as the sole surviving wife, mother and children of the deceased. They hereby brings claims for all damages at law and equity and actual to which they may be entitled. All Plaintiffs damages are far in excess of the Court's minimum jurisdictional requirements which were proximately

caused by the acts or omissions of the Defendants. Despite any higher amount, however justly found and decided, by a jury (which is hereby specifically requested, and for which the fee has separately already been tendered), Graciela Zamora, Individually and on Behalf of The Estate of Her Late Husband Oscar Zamora, Sr. and his Only Child Oscar Zamora, Jr. and on Behalf Of Olivia Zamora, the Surviving Mother and Only Surviving Parent of Oscar Zamora, Sr. and all Others Entitled to Bring a Cause of Death Action for his Death, hereby state that the maximum amount of damages pursuant to Rule 47 of the Texas Rules of Civil Procedure, will be limited to $20,000,000.00 as specifically requested by Defendants.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Defendants be cited to appear and answer herein, and for a trial by a jury, that they have judgment against the Defendants, as may be allowed by law, and such other and further relief to which Plaintiffs are entitled, at law and at equity.

Respectfully Submitted,

LAW OFFICE OF WILLIAM J. TINNING
1013 Bluff Drive
Portland, Texas 78374
Telephone:   (361) 643-9200
Facsimile:   (361) 643-9600

BY: _____

William J. Tinning
State Bar No. 20060500

LEAD ATTORNEY FOR PLAINTIFFS

A TRUE COPY I CERTIFY
AURORA DE LA GARZA, CLERK
DISTRICT COURT CAMERON COUNTY, TEXAS

OCT 16 2003

BY_____ DEPUTY

**CO-COUNSEL:**

Louis S. Sorola
Attorney at Law
Post Office Box 5776
302 Kings Highway
Suite 112
Brownsville, Texas 78523-5776

Horacio Barrera
Law Offices of Martinez & Barrera
1201 E. Van Buren
Brownsville, Texas 78520

**CERTIFIED COPY**

---

Plaintiffs' Thirteenth Amended Original Petition                                        Page 7

## DEMAND FOR JURY TRIAL

**CERTIFIED COPY**

COMES NOW Plaintiffs in the above styled and numbered cause and respectfully demands a jury for trial of all issues in this case.

Respectfully Submitted,

**LAW OFFICE OF WILLIAM J. TINNING**
1013 Bluff Drive
Portland, Texas 78374
Telephone:   (361) 643-9200
Facsimile:   (361) 643-9600

BY:   _____

**William J. Tinning**
State Bar No. 20060500

**LEAD ATTORNEY FOR PLAINTIFF**

**CO-COUNSEL:**

**Louis S. Sorola**
**Attorney at Law**
Post Office Box 5776
302 Kings Highway
Suite 112
Brownsville, Texas 78523-5776

**Horacio Barrera**
**Law Offices of Martinez & Barrera**
1201 E. Van Buren
Brownsville, Texas 78520

## CERTIFICATE OF SERVICE

CERTIFIED COPY

I hereby certify that a true and correct copy of the above and foregoing instrument was forwarded to all counsel of record by the method listed below on this the __13th__ day of June, 2000.

**CERTIFIED MAIL - RRR and/or FACSIMILE:**

Justin Williams
Williams, Kasperitis & Gowan, P.C.
5959 S. Staples, Suite 204
Corpus Christi, Texas  78413

Mr. Keith N. Uhles
ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.
55 Cove Circle
P. O. Box 3509
Brownsville, Texas  78523-3509

Michael D. Murphy
MURPHY & WALKER, L.L.P.
2425 West Loop South, Suite 200
Houston, Texas  77027

**FIRST CLASS MAIL and/or FACSIMILE:**

Mr. R. Bruce Tharpe
LAW OFFICES OF R. BRUCE THARPE
Professional Plaza
715 East Frontage, Suite D
Alamo, Texas  78516

Louis S. Sorola
Attorney at Law
Post Office Box 5776
302 Kings Highway
Suite 112
Brownsville, Texas 78523-5776

CERTIFIED COPY

Horacio Barrera
Law Offices of Martinez & Barrera
1201 E. Van Buren
Brownsville, Texas 78520

_____
William J. Tinning

**CERTIFIED COPY**

## CAUSE NO. 99-04-1644-E

| | | |
|---|---|---|
| GRACIELA ZAMORA, INDIVIDUALLY | § | IN THE DISTRICT COURT |
| AND; ON BEHALF OF THE ESTATE | § | |
| OF HER LATE HUSBAND OSCAR | § | |
| ZAMORA, SR. AND; ON BEHALF OF | § | |
| THEIR MINOR SURVIVING SON | § | |
| OSCAR ZAMORA, JR. AND; | § | |

OLIVIA ZAMORA, THE SURVIVING
MOTHER OF THE LATE OSCAR
ZAMORA, SR.

AND; ON BEHALF OF ALL THOSE
ENTITLED TO RECOVER FOR THE
TRAGIC, UNTIMELY DEATH OF THE
LATE OSCAR ZAMORA, SR.

        **Plaintiffs**

**and**

ANGIE ZAMORA

        **Intervenor**



VS.                    357TH JUDICIAL DISTRICT

ABB KRAFTWERKE
AKTIENGESELLSCHAFT,

ABB ALSTOM POWER (SWITZERLAND)
LTD, FORMERLY KNOWN AS
ABB POWER GENERATION, LTD. and

JUSTIN WILLIAMS

        **Defendants**    §    CAMERON COUNTY, TEXAS

## PLAINTIFFS' FOURTEENTH AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

    NOW COMES, GRACIELA ZAMORA, INDIVIDUALLY AND; ON BEHALF

OF THE ESTATE OF HER LATE HUSBAND OSCAR ZAMORA, SR. AND; ON

Ex. 12

BEHALF OF THEIR MINOR SURVIVING SON OSCAR ZAMORA, JR. AND;

OLIVIA ZAMORA, THE SURVIVING MOTHER OF THE LATE OSCAR ZAMORA,

SR. AND; ON BEHALF OF ALL THOSE ENTITLED TO RECOVER FOR THE

TRAGIC, UNTIMELY DEATH OF THE LATE OSCAR ZAMORA, SR., hereinafter

referred to as Plaintiffs, complaining of ABB KRAFTWERKE

AKTIENGESELLSCHAFT, ABB ALSTOM POWER (SWITZERLAND) LTD.,

FORMERLY KNOWN AS ABB POWER GENERATION, LTD. and JUSTIN

WILLIAMS, hereinafter referred to as Defendants, and for cause of action would

show unto this Honorable Court as follows:

**I.**

Pursuant to Texas Rule of Civil Procedure 190.1, this case is to be governed by

the provisions of Texas Rule of Civil Procedure 190.4 as discovery is intended to be

conducted under Level 3 of Rule 190.1 of the Texas Rules of Civil Procedure.

All Plaintiffs are citizens and residents of the State of Texas.

Defendant, ABB KRAFTWERKE AKTIENGESELLSCHAFT, has appeared and

answered herein and no written service of process is necessary. A copy of this

pleading is being forwarded by certified mail, return receipt requested, through its

attorney of record, Justin Williams, Williams, Kasperitis & Gowan, P.C., 5959 S.

Staples, Suite 204, Corpus Christi, Texas 78413.

Defendant, ABB ALSTOM POWER (SWITZERLAND) LTD., FORMERLY

KNOWN AS ABB POWER GENERATION, LTD., has appeared and answered

herein and no written service of process is necessary. A copy of this pleading is

---

Plaintiffs' Fourteenth Amended Original Petition                    Page 2

**CERTIFIED COPY**

being forwarded by certified mail, return receipt requested, through its attorney of record, Justin Williams, Williams, Kasperitis & Gowan, P.C., 5959 S. Staples, Suite 204, Corpus Christi, Texas 78413.

Defendant, JUSTIN WILLIAMS, may be served with citation at his place of employment, WILLIAMS, KASPERITIS & GOWAN, 5959 S. Staples, Suite 204, Corpus Christi, Texas 78413.

## II.

Venue is proper in Cameron County, Texas pursuant to Section 15.002 of the Texas Civil Practice and Remedies Code in that the transaction and/or occurrence made the subject of this case and the acts or omissions giving rise to the cause of action all occurred in Cameron County, Texas.

## III.

On or about June 5, 2000, Plaintiffs reached a settled with Defendants ABB KRAFTWERKE AKTIENGESELLSCHAFT and ABB ALSTOM POWER (SWITZERLAND) LTD., FORMERLY KNOWN AS ABB POWER GENERATION, LTD. and their attorney JUSTIN WILLIAMS for the wrongful death of Oscar Zamora, Sr. As part of the settlement agreement Defendants agreed to pay court costs. As of today's date, the Plaintiffs still have not received the court costs in the amount of $10,234.15.

## IV.

In addition, on or about April 5, 2000, counsel for Plaintiffs and Defendants traveled to Venice, Italy to take depositions of Defendants' employees and agreed to

split the costs for the court reporter, conference room and interpreter. Defendants' counsel paid $3,014.00 for the conference room and interpreter. Plaintiffs' counsel paid $1,299.12 for the court reporter. Plaintiffs still have not received the $649.56 for Defendants' half of the court reporter. Plaintiffs also still owe Defendants $1,507.00 for their half of the conference room and interpreter, but were instructed by the office manager for Defendants' counsel not to make this payment until Plaintiffs received the check from Defendants for their half of the court reporter.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Defendants be cited to appear and answer herein, and for a trial by a jury, that they have judgment against the Defendants, as may be allowed by law, and such other and further relief to which Plaintiffs are entitled, at law and at equity.

Respectfully Submitted,

LAW OFFICE OF WILLIAM J. TINNING
1013 Bluff Drive
Portland, Texas 78374
Telephone: (361) 643-9200
Facsimile: (361) 643-9600

BY: _____
William J. Tinning
State Bar No. 20060500

**LEAD ATTORNEY FOR PLAINTIFFS**

A TRUE COPY I CERTIFY
**AURORA DE LA GARZA, CLERK**
DISTRICT COURT CAMERON COUNTY, TEXAS

OCT 1 6 2003

BY _____ DEPUTY

DISTRICT COURT
CAMERON COUNTY, TEXAS

## LIFTING SERVICES AGREEMENT

THIS AGREEMENT, made and entered into this 22nd day of March, 1999, by and between Schaefer Setevedoring, a Texas corporation, mailing address P.O. Box 4499 Brownsville, Texas ("Company") and Brownsville Barge and Crane, Inc., a Texas corporation with offices at P.O. Box 71 Port Isabel, Texas 78578 ("Contractor") .

### WITNESSETH:

WHEREAS, Contractor is engaged in the business of providing lifting services utilizing Contractor's crane vessels, and Company wishes to engage Contractor and Contractor wishes to perform on behalf of Company the work described in this Agreement;

NOW, THEREFORE, IN CONSIDERATION of the mutual covenants and agreements herein contained, the parties hereto mutually agree as follows:

**1.0     WORK TO BE PERFORMED**

1.1   At such time as Company may request Contractor to perform lifting services  and provided Contractor accepts to perform such services for Company, Company shall issue to Contractor a work order setting forth the particulars of the lifting services to be performed (the "Work") including the location where the Work is to be performed, a full list and accurate description of the items to be lifted, the time for commencement of the lifting services. All work orders, whether written or verbal, between Company and Contractor for lifting services shall be governed by the terms and conditions of this Agreement, which are deemed incorporated therein by reference and made a part thereof as though set in full therein. Additional or contrary terms and conditions in any documents or correspondence from Company shall not form a part of any agreement between Company and Contractor unless executed by both parties as an amendment to this Agreement.

1.2   Contractor shall use reasonable efforts to provide the crane vessel listed in the work order (or suitable substitute) at the time specified in the work order and in good working order and condition and with fully trained personnel capable of efficiently operating such vessel to perform the Work described therein.

**2.0     LOCATION AND CONDITIONS OF WORK**

2.1   Company shall provide to Contractor full, complete, and accurate information regarding the items to be lifted including weight, and centers of gravity. Company shall at its risk and expense ensure that the items to be lifted by Contractor are in all respects properly fitted and ready for lifting including without limitation all required lifting points being installed and all required engineering analysis having been performed to ensure that the items can be lifted and landed safely and efficiently by Contractor with its crane vessels in their current configuration. Receiving areas shall be within reach of Contractor's crane vessel.  Company shall supply all dunnage and shoring for receiving the items to be lifted by Contractor.

EX.13

### 3.0    PERMITS

3.1    Company shall obtain all permits, licenses, and consents necessary for Contractor to have ingress and egress to and from the Work site, including necessary consents and permission from docks, piers, property owners, port authorities, and all requisite governmental approvals. Contractor shall obtain all permits and licenses applicable to Contractor's equipment and personnel.

### 4.0    PAYMENT

4.1    Company shall pay Contractor for the Work at the rate Two Thousand One Hundred Dollars ($2,100.00) per hour with a four hour minimum.   This rate shall begin from departing the Amfels, Inc. shipyard until the vessel returns.  There shall be a minimum fee of Eight Thousand Four Hundred Dollars $8,400.00 due prior to sailing.   Contractor shall invoice Company for any balance upon completion of the Work and Company shall pay Contractor the amount of such invoice within fifteen (15) days of receipt thereof.  Amounts not paid when due shall bear interest on the unpaid amount thereof until paid at the rate of eighteen percent (18%) per annum but in no event to exceed the highest lawful rate.  In the event a portion of an invoice is disputed, the undisputed portion thereof shall be paid within the time specified herein for payments.

### 5.0    INDEPENDENT CONTRACTOR RELATIONSHIP

5.1    In the performance of the Work, Contractor shall be deemed to be an independent contractor, Company being interested only in the results obtained.  It is the understanding and intention of the parties hereto that no relationship of master and servant or principal and agent shall exist between Company and the employees, agents, or representatives of Contractor, whether by "borrowed servant" or any other legal theory.

### 6.0    INSURANCE

6.1    Without limiting the indemnity obligations or liabilities of Company under this Agreement, at any and all times during the term of this Agreement Company shall maintain insurance coverages with Brownsville Barge & Crane, Inc. its officers, directors employees, agents and subcontractors as additional named assured with full waivers of subrogation of the kinds and in the minimum amounts set forth as follows:

(a)    Workers' Compensation Insurance and Employers' Liability Insurance complying with the applicable laws of the country and state where the Work is performed, with Employers Liability limits of $1,000,000.00. covering all Contractor's employees performing Work under this Agreement, and with voluntary compensation and borrowed servant coverage, Longshoremen's and Harbor Workers' Compensation Act, and Maritime Employers' Liability including wages. transportation, maintenance and cure.

(b)    Comprehensive General Liability Insurance with combined limits for Bodily Injury and Property Damage of $1,000,000.00 per occurrence, with contractual liability coverage.

products and completed operations, and with territorial limits extended to include all areas where the Work is to be performed, with the watercraft exclusion deleted and containing an "in rem" endorsement.

(c)    All risk ocean form cargo and property insurance covering the full replacement cost of all items to be lifted by Contractor, including coverage for sue and labor, removal of debris, and privilege to be lifted.

(d)    All such policies shall be endorsed to waive subrogation against Contractor, and all policies other than the policy specified in subparagraph (a) shall be endorsed to name Contractor as an additional insured and that such policies shall be primary as respects Contractor; provided, however, that any requirement to name Contractor as an additional insured or waive subrogation on any of Company's policies or that Company's policies shall be primary to Contractor and excess and non-contributing to any other policies of Contractor shall be limited to those risks for which Company has agreed under the terms of this Agreement to assume responsibility and indemnify Contractor.

(e)    All such policies shall be endorsed to provide that Contractor shall not be liable for premiums, commissions, or calls, and that Contractor shall be given fifteen (15) days prior written notice of any cancellation, alteration non-renewal, or material modifications of such policies.    All deductibles or self-insured retentions shall be for the account of Company. Company agrees to have its insurers furnish Contractor a certificate or certificates evidencing the insurance coverages required herein and upon request certified copies of such policies.

## 7.0    INDEMNITY

7.1    It is agreed between Company and Contractor that Company and its clients shall comply with the indemnity obligations set forth in Exhibit "A" attached hereto and made a part hereof.

## 8.0    FORCE MAJEURE

8.1    Performance by Contractor under this  Agreement shall be excused if and to the extent caused by occurrences beyond the control of Contractor affected, including, but not limited to, decrees or orders of governmental authorities, acts of God, strikes, lockout or other labor difficulties, fires, explosions, storms, inclement weather which makes working of Contractor's equipment unsafe, riots, war, rebellion and sabotage, damage to or destruction of the Work or the vessels or other equipment used in connection therewith, delays in transportation, or any other event whether similar or dissimilar to any of the foregoing which prevents, hinders, or delays Contractor's performance of its obligations under this Agreement, provided, however that Contractor shall be required to use reasonable diligence in seeking to overcome the obstacle, and subject to Contractor's other job commitments performance shall be resumed within a reasonable time after the obstacle has been removed.  During all periods of force majeure, Contractor shall standby the Work site and be compensated at the rate provided for in the Work order.  Settlement of any and all labor difficulties shall be entirely within the discretion of Contractor.

## 9.0   WARRANTY

9.1   CONTRACTOR SPECIFICALLY EXCLUDES ALL REPRESENTATIONS, OBLIGATIONS, AND WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY EXPRESS OR IMPLIED WARRANTY OF SEAWORTHINESS, GOOD AND WORKMANLIKE PERFORMANCE OR DILIGENCE, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND ALL OTHER LIABILITIES IN CONNECTION WITH THE WORK AS PERFORMED (AT COMMON LAW OR IN CONTRACT OR TORT OR OTHERWISE, INCLUDING, WITHOUT LIMITATION, STRICT LIABILITY AND NEGLIGENCE OF CONTRACTOR).

## 10.0   TERMINATION

10.1   Any Work order under this Agreement may be terminated by Company in the event Contractor fails to perform its covenants and agreements herein and fails to cure such default within thirty (30) days after written notice from Company. In the event of such termination, Company shall be entitled to exercise all rights and remedies available at law, in equity, and under this Agreement.

10.2   Notwithstanding anything to the contrary contained in this Agreement, Contractor's responsibility for the cost of completion of the Work and/or all other damages which may be recoverable by Company for Contractor's default under any Work order shall be limited to an aggregate sum equal to ten percent (10%) of the total contract price of the Work otherwise payable to Contractor under the terms of this Agreement.

## 11.0   LAWS, RULES AND REGULATIONS

11.1   Contractor and Company agree to comply with all laws, rules, and regulations, which are now or may become applicable to the Work or operation covered by this Agreement or arising out of the performance of such operations. If the other party is required to pay any fine or penalty resulting from Contractor or Company's failure to comply with such laws, rules, or regulations, the party failing to comply shall immediately reimburse the other party for any such payment.

## 12.0   NOTICES

Any notices under this Agreement shall be in writing and shall be delivered by hand or sent by facsimile confirmed by mail to the following addresses.

If to Company:

_____

_____

Attention: _____
Fax No.: _____

If to Contractor:
Brownsville Barge & Crane, Inc.
P.O. Box 71
Port Isabel, Texas
Attention: David Tsoi
Fax No.: (956) 943-3690

Notices shall be deemed effective on receipt.

## 13.0   MISCELLANEOUS PROVISIONS

13.1    If any provision of this Agreement shall be determined to be void or unenforceable, the scope of such void or unenforceable provision shall be deemed modified and diminished to the extent necessary to render such provision valid and enforceable. In any event, the validity or enforceability of any provision shall not affect any other provision of this Agreement, and the Agreement shall be construed and enforced as if such void or unenforceable provision had not been included.

13.2    The use of captions and subcaptions in this Agreement is merely for the convenience of the parties hereto, and they shall not be used in interpreting any part of this Agreement.

13.3    This Agreement and the exhibits hereto constitute the entire agreement between the parties concerning this subject matter, and supersedes all prior agreements, promises, correspondence, discussions, representations and understandings, written or verbal.

13.4    This Agreement shall not be amended, modified, or waived except in writing signed by the party sought to be charged.

13.5    The validity, construction and interpretation of this Agreement shall be governed by the general maritime law of the United States, and to the extent maritime law is not applicable then by the laws of the State of Texas, excluding any conflict of laws principles which would direct the application of the substantive law of another jurisdiction.

13.6    Except for claims which are asserted against a party to this Agreement by a third party in litigation which would give rise to a right of indemnification by the other party to this Agreement, all claims, disputes or controversies arising out of, or in relation to the interpretation, application or enforcement of this Agreement shall be decided by arbitration utilizing a single arbitrator in accordance with the Construction Industry Rules of the American Arbitration Association. The arbitrator shall have no past or present business relationship to any

of the parties or their counsel of record. The arbitrator shall be a commercial person experienced in the marine construction industry and shall not be a practicing attorney. The arbitration shall be held in Houston, Texas. The decision of the arbitrator shall be final, binding and enforceable in any court of competent jurisdiction and the parties agree that there shall be no appeal from the arbitrator's decision. The parties hereto hereby submit to the jurisdiction of the state and federal courts of the State of Texas sitting in Houston, Texas. All statutes of limitation that would otherwise be applicable shall apply to any arbitration proceeding. The right to arbitrate shall survive the termination of this Agreement. The arbitrator shall be empowered to award the costs of the arbitration, interest, and attorneys fees and expenses to the prevailing party. The parties hereby irrevocably designate the Texas Secretary of State as their designated agent for service of process unless another agent has been designated in Texas, and agree that service of process may be made on such agent under the Texas Long Arm Statute, or by first class certified mail, return receipt requested, to such agent and to the party at the address for notices for such party set forth in this Agreement, or by any other means permitted under applicable law.

    IN WITNESS WHEREOF, the parties hereto have executed this Agreement upon the date above shown, which may be in several counterparts, each of which taken together shall be one and the same instrument.

Schaefer Setevedoring, Inc.
COMPANY

By: _Charle Cherring_

Name: _CHARLES CHERRINGTON_

Title: _OPERATIONS MANAGER_

Brownsville Barge & Crane, Inc.
CONTRACTOR

By: _David Tsai_

Name: _David Tsai_

Title: _V.P. & Ops Manager_

Exhibit "A"

ABB and or C.H. Robinson Company shall release, defend, indemnify and hold Brownsville Barge & Crane, Inc., its directors, officers, employees, agents and subcontractors (Contractor Group) harmless from and against all liability, claims and losses, damages, punitive damages, costs, expenses attorney's fees, demands suits and causes of action of every kind (the "claims"), arising on account of personal injury or death or damage to property in anyway incident to or in connection with or arising out of the "Lifting Services Agreement" dated March 22, 1999 between Schaefer Stevedoring, Inc. and Brownsville Barge & Crane, Inc. regardless of the sole, joint or concurrent negligence, negligence per se, gross negligence, statutory fault, or strict liability of any member of the Contractor Group or the unseaworthiness of any vessel owned operated or chartered by any member of the Owner Group without limit and without regard to the cause or causes thereof that may have caused or contributed to the claim, to the extent such indemnity obligations are not prohibited by applicable law.

ABB COMPANY

By: ROLAND SCHNEIDER

Name: R. Schneider

Title: Deputy General Manager

C. H. ROBINSON COMPANY

By: _____

Name: _____

Title: _____

Westlaw.

115 S.W.3d 287                                                                                              Page 1
115 S.W.3d 287
(Cite as: 115 S.W.3d 287)

**H**

Court of Appeals of Texas,
Corpus Christi-Edinburg.
**ABB KRAFTWERKE AKTIENGESELLSCHAFT
and ABB Alstom Power (Switzerland)
Ltd., f/k/a ABB Power Generation, Ltd., Appellants,
v.
BROWNSVILLE BARGE & CRANE, INC.,
Appellee.
No. 13-01-00756-CV.**

Aug. 28, 2003.
Rehearing Overruled Oct. 2, 2003.

Family of longshoreman who was fatally injured during the lifting of a 325- metric-ton generator from a barge onto a railway car brought action against manufacturer of generator, transportation company hired by manufacturer, and owner of the floating crane that made the lift. Crane owner filed cross-claim against manufacturer, seeking contractual indemnity for its legal fees. After underlying lawsuit settled, the 404th District Court, Cameron County, Abel C. Limas, J., entered summary judgment for crane owner on the indemnity claim. Manufacturer appealed. The Court of Appeals, Hinojosa, J., held that: (1) indemnity agreement was a valid and enforceable contract; (2) manufacturer's promise to indemnify crane owner in exchange for owner's lifting services was valid consideration for indemnity agreement; and (3) crane owner's refusal to provide crane lifting services without indemnification agreement did not amount to economic duress, as would invalidate agreement.

Affirmed.

West Headnotes

**[1] Indemnity ☞27**
208k27 Most Cited Cases

**[1] Indemnity ☞30(8)**
208k30(8) Most Cited Cases
Indemnity agreement between manufacturer of

325-metric-ton generator and owner of floating crane used to lift generator from barge to railway car, by which manufacturer agreed to indemnify crane owner for liability resulting from crane owner's own future negligence, was a valid and enforceable contract, even though crane owner did not sign the contract, where crane owner made it clear that execution of lift was dependent on manufacturer's signing of indemnity agreement, and manufacturer's representative did sign agreement and return it to crane owner.

**[2] Indemnity ☞31(1)**
208k31(1) Most Cited Cases
A contract of indemnity is an original obligation between the contracting parties, independent of other agreements.

**[3] Indemnity ☞31(1)**
208k31(1) Most Cited Cases
Indemnity contracts are construed under normal rules of contract construction.

**[4] Indemnity ☞27**
208k27 Most Cited Cases
An indemnity agreement must meet the criteria of a binding contract to be an original obligation and stand on its own.

**[5] Contracts ☞15**
95k15 Most Cited Cases

**[5] Contracts ☞16**
95k16 Most Cited Cases

**[5] Contracts ☞34**
95k34 Most Cited Cases

**[5] Contracts ☞42**
95k42 Most Cited Cases
The requirements of a binding contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ex. 14

115 S.W.3d 287
115 S.W.3d 287
(Cite as: 115 S.W.3d 287)

Page 2

**[6] Contracts 47**
95k47 Most Cited Cases
Consideration is a fundamental element of a valid contract.

**[7] Indemnity 30(1)**
208k30(1) Most Cited Cases
The "express negligence doctrine" requires that the intent of the party seeking indemnity from the consequences of that party's own future negligence must be expressed in unambiguous terms within the four corners of the contract.

**[8] Indemnity 30(1)**
208k30(1) Most Cited Cases
The conspicuousness requirement for an indemnity agreement demands that significant terms must appear on the face of the agreement in such a way as to attract the attention of a reasonable person.

**[9] Contracts 35**
95k35 Most Cited Cases
The absence of a signature on a contract does not necessarily destroy its validity.

**[10] Contracts 35**
95k35 Most Cited Cases
As long as the parties give their consent to the terms of a contract, and there is no evidence of an intent to require both signatures as a condition precedent to it becoming effective as a contract, signatures are not a required factor in the making of a valid contract.

**[11] Indemnity 27**
208k27 Most Cited Cases
Generator manufacturer's promise to indemnify owner of floating crane, which was used to lift generator from barge to railway car, for liability resulting from owner's negligence in exchange for crane owner's lifting services was valid "consideration" for indemnity agreement.

**[12] Contracts 10(1)**
95k10(1) Most Cited Cases
A contract must be based upon a valid consideration, in other words, mutuality of obligation.

**[13] Contracts 50**
95k50 Most Cited Cases

"Consideration," as an element of contract, is defined as either a benefit to the promisor or a loss or detriment to the promisee.

**[14] Contracts 50**
95k50 Most Cited Cases
Surrendering a legal right represents valid "consideration" for a contract.

**[15] Contracts 10(1)**
95k10(1) Most Cited Cases

**[15] Contracts 85**
95k85 Most Cited Cases
A contract that lacks consideration lacks mutuality of obligation and is unenforceable.

**[16] Contracts 88**
95k88 Most Cited Cases
There is a presumption that a written contract is supported by consideration.

**[17] Indemnity 100**
208k100 Most Cited Cases
The party asserting lack of consideration had the burden to prove that there was no consideration for an indemnity agreement.

**[18] Indemnity 27**
208k27 Most Cited Cases
Lifting services contract between owner of crane and provider of stevedoring services for lifting 325-metric-ton generator from a barge onto a railway car did not already obligate crane owner to perform lifting services at time crane owner, as indemnitee, and generator's manufacturer, as indemnitor, entered into indemnity agreement, and thus, indemnity agreement did not fail for lack of consideration, where lifting services contract stated that its terms would apply if manufacturer elected to use crane services and if crane owner agreed to provide such services.

**[19] Indemnity 27**
208k27 Most Cited Cases
Floating crane owner's refusal to provide crane to lift generator from barge to railway car unless generator's manufacturer signed indemnity agreement did not
amount to a threat to commit an act that crane owner had no legal right to do, and crane owner was

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

115 S.W.3d 287
115 S.W.3d 287
(Cite as: 115 S.W.3d 287)

Page 3

not a party to manufacturer's financial distress occasioned by delay in delivering generator to purchasers, and thus, indemnity agreement was not coerced by economic duress, as would invalidate agreement, where manufacturer and crane owner were not parties to any prior agreement, and manufacturer's compulsion to deliver generator without further delay was due to its third-party contract with purchasers; manufacturer was not forced to sign indemnity agreement against its free will.

**[20] Contracts ⟜95(1)**
95k95(1) Most Cited Cases
The elements of economic duress, as may invalidate a contract, are: (1) a threat to do something that a party has no legal right to do; (2) illegal exaction or some fraud or deception; and (3) imminent restraint such as to destroy free agency without present means of protection.

**[21] Contracts ⟜95(1)**
95k95(1) Most Cited Cases
Economic duress, which may invalidate a contract, may be claimed only when the party against whom it is claimed was responsible for claimant's financial distress.

**[22] Contracts ⟜95(1)**
95k95(1) Most Cited Cases
A claim of economic duress, as may invalidate a contract, must be based on the acts or conduct of the opposite party and not merely on the necessities of the purported victim or on a fear of what a third person might do.

**[23] Contracts ⟜95(1)**
95k95(1) Most Cited Cases
The mere fact that a person enters into a contract with reluctance or as a result of the pressures of business circumstances does not, of itself, constitute economic duress invalidating the contract.
*289 Justin L. Williams, Corpus Christi, for Appellants.

Javier Gonzalez, Keith N. Uhles, Royston, Rayzor, Vickery & Williams, Brownsville, Jon D. Brooks, Rangel Law Firm, P.C., Corpus Christi, for Appellee.

Before Justices HINOJOSA, CASTILLO, and

CHAVEZ. [FN1]

FN1. Retired Justice Melchor Chavez, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

**OPINION**

Opinion by Justice HINOJOSA.

This case requires us to determine the validity of an indemnity agreement. In three issues, appellants, ABB Kraftwerke Aktiengesellschaft and ABB Alstom Power (Switzerland) Ltd., f/k/a ABB Power Generation, Ltd. ("ABB"), contend the trial court erred in granting the motions for summary judgment of appellee, Brownsville Barge & Crane, Inc. ("Brownsville Barge"). We affirm.

**A. BACKGROUND AND PROCEDURAL HISTORY**
This case arises from the shipment of a large turbine generator from Manheim, Germany to Monterrey, Mexico, through the Port of Brownsville. ABB manufactured and arranged for the shipment of the 325-metric-ton generator from Germany to the Port of Brownsville. ABB contracted with C.H. Robinson ("Robinson") to transport the generator from the Port of Brownsville to Monterrey.

Robinson contracted with Schaefer Stevedoring ("Schaefer") to provide stevedoring services at the Port of Brownsville. Schaefer was to offload the generator from a lash barge and load it onto a railway car alongside the dock. Schaefer entered into a "Lifting Services Agreement" with Brownsville Barge for its floating crane barge, the "Atlantic Giant," to make the lift. The Atlantic Giant was the only floating crane between Houston, Texas and Tampico, Mexico, capable of lifting this *290 generator because of its size and configuration. In the months preceding the lift, Brownsville Barge was given partial payment for the use of the Atlantic Giant. All necessary arrangements and permits to move the generator into Mexico were also obtained.

Just before the lift, Brownsville Barge approached

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

115 S.W.3d 287                                                    Page 4
115 S.W.3d 287
(Cite as: 115 S.W.3d 287)

representatives of ABB and Robinson and asked them to sign an indemnity agreement, attached as an exhibit to the Lifting Services Agreement entered into between Brownsville Barge and Schaefer. Brownsville Barge informed the representatives that it would not provide the lifting equipment if ABB's representative did not sign the indemnity agreement. ABB signed the indemnity agreement; Robinson refused.

Oscar Zamora, Sr., was a longshoreman at the Port of Brownsville. Zamora was the gang foreman of the longshoremen hired by Schaefer to perform the lift. During the lift, while the generator was suspended by the crane, a jacking plate fell from the generator and fatally injured Zamora. Zamora's family filed suit against ABB, Robinson, and Brownsville Barge for wrongful death. The lawsuit eventually settled.

Brownsville Barge filed a cross-claim against ABB, asserting ABB owed it contractual indemnity for the legal fees it incurred in defending against the Zamora family's claims. Brownsville Barge filed a motion for partial summary judgment and a no evidence motion for summary judgment, and the trial court granted both motions. ABB also filed a motion for summary judgment, which the trial court denied. This appeal ensued.

## B. ISSUES PRESENTED
In three issues, ABB contends the trial court erred in granting Brownsville Barge's motions for summary judgment because: (1) Brownsville Barge did not have a valid contract with ABB; (2) there was no valid consideration for the indemnity agreement; and (3) the indemnity agreement was an unenforceable adhesion contract. ABB does not complain of the trial court's denial of its motion for summary judgment.

## C. STANDARD OF REVIEW
We review the grant of a traditional summary judgment de novo. *Alejandro v. Bell*, 84 S.W.3d 383, 390 (Tex.App.-Corpus Christi 2002, no pet.). To sustain a summary judgment, we must determine that the pleadings and summary judgment evidence establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *McFadden v. Am. United Life Ins. Co.*, 658 S.W.2d 147, 148 (Tex.1983). We accept

all evidence favorable to the nonmovant as true, indulge the nonmovant with every reasonable inference, and resolve any doubt in the nonmovant's favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex.1985). Summary judgment is proper if the movant disproves at least one element of each of the plaintiff's claims or affirmatively establishes each element of an affirmative defense to each claim. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997).

By contrast, a no-evidence summary judgment presented under Texas Rule of Civil Procedure 166a(i) is equivalent to a pretrial directed verdict, and this Court applies the same legal sufficiency standard on review. *Zapata v. The Children's Clinic*, 997 S.W.2d 745, 747 (Tex.App.-Corpus Christi 1999, pet. denied). A no-evidence motion for summary judgment must be granted if: (1) the moving party asserts that there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the **\*291** burden of proof at trial; and (2) the respondent produces no summary judgment evidence raising a genuine issue of material fact on those elements. *See* Tex.R. Civ. P. 166a(i). In reviewing a no-evidence summary judgment, we review the record in the light most favorable to the nonmovant to determine whether more than a scintilla of evidence was presented on the challenged elements of the nonmovant's claim. *See Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex.2002).

## D. LACK OF ENFORCEABLE CONTRACT
[1] In its first issue, ABB complains that the trial court erred in granting summary judgment on Brownsville Barge's indemnity claim because Brownsville Barge did not have a valid contract with ABB.

The indemnity agreement was attached as an exhibit to the Lifting Services Agreement. ABB asserts the Lifting Services Agreement was only between Brownsville Barge and Schaefer. ABB argues that it was not a party to the Lifting Services Agreement.

[2][3][4] Whether ABB was a party to the Lifting Services Agreement becomes relevant to our analysis only if we find that the indemnity

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

agreement cannot stand on its own as a contract between ABB and Brownsville Barge. A contract of indemnity is an original obligation between the contracting parties, independent of other agreements. *Joseph Thomas, Inc. v. Graham,* 842 S.W.2d 343, 346 (Tex.App.-Tyler 1992, no writ). Indemnity contracts are construed under normal rules of contract construction. *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 284 (Tex.1998). The indemnity agreement at issue must meet the criteria of a binding contract to be an original obligation and stand on its own.

[5][6] Under Texas law, the requirements of a binding contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Labor Ready Cent. III, L.P. v. Gonzalez,* 64 S.W.3d 519, 522 (Tex.App.-Corpus Christi 2001, no pet.). Consideration is also a fundamental element of a valid contract. *Fed. Sign v. Tex. So. Univ.,* 951 S.W.2d 401, 408-09 (Tex.1997).

[7][8] Because indemnity agreements involve an extraordinary shifting of risk, the supreme court has imposed certain fair-notice requirements. *See Dresser Indus., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 508 (Tex.1993). These requirements incorporate the express negligence doctrine and mandate conspicuousness. *Id.* The express negligence doctrine requires that the intent of the party seeking indemnity from the consequences of that party's own future negligence must be expressed in unambiguous terms within the four corners of the contract. *Ethyl Corp. v. Daniel Constr. Co.,* 725 S.W.2d 705, 708 (Tex.1987). The conspicuous requirement demands that significant terms must appear on the face of the agreement in such a way as to attract the attention of a reasonable person. *Dresser Indus.,* 853 S.W.2d at 508.

Brownsville Barge's representative approached Roland Schneider, ABB's authorized representative, with an indemnity agreement containing the following terms:

ABB and or C.H. Robinson Company shall release, defend, indemnify and hold Brownsville Barge & Crane, Inc., its directors, officers,

employees, agents and subcontractors (Contractor Group) harmless from and against all liability, claims and losses, damages, punitive *292 damages, costs, expenses, attorney's fees, demands, suits, and causes of action of every kind (the "claims"), arising on account of personal injury or death or damage to property in any way incident to or in connection with or arising out of the "Lifting Services Agreement" dated March 22, 1999 between Schaefer Stevedoring, Inc. and Brownsville Barge & Crane, Inc. regardless of the sole, joint or concurrent negligence, negligence per se, gross negligence, statutory fault, or strict liability of any member of the Contractor Group or the unseaworthiness of any vessel owned operated or chartered by any member of the Owner Group without limit and without regard to the cause or causes thereof that may have caused or contributed to the claim, to the extent such indemnity obligations are not prohibited by applicable law.

By its very terms, the agreement purports to indemnify Brownsville Barge for liabilities resulting from its own future negligence. The agreement provides that ABB would "indemnify and hold harmless Brownsville Barge & Crane, Inc .... from and against all liability ... arising on account of personal injury or death ... arising out of the 'Lifting Services Agreement' ... regardless of the sole, joint or concurrent negligence" of Brownsville Barge employees. Brownsville Barge's intent as to what risk it intended to shift to ABB is clear from the four corners of the document. *See Atlantic Richfield Co. v. Petroleum Personnel, Inc.,* 768 S.W.2d 724, 726 (Tex.1989) (holding that language which sufficiently defines the parties' intent meets the requirements of the express negligence rule).

At the presentment of the indemnity agreement, the record reflects that Brownsville Barge made clear its position that execution of the lift was dependent on ABB signing the agreement. Thereafter, Schneider, ABB's Deputy General Manager, duly executed the indemnity agreement. It is undisputed that Schneider had full authority to bind ABB and to negotiate or consent to the terms of the indemnity agreement. Following execution of the agreement, Schneider consulted with Sandro Lepori, his supervisor in Switzerland. Lepori agreed that Schneider had appropriately signed the agreement.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

115 S.W.3d 287
115 S.W.3d 287
(Cite as: 115 S.W.3d 287)

Page 6

Thus, ABB accepted the offer when it returned the signed indemnity agreement to Brownsville Barge.

[9][10] ABB argues that Brownsville Barge did not sign the indemnity provision. However, the absence of a signature on a contract does not necessarily destroy its validity. *Simmons & Simmons Constr. Co., Inc. v. Rea*, 155 Tex. 353, 286 S.W.2d 415, 418 (1955); *Williams v. Brown & Root, Inc.*, 947 S.W.2d 673, 677 (Tex.App.-Texarkana 1997, no writ). As long as the parties give their consent to the terms of the contract, and there is no evidence of an intent to require both signatures as a condition precedent to it becoming effective as a contract, signatures are not a required factor in the making of a valid contract. *Rea*, 286 S.W.2d at 417-18.

There is no evidence in the record that Brownsville Barge did not consent to the terms of the indemnity agreement. The offer was presented with the clear understanding that Brownsville Barge would offer the services of the Atlantic Giant on the condition that ABB signed the indemnity agreement.

Thus, based on the foregoing objective evidence, we hold there was a proper offer, acceptance, consent to the terms of the agreement, and intent of the parties that the contract be mutual and binding. *See Sutton v. Estate of McCormick*, 47 S.W.3d 179, 182 (Tex.App.-Corpus Christi 2001, no pet.) (using an objective standard to examine whether there was a meeting of the *293 minds). Appellant's first issue is overruled.

### E. LACK OF CONSIDERATION
[11] In its second issue, ABB contends the trial court erred in granting Brownsville Barge's motion for summary judgment because there was no consideration to validate the indemnity agreement. ABB asserts that Brownsville Barge was already obligated to perform the lift under the terms of the Lifting Services Agreement signed between Brownsville Barge and Schaefer, and that the indemnity agreement is void for lack of new consideration.

[12][13][14][15] A contract must be based upon a valid consideration, in other words, mutuality of obligation. *Fed. Sign.*, 951 S.W.2d at 408. Consideration is defined as "either a benefit to the promisor or a loss or detriment to the promisee.

Surrendering a legal right represents valid consideration." *Northern Natural Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603, 607 (Tex.1998). A contract that lacks consideration lacks mutuality of obligation and is unenforceable. *Fed. Sign*, 951 S.W.2d at 409.

[16][17] There is a presumption that a written contract is supported by consideration. *Cortez v. Nat'l Bank of Commerce*, 578 S.W.2d 476, 479 (Tex.Civ.App.-Corpus Christi 1979, writ ref'd n.r.e.) . As the party asserting lack of consideration, ABB had the burden to prove that there was no consideration for the indemnity agreement. *See Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex.1991); *Rodriguez v. Southwestern Drug Corp.*, 619 S.W.2d 469, 472 (Tex.Civ.App.-Houston [14th Dist.] 1981, no writ).

Brownsville Barge's summary judgment evidence established that Brownsville Barge told ABB's representative that Brownsville Barge would not provide the Atlantic Giant unless ABB signed the indemnity agreement. In exchange for its agreement to indemnify Brownsville Barge, ABB received the benefit of the use of Brownsville Barge's lifting equipment so that its generator could be timely transported to Monterrey. We conclude that the exchange of consideration that passed between the parties, consisting of a promise to indemnify in exchange for the lifting services, was valid consideration to support the indemnity agreement.

[18] ABB's contention that Brownsville Barge was already obligated to perform the lift under the Lifting Services Agreement misinterprets the terms of the Lifting Services Agreement which provided that "[a]t such time as [Schaefer] may request [Brownsville Barge] to perform lifting services and provided [Brownsville Barge] accepts to perform such services for [Schaefer], [Schaefer] shall issue to [Brownsville Barge] a work order setting forth the particulars of the lifting services to be performed.... All work ... for lifting services shall be governed by the terms and conditions of this Agreement...." The Lifting Services Agreement did not obligate Brownsville Barge to perform any services; rather, it stated the terms that would apply if ABB elected to use Brownsville Barge's services and Brownsville Barge agreed to provide such

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

115 S.W.3d 287
115 S.W.3d 287
(Cite as: 115 S.W.3d 287)

services.

We hold that ABB has failed to meet its burden to prove that there was no valid consideration for the written indemnity agreement. Accordingly, appellant's second issue is overruled.

### F. ECONOMIC DURESS

[19] In its third issue, ABB contends the trial court erred in granting Brownsville Barge's motion for summary judgment because the indemnity agreement was coerced by economic duress.

*294 [20] The elements of economic duress are: (1) a threat to do something that a party has no legal right to do; (2) illegal exaction or some fraud or deception; and (3) imminent restraint such as to destroy free agency without present means of protection. *King v. Bishop*, 879 S.W.2d 222, 223 (Tex.App.-Houston [14th Dist.] 1994, no writ); *Simpson v. MBank Dallas, N.A.*, 724 S.W.2d 102, 109 (Tex.App.-Dallas 1987, writ ref'd n.r.e.).

ABB contends that Brownsville Barge "put a gun to ABB's head" and forced it to sign the indemnity agreement in the face of Brownsville Barge's refusal to otherwise provide the Atlantic Giant. Brownsville Barge's "threat" to the ABB representative may have been constraining to ABB, but it was not necessarily a threat to commit an act Brownsville Barge had no legal right to do. ABB and Brownsville Barge were not parties to any agreement at the time the offer was made. Therefore, there was no legal obligation for Brownsville Barge to break.

Additionally, the record does not indicate that ABB was forced to accept the indemnity agreement against its will. ABB could have refused to execute the indemnity agreement as Robinson chose to do. This action may have caused ABB to incur additional expenses in procuring the services of a crane comparable to the Atlantic Giant, yet this inconvenience does not amount to a destruction of free will. *See Simpson*, 724 S.W.2d at 109.

[21][22][23] Finally, Brownsville Barge is not the party responsible for ABB's financial distress. Economic duress may be claimed only when the party against whom it is claimed was responsible for claimant's financial distress. *Deer Creek Ltd. v.*

*North Am. Mortgage Co.*, 792 S.W.2d 198, 203 (Tex.App.-Dallas 1990, no writ). A claim of economic duress must be based on the acts or conduct of the opposite party and not merely on the necessities of the purported victim, or on a fear of what a third person might do. *First Tex. Sav. Ass'n of Dallas v. Dicker Ctr., Inc.*, 631 S.W.2d 179, 186 (Tex.App.- Tyler 1982, no writ). The mere fact that a person enters into a contract with reluctance, or as a result of the pressures of business circumstances, does not, of itself, constitute economic duress invalidating the contract. *Id.*

The record evidence shows that ABB's compulsion to deliver the generator without further delay to the original purchasers in Mexico was due to its original agreement with the purchasers. According to the terms of the purchase agreement, a delay in delivery would commence the accrual of liquidated damages. Because this financial distress originated from a party other than Brownsville Barge, it fails to support a claim of economic duress. *See Simpson*, 724 S.W.2d at 109.

Brownsville Barge merely presented ABB with a business decision-sign the indemnification agreement or face the loss of Brownsville Barge's lifting equipment. Such a situation does not amount to economic duress.

We conclude that Brownsville Barge did not threaten to do any act that it had no legal right to do, ABB was not forced to sign the indemnity agreement against its free will, and any economic pressure arose from ABB's agreement with a third party. We hold that the trial court did not err in finding that essential elements of duress were absent as a matter of law. Appellant's third issue is overruled.

We affirm the trial court's order granting appellee's motions for summary judgment.

115 S.W.3d 287

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Date of Printing: FEB 24,2005

### KEYCITE

**ᴴABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc., 115 S.W.3d 287 (Tex.App.-Corpus Christi, Aug 28, 2003) (NO. 13-01-00756-CV)**

**History**
**Direct History**

=>    1 **ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.,** 115 S.W.3d 287 (Tex.App.-Corpus Christi Aug 28, 2003) (NO. 13-01-00756-CV), rehearing overruled (Oct 02, 2003), review denied (Mar 26, 2004)

© Copyright 2005 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.