**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **ABB KRAFTWERKE AKTIENGESELLSCHAFT, and ABB ALSTOM POWER (SWITZERLAND) LTD., formerly known as ABB POWER GENERATION, LTD.** | § | |
| **Plaintiffs** | § | **CIVIL ACTION NO. B:03-CV-192** |
| **Vs.** | § | |
| **C.H. ROBINSON COMPANY** | § | |
| **Defendant** | § | |

**DEFENDANT C.H. ROBINSON COMPANY'S RESPONSE TO PLAINTIFFS' MOTION FOR REHEARING ON THE APPLICATION OF SWISS LAW**

Defendant C.H. Robinson Company ("C.H. Robinson") files this Response to Plaintiffs' Motion for Rehearing on the Application of Swiss Law and in support thereof would show the Court as follows:

## I. Procedural Background

1. Plaintiffs filed this lawsuit against C.H. Robinson on July 16, 2003. On August 25, 2003, C.H. Robinson filed a Rule 12(b)(6) motion. C.H. Robinson asserted in that motion that Plaintiffs' claim for breach of contract was barred by limitations and that Plaintiffs' vaguely asserted claim for indemnity was not supported by Texas law.

2. On November 1, Plaintiffs filed their original Motion for Application of Swiss Law. Plaintiffs claimed that the contract at issue was signed and negotiated in Switzerland, that "Plaintiffs' contracting party is Swiss," that the location of the subject matter of the contract was Switzerland, Texas, and Mexico, and that Swiss law should therefore apply to this dispute. *Dkt*

*No. 26, Plaintiffs' Motion for Application of Swiss Law, dated October 31, 2003,* at 3. On March 17, 2004, Plaintiffs filed an affidavit from David Huegin, legal counsel for ABB Switzerland Ltd., in support of their motion.

3. On September 30, 2004, this Court entered an order denying Plaintiffs' Motion for Application of Swiss Law. *Dkt No. 45, Order entered September 30, 2003* at 14, 22. The Court reviewed the evidence submitted by the parties and made the following factual determinations:

- The contract was signed in Switzerland. *Id.* at 7.
- The contract negotiations "predominantly took place through a series of correspondence originating in *both* Switzerland and Texas." *Id.* at 7.
- The contract called for performance in Texas and Mexico, but not in Switzerland. "Although it would be reasonable to conclude more of the contract performance occurred in Texas, in the most careful of analyses, the Court will determine the performance of the contract was divided between Texas and Mexico." *Id.* at 9.
- "The subject matter of the contract involved the transportation and lift of the generator from and in both Texas and Mexico." *Id.* at 9.
- With regard to the domicile, residence, nationality, place of incorporation and place of business of the parties, the Court determined that "both Texas and Switzerland constitute locales that should be considered in the Court's analysis." *Id.* at 10.

The Court gave little weight to the affidavit of Mr. Huegin, as it contains legal conclusions that are matters of law for the Court to decide. The Court also found that the affiant is not disinterested and that he had failed to provide full cites to the allegedly relevant Swiss law and to provide copies of the relevant law with translations. *Dkt. No. 45, Order entered September 30, 2003* at 6-7.

4. On February 23, 2005, five days before the close of discovery, Plaintiffs served C.H. Robinson with their Motion for Rehearing on the Application of Swiss Law. For the reasons set forth in this response, Plaintiffs' motion should be denied.

**II. Statement of the Issue to be Ruled upon by the Court**

5. The issue before the Court is whether the Plaintiffs have produced substantive evidence of Swiss law, or additional facts or new law that might justify reconsideration of the Court's September 30, 2004 Order denying Plaintiffs' original Motion for Application of Swiss Law.

**III. Summary of the Argument**

6. The Court should deny Plaintiffs' Motion for Rehearing. Plaintiffs have not presented any substantive evidence of Swiss law that would support their contention that a conflict exists between the laws of Texas and the laws of Switzerland. Even if one assumes a conflict between the laws of Texas and Switzerland, Plaintiffs have failed to present any new legal or factual grounds that would support the application of Swiss.

**IV. Arguments and Authorities**

**Plaintiffs have the burden but have not provided the Court with sufficient evidence of the substance of Swiss law.**

7. A choice-of-law determination is preceded by an analysis of the substantive law, so the court may assess whether the laws of the States conflict. If there is no conflict, then no choice-of-law analysis is necessary. *Schneider Nat'l Transport v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002); *W.R. Grace & Co. v. Cont'l Cas. Co.*, 896 F.2d 865, 874 (5th Cir. 1990) (when the substantive decisional law of all relevant jurisdictions is the same, a court need not "go through the motions" of making a choice of law). Plaintiffs have the burden to prove the substance of Swiss law "to a reasonable certainty such that the district court could apply it," and

to demonstrate an actual conflict between Texas and Swiss law. *In re Avantel, S.A.*, 343 F.3d 311, 321-22 (5th Cir. 2003), *citing Banque Libanaise Pour Le Commerce v. Khreich,* 915 F.2d 1000, 1006 (5th Cir. 1990); *Houston Casualty Co. v. Certain Underwriters at Lloyd's London,* 51 F.Supp.2d 789, 799 (S.D. Tex. 1999), *aff'd without published opinion,* 252 F.3d 1357. Plaintiffs have failed to meet that burden. Plaintiffs' only submission on the substance of Swiss law is the affidavit of David Huegin. In its September 30, 2004 Order, the Court gave this affidavit "little weight."

> The affidavit contains legal conclusions that are matters of law for this Court to decide. Furthermore, the affiant does not provide full cites to the allegedly relevant Swiss law, copies of the relevant law with translations are not provided, and the affiant, legal counsel to ABB Switzerland Ltd., is not disinterested. Thus any conclusions that Swiss law does not bar Plaintiff's claims in this case are legally conclusory and not reliable because Mr. Huegin has an interest in this case by virtue of his position as legal counsel to ABB.

*Dkt. No. 45, Order entered September 30, 2003* at 6-7.

8. In *In re Avantel, S.A.,* the movant seeking to apply foreign law provided the district court with only the declaration of a Mexican attorney, describing his interpretation of Mexican privilege law. *In re Avantel, S.A.,* 343 F.3d at 322. The district court determined that the declaration provided no verifiable information from which the district court could infer a conflict between Texas and Mexican law, and held that the movant had not adequately proven Mexican law. The Fifth Circuit affirmed. *Id.; see also Haywin Textile Products, Inc. v. Int'l Finance Inv.,* 137 F.Supp.2d 431, 435 (S.D.N.Y. 2001), *judgment aff'd in unpublished opinion,* 38 Fed. Appx. 96, 2002 WL 1362978 (2d Cir. 2002) (expert affidavit that cited several cases and legal treatises insufficient where party failed to attach copies of the authorities, and offered only a cursory analysis of one of the issues before the court). Plaintiffs in this case have given the Court even less to go on – an affidavit that is similarly deficient in substance, but from an

interested witness. *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F.Supp.2d 118, 128 (S.D.N.Y. 1997), *aff'd, Farrell Lines Inc. v. Ceres Terminals Inc.*, 161 F.3d 115 (2nd Cir. 1998) (finding that the representations made by the proponent's Italian lawyer were insufficient evidence of foreign law because, *inter alia,* the lawyer was not a disinterested witness).

9. Absent sufficient proof to establish with reasonable certainty the substance of Swiss law, the district court should apply the law of the forum. *In re Avantel, S.A.*, 343 F.3d at 321-22, *citing Seguros Tepeyac, S.A. Compania Mexicana de Seguros Generales v. Bostrom,* 347 F.2d 168, 174-5 n. 3 (5th Cir. 1965) (noting that it is generally agreed that "the law of the forum should apply when foreign law is not proved"); *Banque Libanaise*, 915 F.2d at 1006; *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1223-24 (10th Cir. 2000), *aff'd* 532 U.S. 588, 121 S.Ct. 1776, 149 L.Ed. 845 (2001).

**Plaintiffs have submitted no new law or facts evidence that would support the Court's reconsideration of their Motion for Application of Swiss law.**

10. Even if one assumes that Plaintiffs have demonstrated a conflict between Swiss and Texas law, their Motion for Rehearing should still be denied, as they have submitted no new law or facts to support application of Swiss law. A choice of law analysis requires that the Court consider the factors set forth in the RESTATEMENT (SECOND) OF CONFLICT OF LAWS ("Restatement"). The factors pertaining to a breach of contract action are set forth in Section 188 of the Restatement. Those factors are: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties. RESTATEMENT (SECOND) OF CONFLICT OF LAWS §188; *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 678-679 (Tex. 1990), *cert. denied* 498 U.S. 1048, 111 S.Ct. 755 (1991) (adopting section 188 of the Restatement). As noted by the Court, section 188 also

states that contracts are "to be evaluated according to their relative importance with respect to the particular issue." *Dkt. No. 45, Order entered September 30, 2003* at 5.

11. Plaintiffs complain initially that "the Court wrongly adopted one of the Defendant's factors to be considered in the significant relationship test." Specifically, Plaintiffs that the Court should not have considered the location of any C.H. Robinson offices other than its principal place of business and place of incorporation. Plaintiffs cite no legal support for this contention.

12. Plaintiffs' argument contravenes the clear language of section 188 of the Restatement, which calls for consideration of "the domicil [sic], residence, nationality, place of incorporation, and place of business of the parties." RESTATEMENT (SECOND) OF CONFLICT OF LAWS §188(2)(e). The federal district courts in Texas, applying Texas choice-of-law rules, consider the location of offices other than headquarters and place of incorporation. *See Perez v. Alcoa Fujikura, Ltd.*, 969 F.Supp. 991, 1004, 1005 (W.D. Tex. 1997) (in weighing section 188 factors and ultimately applying Texas law to a food services agreement, court noted that defendants were Mexican entities, but one entity had an office in Texas and the other entity's parent corporation had offices in Texas); *Bakhico Co. Ltd. v. Shasta Beverages, Inc.*, 1998 WL 614647 *3 (N.D. Tex. 1998) (unpublished opinion) (in weighing section 188 factors and ultimately applying Texas law, court noted that defendant Reynolds's principal place of business was in Virginia, but defendant was also authorized to do business in Texas and was a resident of Texas with a production facility located in Houston, Texas) (attached as **Ex. F**).

13. C.H. Robinson has nine locations in Texas. **Ex. A,** *Affidavit of Thomas J. Sandstrom* at ¶ 6. These numerous locations in Texas gain additional importance when measured against the fact that the identity, and consequently, the domicile, residence, nationality,

place of incorporation, and place of business of the proper plaintiff is presently unknown. Plaintiffs have acknowledged that the real party in interest is not presently in this lawsuit. Plaintiffs' counsel stated at the deposition of their corporate representative that he was unsure of the name of the real party in interest.[1] The German domicile of ABB Kraftwerke Aktiengesellschaft and the Swiss domicile of ABB Alstom Power should not be considered in the choice of law analysis, as neither is a real party in interest.

14. Plaintiffs' second argument for reconsideration of the Court's ruling that Texas law applies to this dispute is factual. Plaintiffs contend that Swiss law should apply because a representative of C.H. Robinson traveled to Switzerland twice, "for the original negotiation of the contract and second, for the concluding negotiations and signing of the contract." It has already been submitted to the Court that a representative of C.H. Robinson signed the contract while in Switzerland. The remainder of Plaintiffs' allegations distorts the evidence that has been previously submitted to the Court, and the January 21, 2005 deposition testimony of Todd Strever.

15. As found by the Court, based on documents submitted with C.H. Robinson's response to Plaintiffs' original Application for Swiss Law, C.H. Robinson's representative negotiated the contract from its office in Keller, Texas. **Ex. A.1** at CHR ABB 00045, 00047, 00050 (correspondence concerning terms of contract from C.H. Robinson's Keller, Texas office to ABB Power Generation Ltd.), and 00054-57 (correspondence concerning terms of contract from ABB Power Generation Ltd. to C.H. Robinson's Keller, Texas office); *Dkt. No. 45, Order entered September 30, 2003* at 7-8. In fact, the *only* aspect of the contract that occurred in

[1] In response to inquiry by counsel for C.H. Robinson, Plaintiffs' counsel explained that the real party at interest now is "an ABB – it's ABB, Ltd. – some Ltd. company that's in Switzerland…the real party at interest is the parent corporation of ABB Lummus." **Ex. B**, 8:18-21; 8:25 – 9:1; *see also Defendant C.H. Robinson's Rule 17(a) Objection and Motion to Dismiss, filed February 28, 2005.*

Switzerland was its drafting (by ABB Alstom Power) and signature – mere formalities to memorialize the parties' agreement entered into via mail and phone conversations originating in both Texas and Switzerland. All of these facts have been previously presented to the Court.

16. Despite Plaintiffs' characterization to the contrary, Todd Strever's testimony is consistent with the facts previously found by the Court, i.e., that C.H. Robinson negotiated the contract from Texas. Strever testified that he was not involved with the negotiation of the contract, and that James Hamilton, a former employee of C.H. Robinson, would be the person with most knowledge of the contract negotiations. **Ex. C,** *January 21, 2005 Deposition of Todd Strever* at 20:5-23. Mr. Hamilton testified that the contract was negotiated via phone calls and the delivery of proposals and price quotations. **Ex. D,** *April 25, 2000 Deposition of James Hamilton* at 17:20 – 19:5. The proposals and price quotations were sent from C.H. Robinson's Keller, Texas office. **Ex. A.1** at CHR ABB 00045, 00047, 00050. Moreover, Mr. Strever's testimony that a representative of C.H. Robinson twice traveled to Switzerland is equivocal at best. **Ex. C** at 19:25 – 20:4. Even if a C.H. Robinson representative did make two rather than one trip to Switzerland, that small bit of information does not militate in favor of the application of Swiss law. As explained by C.H. Robinson's corporate representative, "common sense" dictates that most of the negotiations took place "in the States," since "you wouldn't fly across the ocean to kind of whip something together and sign a big contract like this." *See also* **Ex. E,** *February 25, 2005 Deposition of Tom Ferguson* at 31:16–24; 35:1-17

17. Plaintiffs' third contention is that the "most significant portion of the contract did not involve the State of Texas." Specifically, Plaintiffs contend that the "most difficult part" of the contract involved the skidding of heavy equipment from rail cars to trailer in Apodaca, Mexico. Presumably, this is an argument concerning the place of performance of the contract.

C.H. Robinson would note initially that Plaintiffs' third contention also mischaracterizes the testimony of Todd Strever. Mr. Strever testified that he was not involved with unloading of the generator in Mexico, that he had never seen "skidding" take place, but that his understanding was that it was a "pretty involved process." **Ex. C** at 21:23 – 22:18. He did not testify that it was difficult, much less the "most difficult part" of the performance of the contract. More significantly, the contention does not weigh in favor of the application of Swiss law. It remains undisputed that no portion of the performance of the contract is in Switzerland. *Dkt. No. 45, Order entered September 30, 2003* at 9.

18. C.H. Robinson would also note that Section 196 of the Restatement creates a presumption regarding which law applies to a contract for services, like the contract between Plaintiffs and C.H. Robinson. Section 196 states:

> The validity of a contract for the rendition of services and the rights created thereby are determined in the absence of an effective choice of law by the parties, by the local law of the state where the contract requires that the services, or a major portion of the services, be rendered, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.[2]

RESTATEMENT (SECOND) OF CONFLICT OF LAWS §196. As C.H. Robinson did not render any services in Switzerland, the presumption is against the application of Swiss law. Further supporting this analysis is the undisputed fact that all relevant services C.H. Robinson rendered to Plaintiffs were rendered in Texas. Plaintiffs seek to recover damages they incurred in the

[2] The section 6 factors were noted by the Court in its September 30, 2004 Order and are "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of these states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basis policies underlying the particular field of law, (f) certainty, predictability, and uniformity of the result, and (g) ease in the determination and application of the law to be applied." RESTATEMENT (SECOND) OF CONFLICT OF LAW §6.

litigation arising from the death of Oscar Zamora. The accident that led to Mr. Zamora's death occurred in Brownsville, Texas. Plaintiffs have never contended that C.H. Robinson did or failed to do anything in Mexico or Switzerland that resulted in the death of Mr. Zamora.

19. Plaintiffs' fourth contention is that the origination of the contract occurred in Mexico, not Texas. Plaintiffs are referring to information, already garnered in the underlying lawsuit and therefore available to Plaintiffs when they made their first motion for application of Swiss law, that Jim Hamilton, the C.H. Robinson employee who negotiated the contract with ABB, first met an ABB representative while in Mexico, working on a job for Siemens Westinghouse. **Ex. D,** *April 25, 2000, Deposition of James Hamilton,* at 15:15 – 16:2. This information does not suggest that the contract "originated" in Mexico. Contract negotiations did not begin until Jim Hamilton returned to C.H. Robinson's Keller, Texas office and submitted a price quotation to ABB. **Ex. D** at 17:20 – 18:3. This information does not merit reconsideration of the Court's order denying Plaintiffs original Motion for Application of Swiss law, since (1) the Restatement factors do not consider when the parties to the contract first met; (2) the information has been available to Plaintiffs for five years, long before they filed their original motion; and (3) the information does not weigh in favor of the application of Swiss law.

20. Plaintiffs' final argument for reconsideration appears to be that, because C.H. Robinson has not contradicted the Affidavit of Mr. Huegin, Mr. Huegin's legal opinions concerning the substance of Swiss law are controlling. As stated above, ¶¶ 7-9, Plaintiffs have the burden of establishing the substance of Swiss law. C.H. Robinson had and has no obligation to correct Plaintiffs' failure to meet their burden. Because they have failed to meet their burden, the law of the forum state, Texas, should apply. *See supra* at ¶ 9.

## V. Conclusion

21. C.H. Robinson asks the Court to deny Plaintiffs' Motion for Rehearing on the Application of Swiss Law because Plaintiffs have failed to meet their burden to establish with reasonable certainty the substance of Swiss law, and Plaintiffs have not presented or even referenced any new evidence or law that would favor the application of Swiss law.

## VI. Prayer for Relief

For these reasons, Defendant C.H. Robinson respectfully requests that Plaintiffs' Motion for Rehearing on the Application of Swiss Law be denied, that Texas law be found to apply to all issues, and that C.H. Robinson be granted all other relief to which it is entitled, both in law and equity.

Respectfully submitted,

MCGINNIS, LOCHRIDGE & KILGORE, L.L.P.

By: Karen C. Ciotti

Steven J. Watkins
ATTORNEY-IN-CHARGE
State Bar No. 20927700
So. Dist. Bar No. 146

3200 One Houston Center
1221 McKinney Street
Houston, Texas 77010
Telephone: (713) 615-8500
Facsimile: (713) 615-8585

**ATTORNEYS FOR DEFENDANT**

C.H. ROBINSON COMPANY

OF COUNSEL:

Karan C. Ciotti
State Bar No. 05226300
So. Dist. Bar No. 16874
MCGINNIS, LOCHRIDGE & KILGORE, L.L.P.
3200 One Houston Center
1221 McKinney Street
Houston, Texas 77010
Telephone: (713) 615-8500
Facsimile: (713) 615-8585

**CERTIFICATE OF SERVICE**

I hereby certify that a true and complete copy of the above and foregoing Defendant C.H. Robinson Company's Response to Plaintiffs' Motion for Rehearing on Application of Swiss Law by facsimile and by certified mail, return receipt requested, on this the 15th day of March, 2005 to the following:

Justin L. Williams
The Law Office of Justin L. Williams, P.C.
600 Leopard Street, Suite 1810
Corpus Christi, Texas 78473

Karan C. Ciotti
Karan C. Ciotti