United States District Court
Southern District of Texas
FILED

APR 0 1 2005

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| ABB KRAFTWERKE § | |
| AKTIENGESELLSCHAFT, and § | |
| ABB ALSTOM POWER (SWITZERLAND) § | |
| LTD., formerly known as ABB POWER § | |
| GENERATION, LTD. § | |
|               Plaintiffs § | |
| § | Civil Action No. B:03-CV-192 |
| VS. § | |
| § | |
| § | |
| C. H. ROBINSON COMPANY § | |
|               Defendant § | |

## PLAINTIFFS' AMENDED RESPONSE TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................. ii

I.   Statement of Facts .............................................. 1

II.  Statement of the Issues ......................................... 4

III. Summary of the Argument ......................................... 4

IV.  Arguments and Authorities ....................................... 5

     A.   Indemnity Claim ............................................ 5

     B.   Breach of Contract Claim .................................. 12

V.   Prayer for Relief .............................................. 12

Appendix Table of Contents ........................................... 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

Hardy v. Gulf Oil Corp.,
949 F.2d 826 (5th Cir. 1992) .................................................. 11

## STATE CASES

Compton v. Texaco, Inc., ......................................................... 11
42 S.W.3d 354 (Tex.App.–Houston [14th Dist.] 2001, pet. denied),

Gutierrez v. Cayman Islands Firm of Deloitte & Touche, ................... 6, 7
100 S.W.3d 261 (Tex.App.–San Antonio 2002, no pet.)

Mercedes Benz of North America, Inc. v. Dickenson, ........................ 6
720 S.W.2d 844, 858 (Tex.App.–Fort Worth 1986, no writ)

Ross v. Texas One Partnership, ................................................ 6
796 S.W.2d 206, 210 (Tex.App.–Dallas 1990),
writ denied per currium 806 S.W.2d 222 (Tex. 1991)

Royal Mortgage Corp. v. Montague, ........................................... 6
41 S.W.3d 721 (Tex.App.–Fort Worth 2001, no pet)

R R Street & Co., Inc. v. Pilgram Enterprises, Inc., et al., ................... 11
81 S.W.3d 276 (Tex.App.–Houston [1st Dist.] 2001)

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ABB KRAFTWERKE AKTIENGESELLSCHAFT, and ABB ALSTOM POWER (SWITZERLAND) LTD., formerly known as ABB POWER GENERATION, LTD. | § § § § § | |
| Plaintiffs | § | Civil Action No. B:03-CV-192 |
| VS. | § § | |
| C. H. ROBINSON COMPANY | § | |
| Defendant | § § | |

**PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE OF JUDGE OF SAID COURT:

NOW COME, ABB KRAFTWERKE AKTIENGESELLSCHAFT and ABB ALSTOM POWER (SWITZERLAND) LTD., formerly known as ABB POWER GENERATION, LTD., Plaintiffs (hereinafter referred to as "ABB") and file this their Motion, and would show this Honorable Court as follows:

### I. STATEMENT OF FACTS

1. ABB representatives met with Jim Hamilton, the Heavy Haul division manager for C. H. Robinson in Mexico to discuss entering into a contract to manage the transportation of heavy electrical generating equipment to a power plant being built outside of Monterrey, Mexico. Exhibit "A" Hamilton deposition pg. 15, lines 11-25; pg. 16 lines 1-2.

2. Hamilton traveled to Switzerland to negotiate C. H. Robinson's involvement in the project. Exhibit "B" Strever deposition pg. 19, line 25; pg. 20 lines 1-4. Exhibit "C" Sandro Lepori deposition pg. 3 lines 38-48.

3. Hamilton returned to Switzerland and signed the contract between ABB and C. H. Robinson on February 16, 1999 in Switzerland. Exhibit "D" contract between Robinson and ABB.

4. The contract contained the scope of work Robinson was to perform on behalf of ABB - transport the equipment from the Port of Brownsville to the jobsite in Mexico and set the equipment on the pads at the jobsite. Exhibit "D" contract between Robinson and ABB.

5. Robinson was to manage the project on behalf of ABB. Exhibit "D" contract between Robinson and ABB. Exhibit "A" deposition of Jim Hamilton pg. 34 lines 19-35; pg. 35 lines 1-22.

6. ABB had the right to control the details of Robinson's work Exhibit "B" deposition of Todd Strever pg. 8 lines 14-25; pg. 9 lines 1-6; pg. 11 lines 5-25; pg. 12 lines 1-25. Exhibit "E" deposition of Roland Schneider at pg. 4 lines 5-30. Exhibit "C" deposition of Sandro Lepori at pg. 8 lines 26-37, which included the right to interfere with Robinson's job. Exhibit "A", deposition of Jim Hamilton pg. 38 lines 8-15.

7. Robinson had the right to enter into contracts on behalf of ABB to accomplish the job Exhibit "D" contract. Exhibit "B" deposition of Todd Strever pg. 17 lines 12-17; pg.

18 lines 24-25; pg. 19 lines 1-24. Exhibit "C" deposition of Sandro Lepori, pg. 11 lines 9-25. Exhibit "F" letter from Hamilton to Lepori dated July 19, 1999, with invoices.

8. Robinson entered into contracts on incurred costs on behalf of ABB above the contract price had the authority to and in fact did do so. Exhibit "D" contract. Exhibit "B" deposition of Todd Strever pg. 17, lines 12-17. Exhibit "C" deposition of Sandro Lepori pg. 9 line 49; pg. 10 lines 1-50; pg. 11 lines 1-25.

9. Robinson had the right to bind ABB a principle Exhibit "B" deposition of Todd Strever. Exhibit "C" deposition of Sandro Lepori pg. 17 lines 9-25.

10. ABB supplied tools and/or equipment used by Robinson to perform their job Exhibit "G" fax from Hamilton to Lepori. Exhibit "F" invoice from Robinson to ABB. Exhibit "B" deposition of Todd Strever pg. 35 lines 16-25; pg. 36 lines 1-25. Exhibit "E" deposition of Roland Schneider pg. 3 lines 22-51; pg. 4 lines 1-30. Exhibit "C" deposition of Sandro Lepori pg. 16 lines 20-37.

11. Robinson was to provide a logistics plan as part of their management of the project. Exhibit "E" deposition of Schneider pg. 7 lines 11-46. Exhibit "C" deposition of Lepori pg. 6, lines 42-48.

12. No logistics plan was provided by Robinson Exhibit "E" deposition of Schneider pg. 2 line 37; pg. 8 line 27; pg. 10 lines 48-51; pg. 11 lines 1-50; pg. 12 lines 4-51; pg. 13 lines 1-14.

13. Robinson did not provide a plan for lifting the generator from the lash barge to the railcar nor did they insure that their contractors were familiar with the equipment so that the lift could be safely executed. Exhibit "E" deposition of Roland Schneider pg. 2 line 37; pg. 8 line 27; pg. 10 lines 48-51; pg. 11 lines 1-50; pg. 12 lines 4-51; pg. 13 lines 1-14. Exhibit "C" deposition of Sandro Lepori pg. 13 lines 36-47.

14. The transportation of the equipment from the barge to the railcars was Robinson's responsibility Exhibit "D" contract. Exhibit "F" letter from Hamilton to Lepori. Exhibit "A" deposition of Jim Hamilton pg. 34 lines 19-25; pg. 35 lines 1-22. Exhibit "E" deposition of Roland Schneider.

15. Robinson's contractors hired to fulfill their responsibility to ABB to move the equipment did not know how to safely place the equipment on the railcar, and did not know how the equipment was configured or the accident would not have occurred.

## II. STATEMENT OF THE ISSUES

16. Robinson is not entitled to summary judgment on Plaintiffs' claims:

   (1) Plaintiff has established Robinson was acting as its agent and Plaintiff faced liability as a result of what Robinson did and didn't do;

   (2) Robinson breached its contract with ABB. If the court rules Swiss law applies Robinson is liable to ABB for their breach.

## III. SUMMARY OF THE ARGUMENT

17. Robinson was not as they claim, an independent contractor. Jim Hamilton, the

Robinson division manager in his testimony conclusively establishes Robinson was not acting as an independent contractor. Todd Strever in his most recent deposition answers all agency questions in the affirmative. ABB had, and in fact, exercised their right to control Robinson's work. Agency, which is normally a matter for the trier of fact, not for summary judgment, is established by the testimony. Vicarious liability occurs when one is liable because of the actions or in actions of another. It does not depend upon the allegations of the Plaintiff as claimed. That the principle is liable for the acts of the agent is a basic concept of agency law. In employee-employer situations often the employee is not even sued, therefore, there is no claim against the employee except as an employee. The employee or in this case, the agent remains liable to third parties for their actions. Where the agent is a corporation with insurance coverage it is normal for the Plaintiff to attempt to hold both parties liable to maximize recovery. ABB would have faced no liability if not for the actions and in actions of their agent.

18.   If Swiss law applies, then Robinson is liable for their breaches of contract irrespective of their status as ABB's agent.

## IV.   ARGUMENT AND AUTHORITIES

19.   Summary Judgment is not proper when the movant fails to establish that at least one necessary element of Plaintiffs' claims are barred. In this case, Defendant cannot establish that they are entitled to summary judgment as they are unable to negate the elements of Plaintiffs' claims.

A.  **Indemnity Claim**

20. Robinson admits that there is common-law indemnity available for a principle who is liable for the actions of their agent. Since they admit such liability exists it is not necessary to duplicate their briefing on this issue.

21. In order to qualify for common-law indemnity ABB must first show that Robinson acted as their agent. To establish the agency relationship ABB must show an act constituting the appointment of the agent, a meeting of the minds, that the principle authorizes the agent to transact some business or manage some affair for the principle and the principle has the right to control the actions of the agent <u>Gutierrez v. Cayman Islands Firm of Deloitte & Touche</u>, 100 S.W.3d 261 (Tex.App.–San Antonio 2002, no pet.).

22. As the court noted in its ruling on Robinson's Motion to Dismiss, the contract between the parties alone was not sufficient to establish agency. However, the contract in question is evidence of the agency relationship as it establishes a meeting of the minds between the two parties, the affair to be managed, the authorization of ABB for Robinson to act for this specific purpose and Robinson's right to bind ABB to contingencies. The contract does not state the parties are entering into a principle/agent relationship nor does it state Robinson will act as an independent contractor. Exhibit "D" contract between Robinson and ABB. Agency may also be established outside the contract based on the parties words and conduct. <u>Ross v. Texas One Partnership</u>, 796 S.W.2d 206, 210 (Tex.App.–Dallas 1990), writ denied per currium 806 S.W.2d 222 (Tex. 1991), <u>Mercedes</u>

Benz of North America, Inc. v. Dickenson, 720 S.W.2d 844, 858 (Tex.App.–Fort Worth 1986, no writ), Royal Mortgage Corp. v. Montague, 41 S.W.3d 721 (Tex.App.–Fort Worth 2001, no pet). As Lepori testified, and as common sense would dictate, ABB never hires independent contractors for the type of job Robinson was doing, they always use agents as they require the ability to control the agent and the agent requires the ability to bind ABB if emergencies arise. Exhibit "C" deposition of Lepori pg. 2 lines 5-19; pg. 8 lines 3-37; pg. 9 lines 1-48.

23.   The essential element that distinguishes agency from independent contractor is the right of the principle to control the details of the work. The principle does not have the right to control how the work is accomplished by an independent contractor but has that right with an agent. Gutierrez v. Cayman Islands Firm of Deloitte & Touche, 100 S.W.3d 261 (Tex.App.–San Antonio 2002, no pet.)

24.   Robinson was authorized by ABB to manage the shipment of goods from Brownsville to Monterrey and had that specific objective to accomplish on behalf of ABB. Robinson entered into the contract with ABB to accomplish these specific objectives on their behalf. Exhibit "B" deposition of Todd Strever taken on January 21, 2005 at pg. 8, lines 5-13. Exhibit "D" contract between ABB and Robinson. Exhibit "A" deposition of Jim Hamilton taken on April 25, 2000, at page 34 lines 19-25; pg. 35 lines 1-22.

25.   Robinson was subject to ABB's control on how they performed the details of the work, Exhibit "B" Strever deposition taken on January 21, 2005 at pg. 8 lines 14-19; pg.

10 lines 22-25; pg. 88 lines 1-25; pg. 12 lines 1-25; pg. 13 lines 1-8; pg. 15 lines 18-25; pg. 16 lines 1-2. Exhibit "A" deposition of James Hamilton taken on April 25, 2000 at pg. 38 lines 8-15. Exhibit "C" deposition of Sandro Lepori taken on February 14, 2005 at pg. 8 lines 38-50; pg. 9 lines 1-48, and Exhibit "E" deposition of Roland Schneider taken on February 15, 2005 at pg. 4 lines 5-30. In fact, it is interesting that Hamilton uses the word interfere because the Italian and German translation of right to control became right to interfere with the details of Robinson's work in Lepori's and Schneider's depositions.

26. ABB not only had the right to control the details of Robinson's work. Exhibit "B" Strever deposition of January 25, 2005 at pg. 40 lines 1-19 but in fact did control details of the work Exhibit "G" memo to Roland Schneider February 22, 1999. Exhibit "B" Strever deposition of January 25, 2005 pg. 12 lines 1-25, pg. 13 lines 1-8. Exhibit "E" deposition of Roland Schneider taken on February 15, 2005 at pg. 4 lines 5-30.

27. When an agent such as Robinson takes on the task of managing a project such as the movement of heavy equipment from Brownsville to Monterrey it is not expected that they will use tools like a carpenter uses a hammer to build a house. It was known that Robinson would hire and manage subcontractors to do the physical labor needed for the move. Exhibit "D" contract between ABB and Robinson discussing insurance requirements for subcontractors.

28. Despite the fact that tools such as hammers were not required by Robinson, ABB furnished equipment needed for their job and for their subcontractors to perform their

job. ABB provided technical drawings, for the project and subs, provided the platform to set the generator on the railcar, payed for the actual spreader bars used by the crane to lift the generator (almost like a hammer) and Roland Schneider did the drawings of the railcar for Robinson while in Brownsville prior to the move. Exhibit "G" fax regarding spreader bars. Exhibit "F" invoice for spreader bars. Exhibit "B"Strever deposition of January 25, 2005 at pg. 35 lines 16-25, pg. 36 lines 1-25, pg. 39 lines 21-25. Exhibit "C" Sandro Lepori's deposition taken on February 14, 2005 pg. 16 lines 9-37. Exhibit "E" Roland Schneider's deposition taken on February 15, 2005 pg. 4 lines 5-30.

29. Robinson had the authority to bind ABB to costs outside the contract. In a project like this Strever, Schneider and Lepori testified it is not possible to account for all problems that can occur in a written document. It is normal for an agent such as Robinson to have the authority to incur additional expenses on behalf of the principle to ensure the job is done. The contract allowed for contingencies and ABB was billed and paid for the contingencies but Robinson had the authority to exceed this amount if necessary to ensure the job was completed Exhibit "D" contract between ABB and Robinson. Exhibit "G" faxed letter from Hamilton to Lepori with invoices. Exhibit "C" deposition of Sandro Lepori taken on February 14, 2005 pg.7 lines 50-51; pg. 8 lines 1-37; pg. 36 lines 26-48; pg. 37 lines 1-2. Exhibit "B" deposition of Todd Strever taken on January 21, 2005 at pg. 18 lines 24-25, pg. 19 lines 1-24, pg. 23 lines 22-25, pg. 24 1-25, 30. ABB and Robinson entered into a contract whereby Robinson managed the shipment of goods from the Port of Brownsville to

Monterrey. Robinson was authorized to act on behalf of ABB. Robinson was authorized to bind ABB, Robinson was authorized to act as agent for this specific purpose. Robinson had the authority to bind ABB to costs above the contract costs if necessary to accomplish this goal. Robinson also had within the contract contingency costs whereby they were capable of binding ABB. ABB provided equipment for Robinson to use in performing their job. ABB had the right to control the details of Robinson's work and in fact controlled the details of how Robinson was to accomplish their tasks. Robinson does not know what relationship was created by the contract between Robinson and ABB Exhibit "H" deposition of Robinson corporate representative Tom Ferguson taken on February 25, 2005 at pg. 20 lines 11-13.

30. Not even Robinson (hopefully) would argue with the legal principle, that just as an employer is liable for the actions of his employees in the course of their employment, a principle is liable for the actions of his agent in the course of his agency.

31. Robinson has cited the court to no case which holds an indemnity claim for the action or inaction of an agent is barred by the failure of the Plaintiff to sue the principle under theories of vicarious liability. There is no such case. The Zamora Plaintiffs naturally sued Robinson, a corporate Defendant with insurance coverage for their wrongful actions and made claims against ABB for the same reason. All of the claims against ABB were the result of Robinson's failure to perform their contractual duties. If a lift plan had been in place, if the sub were familiar with the equipment no accident occur and no potential liability against

ABB. Exhibit "E" deposition of Roland Schneider taken on February 14, 2005 at pg. 2 line 37; pg. 8 line 27; pg. 10 lines 48-51; pg. 11 lines 1-50; pg. 12 lines 4-51; pg. 13 lines 1-14.

32. The basis of all the claims in the Zamora lawsuit was that Zamora removed a bolt from the generator allowing a jacking plate to fall and kill him because Robinson's subcontractors did not know the removed bolts were all that attached the jacking plate to the generator. The contract called for the agent to provide a plan for the lift. None was provided. The contract called for the agent to manage the lift. The agent did not manage the lift. If there had been a plan in place or management had occurred the accident would not have occurred. Exhibit "E" deposition of Roland Schneider taken on February 15, 2005 pg. 2 line 37; pg. 8 line 27; pg. 10 lines 48-51; pg. 11 lines 1-50; pg. 12 lines 4-51; pg. 13 lines 1-14.

33. The agent breached its contract to the principle resulting in liability to the principle. All the claims by the Zamora family come down to the lack of a lifting plan and proper management of the lift. In Compton v. Texaco, Inc., 42 S.W.3d 354 (Tex.App.–Houston [14th Dist.] 2001, pet. denied), the party seeking common law indemnity was held strictly liable under an environment stature that did not deal with fault. In fact, all the cases cited by Defendant do not discuss the question of what is vicarious liability. In fact, the only Texas case which cites Compton finds an indemnity basis for a pro rata share of contribution citing Compton. R R Street & Co., Inc. v. Pilgram Enterprises, Inc., et al., 81 S.W.3d 276 (Tex.App.–Houston [1st Dist.] 2001).

34. Vicarious liability is to protect one whose liability is based upon the actions of another. Hardy v. Gulf Oil Corp., 949 F2d 826 (5th Cir. 1992). There are limited cases on the subject but here there is no question that absent the breach of duty on behalf of Robinson acting as ABB's agent, ABB would have faced no liability. What is more purely vicarious in nature than being held responsible for the actions of your agent when absent those actions you faced no liability. Exhibit "E" deposition of Roland Schneider taken on February 15, 2005 pg. 2 line 37; pg. 8 line 27; pg. 10 lines 48-51; pg. 11 lines 1-50; pg. 12 lines 4-51; pg. 13 lines 1-14.

35. If Robinson had correctly performed the obligations they undertook on behalf of ABB then there would have been no liability against ABB. Exhibit "E" deposition of Roland Schneider taken on pg. 2 line 37; pg. 8 line 27; pg. 10 lines 48-51; pg. 11 lines 1-50; pg. 12 lines 4-51; pg. 13 lines 1-14; Exhibit "C" deposition of Lepori pg. 37 lines 8-50; pg. 13 lines 1-51.

36. There was no adjudication of ABB's liability. ABB was not required to try its indemnity claim in the underlying lawsuit. For obvious tactical reasons, with the Zamora Plaintiffs focusing on ABB as the non-settling Defendant and with sympathetic Plaintiffs, to do so involved great risks. This court should deny Robinson's Motion for Summary Judgment and allow the case to go to trial on all indemnity issues. Plaintiffs have at the very least created a fact issue as to whether its liability was vicarious in nature.

B. **BREACH OF CONTRACT CLAIM**

37. If the court finds Swiss law applies then the evidence presented proves a breach of contract and summary judgment is not warranted.

38. Plaintiffs have established agency between themselves and Robinson and that the allegations against them (which are not controlling) were the result of the actions and inactions of their agent. Absent the conduct of the agent ABB would not have faced liability. Such liability was vicarious, purely the result of Robinson's actions. Swiss law provides for an action based upon breach of contract. Plaintiffs have established Robinson's breach. The Swiss statute is ten (10) years. If the court holds Swiss law to apply, summary judgment should be denied.

## V. PRAYER FOR RELIEF

39. Plaintiffs pray that Defendant's Motion for Summary Judgment be denied and to all other relief at law and in equity to which it may be entitled.

Respectfully submitted,

The Law Office of Justin L. Williams, P.C.
600 Leopard Street, Suite 1810
Corpus Christi, Texas 78473
Telephone:  (361) 888-7702
Facsimile:  (361) 888-7717

By: _____
Justin L. Williams
State Bar Number 00795384

ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was forwarded on this the 31st day of March, 2005, to all counsel of record, as listed below and in the manner designated:

**FEDERAL EXPRESS:**
Mr. Steven J. Watkins
Ms. Karan C. Ciotti
McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
3200 One Houston Center
1221 McKinney Street
Houston, Texas 77010

Justin L. Williams