IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 2 1 2005

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ABB KRAFTWERKE | § | |
| AKTIENGESELLSCHAFT, and | § | |
| ABB ALSTOM POWER | § | |
| (SWITZERLAND) LTD., formerly known | § | |
| as ABB POWER GENERATION, LTD. | § | |
| | § | |
| Plaintiffs | § | CIVIL ACTION NO. B-03-192 |
| | § | |
| vs. | § | |
| | § | |
| C.H. ROBINSON COMPANY | § | |
| | § | |
| Defendant | § | |

**DEFENDANT C.H. ROBINSON COMPANY'S REPLY TO PLAINTIFFS' AMENDED
RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

I.    Procedural Background ....................................................................................1

II.   Reply ...............................................................................................................2

    A.   Argument and Authorities.........................................................................2

    1. Plaintiffs have not established a basis for an indemnity claim .............................2

    2. C.H. Robinson was not the agent of either ABB Kraftwerke and/or ABB
       Alstom.........................................................................................................8

        a.    C.H. Robinson is an independent business ................................................9

        b.    C.H. Robinson furnished the necessary tools, supplies and materials to
              perform the job.....................................................................................9

        c.    C.H. Robinson controlled the progress of the work, except as to final
              results .................................................................................................12

        d.    C.H. Robinson was employed for a limited period of time to perform a
              specific task........................................................................................18

        e.    C.H. Robinson was paid by the job.......................................................18

        f.    No appointment of agent or meeting of the minds .................................19

        g.    C.H. Robinson did not have authority to "bind ABB" .........................20

    3. Plaintiffs have no claim for breach of contract..................................................22

    4. Plaintiffs' allegations that are irrelevant to motion for summary judgment.....................23

III.  Conclusion .....................................................................................................24

IV.   Prayer for Relief.............................................................................................25

      APPENDIX.....................................................................................................27

# TABLE OF AUTHORITIES

## Federal Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ...................................................................................................................................8

*Doe v. Dallas Ind. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998)......................................8

*Hardy v. Gulf Oil Corp.*, 949 F.2d 830-31 (5th Cir. 1992)...........................................2, 3

*Northwinds Abatement, Inc. v. Employers Inc.*, 258 F.3d 345, 351 (5th Cir. 2001)...............12, 19

## State Cases

*A & S Elec. Contractors, Inc. v. Fischer*, 622 S.W.2d 601, 603-604 (Tex. App. – Tyler 1981, no writ)................................................................................................................19

*ABB Kraftwerke AG v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287, 290 (Tex. App. - Corpus Christi 2003, pet. denied) ...............................................................8

*Anchor Cas. Co. v. Hartsfield*, 390 S.W.2d 469, 471 (Tex. 1965)...........................13, 15

*B & B Auto Supply v. Central Freight Lines, Inc.*, 603 S.W.2d 814 (Tex. 1980) ...........................2

*Compton v. Texaco, Inc.*, 42 S.W.3d 354, 361-362 (Tex. App. - Houston [14th Dist.] 2001, pet. denied)...................................................................................................2, 3, 4

*Elbaor v. Smith*, 845 S.W.2d 240, 250 (Tex. 1992).........................................................6

*First Nat. Bank of Fort Worth v. Bullock*, 584 S.W.2d 548, 551-52 (Tex.Civ.App. – Austin 1979, writ ref'd n.r.e.) ............................................................................12

*Hoechst Celanese Corp v. Compton*, 899 S.W.2d 215, 221 (Tex. App. – Houston [14th Dist.] 1994, writ denied) ...............................................................................10

*Indust. Indem. Exch. v. Southard*, 160 S.W.2d 905, 906 (Tex. 1942) .............................9

*J.A. Robinson Sons, Inc. v. Ellis*, 412 S.W.2d 728, 735 (Tex. Civ. App. – Amarillo 1967, writ ref'd n.r.e.)......................................................................................................16

*Newspapers, Inc. v. Love*, 380 S.W.2d 582, 588 (Tex. 1964) .......................................13

*Pitchfork Land & Cattle Co. v. King*, 346 S.W.2d 598, 603 (Tex. 1961) ......................19

*R. R. Street & Co., Inc. v. Pilgram Enterprises, Inc., et al.,* 81 S.W.3d 276, 286 (Tex. App. – Houston [1st Dist.] 2001, no pet.)..........................................................................3, 4

*Schlumberger Technology Corp. v. Swanson,* 959 S.W.2d 171, 178 (Tex. 1997) ..........................6

*Schrum v. Land,* 12 F.Supp.2d 576, 582 (S.D.Tex. 1997)........................................................12, 15

*Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 727, 732 (Tex. 1981) ....................................................20

*St. Anthony's Hospital v. Whitfield,* 946 S.W.2d 174, 178 (Tex. App. - Amarillo 1997, writ denied) ...........................................................................................................................3, 4, 5

*Texas A & M Univ. v. Bishop,* 156 S.W.3d 580, 584-85 (Tex. 2005) ...................................9, 16, 19

*Uniroyal, Inc. v. Home Ins. Co.,* 707 F.Supp. 1368, 1378 (E.D.N.Y. 1988)...................................6

*Vecellio Ins. Agency, Inc. v. Vanguard Underwriters Ins. Co.,* 127 S.W.3d 134, 138 (Tex.App. - Houston [1st Dist.] 2003, no pet.)..................................................................2

*Walker v. Federal Kemper Life Assur. Co.,* 828 S.W.2d 442, 452 (Tex. App. – San Antonio 1992, writ denied) ...............................................................................................15

## State Statutes

TEX. CIV. PRAC. & REM. CODE § 154.002........................................................................................6

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ABB KRAFTWERKE | § | |
| AKTIENGESELLSCHAFT, and | § | |
| ABB ALSTOM POWER | § | |
| (SWITZERLAND) LTD., formerly known | § | |
| as ABB POWER GENERATION, LTD. | § | |
| | § | |
| **Plaintiffs** | § | CIVIL ACTION NO. B-03-192 |
| | § | |
| vs. | § | |
| | § | |
| C.H. ROBINSON COMPANY | § | |
| | § | |
| **Defendant** | § | |

## DEFENDANT C.H. ROBINSON COMPANY'S REPLY TO PLAINTIFFS' AMENDED RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, Defendant C.H. Robinson Company ("C.H. Robinson") and files this Reply to Plaintiffs' Amended Response to Defendant's Motion for Summary Judgment, and in support thereof would show the Court as follows:

### I.    Procedural Background

1.    ABB Kraftwerke Aktiengesellschaft ("ABB Kraftwerke") and ABB Alstom Power (Switzerland) Ltd., formerly known as ABB Power Generation, Ltd. ("ABB Alstom") filed a Response to C.H. Robinson's Motion for Summary Judgment on March 18, 2005. On April 1, before the 20-day time period[1] for filing a reply had passed, ABB Kraftwerke and ABB Alstom filed an Amended Response. Recognizing that a motion is not a "pleading" as defined by the Federal Rules of Civil Procedure and that the deadline prescribed for responses to amended pleadings in Rule 15(a) does not apply to C.H. Robinson's reply, the parties entered

---

[1] Court's *Civil Procedures* at ¶ 5(c)

into a Local Rule 83.5 agreement which recognized C.H. Robinson's deadline for a reply as 20 days from the date Plaintiffs ABB Kraftwerke and ABB Alstom filed their Amended Response, or April 21, 2005. That agreement was filed with the Court on April 7, 2005.

## II.    Reply

### A. Argument and Authorities

#### 1. *Plaintiffs have not established a basis for an indemnity claim.*

2.    In order to establish the possibility of a claim for common-law indemnity against C.H. Robinson, ABB Kraftwerke and ABB Alstom must <u>first</u> present evidence that they settled <u>only</u> claims of vicarious liability in the underlying lawsuit. Second, they must present evidence that those claims of vicarious liability were founded on the negligence of C.H. Robinson as ABB Kraftwerke and ABB Alstom's agent. The majority of ABB Kraftwerke and ABB Alstom's Amended Response is devoted to an attempt to create a fact issue as to the second issue, i.e., whether C.H. Robinson was their agent. They fail to create a fact issue; moreover, the issue of agency is irrelevant since Plaintiffs have not cleared the first hurdle. Specifically, ABB Kraftwerke and ABB Alstom have failed to either (a) present legal support for a contention that they have a claim for common-law indemnity even though they were sued for and settled only claims for their own, direct liability; or (b) present any evidence to support a contention that they settled only claims for purely vicarious liability, the *sine qua non* of common law indemnity.

3.    Plaintiffs have not presented any law that contradicts the rule recognized in *Hardy v. Gulf Oil Corp.,* 949 F.2d 826, 830-31 (5th Cir. 1992); *B & B Auto Supply v. Central Freight Lines, Inc.,* 603 S.W.2d 814 (Tex.1980); *Vecellio Ins. Agency, Inc. v. Vanguard Underwriters Ins. Co.,* 127 S.W.3d 134, 138 (Tex.App. – Houston [1[st] Dist.] 2003, no pet.); *Compton v. Texaco, Inc.,* 42 S.W.3d 354, 361-362 (Tex. App. – Houston [14[th] Dist.] 2001, pet. denied); and

*St. Anthony's Hospital v. Whitfield,* 946 S.W.2d 174, 178 (Tex. App. – Amarillo 1997, writ denied). That rule is that *common law indemnity is only available only to a defendant whose liability is purely vicarious in nature. Hardy,* 949 F.2d at 831 (5th Cir. 1992).

4.      Plaintiffs seek to distinguish *Compton v. Texaco, Inc.* on the basis that "the party seeking common law indemnity was held strictly liable under an environment statute that did not deal with fault" – unlike Plaintiffs ABB Kraftwerke and ABB Alstom, who settled claims for negligence and products liability. *Dkt No. 71, Plaintiffs' Amended Response to Defendant's Motion for Summary Judgment* at ¶ 33. First, the defendant in *Compton* was not "held strictly liable"; he settled claims of strict liability. 42 S.W.3d at 356. Second, though the defendant in *Compton* settled claims for strict liability, whereas Plaintiffs ABB Kraftwerke and ABB Alstom settled claims of negligence and products liability, this is a distinction without a difference. Strict liability, negligence, and products liability causes of action are all claims for direct liability, not vicarious liability. The holding in *Compton* is that common law indemnity is not available to a defendant who settles claims of direct – as opposed to purely vicarious – liability. The state court of appeals recognized that the last vestige of common law indemnity is for purely vicarious liability and that "the liability for which Compton seeks indemnity is direct liability." 42 S.W.3d at 361. The court logically concluded that Compton had no claim for common law indemnity. *Id.* Likewise, Plaintiffs ABB Kraftwerke and ABB Alstom settled claims for direct liability; therefore, they have no claim for common law indemnity.

5.      Plaintiffs go on to state in their Amended Response:

> "the only case which cites <u>Compton</u> finds an indemnity basis for a pro rata share of contribution citing <u>Compton</u>. <u>R R Street & Co., Inc. v. Pilgram Enterprises, Inc., et al.,</u> 81 S.W.3d 276 (Tex. App. – Houston [1[st] Dist.] 2001)."

- 3 -

*Plaintiffs' Amended Response* at ¶ 33. *R.R. Street & Co.* does indeed cite *Compton,* but not for "an indemnity basis for a pro rata share of contribution." *R.R. Street & Co., Inc. v. Pilgrim Enterprises, Inc.,* 81 S.W.3d 276, 286 (Tex. App. – Houston [1st Dist.] 2001, no pet.). The state court of appeals in *R.R. Street* cites *Compton* for the holding that a cost recovery action under section 361.344 of the Texas Solid Waste Disposal is a "statutory contribution" claim. This holding has no bearing on the present case.

6.      Plaintiffs ABB Kraftwerke and ABB Alstom also incorrectly assert that C.H. Robinson "has cited the court to no case which holds an indemnity claim for the action or inaction of an agent is barred by the failure of the Plaintiff to sue the principle [sic] under theories of vicarious liability." *Plaintiffs' Amended Response* ¶ 31. In *St. Anthony's Hosp. v. Whitfield* (cited by C.H. Robinson on pages 10-11 of its Amended Motion for Summary Judgment), the Amarillo Court of Appeals held that the hospital had a claim against its negligent employee for common law indemnity under the vicarious liability theory of respondeat superior. 946 S.W.2d 174, 178 (Tex. App. – Amarillo 1997, writ denied). Samuels, a former patient, sued the hospital's employee, Whitfield, for negligence and sued the hospital for vicarious liability for Whitfield's negligence. 946 S.W.2d at 176. Employee Whitfield settled Samuels' claims of direct negligence. *Id.* Later, the hospital settled the Samuels' claim for vicarious liability, and continued on its cross claim for indemnity against employee Whitfield. *Id.* The trial court granted Whitfield summary judgment on the hospital's cross claim for indemnity. The court of appeals reversed, holding that the hospital <u>did</u> have a claim for common-law indemnity against its employee for amounts paid by the hospital in settlement of Samuels' vicarious liability claim. In determining that the hospital had a claim for common law indemnity for its vicarious liability, the court of appeals looked only to the pleadings.

- 4 -

The Hospital's liability, *according to the petition,* was based upon the vicarious liability theory of respondeat superior.

\* \* \*

It is clear from the record that no negligence on the Hospital's part was *alleged* in the Samuels' action against Whitfield and the Hospital. Indeed the Samuels sued the Hospital on a theory of respondeat superior, a cause of action for vicarious liability. Also, we note that Whitfield brought no cross claim against the Hospital grounded in negligence or any other theory of recovery. Therefore, because no negligence by the Hospital has been *alleged* by any party, the Hospital's cross-claim is for common law indemnity based on the vicarious liability theory of respondeat superior, which was *alleged* in the action brought by the Samuels against Whitfield and the Hospital.

*Id.* at 176, 178 (emphasis added).

7.     The state court of appeals in *St. Anthony's* did not explicitly state that an employer's common-law indemnity claim against its employee would be barred by the absence of any allegation of vicarious liability, but that conclusion obviously follows from the court's holding. The court held that, "because no negligence by the Hospital was alleged by any party, the Hospital's [claim against employee Whitfield] was for common law indemnity based on the vicarious liability theory of respondeat superior, which was alleged in the action brought by the Samuels against Whitfield and the Hospital." 946 S.W.2d at 178. In other words, because the only claim alleged against the hospital was for vicarious liability, the hospital could pursue a claim for indemnity against its employee. It follows that, where a defendant is sued for its own, direct negligence, and not for vicarious liability, it may not pursue a claim for indemnity against its purported agent.

8.     In accord with *St. Anthony's,* the only means of determining the nature of the claims against a settling defendant is through a review of the pleadings. To hold otherwise would in effect require the parties to try the underlying lawsuit, something they had sought to avoid by settling the case, and would severely dampen a defendant's motivation to settle. It

- 5 -

would also "conflict with the policy, which pervades all areas of the law, of encouraging settlement wherever possible. [Citation omitted.]   In times of severe pressure on courts overwhelmed with litigation, and undersupplied with resources, a rule forcing more cases to trial would be a self-inflicted wound of suicidal import." *Uniroyal, Inc. v. Home Ins. Co.,* 707 F.Supp. 1368, 1378 (E.D.N.Y. 1988); TEX. CIV. PRAC. & REM. CODE § 154.002; *Schlumberger Technology Corp. v. Swanson,* 959 S.W.2d 171, 178 (Tex. 1997); *Elbaor v. Smith,* 845 S.W.2d 240, 250 (Tex. 1992).

9.   Although ABB Kraftwerke and ABB Alstom complain about C.H. Robinson's reliance on the Zamora family's pleadings to show that ABB Kraftwerke and ABB Alstom did <u>not</u> settle only claims of vicarious liability, they present no evidence to show that they <u>did</u> settle only claims of vicarious liability.   Without any evidentiary support, Plaintiffs contend, "All claims by the Zamora family come down to the lack of a lifting plan and the proper management of the lift." *Plaintiffs' Amended Response* at ¶ 33.   This is not true.   In fact, the Zamora family's claims against ABB Kraftwerke and ABB Alstom were products liability and direct negligence claims, based not on any "lack of a lifting plan" or "the proper management of the lift." The Zamora family's claims against Plaintiffs ABB Kraftwerke and ABB Alstom at the time of the settlement between the Zamoras and the ABB entities were as follows:

> (a) ABB Kraftwerke and ABB Alstom "were and are the manufacturer in the business of designing, manufacturing and marketing generators and compressors including, but not limited to, the one to which the jacking plate in question was attached";[2]

---

[2] *Plaintiffs' Thirteenth Amended Original Petition* (attached as **Ex. 11** to *Defendant C.H. Robinson's Amended Motion for Summary Judgment*) at p. 4.  *See* **Ex. A,** *Deposition of Sandro A. Lepori taken May 1, 2001* at 4:5-11; 5:2-5; 8:7-20; 10:21-23 (establishing that ABB company manufactured and marketed generator in question); **Ex. B,** *Deposition of Roland Schneider dated April 7, 2000* at 5:16-22; 29:23 – 30:6 (wherein Schneider testified that he worked for ABB Alstom's predecessor and that "for the past 10, 12 years we've shipped worldwide 340 –380 generators in all ports of the world; very large numbers, in any event."). It is undisputed that either ABB Kraftwerke or ABB Alstom designed, manufactured and marketed the generator and the jacking plate attached to the generator.

(b) "No decals, warnings or instructions were in place and as such the compressor/generator and jacking place [sic] in question were defective as designed, manufactured and/or marketed by Defendants [ABB Kraftwerke and ABB Alstom]."[3]

(c) "Defendants [ABB Kraftwerke and ABB Alstom] are in the business of design, manufacture and marketing of the jacking plates including, but not limited to, the "jacking plate" in question which was defective it [sic] its design, marketing and/or manufacture."[4]

(d) "Their conduct also amounted to negligence proximately causing . . . the injuries, death and damages to all Plaintiffs."[5]

(e) "Each and all of the above Defendants ("ABB" Defendants) designed, manufactured and marketed the compressor or generator unit in question and participated in the decision to ship such unit with the 'jacking plate' in place on the unit and which were ostensibly held on by two bolts a piece, to all outward appearances. In fact two of such bolts were only adjusting bolts which should not penetrate the unit itself."[6]

---

[3] *Plaintiffs' Thirteenth Amended Original Petition* (**Ex. 11** to *Defendant C.H. Robinson's Amended Motion for Summary Judgment*) at p. 4. *See* **Ex. B**, *Deposition of Roland Schneider dated April 7, 2000* at 20:19-22; 29:23 – 33:5 (establishing that no decals, warnings, or instructions concerning the jacking plate were in place at the time of the Zamora accident); **Ex. C**, *Deposition of Alfredo Arteaga taken March 13, 2000* at 9:10 – 10:18; 13:20-23 (wherein Arteaga, an AMFELS employee who was present at the scene of the accident, testifies, "But I still feel that this accident would not have happened if in the topside of the motor right here, they would have put a warning that these bolts were not fastened on the unit."); **Ex. D**, *Deposition of Jose Cruz Garcia taken March 13, 2000* at 11:1-4; 14:8-13; 21:14 – 22:14 (wherein Cruz Garcia, an AMFELS employee who was present at the scene of the accident, testifies that there were no instructions, decals, or warning that only two bolts held the jacking plate in place).

[4] *Plaintiffs' Thirteenth Amended Original Petition* (**Ex. 11** to *Defendant C.H. Robinson's Amended Motion for Summary Judgment*) at p. 4. *See supra* note 2.

[5] *Plaintiffs' Thirteenth Amended Original Petition* (**Ex. 11** to *Defendant C.H. Robinson's Amended Motion for Summary Judgment*) at p. 4. *See* **Ex. E**, *Deposition of Andreas Rebholz taken April 7, 2000* at 4:24 – 5:2; 8:7-16; 12:12-19 (wherein Rebholz, an employee of ABB Alstom and Schneider's subordinate, testified that part of Schneider's job was to advise that the jacking plates were being taken off incorrectly and unsafely, if he observed that the jacking plates were being taken off incorrectly or unsafely); **Ex. B**, *Deposition of Roland Schneider dated April 7, 2000* at 5:16-22; 24:24 – 26:9 (acknowledging that the accident might not have happened if Schneider, when he realized the nuts on the jacking plate had been loosened, had insisted that the nuts be put back on, or if, when he realized the nuts had been taken off, he had insisted that the bolts not be removed).

[6] *Plaintiffs' Thirteenth Amended Original Petition* (**Ex. 11** to *Defendant C.H. Robinson's Amended Motion for Summary Judgment*) at pp. 4-5. *See* **Ex. E**, *Deposition of Andreas Rebholz* at 12:6-19 (testifying that only two of the four bolts on the jacking plate actually held the plate in place, and that Schneider was present at the time of the accident to answer any questions about the configuration); **Ex. B**, *Deposition of Roland Schneider dated April 7, 2000* at 33:20 – 34:22; 54:16 – 55:10; 57:3-7.

10.    Because Plaintiffs have presented no evidence to support a contention that they did <u>not</u> settle these claims of direct liability when they settled with the Zamora family, their claim for indemnity fails.

11.    Plaintiffs appear to have abandoned their claim for indemnity for the amount of the judgment paid Brownsville Barge & Crane.   In any event, C.H. Robinson would be entitled to summary judgment on a claim for indemnity for any money Plaintiffs paid Brownsville Barge & Crane, since Plaintiffs were adjudged liable on a claim of direct liability, i.e., a claim for breach of the contract of indemnity between Brownsville Barge & Crane and Plaintiffs.  **Ex. F,** *ABB Kraftwerke AG v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287, 290 (Tex. App. – Corpus Christi 2003, pet. denied).

### 2.    *C.H. Robinson was not the agent of either ABB Kraftwerke and/or ABB Alstom*

12.    Again, C.H. Robinson contends that the issue of agency is moot given ABB Kraftwerke and ABB Alstom's failure to present any evidence that they settled <u>only</u> claims of vicarious liability.  However, since Plaintiffs have required the parties to expend considerable time and extraordinary expense in an attempt to refashion the facts developed in the underlying lawsuit and thereby create support for an argument that C.H. Robinson was their agent, C.H. Robinson herein replies to Plaintiffs' allegations on this moot issue.

13.    In order to preclude summary judgment, Plaintiffs must produce more than a scintilla of evidence in support of their position; there must be evidence on which a jury could reasonably find that C.H. Robinson was the agent of ABB Kraftwerke and ABB Alstom. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Doe v. Dallas Ind. Sch. Dist.,* 153 F.3d 211, 215 (5th Cir. 1998).   Plaintiffs have not produced evidence on which a jury could find that C.H. Robinson was their agent.

14.    The factors to consider in determining whether someone is an independent contractor, as opposed to an agent, are:  (1) the independent nature of the business;  (2) its obligation to furnish necessary tools, supplies, and material to perform the job;  (3) its right to control the progress of the work, except as to final results;  (4) the time for which the company is employed; and (5) the method of payment, whether by time or by the job.  *Texas A&M Univ. v. Bishop,* 156 S.W.3d 580, 584-85 (Tex. 2005), *citing Indus. Indem. Exch. v. Southard,* 160 S.W.2d 905, 906 (Tex. 1942).

### a.    *C.H. Robinson is an independent business*

15.    Plaintiffs do not dispute that C.H. Robinson is an independent business. Therefore, the evidence provided on this point weighs in favor of a determination that C.H. Robinson is an independent contractor and not an agent of either Plaintiff.  *See C.H. Robinson's Amended Motion for Summary Judgment* at ¶ 32; **Ex. G,** *Deposition of Tom Ferguson taken February 25, 2005* at 34:11-35:1.

### b.    *C.H. Robinson furnished the necessary tools, supplies and materials to perform the job.*

16.    Plaintiffs contend that "ABB provided technical drawings for the project and subs," drawings of the railcar, a platform for the generator, and spreader bars used by Brownsville Barge & Crane's crane to lift the generator.  In support of these allegations, Plaintiffs cite to an "Exhibit 'G' fax regarding spreader bars."  There is no document referencing spreader bars contained within Exhibit G to Plaintiffs' Response to C.H. Robinson's Motion for Summary Judgment (and no Exhibit G attached to Plaintiffs' Amended Response.)  Plaintiffs also cite to the deposition of former C.H. Robinson employee Todd Strever, in which he clearly stated that he did not know whether ABB provided spreader bars and that it would be unlikely that they did.  **Ex. H,** *Deposition of Todd Strever taken January 21, 2005* at 6:16-23, 36:1-25.

Plaintiffs also cite to "Exhibit 'F' invoice for spreader bars." This exhibit is a letter from Jim Hamilton of C.H. Robinson, explaining that the cost of spreader bars used in "turbine lifts" was included in contingency costs provided for unforeseen expenses. There is no evidence that these spreader bars were used in the lift of the generator that was involved in Mr. Zamora's death. Moreover, the fact that one of the Plaintiffs paid for one small piece of the equipment used to perform the job, when C.H. Robinson secured the manpower, floating crane, rail cars, skidding equipment, gantry, tie downs, road and rail clearances and expertise to procure same, does not create a fact issue on the issue of agency. *See Hoechst Celanese Corp v. Compton,* 899 S.W.2d 215, 221 (Tex. App. – Houston [14th Dist.] 1994, writ denied) (police officers hired by Celanese to direct traffic were independent contractors, where they brought their own uniforms and reflective vests to job site, but used ten traffic cones provided by Celanese).

17.     Plaintiffs also state that they provided a platform that C.H. Robinson used in its performance of the job. The platform referenced was wood framing, meant to protect the generator during shipment, and was shipped with the generator from Europe. The wood framing was transferred with the generator from the barge to a rail car at the Port of Brownsville, when C.H. Robinson took over movement of the generator. **Ex. H,** *Deposition of Todd Strever* at 35:16-25. To refer to these packing materials as "tools" is an exaggeration at best. *See also* **Ex. I,** *February 14, 2005 Statement of Sandro Lepori* at 16:17-19 (wherein Lepori states that the wooden platform is not a part of the equipment used for the transfer of the generator from the barge to the rail car).

18.     Finally, the fact that one of the Plaintiffs provided drawings showing the dimensions, weights, and center of gravity of the equipment that C.H. Robinson was hired to move, or information concerning what sort of rail car would be adequate to move a 700-ton

generator, has nothing to do with C.H. Robinson's obligation to provide the tools necessary to perform the job. *See* **Ex. G,** *Deposition of Tom Ferguson* at 5:16-19, 6:4-11, 16:14-17:5 (testifying that information concerning sizes and clearances of the equipment to be moved would typically be forwarded by the customer in the form of a drawing). Under Plaintiffs' analysis, a construction company hired to build a home would be the agent of the homeowner because the homeowner provides the company with design plans; any information the hiring entity shared with the worker would create a fiduciary duty and make the hiring entity liable for any harm done by the worker to a third-party. This is directly opposed to the stance taken by the ABB Kraftwerke and ABB Alstom in the underlying lawsuit.

19.    Lepori, the ABB Alstom employee who drafted the Contract between ABB Alstom's predecessor and C.H. Robinson, offered more relevant information concerning who had the obligation to provide necessary tools, supplies and materials to perform the job, in his 2001 deposition.

> Q.    Okay. At the time of this accident, did – did ABB own any heavy-transport ships?
>
> A.    No.
>
> Q.    Do you know if they owned any LASH barges for use in the –
>
> A.    We never have.
>
> Q.    Did ABB own any floating cranes?
>
> A.    No.
>
> Q.    How do you ship these things if you don't own the conveyances in which to ship them?
>
> A.    We subcontract the carriers.
>
> Q.    And is – is the contract with C.H. Robinson one of those kinds of subcontracts?

A.    Yes.

Q.    When you contracted with C.H. Robinson to arrange transport from
      Brownsville to Monterrey, was it – what further obligations did ABB have
      to secure the subcontractors who would lift it and move it from
      conveyance to conveyance.

A.    Well, basically none because our agreement with C.H. Robinson was that
      C.H. Robinson had to cover the entire task and subcontract further.

**Ex. A,** *Deposition of Sandro Lepori taken May 1, 2001* at 107:1-22.

> *c.*    ***C.H. Robinson controlled the progress of the work, except as to
>           final results.***

20.    Plaintiffs correctly note that the essential element that distinguishes an agent from

an independent contractor is the right of the principal to control the details of the work.

*Northwinds Abatement, Inc. v. Employers Inc.,* 258 F.3d 345, 351 (5th Cir. 2001).  However, the

evidence cited by Plaintiffs does not support their assertion that either ABB Kraftwerke or ABB

Alstom controlled the details of C.H. Robinson's work.

21.    "Where one has the right to control the end sought to be accomplished but not the

means and details of the accomplishment; that is, only what shall be done, not how it shall be

done, the person employed acts as an independent contractor and not as an agent." *First Nat.*

*Bank of Fort Worth v. Bullock,* 584 S.W.2d 548, 551-52 (Tex.Civ.App. – Austin 1979, writ ref'd

n.r.e.).  If a person acts for or accommodates another, but the accommodating person is not under

the other person's control, there is no agency relationship.  *Schrum v. Land,* 12 F.Supp.2d 576,

582 (S.D.Tex. 1997).  Where the only evidence of the principal's right to control more than the

end result is (1) testimony that the principal could have told the purported agent anything it

wanted done and the purported agent would have done it, and (2) testimony that the principal

exercised some minimal control over one aspect of the job, this is no more than a scintilla of

evidence of the requisite right of control. *Anchor Cas. Co. v. Hartsfield*, 390 S.W.2d 469, 471 (Tex. 1965).

22.    The sporadic action of an overzealous supervisor in directing the details of job does not make an independent contractor an agent. *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 588 (Tex. 1964). "A building contractor agreeing to construct a residence for a man and wife in accordance with written plans and specifications does not cease to be an independent contractor insofar as the building of the house is concerned, simply because the wife may, despite the written contract, give minute instructions as to how she wants her fireplace constructed." *Id.*

23.    Plaintiffs cite to statements offered by Sandro Lepori, an employee of ABB Alstom, made six years after the accident that resulted in Mr. Zamora's death. Lepori asserted that the type of contract ABB Alstom entered into gives them the "possibility to interfere." Lepori offered three examples of the possible exercise of "the right to interfere": "if the power station cannot receive the piece for some reason, I need to interfere in the process of transportation, this could mean that the goods might be deposited during the transportation on the route"; "there are many ways to get to Brownsville with different types of vessels and this impacts with C.H. Robinson's work"; and "if we realize that C.H. Robinson uses a method that we believe would damage the generator." **Ex. I,** *February 14, 2005 Statement of Sandro Lepori* at 2:5-19. None of these examples demonstrates a right to control the details of C.H. Robinson's work. The "possible interference" affects only the end sought to be accomplished – getting the undamaged generator to Monterrey – but not the means and details of the accomplishment. ABB Alstom's predecessor-in-interest contracted with C.H. Robinson to make arrangements to move heavy equipment from Brownsville to Monterrey. **Ex. K,** *Contract.* Changing the destination to someplace other than Monterrey and providing C.H. Robinson with information concerning the

equipment to insure that it was not damaged when it reached Monterrey affect the "end sought to be accomplished," not the means and details of the accomplishment. Changing the method of how the equipment was moved from Europe to Brownsville – a portion of the trip in which C.H. Robinson was not even involved – might affect the means by which C.H. Robinson moved the equipment once it reached Brownsville, but it does not create a right to control the means of how C.H. Robinson moved the equipment once it reached Brownsville.

24.     C.H. Robinson would point out that, before Plaintiffs' counsel redefined the meaning of "right to control" as "right to interfere," Lepori testified that when he enters into contracts such as that between ABB Power Generation and C.H. Robinson, he turns over control of whatever project it is to the operators and managers he operates with. **Ex. I** at 2:5-19. He also stated that "C.H. Robinson had the task to **control**, to choose subcontractors and supervise how the work, the transportation, was carried out from Brownsville to the power station." **Ex. I** at 14:36-38 (emphasis added). He also stated that Schneider, his subordinate, was in Brownsville to supply information but not to supervise, *Id.* at 28:42-45, and that ABB did not control the specific details of the lift of the generator, *Id* at 35:1-2. [7]

---

[7] Lepori also stated the following:

- There was a chain of command "that was ABB, C.H. Robinson and C.H. Robinson's subcontractors." Roland Schneider of ABB Power Generation (ABB Alstom's predecessor) "had the possibility" to communicate information directly to Charles Cherrington (of Schaefer Stevedoring) but would only do so in the presence of C.H. Robinson. **Ex. I** at 25:43-26:18.

- The jacking plate fell on Mr. Zamora because he tried to loosen a bolt that did not connect the jacking plate to the generator. *Id.* at 29:47-30:6. Schaefer Stevedoring and not C.H. Robinson should have corrected any mistakes made by the longshoremen hired by Schaefer, including the mistake of taking the bolts out. *Id* at 30:36-31:1.

- ABB did not tell C.H. Robinson what contractors to hire. *Id.* at 39:1-2.

25.    Plaintiffs cite to the deposition of Todd Strever as evidence that C.H. Robinson "was subject to ABB's control on how they performed the details of the work." *Plaintiff's Amended Response* at ¶ 25.    More accurately, his testimony was, "[T]here was a dialogue [between ABB Alstom and C.H. Robinson] about the logistical concerns associated with...the scope of work that we were going to perform," **Ex. H**, *Deposition of Todd Strever taken January 21, 2005* at 8:20-9:6.    "There was information that we needed from ABB," *Id.* at 9:7-11. Plaintiffs have cited repeatedly to the following exchange in Strever's deposition:

Q.    And ABB had the right to tell you, we want you to use a rod versus a cable, or a cable rather than rod to tie down the generator, correct?

A.    They did, however, in the scheme or the scope of the work, there's also other regulations and stipulations that we had to meet, including the railroad had to approve what the tie down schematic looked like.  It had to meet engineering approval before they would transport it, so there were more pieces to the puzzle than just that.

*Id.* at 11:11-18.    Strever's testimony comports with an e-mail from Jim Hamilton of C.H. Robinson (Strever's supervisor) to Lepori of ABB Alstom (attached to Plaintiffs' Amended Response as part of Exhibit B.1, and attached hereto as **Exhibit L**).    In that email, Hamilton states:

Rolland [Roland Schneider of ABB Alstom] does wish to change the tie down on generator from rod to cable.  We do not see any problem in doing so, provided we get agreement from the rail carriers and order material very soon.

**Ex. L,** *March 1, 1999 E-mail from J. Hamilton to S. Lepori.*    A willingness to work to accommodate a customer's request does not equate to a right to control.  *Schrum v. Land,* 12 F.Supp.2d at 582, *citing Walker v. Federal Kemper Life Assur. Co.,* 828 S.W.2d 442, 452 (Tex. App. – San Antonio 1992, writ denied); *Anchor Cas. Co.,* 390 S.W.2d at 471; *see* **Ex. G,** *Deposition of Tom Ferguson taken February 25, 2005* at 35:7-12 ("They were our customer, and

we would obviously listen to what they had objections to or input. But they hired us to move these pieces from Point A to Point B."). Moreover, ABB requested that cables be used because they were less likely than rods to damage the equipment. **Ex. H**, *Deposition of Todd Strever* at 31:21-23. Strever testified that ABB's advice was only elicited as to "technical type details associated with the product itself in transport...so that the things [C.H. Robinson was] doing wouldn't damage it or alter it in any way." **Ex. H** at 31:25-32:3. The fact that one of the Plaintiffs provided C.H. Robinson with information they needed to lessen the likelihood that a $4 million generator would be damaged in transit from Brownsville to Monterrey does not create an agency relationship.

26.    Under Plaintiffs' rationale, if a principal provides its independent contractor with any information that would assist the contractor in performing the job, that contractor then becomes an agent. Any exercise of control to insure performance of a contract, i.e., in order to accomplish the results contemplated by the parties (getting the equipment to Monterrey without damage), does not make an independent contractor an agent. *Texas A&M Univ. v. Bishop*, 156 S.W.3d 580, 585 (Tex. 2005); *J.A. Robinson Sons, Inc. v. Ellis*, 412 S.W.2d 728, 735 (Tex. Civ. App. – Amarillo 1967, writ ref'd n.r.e.).

27.    Plaintiffs further contend that Hamilton testified that ABB had "the right to interfere with Robinson's job." *Plaintiffs' Amended Response* at ¶¶ 6, 25. More accurately, Hamilton's testified, in response to questioning regarding a letter Hamilton had allegedly written to ABB officials, was that he did not recall the letter but that he "would never tell a customer he can't interfere." **Ex. M**, *Deposition of Jim Hamilton taken April 25, 2000* at 10:25-11:3, 37:15 – 38:15. Again, this is simply evidence of an independent contractor's willingness to accommodate a customer.

28.    In his 2001 deposition, Sandro Lepori of ABB Alstom testified that the role of Roland Schneider, Lepori's subordinate who was on site at the time of the accident, was to "*assist* C.H. Robinson." **Ex. A,** *Deposition of Sandro Lepori taken May 1, 2001* at 44:21-45:6 (emphasis added). In contending that Schneider "was not dealing with" Schaefer Stevedoring, Lepori testified that "the chain of command was always via C.H. Robinson." *Id.* at 47:16-19. Schneider's testimony is consistent; he testified that he was there as a "consultant" and an "adviser." **Ex. B,** *Deposition of Roland Schneider taken April 7, 2000* at 21:1-5; 23:1-2; 43:19-21. In his recent statements, Schneider said his job when traveling for his employer is to survey the transport operations and *give advice* to companies such as C.H. Robinson, if necessary. **Ex. J,** *February 15, 2005 Statement of Roland Schneider* at 1:30-32 (emphasis added); *Id.* at 5:22-24 (stating that he could have decided to remove the jacking lugs when the generator was on the railroad car, but he was there to give advice, not commands).[8]

29.    The statements of Plaintiffs' former employees disproves the notion that ABB Alstom (or ABB Kraftwerke) had a right to control the details of how C.H. Robinson moved the equipment from Brownsville to Monterrey. Those statements are consistent with that of

---

[8] The "transcript" of Schneider's statement reads "comments" rather than "commands," and the word is highlighted. The videotape of Schneider's statement, when made available by Plaintiffs, will demonstrate that the interpreter said "commands."

Schneider also stated the following:

- Schaefer Stevedoring and C.H. Robinson made the decision to remove the jacking lugs when the generator was placed on the railroad car. *Id.* at 7:38-40.

- If there were a change in the plan [for the lift of the generator], C.H. Robinson should have been informed of the changes, and if it concerned the product, ABB should have also been informed. *Id.* at 8:18-20.

- Schneider did not discuss the details of the lift with C.H. Robinson because "there wasn't much to discuss." The lift was "to be taken in consideration by the company in charge, which is C.H. Robinson, Brownsville Barge and Crane Company and Schaefer. *Id.* at 10:48-11:11.

Plaintiffs' corporate representative, John Barry, who testified that C.H. Robinson "had...total control and responsibility for the execution" of the Contract. **Ex. N.,** *Deposition of John Barry taken December 15, 2004* at 25:14-16. C.H. Robinson was responsible for "all requirements, services, needs that [were] necessary." **Ex. N** at 14:16-17. C.H. Robinson assumed "a lot of risk in connection with" the services they were providing, including risks such as potential "labor issues and soil conditions and political risks" up until the time that the subject of the Contract was "turned over to the owner." Until then, "the obligations and risks are with that turnkey contractor [C.H. Robinson]." **Ex. N** at 15:18-19; 15:25; 16:1-2; and 16:4-5. *see also* **Ex. G,** *Deposition of Tom Ferguson* at 7:25-8:11; 8:25-9:4; 23:8-22 (testifying that the division of C.H. Robinson involved in the movement of the generator was very experienced in moving heavy equipment; that C.H. Robinson was responsible for hiring all subcontractors; and that C.H. Robinson had sole responsibility for planning the transportation and moving the product).

> **d.      *C.H. Robinson was employed for a limited period of time to perform a specific task***

29.     Plaintiffs have presented no evidence to contradict this point. The evidence on this issue therefore weighs in favor of a determination that C.H. Robinson is an independent contractor and not an agent of either Plaintiff. **Ex. K,** *Contract* at 3, ¶ 4.

> **e.      *C.H. Robinson was paid by the job.***

30.     It does not appear that Plaintiffs are disputing the fact that C.H. Robinson was paid by the job, and not by time expended on the job. *See* **Ex. A,** *Deposition of Sandro Lepori taken May 1, 2001* at 4:7-11; 14:17-19 (wherein Lepori testified, as corporate representative for "the ABB companies," that ABB hired C.H. Robinson on a "fixed price" basis). The evidence on this issue also weighs in favor of a determination that C.H. Robinson is an independent

contractor, not an agent. *Texas A&M Univ. v. Bishop,* 156 S.W.3d 580, 585 (Tex. 2005); *Pitchfork Land & Cattle Co. v. King,* 346 S.W.2d 598, 603 (Tex. 1961).

### f.    *No appointment of agent or meeting of the minds*

31.    For C.H. Robinson to be an agent of ABB Kraftwerke or ABB Alstom, C.H. Robinson would have had to agree such a relationship. *Northwinds Abatement, Inc. v. Employers Ins. of Wausau,* 258 F.3d 345, 351 (5th Cir. 2001). Plaintiffs do not present any evidence to support a contention that there was "an act constituting an appointment of [C.H. Robinson] as an agent," nor that C.H. Robinson consented to act as the agent of either ABB Kraftwerke or ABB Alstom.    Plaintiffs contend "the contract in question is evidence of the agency relationship as it establishes a meeting of the minds between the two parties." *Plaintiffs' Amended Response* at ¶ 22.  In order to support the creation of a principal-agent relationship, the contract must evidence a meeting of the minds *as to the intent to create a principal-agent relationship,* not just a meeting of the minds. *A & S Elec. Contractors, Inc. v. Fischer,* 622 S.W.2d 601, 603-604 (Tex. App. – Tyler 1981, no writ).  Otherwise, every contract would establish a principal-agent relationship.  Nothing in the Contract evidences an understanding between the parties that C.H. Robinson would act as ABB Alstom's agent. **Ex. K.**  ABB Kraftwerke was not a party to the Contract, so the Contract obviously cannot support such an understanding between ABB Kraftwerke and C.H. Robinson.  In addition, C.H. Robinson's corporate representative has testified that C.H. Robinson never agreed to act as an agent for ABB. **Ex. G,** *Deposition of Tom Ferguson,* at 32:20-22.

32.    Plaintiffs cite to Lepori's recent statement as evidence that ABB always reserves the right to interfere in a contract such as that with C.H. Robinson, and that "ABB never hires independent contractors for the type of job Robinson was doing, they always use agents as they

require the ability to control the agent and the agent requires the ability to bind ABB if emergencies arise." *Plaintiffs' Amended Response* at ¶ 22. These statements should not be considered unless the contract is first found to be ambiguous. Where there is no ambiguity in a contract, the parties' disagreement over the interpretation of the contract will not make it ambiguous. *Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 727, 732 (Tex. 1981). Even if these statements were considered, they are hardly credible. Lepori's perceptions of his employer's relationship with C.H. Robinson have changed dramatically in the four years since his last deposition. In the lawsuit brought by Brownsville Barge and Crane against ABB Kraftwerke and ABB Alstom, Lepori referred to C.H. Robinson as "our contractor" and "our supplier." **Ex. A,** *Deposition of Sandro Lepori taken May 1, 2001* at 55:15-16 (testifying that "our contractor was C.H. Robinson and not Brownsville Barge & Crane."); *Id.* at 112:13-25 (referring to C.H. Robinson as a "supplier" to ABB and specifying that Schaefer Stevedoring supplied their services to C.H. Robinson, not ABB). It was also in this deposition that he testified that Schneider's job at the site was to "*assist* C.H. Robinson," *Id.* at 44:21-45:6, and that Schneider "was not dealing with" Schaefer Stevedoring, as the "the chain of command was always via C.H. Robinson," *Id.* at 47:16-19.

### g.    *C.H. Robinson did not have authority to "bind ABB".*

33.    Plaintiffs next contend that C.H. Robinson had the authority to "bind ABB to costs outside the contract." *Plaintiffs' Amended Response* at ¶ 29. This statement is not borne out by any of the evidence Plaintiffs cite; it is simply not true. Nowhere in the Contract is C.H. Robinson given the ability to "bind" ABB Alstom's predecessor. **Ex. K.** The Contract does not even make any reference to contingency costs. Any contingency costs that may have been incurred were billed to and paid by C.H. Robinson, who later billed those costs to ABB Alstom's

predecessor.  C.H. Robinson paid all its subcontractors directly, then billed those costs to ABB

Alstom's predecessor.  *See* **Ex. H,** *Deposition of Todd Strever taken January 21, 2005* at 32:13-

33:2; **Ex. G,** *Deposition of Tom Ferguson taken February 25, 2005* at 5:16-19; 32:24-33:13 and

35:24-36:10.

34.     The testimony of Strever and Ferguson (C.H. Robinson's corporate

representative) is consistent with that offered by Sandro Lepori in 2001.  Lepori testified at that

time that Plaintiffs did not make any direct payments to Schaefer Stevedoring or Brownsville

Barge & Crane because Plaintiffs "had a contract only with C.H. Robinson that covered the

entire work." **Ex. A,** *Deposition of Sandro Lepori taken May 1, 2001* at 77:18-78:7.   ABB

Kraftwerke and ABB Alstom did not pay any contractor or subcontractor other than C.H.

Robinson.  **Ex. A** at 110:21- 111:6 (wherein Lepori testifies that, aside from the indemnity

agreement ABB Power Generation entered into with Brownsville Barge & Crane, ABB did not

sign contracts with any third party relating to the transport of the generator from Brownsville to

Mexico).

35.     In support of their argument that C.H. Robinson could "bind" Plaintiffs, Plaintiffs

also cite to the following exchange from the deposition of Tom Ferguson, C.H. Robinson's

corporate representative.

> Q.     What – what type of, if you know – and you may not – you many
> not know.  And if this is one of the questions you don't know, just
> tell me you don't know.  What kind of relationship was created by
> the contract and its terms between Robinson and ABB?
>
> A.     I don't know.

**Ex. G** at 20:7-13.  Plaintiffs seem to suggest that this testimony indicates that C.H. Robinson was

the agent of one of the Plaintiffs.  They omit any reference to Ferguson's subsequent testimony:

Q:    Do you know what it is that C.H. Robinson claims, as far as ABB's
      claim that they were acting as their agent under this contract?

A:    Say that one more time now.

Q:    Yeah. Do you know what it is – what is C.H. Robinson's position
      with regard to ABB's claim that they were acting as ABB's agent
      at the time of this accident in Brownsville?

A:    We were an independent contractor. ABB was our customer.

*Id.* at 24:10-19.

### 3.   *Plaintiffs have no claim for breach of contract.*

36.    Plaintiffs contend that, if Swiss law applies, "then the evidence presented proves a

breach of contract." *See Plaintiffs' Amended Response* at ¶¶ 37-38. Plaintiffs have, first of all,

failed to meet their burden of establishing the substance of Swiss law. They have never provided

copies of cases, statutes, or any other materials from which the Court or C.H. Robinson might

determine the basis for their contention that "the evidence presented proves a breach of contract"

under Swiss law. One month from docket call and absent this proof, Texas law applies, and any

claim for breach of contract is barred by limitations. *See Dkt No. 66, Defendant C.H. Robinson

Company's Response to Plaintiffs' Motion for Rehearing on the Application of Swiss Law*, at 3-5.

37.    Second, Plaintiffs have not pleaded a breach of contract claim within the four-

year limitations period, i.e., the period from July 16, 1999 until July 16, 2003, when Plaintiffs

filed this suit. The Court commented on this deficiency in its September 30, 2004 order granting

in part Defendant's Amended Motion to Dismiss. *Dkt No. 45, Order entered September 30,

2004* at 19 ("[T]he Court is dubious that Plaintiffs have adequately pled breach of contract

claims occurring after July 1999 . . . ."). Plaintiffs have not moved for leave to amend their

complaint to correct this deficiency since the Court entered its order on September 30, 2004.

38.     Third, Plaintiffs have never even specified a provision in the contract between C.H. Robinson and ABB Power Generation Ltd. that they contend C.H. Robinson breached.  In sum, Plaintiffs have not even pleaded, much less raised a genuine issue of material fact relating to their breach of contract claim – under the law of any forum.  C.H. Robinson is therefore entitled to summary judgment on the claim for breach of contract as well as the claim for common-law indemnity.

4.      *Plaintiffs' allegations that are irrelevant to motion for summary judgment*

39.     Plaintiffs make a number of allegations that are irrelevant to a determination of C.H. Robinson's Amended Motion for Summary Judgment.  In order to avoid any future contention by Plaintiffs that C.H. Robinson has conceded these allegations, C.H. Robinson points out the inaccuracy of the following:

a.      At ¶ 2, Plaintiffs represent that Todd Strever testified that Jim Hamilton traveled to Switzerland to *negotiate* the Contract with ABB.  A review of the deposition transcript reveals that Strever, in response to questioning about where Jim Hamilton *signed* the Contract, testified only that he knew that Hamilton had traveled to Switzerland but was not "specifically aware where he was when he signed the contract."  **Ex. H** at 19:25-20:15.

b.      Plaintiffs contend that C.H. Robinson "was to provide a logistics plan as part of their management of the project" and that C.H. Robinson failed to do so.  *Plaintiffs' Amended Response* at ¶¶ 11, 12.  The proffered statements do not support Plaintiffs' allegations that C.H. Robinson was to provide a logistics plan, or that C.H. Robinson failed to provide a logistics plan.  On the contrary, Schneider testified that either C.H. Robinson or Schaefer Stevedoring could have made the plan to transport the generator from the barge to the railroad car.  **Ex. J** at 7:15-23.  In addition, a "plan" was forwarded to Sandro Lepori by Jim Hamilton

- 23 -

with the correspondence incorporated into the Contract. **Ex. K,** at *January 30, 1999 letter from Hamilton to Lepori, last paragraph.*

### III.    Conclusion

40.    Plaintiffs have no claim for indemnity against C.H. Robinson as a matter of law because the allegations against them in the underlying lawsuit were not <u>solely</u> for vicarious liability.  In fact, neither the Zamoras nor Brownsville Barge & Crane made any allegation of vicarious liability against ABB Kraftwerke or ABB Alstom.  All claims against ABB Kraftwerke or ABB Alstom were for their own, direct liability.  Plaintiffs complain of C.H. Robinson's' reliance on the Zamora family's pleadings as evidence of the claims they settled with the Zamoras, but Plaintiffs present no other evidence of the claims that they settled, much less any evidence that they only settled a single claim, for vicarious liability.  Because a judgment was entered in favor of Brownsville Barge & Crane on their claim for contractual indemnity against ABB Kraftwerke and ABB Alstom and that judgment was affirmed on appeal, Plaintiffs do not even attempt to argue that their liability on that claim was for purely vicarious liability.

41.    Because Plaintiffs have no evidentiary support for a contention that they settled <u>only</u> claims of purely vicarious liability, their contention that C.H. Robinson was their agent is moot.  Assuming for the sake of argument that the point were not moot, Plaintiffs have failed to create a genuine issue of material fact, to offer more than a scintilla of evidence on which a fact finder could conceivably find in their favor.  On the contrary, the testimony in the underlying lawsuit together with the recent testimony of Plaintiffs' corporate representative John Barry and the February 2005 statements of Sandro Lepori and Roland Schneider, establish that C.H. Robinson was an independent contractor and not an agent of C.H. Robinson.

- 24 -

42.     Plaintiffs have no claim for breach of contract as they have failed to plead a claim for breach of contract, much less a claim within the applicable four-year limitations period, i.e., after July 16, 1999.  Plaintiff ABB Kraftwerke never had a contract with C.H. Robinson, and ABB Alstom has never even cited to a portion of the Contract that it contends C.H. Robinson breached.  Plaintiffs have not even pleaded, much less raised a genuine issue of material fact relating to their breach of contract claim.

### IV. Prayer for Relief

43.     For these reasons, Defendant C.H. Robinson, respectfully requests that this Court grant summary judgment to C.H. Robinson on all of ABB's remaining claims.  C.H. Robinson further requests all relief, in law and equity, to which it may be entitled.

Respectfully submitted,

McGINNIS, LOCHRIDGE & KILGORE, L.L.P.

By: _Karan C. Ciotti_

Steven J. Watkins
ATTORNEY-IN-CHARGE
State Bar No. 20927700
So. Dist. Bar No. 146

3200 One Houston Center
1221 McKinney Street
Houston, Texas 77010
Telephone:  (713) 615-8500
Facsimile:  (713) 615-8585

ATTORNEYS FOR DEFENDANT
C.H. ROBINSON COMPANY

OF COUNSEL:

Karan C. Ciotti
State Bar No. 05226300
So. Dist. Bar No. 16874
McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
3200 One Houston Center

1221 McKinney Street
Houston, Texas 77010
Telephone: (713) 615-8500
Facsimile: (713) 615-8585

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the above and foregoing Defendant C.H. Robinson Company's Reply to Plaintiffs' Amended Response to Defendant's Motion for Summary Judgment has been served via certified mail, return receipt requested, on this the 20th day of April, 2005, to the following:

Justin L. Williams
The Law Office of Justin L. Williams, P.C.
600 Leopard Street, Suite 1810
Corpus Christi, Texas  78473

_Karan C. Ciotti_

Karan C. Ciotti

**APPENDIX TO C.H. ROBINSON COMPANY'S REPLY TO
PLAINTIFFS' AMENDED RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| **Ex A** | *Deposition of Sandro A. Lepori taken May 1, 2001* |
| **Ex. B** | *Deposition of Roland Schneider dated April 7, 2000* |
| **Ex. C** | *Deposition of Alfredo Arteaga taken March 13, 2000* |
| **Ex. D** | *Deposition of Jose Cruz Garcia taken March 13, 2000* |
| **Ex. E** | *Deposition of Andreas Rebholz taken April 7, 2000* |
| **Ex. F** | *ABB Kraftwerke AG v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287, 290 (Tex. App. – Corpus Christi 2003, pet. denied). |
| **Ex. G** | *Deposition of Tom Ferguson taken February 25, 2005* |
| **Ex. H** | *Deposition of Todd Strever taken January 21, 2005* |
| **Ex. I** | *February 14, 2005 Statement of Sandro Lepori* |
| **Ex. J** | *February 15, 2005 Statement of Roland Schneider* |
| **Ex. K** | *Contract* |
| **Ex. L** | *March 1, 1999 E-mail from J. Hamilton to S. Lepori* |
| **Ex. M** | *Deposition of Jim Hamilton taken April 25, 2000* |
| **Ex. N** | *Deposition of John Barry taken December 15, 2004* |

27