**Westlaw.**

Not Reported in F.Supp.2d
1998 WL 614647 (N.D.Tex.)
(Cite as: 1998 WL 614647 (N.D.Tex.))

Page 1

▷

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Texas.
BAKHICO CO. LTD. d/b/a Bahico International
Trading Co. Ltd. a/k/a Bahiko
International Co., Ltd. Plaintiff,
v.
SHASTA BEVERAGES, INC. d/b/a National
Bevpak Defendant/Third Party Plaintiff
v.
REYNOLDS METAL CO. Third-Party Defendant.
No. CIV. 3:94-CV-1780-H.

Sept. 3, 1998.

MEMORANDUM AND ORDER ON THIRD-
PARTY DEFENDANT REYNOLDS METALS
COMPANY'S SECOND
MOTION FOR SUMMARY JUDGMENT
AGAINST THIRD-PARTY PLAINTIFF SHASTA
BEVERAGES,
INC.
Background
*1 On June 13, 1993, Bakhico Co., Ltd., d/b/a Bahiko International Trading Co., Ltd., a/k/a Bahiko International Company, Ltd., hereinafter "plaintiff," contracted with Shasta Beverages, Inc., d/b/a National Bevpak, hereinafter "Shasta," for the purchase of 107,100 cans of Shasta's soda. [FN1] The contract called for the production of the soda in Houston, Texas, U.S.A., with subsequent shipment to St. Petersburg, Russia. The soda's final destination, Moscow, Russia.

Shasta completed the order sometime in July of 1993 and tendered delivery to the plaintiff in Houston. The plaintiff accepted delivery of the soda and promptly shipped it to Russia. Although the cans of soda made it to St. Petersburg, transoceanic shipping trauma resulted in damage to the cans. The result, a significant amount of the soda was no longer distributable.

On January, 12, 1994, the plaintiff notified Shasta of the damage to the cans of soda. [FN2] On July 28, 1994, the plaintiff filed suit against Shasta to recover the losses it suffered as a direct result of the damaged product. On February 22, 1995, the plaintiff amended its complaint alleging Shasta was also liable for breach of warranty, common law fraud and the Deceptive Trade and Practices Act, hereinafter "DTPA," under Texas law. Finally, on December 4, 1995, the plaintiff indicated its belief that the cans themselves were defectively manufactured and the direct cause of the loss.

Back on April 20, 1993, Shasta contracted with Reynolds Metals Company, hereinafter "Reynolds," for the purchase of aluminum cans designed, manufactured and marketed by Reynolds. Shasta filled these cans with its soda and tendered delivery to the plaintiff. After learning of the plaintiff's belief that the cans themselves were defective, [FN3] Shasta submitted a demand letter to Reynolds for contribution or, in the alternative, indemnification should the plaintiff establish the cans were in fact defective. The demand was denied. Thereafter, on January 29, 1996, Shasta filed its third party complaint against Reynolds alleging breach of express and implied warranties, as well as seeking either contribution or indemnity for the plaintiff's claims.

On September 26, 1997, Reynolds filed its first motion for summary judgment against Shasta. On January 15, 1998, this court granted the motion in part, dismissing with prejudice Shasta's claims for breach of any express or implied warranty, but denied it in part, setting for trial Shasta's claims for negligence and for contribution or indemnification with respect to the plaintiff's claims against Shasta.

On May 18, 1998, this court granted Reynolds motion for leave, thereby permitting Reynolds to file this motion for summary judgment. Reynolds now moves for summary judgment on Shasta's direct claim of negligence against Reynolds as well as Shasta's claims for indemnity and contribution. [FN4]

Standard of Review
A motion for summary judgment shall be granted when, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is sufficient

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1998 WL 614647 (N.D.Tex.)
(Cite as: 1998 WL 614647 (N.D.Tex.))

Page 2

evidence favoring the party opposing the motion for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, then the burden shifts to the opposing party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The opposing party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial" and "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 256-57 (citations omitted).

### A. Indemnity Under Texas DTPA

*2 Reynolds' initial argument in support of its motion for summary judgment focuses on the limitation-of-liability clause contained in the contract entered between the parties on April 20, 1993. Reynolds asserts that Shasta has waived its claim to indemnity by failing to submit to it timely written notice of its potential claim. The contract's terms provide, in relevant part that:

> Buyer shall notify Seller of the claims in writing promptly after detection or knowledge. Seller shall not be liable for any claims unless notice of the claim is received by Seller within twelve (12) months following the date of filling [the cans]. Failure to make claim within said period shall constitute a waiver of the claim.

Section III.C. of the April 20, 1993 Contract. As early as January 12, 1994, Shasta had knowledge of damage suffered by the plaintiff with respect to the soda cans. But despite this early notification by the plaintiff, Shasta made no attempt to provide written notification to Reynolds about any damage to the cans. In fact, Reynolds first written notification was not received until January 5, 1996, approximately two and a half years after the cans were filled by Shasta. Therefore, Reynolds claims Shasta's right to indemnity has been waived under the terms of the contract agreement.

Still, despite the clear and unambiguous language in the contract agreement, Shasta maintains this action for indemnity against Reynolds, asserting the invalidity of the contract's waiver provision as applied to its claim for statutory indemnity under the Texas DTPA. To counter, Reynolds asserts that Virginia law, not Texas law, governs Shasta's claims for indemnity as the contract clearly states that Virginia law "shall govern the validity, interpretation, construction and effect of this letter agreement." Section VI. of the April 20, 1993 Contract. The initial concern, then, is whether Virginia or Texas law controls Shasta's right to indemnity from Reynolds. Only by determining which law applies can I accurately assess the validity of the contract's terms and the strength of Shasta's claim.

Generally, a choice-of-law clause will be given full effect, as judicial respect for their choice protects the justified expectations of the parties, the most basic policy behind contract law. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex.1990); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS section 187 cmt. c (1988) ("the forum will apply the applicable provisions of the law of the designated state in order to effectuate the intentions of the parties."). Indeed, the parties' certainty about the law, its interpretation and enforcement, to govern their relationship gives each a clearer understanding of their rights and obligations under the contract. *Id.* The parties' ability to include in their agreement their own choice-of-law clause to govern their agreement has become known as "party autonomy." *Id.*

> However, as the Texas Supreme Court explained in *DeSantis*, the parties' freedom to choose what jurisdiction's law will apply to their agreement *cannot* be unlimited. They *cannot* require that their contract be governed by the law of a jurisdiction which has no relation whatever to them or their agreement. And they *cannot* by agreement thwart or offend the public policy of the state the law of which ought otherwise to apply.

*3 *Id.* (citations omitted) (emphasis added); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS section 187(2) (1988). Only through such limitation does "party autonomy" truly further the basic policy behind contract law. *Id.*

In Texas, the legal forum for this diversity case, the validity of any choice-of-law clause is determined by applying section 187 of the Restatement (Second) of Conflicts. *Id. See American Star Insurance Co. v. Girdley*, 12 F.3d 49, 50 (5th Cir.1994). Section 187 states:

Law of the State Chosen by the Parties
(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1998 WL 614647 (N.D.Tex.)
(Cite as: 1998 WL 614647 (N.D.Tex.))

Page 3

in their agreement directed to that issue.
(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of section 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.
See RESTATEMENT (SECOND) OF CONFLICT OF LAWS section 187 (1988).

The initial inquiry under section 187(1), whether the parties could have determined a specific issue by agreement, is answered by reference to the local law of the of the state selected by application of the rule in section 188 of the Restatement (Second) of Conflict of Laws. RESTATEMENT (SECOND) OF CONFLICT OF LAWS section 187 cmt. c (1988). Section 188 provides, in relevant part, that
(2) [i]n the absence of an effective choice of law by the parties (see section 187), the contacts to be taken into account in applying the principles of section 6 to determine the law applicable to an issue include:
(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied ....
Id. at section 188.

Under section 188, Texas law clearly applies to the parties' contractual relationship. First, the place of contracting was exclusively done in Texas, as Shasta's Houston plant placed its order with Reynold's Houston plant. Second, the place of performance was Texas, as Reynold's Houston plant manufactured, coated and tested the cans before delivering them to Shasta's Houston plant, where they were filled and delivered to the plaintiff in Houston. In addition, the plaintiff delivered its artwork for the cans to Reynolds' Houston plant. There is absolutely no evidence of any connection with Virginia concerning the contracting and performance of the parties' agreement. Thus, sections 188(2)(a) and (c) lend support to the application of Texas law. Third, the only connection with Virginia is that Reynolds' principal place of business is located there. However, Reynolds is also authorized to do business in Texas and is a resident of Texas with a production facility located in Houston, Texas. Moreover, Shasta has its principal place of business in Texas. Thus, section 188(2)(e) does not lend support to the application of Virginia law over Texas law. Consequently, the local law of Texas would be applied under section 188(2) of the Restatement (Second) of Conflict of Laws. [FN5] As a result, Texas law must be applied to determine the initial question under section 187(1) of whether the particular issue here is one which the parties could have resolved by an explicit provision in their agreement.

*4 The Texas DTPA explicitly prohibits waiver of section 17.555, the statutory right under the DTPA for contribution or indemnity, by a consumer. TEX. BUS. & COMM. CODE ANN. section 17.42 (Vernon 1987). Any attempted waiver by a consumer of its right to indemnity under this subchapter is unenforceable and void as it is contrary to public policy. Id.; see also Martin v. Lou Poliquin Enterprises, Inc., 696 S.W.2d 180, 186 (Tex.Ct.App.1985) (holding that a limitation of liability clause does not waive a consumer's right to indemnity under the DTPA in light of the legislative mandate that such a waiver is contrary to public policy and is unenforceable and void). [FN6]

Consequently, applying Texas law to the particular issue of whether the parties could have resolved Shasta's right to indemnification by an explicit provision in their agreement directed at that issue, I must conclude that the parties could not. [FN7] Even so, despite the fact that this particular issue cannot be resolved by any explicit provision in the parties' contract agreement, Virginia law will still be applied under section 187(2) of the Restatement unless either (1) Virginia has no substantial relationship to the parties or the transaction or (2) applying Virginia law would frustrate or offend Texas *fundamental* policy. RESTATEMENT (SECOND) OF CONFLICT OF LAWS section 187(2) (1988). [FN8] Whether Virginia has a substantial relationship with the parties

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1998 WL 614647 (N.D.Tex.)
(Cite as: 1998 WL 614647 (N.D.Tex.))

Page 4

is an easy question and can be dismissed rather quickly. Virginia has a substantial relationship to the parties if one of the parties is domiciled or has its principal place of business there. RESTATEMENT (SECOND) OF CONFLICT OF LAWS section 187 cmt. f(1988). In this case, Reynolds has its principal place of business in Virginia. Thus, under section 187(2) Virginia law must apply to Shasta's claim of indemnity unless to do so would violate or offend Texas *fundamental* policy. To determine whether this exception applies, three determinations must be made by the court.

> More particularly, [I] must determine: first, whether Texas has a more significant relationship to these parties and their transaction than [Virginia]; second, whether Texas has a materially greater interest than [Virginia] in deciding the enforceability of the ... agreement in this case; and third, whether the application of [Virginia] law in this case would be contrary to fundamental policy of Texas.

DeSantis, 793 S.W.2d at 678.

Texas bears a more significant relationship to the parties and the transaction than does Virginia. Texas not only represents the place of contracting and performance of the contract but it also bears a significant relationship with both Shasta, with its principal place of business located in Texas, and Reynolds, a resident of Texas authorized to conduct business activity in the state. *See supra* Analysis of RESTATEMENT (SECOND) OF CONFLICT OF LAWS section 188 (1988) pp. 5-6.

Texas also has a materially greater interest in determining whether the contract agreement is enforceable. Texas simply has a greater interest in regulating the conduct of parties conducting business transactions in Texas. No evidence has been presented by either party demonstrating that any aspect of this transaction occurred outside the State of Texas. Moreover, neither party has presented any evidence that any portion of the transaction occurred in Virginia. The only real interest Virginia may have in applying its law to the transaction is Reynolds' principal place of business is there. However, as I mentioned a paragraph ago, Reynolds has significant ties to the State of Texas as well, including a manufacturing facility in Houston. Incorporating my analysis concerning the most significant relationship with that here, I must conclude that Texas clearly has a greater interest in having its laws applied to the present transaction, which primarily occurred within the state of Texas.

*5 The only remaining issue, having concluded that Texas law would govern the parties' contract agreement but for the choice of law clause electing Virginia law, and that Texas has a greater interest in applying its law in this controversy, is whether application of Virginia law would be contrary to fundamental Texas policy. For guidance on this issue I look again to the Texas Supreme Court's analysis in *DeSantis.* In its analysis of this third factor, the Texas Supreme Court accurately concluded that the Restatement offers little guidance itself in making this difficult determination. *DeSantis, 793 S.W.2d at 679.* But after careful and thorough analysis of the Restatement and its comments, the Texas Supreme Court generated a standard by which to determine whether the application of another state's law would be contrary to fundamental policy of Texas. It states:

> In analyzing whether fundamental policy is offended under section 187(2)(b), the focus is on whether the law in question is a part of state policy so fundamental that the courts of the state will refuse to enforce an agreement contrary to that law, despite the parties' original intentions, and even though the agreement would be enforceable in another state connected with the transaction.

*Id.* at 680 (the Texas Supreme Court at no time attempted to define "fundamental policy"). With this focus in mind, I must conclude that this case falls squarely within this standard formulated from the Restatement (Second) of Conflict of Laws by the Texas Supreme Court.

The inquiry is whether the blanket limitation-of-liability clause inserted in Reynolds' standard form contract would be enforced by Texas courts applying Texas law. Enforcement would essentially eliminate Shasta's claim of indemnity under the DTPA. Although blanket limitation-of-liability clause are usually given effect by Texas courts, this general acceptance is not without limitation. As a Texas Court of Appeals explained,

> [t]he [Texas] legislature obviously intended the DTPA to be a powerful tool in the campaign against deceptive trade practices ... A seller should not be able to avoid Section 17.42 by merely including a limitation-of-liability clause in a standard form contract. The DTPA would retain little impact upon deceptive trade practices should sellers of goods and services be allowed to circumvent this provision so easily. *Hycel, Inc. v. Wittstruck,* 690 S.W.2d 914 (Tex.App.--Waco 1985). Therefore, [appellant's] limitation-of-liability clause may waive appellee's common-law right to sue for breach of contract, or it may limit damages recoverable under the contract. However,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1998 WL 614647 (N.D.Tex.)
(Cite as: 1998 WL 614647 (N.D.Tex.))

Page 5

we find the clause does not prohibit appellee's recovering separately under the DTPA. *Martin*, 696 S.W.2d at 186. Further support is found in section 17.42 itself which explicitly voids and renders unenforceable, without exception, *any* waiver of a consumers right to indemnity under the DTPA as contrary to public policy. *See* TEX. BUS. & COMM. CODE ANN. section 17.42 (Vernon 1987). [FN9] In other words, protecting a consumer's right to indemnification under the DTPA is part of Texas policy so fundamental that Texas courts would "refuse to enforce an agreement contrary to that law, despite the parties' original intentions, and even though the agreement would be enforceable in another state connected with the transaction." *DeSantis*, 793 S.W.2d at 679. I therefore hold that Texas law, not Virginia law, governs the contract agreement's limitation-of-liability clause as applied to Shasta's right to indemnity under the Texas DTPA.

*6 In light of the foregoing analysis, I find that section III.C. of the April 20, 1993, contract agreement is void and unenforceable as applied to Shasta's right of indemnity under the DTPA, as it is contrary to Texas public policy.

Even so, Reynolds argues, Shasta still has no right to indemnification under Texas law. Rights of indemnification are derivative of the plaintiff's primary cause of action, and as a result, indemnification may not be recouped from a third party against whom the plaintiff had no claim. *See, e.g., Humana Hosp. Corp. v. American Med. Sys., Inc.*, 785 S.W.2d 144, 145 (Tex.1990); *Shoemake v. Fogel, Ltd., A.T.*, 826 S.W.2d 933 (Tex.1992). There is a difference, however, between a plaintiff never having had a claim and no longer being able to recover on its claim against a third-party. The former involves a total lack of a viable cause of action against the third-party; the latter, on the other hand, involves a viable cause of action that has been merely barred by a technical defense, such as the statute of limitations. *See Amoco Chems Corp. v. Malone Serv. Co.*, 712 S.W.2d 611, 614 (Tex.Ct.App.1986). It is the mere existence of claim that provides the basis for indemnity, not a party's ability to recover damages. *See Missouri Pacific Railroad Co. v. Southern Pacific Co.*, 430 S.W.2d 900, 904-05 (Tex.Ct.App.1968), cert. denied, 394 U.S. 1013, 89 S.Ct. 1630, 23 L.Ed.2d 39 (1969). Thus, as this court noted earlier in this litigation, "[t]he likely bar of the statute of limitations as to [the plaintiff's] DTPA case does not preclude Shasta's claim for ... indemnity under this provision." *Bakhico Co., Ltd. v. Shasta Beverages, Inc.*, 1998 WL 25572, at *12 (N.D.Tex.1998) (citation omitted).

Nonetheless, the Texas Supreme Court has indicated that primary DTPA liability shall not lie against third-parties who are merely remote component manufacturers of final product sold to the plaintiff. *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 652 (Tex.1996). It appears, then, that the plaintiff had no cause of action against Reynolds under the DTPA and consequently indemnity is not recoverable from Reynolds under section 17.555 of the DTPA by Shasta. Such a result, however, would effectively nullify the DTPA with respect to component manufacturers, thereby relinquishing them from any and all potential liability. This exact result is why the Texas Supreme Court styled its holding to maintain a right of indemnity against a remote component manufacturer. *See Amstadt*, 919 S.W.2d at 652. In reaching its conclusion, the *Amstadt* court reasoned that

> [g]iven [the] recourse under the DTPA against the seller, and the contribution and indemnity provision of the DTPA, *see* TEX. BUS. & COM. CODE section 17.555, we think that rather than permit limitless upstream DTPA liability under these circumstances, the Legislature more likely intended for consumers to seek DTPA recourse against those with whom they have engaged in a consumer transaction. Then, to the extent that the seller's DTPA liability is caused or contributed to by the otherwise actionable misconduct of upstream manufacturers or suppliers, the seller may seek contribution or indemnity against them.

*7 *Id.* Therefore, Shasta has a right to indemnity against Reynolds under the DTPA regardless of any liability *actually* owed by Reynolds to the plaintiff.

Reynolds next contends that Shasta is limited in recovery pursuant to the terms of the April 20, 1993, contract agreement that provides, in relevant part:

> THE ABOVE WARRANTIES ARE EXTENDED ONLY TO BUYER AND EXCLUDE ALL OTHER WARRANTIES, GUARANTEES, OR REPRESENTATIONS, EXPRESS OR IMPLIED, EXCEPT AS OTHERWISE AGREED TO IN WRITING BY SELLER AND BUYER. Full credit or reimbursement, at Buyer's option, shall be given to Buyer for breach of said warranties and for actionable negligence, but Seller's liability on any claim, whether in tort or in contract, shall not exceed the total of:
> 1. the cost to the Buyer of all aluminum cans and/or ends which were not as warranted,
> 2. the cost to Buyer of the contents thereof and packaging materials which are rendered unsalable

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1998 WL 614647 (N.D.Tex.)
(Cite as: 1998 WL 614647 (N.D.Tex.))

Page 6

as a direct result of the failure of said aluminum cans and/or ends to be as warranted,
3. the cost to Buyer of labor and supervision reasonably required to inspect those aluminum cans with ends which were introduced into Buyer's filling, sealing and packaging processes and were included in a conveyance lot in which were discovered aluminum cans and/or ends which were not as warranted,
4. the cost to Buyer of recovery and disposition of aluminum cans and/or ends which were not as warranted, and
5. the cost to repair any damage to filling, sealing, and packaging line equipment of Buyer caused by the failure of any of said aluminum cans and/or ends sold to Buyer hereunder to be as warranted.

Section III. of the April 20, 1993 Contract. As a result of this provision, Reynolds maintains that Shasta's damages claim for indemnification extends beyond the bounds of liability contemplated by the parties in the April 20, 1993, contract agreement and is, therefore, not a viable claim for damages. I disagree.

The contract agreement's limitation-of-liability clause also contains the following provision, that immediately *follows* the limitation-of-liability provision above:

Except as enumerated above, Seller shall not in any event be liable for incidental or consequential damages; and Seller shall have no liability of any nature for any loss or damage resulting from faulty closure or end assembly, use of components other than those furnished by seller, packing, handling, or distributing not in accordance with the customary good commercial practices of the trade, or secondary corrosion occurring after receipt, *unless such corrosion was directly caused by a can or end manufacturing defect.*

Section III.B. of the April 20, 1993 Contract (emphasis added). This clause arguably demonstrates that damages similar in nature to the present claim for indemnification were contemplated by the parties and specifically excluded from the limiting language of section III. Thus, Shasta's claim for indemnity would not call for damages beyond the contractual agreement.

*8 Notwithstanding the section III.B. and its implications, Reynolds second argument fails as a matter of law. Shasta's claim for indemnification under the DTPA lies separate and apart from other potential claims arising directly from the contractual agreement of the parties. *See generally Martin v. Lou Poliquin Enterprises, Inc.*, 696 S.W.2d 180, 186 (Tex.Ct.App.1985) (permitting a seller to avoid liability under the DTPA by simply including a limitation-of-liability clause in a standard form contract would strip the act of its ability to combat deceptive trade practices). In other words, the general limitation-of-liability clause under the contract will not disturb Shasta's right to indemnity under the DTPA. Indeed, "[it is clear that liability limitation clauses cannot be utilized to prevent a consumer from seeking recovery under the DTPA." *Posey v. Southwestn Bell Yellow Pages, Inc.*, 878 S.W.2d 275, 280 (Tex.Ct.App.1994).

B. Indemnity Under § 82.002 of Texas Code

The DTPA is an exception, rather than the rule. As I stated earlier, a choice-of-law clause will generally be given full effect out of judicial respect for the parties' choice. This is the only way to effectuate the parties' intentions and provide predictability and stability in contracting. Virginia law, then, as agreed by the parties, controls absent two findings: (1) the parties could not determine the specific issue by agreement under Texas law; and if (1) then (2) Virginia is not a forum which has no relation whatsoever to the parties or their agreement or is the particular provision in the agreement one that violates or offends fundamental policy of Texas.

Previously, with respect to Shasta's claim for indemnity, the court held in this case that section 82.002 of the Texas Civil Practice and Remedies Code "is parallel in many respects, particularly in its application to the circumstances here, to the DTPA provision allowing [for] indemnity. [Therefore] the Court [held] that this statutory right to indemnity, like the one under the DTPA, survives even in the absence of a direct claim by the plaintiff." *Bakhico Co., Ltd. v. Shasta Beverages, Inc.*, 1998 WL 25572, at *12 (N.D.Tex.1998). Upon further analysis, however, the court rejects its earlier ruling with regard to section 82.002's effect on Shasta's indemnity claim. Although section 82.002 of the Code does provide that

[a] manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable,

TEX. CIV. PRAC. & REM. CODE section 82.002 (Vernon 1997), it neither expressly nor impliedly prohibits waiver of its remedy. *See Id.* at sections 82.002 -82.004. Thus, liability under section 82.002 of the Code, unlike section 17.555 of the DTPA, is an

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1998 WL 614647 (N.D.Tex.)
(Cite as: 1998 WL 614647 (N.D.Tex.))

Page 7

issue that the parties could resolve by explicit agreement. There is simply no justification to disregard the parties' contractual choice of law. In other words, the right to indemnification under section 82.002 falls squarely within section 187(1) of the Restatement (Second) of Conflict of Laws and, consequently, the law of the state chosen, Virginia, shall govern the parties' contractual rights. [FN10]

*9 Even if Texas law applied, Shasta's claim for indemnity under section 82.002 would fail as a result of section III.C. of the contract agreement, which calls for notification of claims to be in writing and submitted to Reynolds within twelve months following the date of filing to avoid waiver. Again, section 82.002 does not prohibit modification or waiver of its provisions. Thus, even if section 82.002 of the Texas Civil Practices and Remedies Code should be applied instead of Virginia law, the fact remains that Shasta did not notify Reynolds of its claim in the appropriate time and manner specified under the contract agreement. Therefore, Shasta's right to recovery under section 82.002 expired, i.e. it was waived.

C. Indemnity Under Texas Common Law
Shasta further asserts a Texas common law right and an implied contractual right to indemnity from Reynolds. *See e.g., Central Consolidated, Inc. V. Robertshaw Controls Company,* 868 S.W.2d 910 (Tex.Ct.App.1994); *UNC, Inc. v. Coonrod Electric Co., Inc.,* 667 S.W.2d 549, 554 (Tex.1983). With either of these claims, it is not clear to me how the parties' choice of Virginia law in section VI. of the April 20, 1993, contract agreement can be avoided to apply Texas common law to the parties' dispute. Again, I look to the Restatement (Second) of Conflict of Laws for guidance on this issue. While Texas law does provide a right of indemnity under the common law as well as an implied right under the contract, neither modification nor waiver of either right is prohibited. Neither right is an issue that could not be resolved by explicit agreement. To the contrary, contracting parties are always permitted to include an indemnity provision in their agreement expressly detailing the terms and conditions of indemnification. In such as case, Texas law is clear that "the contract determines the rights of the parties." *UNC, Inc., 667 S.W.2d at 554.* Thus, both the common law right and an implied contractual right to indemnity are merely fall back provisions to be applied absent contractual agreement by the parties. Thus, under Texas law contracting parties, with the exception of claims pursuant to the DTPA, can resolve the issue of indemnity by explicit agreement. Therefore, under section 187(1) of the Restatement (Second) of Conflict of Laws, Virginia law must be applied.

D. Indemnity Under Virginia Law
I now turn my attention to Shasta's claims for indemnity under Virginia law. I do not deny that Shasta may have had a right to indemnification under Virginia law. *See e.g. Carr v. Home Ins. Co.,* 250 Va. 427, 463 S.E.2d 457, 458 ("equitable indemnification arises when a party without personal fault, is nevertheless legally liable for damages caused by the negligence of another [and therefore] [e]quitable principles allow the innocent party to recover from the negligent actor for the amount paid to discharge the liability."); *Whittle v. Timesavers, Inc.,* 614 F.Supp. 115, 118-19 (W.D.Va.1985) (a seller is entitled to indemnity when it is held liable for a manufacturer defect). The problem, however, is that the April 20, 1993, contract agreement signed by Shasta to govern the relationship between itself and Reynolds contains a limitation-of-liability clause. This clause explicitly mandates a condition for Shasta to recover any damages from Reynolds, including any right to indemnification. That condition is that Shasta "shall notify [Reynolds] of claims in writing ... within twelve (12) months following the date of filling" the allegedly defective cans. Section III.C. of the April 20, 1993, Contract Agreement. Shasta agreed by signing the contract agreement that Reynolds "shall not be liable for *any* claims" including indemnity without such notification. *Id.* I find no justification under Virginia to support a finding that this limitation/waiver of Shasta's right to indemnity is invalid. Even Shasta agrees stating in its response brief that "there is no Virginia statute which voids purported waivers of indemnification ... rights ...." *See* Shasta Beverages, Inc.'s Amended Response to Third-Party Defendant Reynolds Metals Company's Second Motion for Summary Judgment and Brief in Support, p. 18. Therefore, I must find that any claim of indemnity that Shasta may have had under Virginia law has since been waived by its failure to notify Reynolds in writing within the contractual notification period. [FN11]

E. Negligence
*10 Reynolds also argues in its second motion for summary judgment that Shasta has waived its negligence claim against Reynolds by failing to provide timely notification of its claim to Reynolds. In its memorandum and order to Reynolds first motion for summary judgment, this court found that section III.C. of the April 20, 1993, contract agreement provided, "in unambiguous terms, that notice of a claim be written; that such notice be

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

prompt; and that such notice be made within 12 months or else forfeit the claim." *Bakhico Co., Ltd. v. Shasta Beverages, Inc.*, 1998 WL 25572, at *11 (N.D.Tex.1998) (citing *Canutillo Indep. Sch. Dist. V. National Union Fire Ins. Co.*, 99 F.3d 695, 700 (5th Cir.1996). It was undisputed that Shasta failed to provide timely written notification of its claims to Reynolds as required under the contract agreement. Consequently, this court held that "[b]y failing to comply with the contract terms, Shasta has waived any direct claim based on the contract's provisions." *Id.* The only reason Shasta's direct negligence claim remains before me today is that Reynolds failed to move for summary judgment on this issue in its first motion. *Id.* at *14 n. 8. I agree with this court's earlier analysis of section III.C. of the April 20, 1993, contract agreement as applied to Shasta's direct claims against Reynolds. Therefore, I find that Shasta's direct claim of negligence against Reynolds has been waived by failure to give timely written notification to Reynolds.

## Conclusion

IT IS THEREFORE ORDERED that Reynolds' second motion for summary judgment, filing 294, is granted as to Shasta's claims for negligence, contribution and indemnity under Virginia law and for indemnification under Texas law, other than its claim under the Texas DTPA; the motion is otherwise denied.

> FN1. Specifically, plaintiff ordered 55,692 cans of American cola, 25, 704 cans of American orange, and 25, 704 cans of American lemon.
>
> FN2. Shasta was notified by a carbon copy of a letter sent to the transoceanic insurer of the soda cans, Intercargo Insurance Company. The plaintiff settled its claims with Intercargo Insurance Company in August of 1994.
>
> FN3. Shasta's demand letter was sent on January 5, 1996.
>
> FN4. Subsequent to this motion, the plaintiff and Shasta settled their dispute, thereby eliminating Shasta's claim for contribution. Shasta has since withdrawn those claims. Therefore, the court will not focus on any argument made with respect to Shasta's former claim for contribution.
>
> FN5. Section 188(2) of the Restatement (Second) of Conflict of Laws also calls for the court to consider the place of negotiation as well as the location of the subject matter in determining which state's law will apply. Although it appears from other evidence that the negotiations surrounding the contract agreement took place in Texas and not Virginia, I do not rest any part of my decision on this element as the parties have presented no clear evidence, whether by deposition, pleading or affidavit, that the place of negotiation was in fact Texas. Furthermore, I do not concern myself with the location of the subject matter giving rise to this case as an element in determining the choice of law under section 188. The subject matter was delivered to the plaintiff and subsequently shipped to Russia where it remains.
>
> FN6. Of course, section 17.42 of the DTPA only applies to "consumers." *See* TEX. BUS. & COMM. CODE ANN. section 17.42 (Vernon 1987). "Consumer" is defined under the DTPA as
>
> an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, *except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more.*
> TEX. BUS. & COMM. CODE ANN. section 17.45(4) (Vernon 1987) (emphasis added). Reynolds has not presented any evidence that Shasta fails to qualify as a "consumer" under the DTPA. Therefore, the court will accept Shasta's assertion that it qualifies under the DTPA as true for purposes of this motion for summary judgment.
>
> FN7. Although the DTPA was amended in 1995 by the Texas legislature and stands substantially different today than it did prior to the amendments, section 20(b) of the 1995 amendatory act demands application of the pre-amended act. Section 20(b) provides, in pertinent part that:
> [t]his Act applies to all causes of action that accrue on or after the effective date of this Act. This Act applies to all causes of action that accrued before the effective date of this Act and upon which suit is filed on or after

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1998 WL 614647 (N.D.Tex.)
(Cite as: 1998 WL 614647 (N.D.Tex.))

Page 9

September 1, 1996. Except as provided by Subsection (c) of this section, a cause of action that accrued before the effective date of this Act and upon which suit is filed prior to September 1, 1996, is governed by the law in effect immediately prior to the effective date of this Act, and that law is continued in effect for that purpose.
*See* Historical and Statutory Notes following TEX. BUS. & COMM. CODE ANN. section 17.42 (Vernon 1997).

FN8. "The rule of this Subsection applies only when two or more states have an interest in the determination of the particular issue ... [and] when it is sought to have the chosen law determine issues which the parties could not have determined by explicit agreement directed to the particular issue." RESTATEMENT (SECOND) OF CONFLICT OF LAWS section 187 cmt. d (1988).

FN9. Section 17.42 provides:
(a) Any waiver by a consumer of the provisions of this subchapter is contrary to public policy and is unenforceable and void; provided, however, that a waiver is valid and enforceable if a defendant in an action or claim under this subchapter pleads and proves:
(1) the consumer is not in a significantly disparate bargaining position;
(2) the consumer is represented by legal counsel in seeking or acquiring goods or services, other than the purchase or lease of a family residence occupied or to be occupied as the consumer's residence, by a purchase or a lease for a consideration paid or to be paid that exceeds $500,000; *and*
(3) the consumer waives all or part of this subchapter, *other than Section 17.555*, by an express provision in a written contract signed by both the consumer and the consumer's legal counsel; and provided, however, that a business consumer with assets of $5 million or more according to the most recent financial statement of the business consumer prepared in accordance with generally accepted accounting principles that has knowledge and experience in financial and business matters that enable it to evaluate the merits and risks of a transaction and that is not in a significantly disparate bargaining position

may by written contract waive the provisions of this subchapter, *other than Section 17.555*.
TEX. BUS. & COMM. CODE ANN. section 17.42 (Vernon 1987) (emphasis added).
Section 17.555 provides: A person against whom an action has been brought under this subchapter may seek contribution or indemnity from one who, under the statute law or at common law, may have liability for the damaging event of which the consumer complains. A person seeking indemnity as provided by this section may recover all sums that he is required to pay as a result of the action, his attorney's fees reasonable in relation to the amount of work performed in maintaining his action for indemnity, and his costs.
*Id.* at section 17.555.

FN10. Furthermore, after careful consideration and analysis of section 187 of the Restatement (Second) of Conflict of Laws, I find no support that section 82.002 is so fundamental that Texas courts would "refuse to enforce an agreement contrary to that law, despite the parties' original intentions, and even though the agreement would be enforceable in another state connected with the transaction ." *DeSantis,* 793 S.W.2d at 679. So, even if section 82.002 is an issue that the parties could not resolve by explicit agreement, Virginia law would still apply under section 187(2) of the Restatement (Second) of Conflict of Laws.

FN11. Shasta also asserts that it is permitted to recover against Reynolds under Virginia's version of the Uniform Commercial Code. Virginia law provides that "[w]here circumstances cause an exclusive or limited remedy to *fail of its essential purpose,* remedy may be had as provided in this act." Va.Code Ann. section 8 .2-719(2) (emphasis added). Shasta has not, however, produced any evidence or argument to support a claim that the limitation-of-liability clause in the April 20, 1993, contract agreement caused the remedy to fail of its essential purpose. Therefore, I shall not address this assertion made by Shasta.

1998 WL 614647 (N.D.Tex.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
1998 WL 614647 (N.D.Tex.)  
(Cite as: 1998 WL 614647 (N.D.Tex.))

Page 10

**Motions, Pleadings and Filings (Back to top)**

· 3:94CV01780  (Docket)  
(Aug. 22, 1994)

**END OF DOCUMENT**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Date of Printing: APR 20,2005

# KEYCITE

▶**Bakhico Co. Ltd. v. Shasta Beverages, Inc.**, 1998 WL 614647 (N.D.Tex., Sep 03, 1998) (NO. CIV. 3:94-CV-1780-H)

**History**
**Direct History**

=>  1  **Bakhico Co. Ltd. v. Shasta Beverages, Inc.**, 1998 WL 614647 (N.D.Tex. Sep 03, 1998) (NO. CIV. 3:94-CV-1780-H)

**Negative Indirect History (U.S.A.)**

*Distinguished by*
C  2  Covert Chevrolet-Oldsmobile, Inc. v. General Motors Corporation, 2001 WL 950274 (Tex.App.-Dallas Aug 21, 2001) (NO. 05-00-01170-CV) ★★★

**Related References (U.S.A.)**
H  3  Bakhico Co., Ltd. v. Shasta Beverages, Inc., 1998 WL 25572 (N.D.Tex. Jan 15, 1998) (NO. CIV.A.3:94-CV-1780-H)
H  4  Bakhico Co. Ltd. v. Shasta Beverages, Inc., 1998 WL 249209 (N.D.Tex. May 14, 1998) (NO. CIV. 3:94-CV-1780-H)

**Court Documents**
**Dockets (U.S.A.)**

N.D.Tex.
   5  BAKHICO CO LTD v. INTERCARGO INS CO, ET AL, NO. 3:94CV01780 (Docket) (N.D.Tex. Aug. 22, 1994)

**Citing References**

**Secondary Sources (U.S.A.)**
   6  Law of Transnational Business Transactions, The s 3:17, s 3:17. Generally -- Violation of public policy or otherwise unfair, unreasonable, or unjust forum selection clause (2004)
C  7  CHOICE OF LAW IN THE AMERICAN COURTS IN 1998: TWELFTH ANNUAL SURVEY, 47 Am. J. Comp. L. 327, 392 (1999)
C  8  TWENTY YEARS AFTER GUTIERREZ V. COLLINS: PUBLIC POLICY AND CONFLICT OF LAWS ANALYSIS IN TEXAS TORT CASES, 52 Baylor L. Rev. 207, 235+ (2000)
C  9  DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT, 52 SMU L. Rev. 971, 1000+ (1999)

**Court Documents**
**Appellate Court Documents (U.S.A.)**

**Appellate Briefs**

© Copyright 2005 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

10  Allianz VERSICHERUNGS, AG, Plaintiff/Appellant, v. PROFREIGHT BROKERS, INC., Defendant/Appellee., 2003 WL 23759947, *23759947+ (Appellate Brief) (5th Cir. Oct 31, 2003) **Appellee's Brief** (NO. 03-20253)★★

11  OPE INTERNATIONAL, L.P., Plaintiff-Appellee, v. CHET MORRISON CONTRACTORS, INC., Defendant-Appellant., 2001 WL 34095903, *34095903+ (Appellate Brief) (5th Cir. Jan 09, 2001) **Original Brief on Behalf of Defendant/Appellant** ... (NO. 00-20964) ""★★

12  PANATROL CORPORATION, Appellant/Cross-Appellee, v. EMERSON ELECTRIC CO., Appellee/Cross-Appellant., 2004 WL 2863285, *2863285+ (Appellate Brief) (Tex.App.-San Antonio Oct 22, 2004) **Brief of Appellee/Cross Appellant Emerson** ... (NO. 04-03-00547-CV)★★★

© Copyright 2005 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.