**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
~~ENTERED~~ Filed

APR 2 9 2005

Michael N. Milby, Clerk of Court
By Deputy Clerk _____

| | | |
|---|---|---|
| ABB KRAFTWERKE | § | |
| AKTIENGESELLSCHAFT, and | § | |
| ABB ALSTOM POWER (SWITZERLAND) | § | |
| LTD., formerly known as ABB POWER | § | |
| GENERATION, LTD. | § | |
| Plaintiffs | § | Civil Action No. B:03-CV-192 |
| VS. | § | |
| | § | |
| C. H. ROBINSON COMPANY | § | |
| Defendant | § | |

**PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT**

TO THE HONORABLE OF JUDGE OF SAID COURT:

NOW COME, ABB KRAFTWERKE AKTIENGESELLSCHAFT and ABB
ALSTOM POWER (SWITZERLAND) LTD., formerly known as ABB POWER
GENERATION, LTD., Plaintiffs (hereinafter referred to as "ABB") and file this their First
Amended Original Complaint against C. H. ROBINSON COMPANY, Defendant,
(hereinafter referred to as "C. H. Robinson") and would show this Honorable Court as
follows:

**A. PARTIES**

1.   Plaintiff, ABB Kraftwerke Aktiengesellschaft, is a foreign corporation organized and
existing under the laws of the Republic of Germany.  Plaintiff,  ABB Alstom Power
Switzerland) Ltd., formerly known as ABB Power Generation, Ltd., is a foreign corporation
which is organized and existing under the laws of Switzerland.

Page 1 of 12

2.    Defendant, C. H. Robinson, is a Delaware corporation with its principle place of business in the State of Minnesota doing business in the State of Texas. Defendant has been served and has filed an appearance.

## B.    REAL PARTY AT INTEREST

3.    The Zurich Insurance Company had a policy of insurance in place that covered the claims brought as a result of allegations from the underlying <u>Zamora</u> litigation. The terms of the insurance contract allow Zurich to bring subrogation actions to recover defense and indemnity payments made on behalf of the insured both as lead underwriter and on behalf of the excess carriers.

4.    As a result of the above, Zurich is entitled to bring suit in the name of ABB Kraftwerke Aktiengesellschaft and ABB Alstom Power (Switzerland) Ltd., formerly known as ABB Power Generation, Ltd. who were covered by the insurance contract and on whose behalf the defense and indemnity payments were made.

5.    Since the majority of the claims in this action as it currently stands are subrogated claims, and the carriers have the legal authority to bring suit in the name of the insureds, the fact that this is a subrogation claim is not relevant to any issue in the case and under Texas law is not to be made known to the jury.

## C. JURISDICTION

6.  The court has jurisdiction over this lawsuit as a result of diversity of citizenship between the parties, Plaintiffs are foreign citizens and Defendant is a Delaware corporation with its

principle place of business in the State of Minnesota. Venue is proper because all or part of the causes of action arose in the Southern District of Texas. Defendant maintains an agent for service of process in the Southern District of Texas.

## D. SWISS LAW

7.   Plaintiffs have filed an original and amended Motion for the Application of Swiss law. Plaintiffs contend that the laws of Switzerland control this action and that under Swiss law Plaintiffs are allowed to bring suit against Defendant for breach of contract, that such action is not barred by the concept of settling joint tort feasor nor limited to agency and vicarious liability causes of action and has a ten (10) year statute of limitation.

## E. FACTUAL BACKGROUND

8.  On or about February 16, 1999, ABB and C. H. Robinson entered into a contract for the transportation of various heavy electrical components, specifically a gas turbine, generator and transformer from barges at the Port of Brownsville to Monterrey, Mexico.

9.   The equipment was to be transported from Manheim, Germany, to the Port of Brownsville. This part of the voyage was the responsibility of ABB. From Brownsville the equipment was to go by rail to Monterrey, Mexico. This was the responsibility of C. H. Robinson.

10.  The scope of work outlined in the contract was the transportation of a gas turbine, generator and transformer from lash barges at the Port of Brownsville, Brownsville, Texas,

to railcar for transport to the Monterrey power plant project. These were to arrive at separate times by separate barge.

11.    The basis of the order was the C. H. Robinson Company "January 30, 1999 and February 5, 1999" letters or proposals. Included in the quotation was the loading and unloading of the three hundred twenty-five (325) ton generator from the lash barge to railcar, as well as the tie down to railcars for all three (3) pieces, at the Port of Brownsville..

12.    C. H. Robinson was responsible under the contract for all arrangements involving the transfers from the lash barge to Monterrey. This included hiring of contractors, obtaining permits, providing technical information, obtaining insurance, management of the movement of the generator, etc., for the generators transportation from the lash barge to Monterrey. C. H. Robinson was responsible for the management of the project on behalf of ABB, acting as ABB's agent. The contract labels C. H. Robinson (THE OPERATOR).

13.    The turbine generator was transported by cargo ship to the Port of New Orleans where the lash barge was unloaded and towed to the Port of Brownsville. Prior to that time, C. H. Robinson had made arrangements with Schaefer Stevedoring in Brownsville to provide Stevedoring services to move the generator from the lash barge to a railcar which was to be situated dock side at the port.

14.    Schaefer Stevedoring, C.H. Robinson's contractor, was provided various drawings which included the lifting points of the generator and the technical specifications of the turbine generator. Schaefer Stevedoring contracted with Brownsville Barge & Crane for the

use of the "Atlantic Giant" a barge mounted crane to lift the turbine generator from the lash barge and place it on the railcar.

15.   The "Atlantic Giant" was the only crane available at the port with sufficient lifting capacity to move the turbine generator from the lash barge to the railcar.

16.   C. H. Robinson obtained the necessary rail permits to allow the transportation of the generator from Brownsville to Monterrey.

17.   The lash barge arrived in the Port of Brownsville and the initial lift was canceled due to inclement weather.  A representative from C. H. Robinson was on location to manage the lift and provide information and directions to C. H. Robinson's sub-contractors, Schaefer Stevedoring and through Schaefer Stevedoring, Brownsville Barge & Crane.   A representative of ABB was on location to answer any questions with regard to the generators.

18.   On or about March 23, 1999, a representative of Brownsville Barge & Crane presented to C. H. Robinson's representative and ABB's representative an addendum to the Lifting Services Agreement between Schaefer Stevedoring and Brownsville Barge & Crane which required ABB and/or C. H. Robinson to provide indemnity to Brownsville Barge & Crane for any accident which might occur during the lift.  The C. H. Robinson representative, despite the fact that they were responsible by contract for the transportation of the generator from lash barge to Monterrey refused to sign the indemnity agreement. Brownsville Barge & Crane informed the ABB representative that if they did not sign the indemnity agreement that the "Atlantic Giant" could not be used to make the lift.

19. C. H. Robinson was at all times aware that the contract between ABB involving the Monterrey Power Plant project was time sensitive and contained liquidated damages clauses. No arrangements had been made by C. H. Robinson to transport the generator by any means other than from railcar at the Port of Brownsville to Monterrey. The appropriate permits had been obtained by C. H. Robinson for the rail transport and clearances for the oversized generator had been met for the Brownsville/Monterrey rail journey. Rail clearances were known to be problematic from Houston/Galveston to Monterrey. More importantly other than the Atlantic Giant, there was no crane with sufficient lifting capacity to make the lift between the Port of Tampico and the Port of Houston/Port of Galveston.

20. The result was C. H. Robinson's sub-contractor had ABB over an economic barrel. Therefore, ABB's representative signed the indemnity agreement.

21. On the morning of the lift, C. H. Robinson's sub-contractors, Schaefer Stevedoring and Brownsville Barge & Crane had still not familiarized themselves with the generator. Appropriate lifting procedures were not in place and the contractor's were still unclear as to how they would place the generator on the railcar. All of these resulted from improper management of the project by C. H. Robinson and resulted in Schaefer employees removing two (2) bolts holding together a lifting lug which fell and killed one of the Schaefer Stevedoring longshoreman, Oscar Zamora, Sr.

22. As a result of this accident, C. H. Robinson, ABB and Brownsville Barge & Crane were sued by the Zamora Plaintiffs. The Zamora Plaintiffs settled with C. H. Robinson early on in the litigation. Prior to trial, ABB settled the litigation with the Zamora Plaintiffs.

Brownsville Barge & Crane was dismissed from the litigation by Plaintiffs. Brownsville Barge & Crane filed a Cross-claim against ABB for contractual indemnity. Following Motion for Summary Judgment hearings the Cross-claim was granted and Brownsville Barge & Crane obtained a judgment against ABB for attorney's fees and costs of defense as well as attorney's fees for pursing their Cross-claim. That judgment is currently on appeal.

23.    Following the actions of C. H. Robinson and its subcontractors on the aforementioned shipment, Plaintiff was required to re-evaluate the management of the project by its agent, Defendant.

24.    Plaintiff ABB Alstom Power performed services which were the contractual responsibility of Defendant following the Zamora accident.

25.    Plaintiff ABB Altstom Power was required to perform tasks of THE OPERATOR under the contract.

## F.  AGENCY AND VICARIOUS LIABILITY

26.    The contract and incorporated documents do not specify the legal relationship between Plaintiffs and Defendant. The term OPERATOR used in the contract does not create any type of legal relationship.

27.    Both the terms of the agreement, and the actions of the parties resulted in an agency relationship being created between the Plaintiffs and Defendant.

28.    The parties contracted for a specific purpose, the transportation of equipment owned by the principle from Brownsville to the location of the power plant outside of Monterrey, Mexico.

29.    The contract provided that the agent had the authority to bind the principle to contingency costs.

30.    The agent in fact bound the principle to contingency costs above the contract price. The agent had authority to bind the principle in the principle's name.

31.    The agent was supplied with various drawings and equipment necessary for the agent to accomplish its task was supplied by the principle.

32.    The principle had the right and exercised the right to control the details of how the agent performed various tasks assigned to the agent.

33.    All of the aspects of agency are present and established in this action.

34.    The actions of the agent in failing to perform the planning of the lift, failing to manage the lift, failing to ensure the agents contractors performed the lift in a safe manner resulted in Plaintiffs being blamed for the accident.

35.    Vicarious liability is liability imposed for the action or inactions of another for whom you are legally responsible.

36.    Plaintiffs settled the allegations against them which would not have arose except for the actions and inactions of Defendant. But for, the failure of Defendant to perform their obligations as agent and operator Plaintiffs would have faced no liability.  All of the allegations in the Zamora lawsuit, including the failure to warn, fell under the scope of the Defendant's obligations.  Defendants settlement, whereby the Zamora Plaintiffs were not fully compensated left Plaintiffs exposed for their agents failures.

## G.  BREACH OF CONTRACT (SWISS LAW & VICARIOUS LIABILITY)

37.   C. H. Robinson was contractually bound to manage the project on behalf of ABB.

C. H. Robinson breached this portion of the contract and is both vicariously liable for a

portion of Plaintiffs' damages and directly liable to Plaintiffs for a portion of Plaintiff's

damages as a result of this breach.

38.   C. H. Robinson was ABB's agent for all purposes under the contract. Defendant failed

to live up to the terms of this agency relationship and is liable to Plaintiffs as a result of this

breach.

39.   C. H. Robinson breached its contract with ABB by failing to perform the work it

contracted for in a good and workmanlike manner.

40.  C. H. Robinson breached its contract with ABB by promising to perform services that

they did not perform.

41.  C. H. Robinson breached its contract with ABB by failing to properly ensure that its sub-

contractors were competent to perform the work for which they contracted.

42.  C. H. Robinson breached its contract with ABB by failing to ensure that the sub-

contractors were familiar with the equipment and the technical specifications of the generator

they were to lift from the lash barge to the railcar.

43.  C. H. Robinson breached its contract with ABB by failing to exercise proper managerial

skills and control over its sub-contractors.

44.  C. H. Robinson breached its contract with ABB by providing inexperienced personnel

to supervisor the job in question.  Jim Hamilton,  the C. H. Robinson employee, who signed

the contract, provided the proposals and sold ABB on his company, partly due to his experience in heavy lifts, was not on location supervising the lift. Instead C. H. Robinson relied on inexperienced personnel, not familiar with the type of equipment involved or this type of heavy lift to supervise the operation.

45. C. H. Robinson breached its contract with ABB by failing to ensure that all contractual requirements were in place prior to the lift, resulting in ABB being forced to sign an indemnity agreement on the docks just prior to the lift.

46. C. H. Robinson breached its contract with ABB by not providing proper managerial expertise to ensure that proper plans and preparation were in place to smoothly transport the generator from the lash barge to Monterrey.

47. No legal harm resulted to Plaintiffs until May of 2000. Defendant's actions were not in and of themselves unlawful or of such a nature to cause damage to Plaintiffs solely based on their nature.

48. Defendant was in the unique position of knowing what actions it had or hadn't taken to perform under the contract. Defendant's mismanagement was such that it constituted a continuing tort, not simply occurring at one time or instance.

## H. DAMAGES

49. Plaintiffs seek all breach of contract damages if its Motion for Application of Swiss law is granted and all damages from the Zamora lawsuit under Texas law.

50. ABB seeks return of all money paid to C. H. Robinson under the contract as a result of their breach of contract. C. H. Robinson is directly liable to Plaintiffs for this element of

damage. Robinson was unjustly enriched in that Plaintiffs made direct payments to contractors to perform work on subsequent lifts relieving Robinson of paying amounts it would have been required to pay if it had performed under the contract.

51. ABB seeks all monies paid on behalf of defending Brownsville Barge & Crane's Cross-claim, that may be paid in any judgment obtained by Brownsville Barge & Crane, and for all costs and expenses involved in the same as a result of C. H. Robinson's breach of contract. C. H. Robinson has direct liability for this element of damages.

52. ABB seeks all amounts paid in settlement and defense of the Zamora litigation as a result of C. H. Robinson's breach of contract. C. H. Robinson is both directly and vicariously liable to Plaintiff for this element of damages.

53. ABB seeks attorney's fees for bringing this breach of contract suit, pre- and post-judgment interest at the legal rate and all other damages to which they may show themselves justly entitled.

54. All of the above damages were proximately caused by C. H. Robinson's breach of contract and were foreseeable results of the various actions of Robinson.

55. Plaintiffs seek all monies they were required to pay as a result of having to directly hire additional contractors to perform the work Robinson originally contracted to perform, including, but not limited to, the costs of bringing a ship from Tampico for the subsequent lifts.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendant be acquired to appear herein and that Plaintiffs obtain judgment against Defendant C. H.

Robinson for all damages sought as a result of their breach of contract, including attorney's fees and pre- and post-judgment interest and for which such other and further relief to which this Honorable Court deems just and equitable.

Respectfully submitted,

The Law Office of Justin L. Williams, P.C.
600 Leopard Street, Suite 1810
Corpus Christi, Texas 78473
Telephone:   (361) 888-7702
Facsimile:   (361) 888-7717

By:  _____
Justin L. Williams
State Bar Number 00795384

ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was forwarded on this the 28th day of April, 2005, to all counsel of record, as listed below and in the manner designated:

**FEDERAL EXPRESS:**
Mr. Steven J. Watkins
Ms. Karan C. Ciotti
McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
3200 One Houston Center
1221 McKinney Street
Houston, Texas 77010

_____
Justin L. Williams