United States District Court
Southern District of Texas
FILED

MAY 1 1 2005

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ABB KRAFTWERKE AKTIENGESELLSCHAFT, and ABB ALSTOM POWER (SWITZERLAND) LTD., formerly known as ABB POWER GENERATION, LTD. | § § § § § § | |
| Plaintiffs | § | CIVIL ACTION NO. B-03-192 |
| vs. | § § § | |
| C.H. ROBINSON COMPANY | § § | |
| Defendant | § | |

### DEFENDANT C.H. ROBINSON'S PROPOSED FINDINGS OF FACT

#### Background

| No. | Agreed | Contested | |
|---|---|---|---|
| 1. | √ | _____ | On February 16, 1999, C.H. Robinson entered into a contract with ABB Power Generation Ltd. for the transportation of heavy components, including a generator, from Brownsville, Texas to Monterrey, Mexico. **Ex. 1,** *February 16, 1999 Contract between C.H. Robinson and ABB Power Generation.* The February 16, 1999 Contract is the only contract between C.H. Robinson and ABB Power Generation Ltd. |
| 2. | √ | _____ | C.H. Robinson did not enter into a contract with ABB Kraftwerke Aktiengesellschaft. *See* **Ex. 1.** |
| 3. | √ | _____ | ABB Kraftwerke Aktiengesellschaft manufactured the generator that ABB Power Generation Ltd. hired C.H. Robinson to transport. |
| 4. | √ | _____ | On March 23, 1999, during the performance of the Contract, a jacking plate fell from the generator while it was suspended over a rail car. The jacking plate hit Oscar Zamora, Sr. resulting in his death. The accident occurred at the Port of Brownsville. *Plaintiffs First Amended Original Complaint* at ¶¶ 14, 17. |

DEFENDANT C.H. ROBINSON'S
PROPOSED FINDINGS OF FACT

1

## Choice of Law – Breach of Contract Claim

**No.**    **Agreed**    **Contested**

5.    √    _____    There is no choice of law provision in the Contract between C.H. Robinson and ABB Power Generation Ltd. **Ex. 1.**

6.    _____    √    Plaintiffs have failed to demonstrate a conflict between the laws of Texas and the laws of Switzerland. *Plaintiffs' Motion for Application of Swiss Law; Plaintiffs' Motion for Extension of Time to File Affidavits; Plaintiffs' Motion for Delay on Ruling; Plaintiffs' Motion to Attach Affidavit to Previously Filed Motion; Plaintiffs' Amended Motion for Rehearing on Application of Swiss Law.*

7.    _____    √    Plaintiffs have never provided copies of cases, statutes, or any other materials from which the Court might determine the basis for their contention that "the evidence presented proves a breach of contract" under Swiss law. *Plaintiffs' Motion for Application of Swiss Law; Plaintiffs' Motion for Extension of Time to File Affidavits; Plaintiffs' Motion for Delay on Ruling; Plaintiffs' Motion to Attach Affidavit to Previously Filed Motion; Plaintiffs' Amended Motion for Rehearing on Application of Swiss Law.*

8.    _____    √    The negotiation of the Contract took place predominantly through a series of correspondence originating in Texas and Switzerland, as is commonly the case in contract negotiations between companies operating in different countries. **Ex. 1 at CHR ABB 000238,** *Correspondence from C.H. Robinson's Keller, Texas office to ABB Power Generation's Baden, Switzerland office, dated January 30, 1999* ; **Ex. 1 at CHR ABB 000242,** *Transportation Bid Qualifications, faxed from C.H. Robinson's Keller, Texas office (as evidenced by 817 area code) on January 30, 1999* ; **Ex. 27,** *Correspondence from C.H. Robinson's Keller, Texas office to ABB Power Generation's Baden, Switzerland office, dated January 30, 1999* (CHR ABB 000239); **Ex. 28,** *Memorandum from ABB Power Generation to C.H. Robinson's Keller, Texas office concerning terms of contract, dated February 1, 1999; Deposition of Tom Ferguson taken February 25, 2005* at 38:1-13 (wherein Ferguson testified that "common sense" dictates that most of the negotiations took place "in the States," since "you wouldn't fly across the ocean to kind of whip something together and sign a big contract like this."); *see also id.* at 31:16-24 (wherein Ferguson testifies that the negotiations that led to the signing of the contract took place

"[p]artly in Keller, Texas, and via e-mail, phone, fax, back and forth. I'd say the majority of it was negotiated over here in the States . . . ."); *see also Deposition of James Hamilton taken April 25, 2000* at 17:20 – 19:5 (testifying that the contract was negotiated via phone calls and the delivery of proposals and price quotations).

| No. | | | |
|---|---|---|---|
| 9. | _____ | √ | The Contract was performed in Texas and Mexico. No part of the Contract was performed in Switzerland. **Ex. 1.** |
| 10. | _____ | √ | All alleged acts and omissions that give rise to Plaintiffs' purported claims for breach of contract occurred in Texas. *Plaintiff's First Amended Original Complaint* at ¶¶ 5-10, 13-18, 22-31. |
| 11. | _____ | √ | The most critical portion of the Contract was securing rail clearances and permits. This portion of the Contract was performed in Texas. *Statement of Sandro Lepori taken February 14, 2005* at 3:37-41; 21:47-22:11. |
| 12. | √ | _____ | The subject matter of the Contract was the management of transportation of heavy components in Texas and Mexico. **Ex. 1.** |
| 13. | √ | _____ | Plaintiff ABB Kraftwerke Aktiengesellschaft is organized under the laws of the Republic of Germany. Plaintiff ABB Alstom Power is organized under the laws of Switzerland. *Plaintiff's First Amended Original Complaint* at ¶ 1. |
| 14. | √ | _____ | C.H. Robinson is incorporated in Delaware. Its domicile and principal place of business is in Minnesota. *Deposition of Tom Ferguson taken February 25, 2005* at 5:20 – 6:3. It had nine offices in Texas in 1999, including its Keller, Texas office. *Id.* at 6:14 – 7:16; **Ex. 3,** *Affidavit of Thomas J. Sandstrom* at ¶ 6; *Anticipated Testimony of C.H. Robinson Representative.* |
| 15. | _____ | √ | The Contract between C.H. Robinson and ABB Power Generation was a contract for services. **Ex 1.** |
| 16. | _____ | √ | Mr. David Huegin, counsel for ABB Switzerland Ltd., is an interested witness. *Plaintiffs' Motion to Attach Affidavit to Previously Filed Motion (including attached Affidavit of David Huegin);* **Ex. 22,** *Court's September 30, 2004 Order on Plaintiffs' Motion for Application and Defendant's Amended Motion to Dismiss* at 6-7. |

## Choice of Law – Limitations Defense

| No. | Agreed | Contested | |
|-----|--------|-----------|---|
| 17. | _____ | √ | Texas law applies to all procedural issues in this suit. **Ex. 22** at 12. |

## Choice of Law - Indemnity

| No. | Agreed | Contested | |
|-----|--------|-----------|---|
| 18. | √ | _____ | Oscar Zamora's family filed suit for wrongful death, in a suit styled Cause No. 99-04-1644-E, *Graciela Zamora, et al. v. ABB Kraftwerke Aktiengesellschaft, et al.*, In the 357th Judicial District Court of Cameron County, Texas (hereinafter "the Zamora Lawsuit"). The Zamora family made claims against ABB Alstom Power (Switzerland) Ltd., ABB Kraftwerke Aktiengesellschaft, C.H. Robinson, and Brownsville Barge & Crane. **Ex. 13.** |
| 19. | √ | _____ | Mr. Zamora's family settled its claims against ABB Kraftwerke Aktiengesellschaft and ABB Alstom Power (Switzerland) Ltd. in June 2000. **Ex. 13,** *Plaintiffs' Thirteenth Amended Original Petition in Zamora Lawsuit;* **Ex. 14,** *Plaintiffs' Fourteenth Amended Original Petition in Zamora Lawsuit.* |
| 20. | √ | _____ | Brownsville Barge & Crane filed a cross-claim against ABB Alstom Power (Switzerland) Ltd. and ABB Kraftwerke Aktiengesellschaft for contractual indemnity for legal fees it incurred in defending against the Zamora family's claims. The Corpus Christi Court of Appeals affirmed the trial court's grant of summary judgment in favor of Brownsville Barge & Crane against ABB Alstom Power (Switzerland) Ltd. and ABB Kraftwerke Aktiengesellschaft. **Ex. 19,** *ABB Kraftwerke AG v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287 (Tex. App. – Corpus Christi 2003, pet. denied). |
| 21. | √ | _____ | The indemnity agreement between Brownsville Barge & Crane and "ABB Company" was signed in Texas, interpreted in Texas by Texas courts, governed by Texas law, and adjudicated to final judgment in Texas courts. **Ex. 19,** *ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287 (Tex. App. – Corpus Christi 2003, pet. denied); *Plaintiffs' First Amended Original Complaint* at ¶¶ 13-14. |

DEFENDANT C.H. ROBINSON'S
PROPOSED FINDINGS OF FACT

4

| 22. | √ | _____ | Plaintiffs' alleged injuries – which purportedly consist of payments made to the Zamora family and to Brownsville Barge & Crane – occurred in Texas. *Plaintiffs' First Amended Original Complaint* at ¶¶ 9-18, 35-36; **Ex. 19,** *ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.,* 115 S.W.3d 287 (Tex. App. – Corpus Christi 2003, pet. denied). |
|---|---|---|---|
| 23. | √ | _____ | The conduct causing Plaintiffs' alleged injuries, whether defined as the conduct causing the death of Mr. Zamora or the signing of the indemnity agreement between ABB Power Generation and Brownsville Barge & Crane, occurred in Texas. *Plaintiffs' First Amended Original Complaint* at ¶¶ 13-14, 16-17. |
| 24. | _____ | √ | All alleged acts, omissions and events that give rise to Plaintiffs' purported claim for indemnity occurred in Texas. *Plaintiffs' First Amended Original Complaint* at ¶¶ 8-18, 35-36; **Ex. 19,** *ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.,* 115 S.W.3d 287 (Tex. App. – Corpus Christi 2003, pet. denied). |

## Breach of Contract Claim – Limitations Defense

| No. | Agreed | Contested | |
|---|---|---|---|
| 25. | _____ | √ | Plaintiffs filed this lawsuit against C.H. Robinson on July 16, 2003, more than four (4) years after any alleged breach of contract. *Plaintiffs' Original Complaint.* |
| 26. | _____ | √ | Plaintiffs have pleaded no breach of contract by C.H. Robinson after July 16, 1999. *Plaintiffs' First Amended Original Complaint.* |
| 27. | _____ | √ | C.H. Robinson did not breach its Contract with ABB Power Generation at any time after March 1999. **Ex. 23,** *Defendant C.H. Robinson Company's Amended Notice of Oral Deposition of Corporate Representative of ABB Kraftwerke Aktiengesellschaft;* **Ex. 24,** *Defendant C.H. Robinson Company's Amended Notice of Oral Deposition of Corporate Representative of ABB Alstom Power (Switzerland) Ltd.; Deposition of ABB Corporate Representative John Barry taken December 15, 2004 at 18:11 – 19:7.* |
| 28. | _____ | √ | C.H. Robinson had performed all requirements of the Contract before July 16, 1999. *Deposition of Tom Ferguson taken February 25, 2005 at 35:13 – 36:12;* **Ex. 20,** *Invoice from C.H.* |

DEFENDANT C.H. ROBINSON'S
PROPOSED FINDINGS OF FACT

*Robinson (Jim Hamilton) to ABB Power Generation Ltd. (Sandro Lepori), dated July 19, 1999; see also Deposition of ABB Corporate Representative John Barry taken December 15, 2004 at 18:11 – 19:10.*

29. _____ √ Plaintiffs' claims for breach of contract are barred by limitations. *Plaintiffs' Original Complaint .*

### Breach of Contract Claim

| No. | Agreed | Contested | |
|-----|--------|-----------|---|

30. √ _____ Plaintiff ABB Kraftwerke Aktiengesellschaft has no contract with C.H. Robinson. *See* **Ex. 1.**

31. √ The only contract between Plaintiff ABB Power Generation and C.H. Robinson is the written February 16, 1999 Contract for the transportation of heavy components from Brownsville, Texas to Monterrey, Mexico. **Ex. 1.**

32. √ Plaintiffs have never specified a provision in the Contract between C.H. Robinson and ABB Power Generation Ltd. that they contend C.H. Robinson breached, or in any way alleged a duty, owed under the Contract, that was breached. *Plaintiffs' First Amended Original Complaint.* All allegations of breach of contract are allegations, to the extent they allege any breach, of breaches of duties owed under the common law, and not under the Contract. Hence, they allege torts, and not breaches of contract. *Plaintiffs' First Amended Original Complaint.* Plaintiffs have therefore failed to plead facts sufficient to support a claim for breach of contract.

33. √ C.H. Robinson did not breach its Contract with ABB Power Generation. **Ex. 1.**

### Indemnity Claim - Contractual

| No. | Agreed | Contested | |
|-----|--------|-----------|---|

34. √ _____ Plaintiff ABB Kraftwerke Aktiengesellschaft has no contract with C.H. Robinson. **Ex. 1.**

35. √ _____ The Contract between C.H. Robinson and ABB Power Generation does not include an indemnity provision. **Ex. 1.**

| No. | Agreed | Contested | |
|---|---|---|---|
| 36. | | √ | Neither Plaintiff has a claim for contractual indemnity against C.H. Robinson. **Ex. 1.** |

**Indemnity Claim – Common Law – Limitations Defense**

| No. | Agreed | Contested | |
|---|---|---|---|
| 37. | √ | | Plaintiffs settled the Zamora family's claims against them in June 2000. **Ex. 13,** *Plaintiffs' Thirteenth Amended Original Petition;* **Ex. 14,** *Plaintiffs' Fourteenth Amended Original Petition; see also* **Ex. 15,** *Correspondence from Counsel for C.H. Robinson to Counsel for ABB Kraftwerke and ABB Alstom Power, dated June 5, 2000* (CHR ABB 000093). |
| 38. | | √ | Plaintiffs filed this lawsuit against C.H. Robinson on July 16, 2003, more than two (2) years after they settled with the Zamora family in the underlying litigation. *Plaintiffs' Original Complaint;* **Ex. 13,** *Plaintiffs' Thirteenth Amended Original Petition;* **Ex. 14,** *Plaintiffs' Fourteenth Amended Original Petition; see also* **Ex. 15,** *Correspondence from Counsel for C.H. Robinson to Counsel for ABB Kraftwerke and ABB Alstom Power, dated June 5, 2000* (CHR ABB 000093). |
| 39. | | √ | Plaintiffs' claim for indemnity for sums paid to the Zamora family is barred by limitations. |

**Indemnity Claim – Common Law – Sums Paid to Brownsville Barge & Crane**

| No. | Agreed | Contested | |
|---|---|---|---|
| 40. | | √ | Immediately prior to the lift of the generator, a representative of Brownsville Barge & Crane presented Mr. Schneider with an indemnity agreement covering any accident that might occur during the lift of the generator. *Plaintiffs' First Amended Original Complaint* at ¶¶ 14-16. Mr. Schneider signed the agreement on behalf of "ABB Company." **Ex. 16,** *Lifting Services Agreement at Exhibit "A".* C.H. Robinson did not sign and was not obligated to sign the agreement. *Id.* |
| 41. | √ | | Brownsville Barge & Crane brought a claim for contractual indemnity against ABB Alstom Power and ABB Kraftwerke seeking recovery of legal fees incurred in defending the Zamora Lawsuit. *ABB Kraftwerke AG v. Brownsville Barge & Crane, Inc.,* 115 S.W.3d 287, 294 (Tex. App. – Corpus Christi 2003, pet. denied). |

42. _____    √    Brownsville Barge & Crane's judgment against ABB Alstom Power (Switzerland) Ltd. or ABB Kraftwerke Aktiengesellschaft was on a claim for contractual indemnity, and not a claim for vicarious liability. The judgment was affirmed on appeal. *ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287 (Tex. App. – Corpus Christi 2003, pet. denied).

43. _____    √    Plaintiffs have produced no evidence to support a contention that they settled only claims of purely vicarious liability, or even a claim for vicarious liability.

44. _____    √    On November 30, 1999, ABB Kraftwerke and ABB Alstom Power filed a cross-action for contribution and indemnity against C.H. Robinson. **Ex. 8.** In December 1999, counsel for ABB Kraftwerke and ABB Alstom Power agreed to non-suit these claims against C.H. Robinson in return for an agreement that C.H. Robinson assist ABB Kraftwerke and ABB Alstom Power by participating in informal discovery. **Ex. 9**; and *Anticipated Testimony of Tom Lockhart, Counsel for C.H. Robinson in Zamora Lawsuit.*

45. _____    √    In reliance on ABB Kraftwerke and ABB Alstom Power's agreement to dismiss its cross-action for contribution and indemnity, C.H. Robinson did assist ABB Kraftwerke and ABB Alstom Power by participating in informal discovery. **Ex. 10,** *Correspondence from Counsel for ABB Kraftwerke and ABB Alstom Power to Counsel for C.H. Robinson, dated March 14, 2000* (CHR ABB 002215-2216); **Ex. 11,** *Correspondence from Counsel for C.H. Robinson to Counsel for ABB Kraftwerke and ABB Alstom Power, dated April 5, 2000* (CHR ABB 002218-2219); *Anticipated Testimony of Tom Lockhart, Counsel for C.H. Robinson in Zamora Lawsuit.*

46. _____    √    Given Plaintiffs' agreement to dismiss its cross-action for contribution and indemnity and C.H. Robinson's reliance on that agreement, Plaintiffs are estopped from pursuing a claim for indemnity against C.H. Robinson. **Exs. 8-11;** *Anticipated Testimony of Tom Lockhart, Counsel for C.H. Robinson in Zamora Lawsuit.*

47. _____    √    Given Plaintiffs' agreement to dismiss its cross-action for contribution and indemnity in exchange for C.H. Robinson's assistance in informal discovery, and Plaintiffs' subsequent motion to dismiss its cross-action for contribution and indemnity, Plaintiffs have waived any right to pursue a claim for

DEFENDANT C.H. ROBINSON'S
PROPOSED FINDINGS OF FACT

indemnity against C.H. Robinson. **Exs. 8-11;** *Anticipated Testimony of Tom Lockhart, Counsel for C.H. Robinson in Zamora Lawsuit.*

### Indemnity Claim – Common Law – Sums Paid to Zamora Family

| No. | Agreed | Contested | |
|---|---|---|---|
| 48. | √ | _____ | Mr. Zamora's family made claims against ABB Alstom Power (Switzerland) Ltd. and ABB Kraftwerke Aktiengesellschaft for negligence, gross negligence, and product defects. **Ex. 13,** *Plaintiffs' Thirteenth Amended Original Petition in Zamora Lawsuit at 4-5.* |
| 49. | _____ | √ | Mr. Zamora's family made no claim against ABB Alstom Power (Switzerland) Ltd. and ABB Kraftwerke Aktiengesellschaft for vicarious liability. **Ex. 13,** *Plaintiffs' Thirteenth Amended Original Petition in Zamora Lawsuit;* **Ex. 14,** *Plaintiffs' Fourteenth Amended Original Petition in Zamora Lawsuit.* |
| 50. | _____ | √ | Mr. Zamora's family settled its claims against C.H. Robinson for $1 million in December 1999. **Ex. 6,** *Compromise, Settlement and Release Agreement between C.H. Robinson and Zamora family* (CHR ABB 001950-1966); **Ex. 7,** *Judgment Approving Compromise, Settlement and Release Agreement between C.H. Robinson and Zamora family* (CHR ABB 002371-2381). |
| 51. | _____ | √ | On November 30, 1999, ABB Kraftwerke and ABB Alstom Power filed a cross-action for contribution and indemnity against C.H. Robinson. **Ex. 8,** *Defendants ABB Kraftwerke Aktiengesellschaft and ABB Alstom Power (Switzerland) Ltd., Formerly Known as ABB Power Generation, Ltd.'s Cross-Action Against Defendant C.H. Robinson Company and Todd Strever, Individually and as Manager and Employee of C.H. Robinson Company (filed in Zamora Lawsuit)* (CHR ABB 002302-2305). In December 1999, counsel for ABB Kraftwerke and ABB Alstom Power agreed to a non-suit of these claims against C.H. Robinson in return for an agreement that C.H. Robinson assist ABB Kraftwerke and ABB Alstom Power by participating in informal discovery. **Ex. 9,** *Defendants ABB Kraftwerke Aktiengesellschaft and ABB Alstom Power (Switzerland) Ltd., Formerly Known as ABB Power Generation, Ltd.'s Notice of Non-Suit of Cross-Action Against Defendant C.H. Robinson Company and Todd Strever, Individually and as Manager and Employee of C.H. Robinson Company (filed in Zamora Lawsuit)* (CHR ABB 002345-2350); *Anticipated Testimony of Tom* |

*Lockhart.* C.H. Robinson did assist ABB Kraftwerke and ABB Alstom Power by participating in informal discovery. **Ex. 10,** *Correspondence from Counsel for ABB Kraftwerke and ABB Alstom Power to Counsel for C.H. Robinson, dated March 14, 2000* (CHR ABB 002215-2216); **Ex. 11,** *Correspondence from Counsel for C.H. Robinson to Counsel for ABB Kraftwerke and ABB Alstom Power, dated April 5, 2000* (CHR ABB 002218-2219).

52. _____ √ Given Plaintiffs' agreement to dismiss its cross-action for contribution and indemnity and C.H. Robinson's reliance on that agreement, Plaintiffs are estopped from pursuing a claim for indemnity against C.H. Robinson. **Exs. 8-11;** *Anticipated Testimony of Tom Lockhart, Counsel for C.H. Robinson in Zamora Lawsuit.*

53. _____ √ Given Plaintiffs' agreement to dismiss its cross-action for contribution and indemnity in exchange for C.H. Robinson's assistance in informal discovery, and Plaintiffs' subsequent motion to dismiss its cross-action for contribution and indemnity, Plaintiffs have waived any right to pursue a claim for indemnity against C.H. Robinson. **Exs. 8-11;** *Anticipated Testimony of Tom Lockhart, Counsel for C.H. Robinson in Zamora Lawsuit.*

54. _____ √ The Zamora family settled its claims against ABB Kraftwerke and ABB Alstom Power. These claims did not include a claim for vicarious liability. **Ex. 13,** *Plaintiffs' Thirteenth Amended Original Petition in Zamora Lawsuit* (alleging claims against ABB Kraftwerke and ABB Alstom Power for negligence and products liability based on a defects in design, manufacture and marketing); **Ex. 14,** *Plaintiffs' Fourteenth Amended Original Petition in Zamora Lawsuit* (establishing that all claims by the Zamora family against ABB Kraftwerke and ABB Alstom Power were settled except for a dispute concerning payment of court costs and deposition costs pursuant to the settlement agreement).

55. _____ √ If the law allowed the parties to present evidence outside the pleadings in the Zamora Lawsuit in order to establish the nature of the claims made against ABB Kraftwerke and ABB Alstom Power by the Zamora family, the law would effectively eliminate defendant's motivation to settle. *Anticipated Testimony of Tom Lockhart, Counsel for C.H. Robinson in Zamora Lawsuit.*

56. _____ √ Plaintiffs have produced no evidence to support a contention that they settled <u>only</u> claims of purely vicarious liability.

DEFENDANT C.H. ROBINSON'S
PROPOSED FINDINGS OF FACT

10

57. _____   √   Neither ABB Kraftwerke nor ABB Alstom Power settled claims for vicarious liability. **Ex. 13,** *Plaintiffs' Thirteenth Amended Original Petition in Zamora Lawsuit* (alleging claims against ABB Kraftwerke and ABB Alstom Power for negligence and products liability based on a defects in design, manufacture and marketing); **Ex. 14,** *Plaintiffs' Fourteenth Amended Original Petition in Zamora Lawsuit* (establishing that all claims by the Zamora family against ABB Kraftwerke and ABB Alstom Power were settled except for a dispute concerning payment of court costs and deposition costs pursuant to the settlement agreement).

58. _____   √   Neither ABB Kraftwerke nor ABB Alstom Power was vicariously liable for the acts or omissions of C.H. Robinson.

59. _____   √   Evidence developed in the Zamora Lawsuit supports the Zamora family's allegations of direct liability against ABB Kraftwerke and ABB Alstom Power. *Deposition of Sandro A. Lepori taken May 1, 2001* at 4:5-11; 5:2-5; 8:7-20; 10:21-23 (establishing that ABB company manufactured and marketed generator in question); *Deposition of Roland Schneider taken April 7, 2000* at 5:16-22; 29:23 – 30:6 (wherein Schneider testified that he worked for ABB Alstom's predecessor and that "for the past 10, 12 years we've shipped worldwide 340 –380 generators in all ports of the world; very large numbers, in any event."); *Id.* at 20:19-22; 29:23 – 33:5 (establishing that no decals, warnings, or instructions concerning the jacking plate were in place at the time of the Zamora accident); *Deposition of Alfredo Arteaga taken March 13, 2000* at 9:10 – 10:18; 13:20-23 (wherein Arteaga, an AMFELS employee who was present at the scene of the accident, testifies, "But I still feel that this accident would not have happened if in the topside of the motor right here, they would have put a warning that these bolts were not fastened on the unit."); *Deposition of Jose Cruz Garcia taken March 13, 2000* at 11:1-4; 14:8-13; 21:14 – 22:14 (wherein Cruz Garcia, an AMFELS employee who was present at the scene of the accident, testifies that there were no instructions, decals, or warning that only two bolts held the jacking plate in place); *Deposition of Andreas Rebholz taken April 7, 2000* at 4:24 – 5:2; 8:7-16; 12:12-19 (wherein Rebholz, an employee of ABB Alstom and Schneider's subordinate, testified that only two of the four bolts on the jacking plate actually held the plate in place, and that Schneider was present at the time of the accident to answer any questions about the configuration, and that part of Schneider's job was to advise that the jacking plates were being taken off incorrectly and unsafely, if he observed that the jacking

plates were being taken off incorrectly or unsafely); *Deposition of Roland Schneider dated April 7, 2000* at 5:16-22; 24:24 – 26:9 (acknowledging that the accident might not have happened if Schneider, when he realized the nuts on the jacking plate had been loosened, had insisted that the nuts be put back on, or if, when he realized the nuts had been taken off, he had insisted that the bolts not be removed); *Deposition of Roland Schneider taken April 7, 2000* at 14:13 – 15:16; 26:21 – 27:16 (testifying that he realized prior to the accident that workers had either loosened or "all together removed" the nuts on the bolts securing the jacking places to the generator.)

**Agency v. Independent Contractor**

| No. | Agreed | Contested | |
|-----|--------|-----------|---|
| 60. | _____ | √ | ABB Kraftwerke did not ask C.H. Robinson to act as its agent, and C.H. Robinson did not agree to act as ABB Kraftwerke's agent. There is no evidence of any agreement between C.H. Robinson and ABB Kraftwerke. *Deposition of Tom Ferguson taken February 25, 2005* at 32:20-22 (testifying that C.H. Robinson never agreed to act as ABB's agent). |
| 61. | _____ | √ | There is also no evidence that ABB Alstom Power asked C.H. Robinson to act as its agent, or that C.H. Robinson agreed to act as ABB Alstom Power's agent. Nothing in the Contract evidences an understanding between the parties that C.H. Robinson would act as ABB Power Generation's agent. *Deposition of Tom Ferguson taken February 25, 2005* at 32:20-22 (testifying that C.H. Robinson never agreed to act as ABB's agent). |
| 62. | √ | _____ | C.H. Robinson is an independent business. *Deposition of Todd Strever taken January 21, 2005* at 33:3-17; *Deposition of Tom Ferguson taken February 25, 2005* at 34:11-35:1. |
| 63. | √ | _____ | C.H. Robinson provides transportation logistics services to other companies. C.H. Robinson subcontracts with other companies to provide truck, rail, ocean and air transportation to its customers. *Deposition of Jim Hamilton taken April 25, 2000* at 9:12-19; *Deposition of Tom Ferguson taken February 25, 2005* at 8:20 – 10:18, 6:22 – 8:11; 15:2 – 16:18; 23:13-22; 33:14-22; *Deposition of Todd Strever taken January 21, 2005* at 7:4-11; *Deposition of Todd Strever taken April 26, 2000* at 11:24 – 12:10. |

64. _____ √ C.H. Robinson, its subcontractors, and the subcontractors hired by C.H. Robinson's subcontractors, provided all tools and materials used in performing services for ABB Power Generation Ltd., other than the generator that was to be transported and some packing materials for the generator. *Deposition of Todd Strever taken January 21, 2005 at 33:14-24; Deposition of Charles Cherrington taken January 7, 2000 at 15:11-17.* C.H. Robinson secured the manpower, floating crane, rail cars, skidding equipment, gantry, tie downs, road and rail clearances and expertise to procure same. *Plaintiffs First Amended Original Complaint at ¶ 8, 10-12; Deposition of Sandro Lepori taken May 1, 2001 at 107:1-22; Deposition of Tom Ferguson taken February 25, 2005 at 7:25-8:11; 8:20-10:18; 23:8-22; 33:14-22; Deposition of Todd Strever taken January 21, 2005 at 27: 8-13.*

65. _____ √ C.H. Robinson subcontracted with Schaefer Stevedoring to provide stevedoring services for the lift of the generator from a lash barge to a rail car at the Port of Brownsville. Schaefer hired several longshoremen, including Mr. Oscar Zamora, to assist in the lift of a generator from a barge to a rail car at the Port of Brownsville on March 23, 1999. *Plaintiffs' First Amended Complaint at ¶¶ 10, 17.*

66. √ _____ Schaefer Stevedoring subcontracted with Brownsville Barge & Crane for the use of a floating crane, the "Atlantic Giant." *Plaintiffs' First Amended Complaint at ¶ 10.*

67. _____ √ C.H. Robinson was paid by the job, and not by time (hour, week or months) to perform the Contract. *Deposition of John Barry taken December 15, 2004 at 14:3 – 16:1; Deposition of Sandro Lepori taken May 1, 2001 at 4:7-11; 14:17-23* (wherein Lepori testified as the ABB companies' representative that "ABB hire[d] C.H. Robinson on a fixed price...[a]nd for X number of dollars, they were to take the generator from its position on the LASH barge to its ultimate destination in Mexico."); *Deposition of Todd Strever taken January 21, 2005 at 34:13-21; Deposition of Tom Ferguson taken February 25, 2005 at 32:24 – 33:5.*

68. √ _____ C.H. Robinson was hired for a limited period of time, to perform a specific task. **Ex. 1;** *Deposition of Todd Strever taken January 21, 2005 at 34:13-21.*

69.    √    _____    Todd Strever, an employee of C.H. Robinson, was present at the Port of Brownsville when the accident occurred on March 23, 1999.

70.    _____    √    C.H. Robinson had the right and the responsibility to control the execution of the Contract. *Deposition of John Barry taken December 15, 2004* at 25:14-16. C.H. Robinson was responsible for all requirements, and services necessary to move the generator from Brownsville to Monterrey. *Id.* at 14:16-17; 15:18-19; 15:25; 16:1-2; and 16:4-5. ABB Power Generation turned over control of the project to C.H. Robinson. *Statement of Sandro Lepori taken February 14, 2005* at 2:5-19. C.H. Robinson had the task to choose, control, and supervise subcontractors, their work, and how the transportation of the generator was carried out from Brownsville. *Id.* at 14:36-38. ABB did not control the specific details concerning the lift of the generator. *Id* at 35:1-2.

71.    √    _____    Roland Schneider, an employee of ABB Power Generation, was also present at the Port of Brownsville when the accident occurred on March 23, 1999. *Deposition of Roland Schneider taken April 7, 2000* at 21:1-5; *Deposition of Sandro Lepori taken April 7, 2000* at 6:1-10; *Deposition of Andreas Rebholz taken April 7, 2000* at 5:7-11; 8:7-11; *Deposition of Charles E. Cherrington taken January 7, 2000* at 18:24 – 19:8.

72.    _____    √    Mr. Schneider, on behalf of ABB Kraftwerke, ABB Power Generation, or ABB Alstom Power, did not have the right to control the details' of the work performed by C.H. Robinson or by Schaefer Stevedoring. Mr. Schneider was present only as a consultant, to answer any questions concerning the generator. *Deposition of Roland Schneider taken April 7, 2000* at 20:23 – 21:12; 23:1-2; *Deposition of Todd Strever taken January 21, 2005* at 31:13-17 (testifying that Schneider's purpose in being present at the lift was "to advise on information that [C.H. Robinson] needed regarding the pieces themselves."). His purpose was to "act as a consultant double-checking with Todd Strever at all times with the subcontractors." *Deposition of Roland Schneider taken April 7, 2000* at 45:20-23. He did not give instructions. *Id.* at 43:19-21; *see also Deposition of Sandro Lepori taken April 7, 2000* at 5:24 – 6:10 (wherein Schneider's immediate supervisor states Schneider "was there not to supervise but to answer questions"); *see also Statement of Sandro Lepori taken February 14, 2005* at 28:42-45 (Schneider was in Brownsville to supply information but not to supervise); *see also February 15, 2005 Statement of Roland Schneider* at

1:30-32 (stating that his job is to give advice to companies such as C.H. Robinson, if necessary) and 5:22-24 (stating that he could have decided to remove the jacking lugs when the generator was on the railroad car, but he was there to give advice, not commands).

73. _____ √  Plaintiffs took the position in the Zamora Lawsuit that Schneider

> accompanied the equipment to Brownsville to provide technical advice about the equipment to C.H. Robinson, and to answer questions about its specifications, if any. Mr. Schneider was specifically prohibited from interfering in the manner of unloading as performed at the direction of C.H. Robinson. C.H. Robinson's employees and representatives asked no questions of Mr. Schneider. However, at one point in the transfer of the equipment from the lash barge to the rail car, Mr. Schneider noticed that the stevedores were removing the nuts which secure the lower bolts to the footplate of the generator. Although contractually prohibited from interfering with C.H. Robinson's performance of the transport of the generator, Mr. Schneider advised C.H. Robinson's representatives not to remove the bolts from the jacking plate and the footplate. Nonetheless, inexplicably, the bolts were removed, resulting in Mr. Zamora's death.

**Ex. 12,** *ABB Defendants' Response to Plaintiffs' Motion to Compel and for Sanctions (filed in Zamora Lawsuit).*

74. _____ √  Plaintiffs' representations in the Zamora Lawsuit are contrary to the position Plaintiffs now assert, that is, that C.H. Robinson was their agent. Plaintiffs successfully maintained their position that C.H. Robinson was not their agent, as evidenced by the Zamora family's willingness to agree to indemnify C.H. Robinson "from and against each and every claim, demand, cause of action, lawsuit, judgment or award by or in favor of any other person or entity which relates to, results from, is based on or arises out of or in connection with any claim, cause of action, act, transaction, or occurrence which is the subject of this lawsuit and arises by, through or under the releasing parties." **Ex. 6** at 001956-1957. There is no evidence that Plaintiffs' statement were made due to fraud or duress. Therefore, Plaintiffs are judicially estopped

DEFENDANT C.H. ROBINSON'S
PROPOSED FINDINGS OF FACT

15

from asserting that C.H. Robinson was its agent.

75. _____ √ Plaintiffs' representations in the Zamora Lawsuit constitute a judicial admission that C.H. Robinson was not the agent of either ABB Kraftwerke or ABB Alstom Power. Their judicial admission prevents them from now contending that C.H. Robinson was their agent. **Ex. 12,** *ABB Defendants' Response to Plaintiffs' Motion to Compel and for Sanctions (filed in Zamora Lawsuit).*

76. _____ √ The settlement agreement between C.H. Robinson and the Zamora family included an indemnity provision. That indemnity provision required the Zamora family to

> "forever indemnify and hold harmless [C.H. Robinson], from and against each and every claim, demand, cause of action, lawsuit, judgment or award by or in favor of any other person or entity which relates to, results from, is based on or arises out of or in connection with any claim, cause of action, act, transaction, or occurrence which is the subject of this lawsuit and arises by, through or under the releasing parties whether asserted directly or indirectly, by way of contribution, *common law indemnity, contractual indemnity, statutory indemnity,* liens or otherwise, either in this suit or any other lawsuit".

**Ex. 6** at 001956-1957.

77. _____ √ ABB Power Generation controlled only the end sought to be accomplished under the Contract, and not the means and details of the accomplishment. . *Deposition of John Barry taken December 15, 2004* at 14:16-17; 15:18-19; 15:25; 16:1-2; 16:4-5; 25:14-16; *Statement of Sandro Lepori taken February 14, 2005* at 2:5-8; 14:32-42; 35:1-2.

78. _____ √ Nowhere in the Contract between C.H. Robinson and ABB Power Generation is C.H. Robinson given the ability to "bind" ABB Power Generation to costs incurred outside the Contract. **Ex. 1.**

79. _____ √ C.H. Robinson paid all its subcontractors directly, then billed those costs to ABB Alstom's predecessor. *Deposition of Sandro Lepori taken May 1, 2001* at 77:18-78:7; *Deposition of Todd*

DEFENDANT C.H. ROBINSON'S
PROPOSED FINDINGS OF FACT

16

*Strever taken January 21, 2005 at 32:13-33:2; Deposition of Tom Ferguson taken February 25, 2005 at 35:24-36:15.*

80. _____ √ C.H. Robinson was an independent contractor, and not an agent of either ABB Kraftwerke or ABB Alstom Power. *Deposition of Tom Ferguson taken February 25, 2005 at 24:10-19.*

**Miscellaneous**

| No. | Agreed | Contested | |
|-----|--------|-----------|---|
| 81. | _____ | √ | During the relevant time period, James "Jim" Hamilton and Todd Strever were employed by C.H. Robinson. |
| 82. | _____ | √ | During the relevant time period, Roland Schneider, Sandro Lepori, Andreas Rebholz, and Robert Schupp were employed by ABB Power Generation, the predecessor company to ABB Alstom Power. |
| 83. | _____ | √ | During the relevant time period, David Tsoi was a representative of Brownsville Barge & Crane. |
| 84. | _____ | √ | During the relevant time period, Charles Cherrington and Kenton E. "Ken" Schaeffer were representatives of Schaefer Stevedoring. |

Respectfully submitted,

McGINNIS, LOCHRIDGE & KILGORE, L.L.P.

By: *Karan C. Ciotti*

Steven J. Watkins
ATTORNEY-IN-CHARGE
State Bar No. 20927700
So. Dist. Bar No. 146

3200 One Houston Center
1221 McKinney Street
Houston, Texas 77010
Telephone: (713) 615-8500
Facsimile: (713) 615-8585

ATTORNEYS FOR DEFENDANT
C.H. ROBINSON COMPANY

DEFENDANT C.H. ROBINSON'S
PROPOSED FINDINGS OF FACT

OF COUNSEL:

Karan C. Ciotti
State Bar No. 05226300
So. Dist. Bar No. 16874
MCGINNIS, LOCHRIDGE & KILGORE, L.L.P.
3200 One Houston Center
1221 McKinney Street
Houston, Texas 77010
Telephone:  (713) 615-8500
Facsimile:  (713) 615-8585

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the above and foregoing Defendant C.H. Robinson's Proposed Findings of Fact has been served via facsimile and via certified mail, return receipt requested, on this the 10th day of May, 2005, to the following:

Justin L. Williams
The Law Office of Justin L. Williams, P.C.
600 Leopard Street, Suite 1810
Corpus Christi, Texas   78473

_Karan C. Ciotti_
Karan C. Ciotti

DEFENDANT C.H. ROBINSON'S
PROPOSED FINDINGS OF FACT

18