## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **ABB KRAFTWERKE** | § | |
| **AKTIENGESELLSCHAFT, and** | § | |
| **ABB ALSTOM POWER** | § | |
| **(SWITZERLAND) LTD., formerly known** | § | |
| **as ABB POWER GENERATION, LTD.** | § | |
| | § | |
| **Plaintiffs** | § | **CIVIL ACTION NO. B:03-CV-192** |
| | § | |
| **Vs.** | § | |
| | § | |
| **C.H. ROBINSON COMPANY** | § | |
| | § | |
| **Defendant** | § | |

## JOINT PRETRIAL ORDER

Plaintiffs ABB Kraftwerke Aktiengesellschaft and ABB Alstom Power (Switzerland) Ltd.,

formerly known as ABB Power Generation, Ltd., and Defendant C.H. Robinson Company submit

this Joint Pretrial Order for the Court's approval:

1.    <u>**Appearance of Counsel**</u>.

      *a.*     ***Plaintiffs ABB Kraftwerke Aktiengesellschaft and ABB Alstom Power (Switzerland) Ltd., formerly known as ABB Power Generation, Ltd.***

           Justin L. Williams
           The Law Office of Justin L. Williams, P.C.
           600 Leopard Street, Suite 1810
           Corpus Christi, Texas 78473
           Telephone: (361) 888-7702
           Facsimile: (361) 888-7717

**b.**    ***Defendant C.H. Robinson Company***

Steven J. Watkins
Karan C. Ciotti
3200 One Houston Center
1221 McKinney Street
Houston, Texas 77010
Telephone:  (713) 615-8500
Facsimile:  (713) 615-8585

**2.**    **Statement of the Case.**

ABB Power Generation entered into a contract to provide electrical equipment to a power plant being built outside of Monterrey, Mexico.

Plaintiff ABB Kraftwerke Aktiengesellschaft ("ABB Kraftwerke") is a German manufacturer of heavy electrical equipment who manufactured a 325-metric-ton generator for the use by the power plant.  ABB Power Generation arranged for the shipment of the generator from Germany to the Port of Brownsville.

On February 16, 1999, ABB Power Generation entered into a Contract with C.H. Robinson Company ("C.H. Robinson"), for the transportation of heavy components, including the generator, from Brownsville, Texas to Monterrey, Mexico.  C.H. Robinson is a transportation logistics company; it works with truck, rail, and air carriers to transport goods for its customers.  The agreement between C.H. Robinson and ABB Power Generation did not include any indemnity or choice of law clause.  ABB Kraftwerke was not a party to the contract.

C.H. Robinson subcontracted with Schaefer Stevedoring to provide stevedoring services for the lift of the generator from a barge to a rail car at the Port of Brownsville.  Schaefer hired several longshoremen to assist in the lift of the generator from the barge to the rail car.  Schaefer also

subcontracted with Brownsville Barge & Crane for the use of the Atlantic Giant, a 700-ton floating crane, which was used to lift the generator from the barge at the Port of Brownsville.

ABB Power Generation sent one of its employees, Roland Schneider, an engineer from Baden, Switzerland, to Brownsville as a consultant, to answer any questions C.H. Robinson might have concerning the generator. Mr. Schneider was present at the Port of Brownsville on March 23, 1999, the day the generator was to be transferred from the barge to a rail car. Also present were Todd Strever, an employee of C.H. Robinson; Charles Cherrington, an employee of Schaefer Stevedoring; several longshoreman hired by Schaefer Stevedoring; and several workers hired by Brownsville Barge & Crane.

Immediately prior to the lift of the generator from the barge, a representative of Brownsville Barge & Crane presented an agreement to Mr. Schneider, and advised him that he needed to sign the agreement if ABB Power Generation wanted to use the Atlantic Giant. The agreement had a signature line for "ABB Company" and for C.H. Robinson. The agreement required the signer to indemnify Brownsville Barge & Crane from any losses it might suffer in connection with the use of the crane to transfer the generator from the barge to the rail car. Mr. Schneider signed the agreement on behalf of "ABB Company." C.H. Robinson did not sign the agreement.

During the course of the lift and while the generator was suspended, Mr. Schneider realized that longshoremen hired by Schaefer Stevedoring had either loosened or removed the nuts on the bolts securing jacking plates to the generator. Schneider spoke to Mr. Cherrington, the operations manager for Schaefer Stevedoring, and to Mr. Oscar Zamora, one of the longshoremen, and told them not to take off the bolts. Mr. Cherrington had already removed one bolt from the jacking plate.

Shortly thereafter, a jacking plate fell from the generator and hit Mr. Zamora. Mr. Zamora died that same day.

One month later, Mr. Zamora's family brought suit against ABB Kraftwerke; ABB Alstom Power (Switzerland) Ltd., the successor company to ABB Power Generation; C.H. Robinson; and Brownsville Barge & Crane. The Zamora family contended that ABB Kraftwerke and ABB Alstom Power's negligence and defects in the design, manufacture, and marketing of the generator caused Mr. Zamora's death. The Zamora family claimed that the generator was defective because there was no warning label that advised that the jacking plate that fell on Mr. Zamora was connected to the generator by only two of the four bolts that were on the jacking plate. The Zamora family did not make a claim for vicarious liability against ABB Kraftwerke or ABB Alstom Power.

About three months later, C.H. Robinson settled with the Zamora family for $1 million. In return, the Zamora family dismissed all claims against C.H. Robinson.

The Zamora family also voluntarily dismissed their claims against Brownsville Barge & Crane. However, Brownsville Barge & Crane remained in the lawsuit as it had brought a claim against ABB Kraftwerke and ABB Alstom Power for breach of the indemnity agreement signed by Mr. Schneider to recover the attorneys fees Brownsville Barge & Crane spent in defending the suit brought against them by the Zamora family.

On November 30, 1999, after the Zamora family settled with C.H. Robinson and dismissed their claims against Brownsville Barge & Crane, ABB Kraftwerke and ABB Alstom Power filed a cross-claim against C.H. Robinson for contribution and indemnity. In December 1999, ABB Kraftwerke and ABB Alstom Power agreed to drop the claim against C.H. Robinson in return for C.H. Robinson's agreement to assist ABB Alstom Power and ABB Kraftwerke by participating in informal discovery. C.H. Robinson did assist ABB Alstom Power and ABB Kraftwerke by providing them with access to employees who had knowledge of the accident and of the contract between C.H. Robinson and ABB Power Generation. In accord with their agreement, ABB Alstom

Power and ABB Kraftwerke dropped their claim for contribution and indemnity against C.H. Robinson.

In June 2000, ABB Alstom Power and ABB Kraftwerke settled with the Zamora family, and the Zamora family dismissed their claims against ABB Alstom Power and ABB Kraftwerke. The state court subsequently granted Brownsville Barge & Crane summary judgment against ABB Alstom Power and ABB Kraftwerke on its contractual indemnity claim, and awarded Brownsville Barge & Crane the legal fees it incurred in defending the claims brought by the Zamora family. ABB Alstom Power and ABB Kraftwerke appealed the judgment, and the court of appeals affirmed. *ABB Kraftwerke AG v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287 (Tex. App. – Corpus Christi 2003, pet. denied).

On July 16, 2003, four years and four months after the accident that resulted in Mr. Zamora's death, ABB Kraftwerke and ABB Alstom Power, in breach of their agreement to drop their claims against C.H. Robinson, filed this suit, alleging claims for breach of contract and indemnity for the amounts paid to the Zamora family and to Brownsville Barge & Crane.

C.H. Robinson filed a motion to dismiss ABB Kraftwerke and ABB Alstom Power's lawsuit for failure to state a claim on which relief could be granted. The bases for that motion were (a) Plaintiffs' claim for breach of contract was barred by the four-year limitations period, and (b) Plaintiffs' claim for indemnity was not supported by Texas law.

ABB Kraftwerke and ABB Alstom Power subsequently filed a motion for application of Swiss law, in which they contended that Swiss law governs this dispute and that the applicable statute of limitations for a breach of contract claim under Swiss law is ten years.

On September 30, 2004, this Court entered an order granting in part C.H. Robinson's motion to dismiss. In its Order, the Court held that the Plaintiffs had not convincingly raised the discovery

rule to survive a statute of limitations defense on their contract claim. "To the extent, therefore, that Plaintiff allege breach(es) of contract that occurred before March, 1999, they are barred by the statute of limitations." In an abundance of caution, and despite the fact that Plaintiffs had not clearly pleaded a breach of contract occurring after July 1999, the Court denied Defendant's Motion to Dismiss to the extent it sought dismissal of a cause of action for breach of contract for a breach occurring after July 1999. The Court also held that neither ABB Kraftwerke nor ABB Alstom Power could have a claim for contractual indemnity against C.H. Robinson because no such agreement exists, and that that ABB Kraftwerke and ABB Alstom Power's indemnity claim could only be based in the common law, on a theory of vicarious liability founded in an agency relationship.

Defendant C.H. Robinson moved for summary judgment, and ABB Kraftwerke and ABB Alstom Power moved for rehearing on it motion for application of Swiss Law.

3.    **Jurisdiction.**

Jurisdiction is based on diversity of citizenship.  28 U.S.C. § 1332.

4.    **Motions.**

**The following motions are currently pending before the Court for a ruling:**

1.    Defendant's C.H. Robinson's Amended Motion for Summary Judgment

2.    Plaintiffs' Enlargement of Time to File Exhibits to Motion to Reconsider Application of Swiss Law

3.    Plaintiffs' Motion to File Amended Motion for Rehearing on Application of Swiss Law

4.    Plaintiffs' Amended Motion for Rehearing on the Application of Swiss Law

5.    Plaintiffs' Motion to File Amended Response to C.H. Robinson's Motion for Summary Judgment

6.    Plaintiffs' Motion for Leave to Amend Plaintiffs' Second Amended Original Complaint

7.    Plaintiffs' Motion for Leave to File Surreply to Defendant's Reply to Plaintiffs' Amended Response to Motion for Summary Judgment

5.    **Contention of the Parties.**

      a.    *Contentions of Plaintiffs ABB Kraftwerke Aktiengesellschaft and ABB Alstom Power (Switzerland) Ltd., formerly known as ABB Power Generation, Ltd.*

(a)    ABB representatives met with Jim Hamilton, the Heavy Haul division manager for C. H. Robinson in Mexico to discuss entering into a contract to manage the transportation of heavy electrical generating equipment to a power plant being built outside of Monterrey, Mexico

(b)    Hamilton traveled to Switzerland to negotiate C. H. Robinson's involvement in the project.

(c)    Hamilton returned to Switzerland and signed the contract between ABB and C. H. Robinson on February 16, 1999 in Switzerland.

(d)    The contract contained the scope of work Robinson was to perform on behalf of ABB - transport the equipment from the Port of Brownsville to the jobsite in Mexico and set the equipment on the pads at the jobsite.

(e)    Robinson was to manage the project on behalf of ABB and act as ABB's agent.

(f)    ABB had the right to control the details of Robinson's work, and in fact directed Robinson with regard to several details of their work.

(g)    Robinson had the right to enter into contracts on behalf of ABB to accomplish the job.

(h)    Robinson entered into contracts or incurred costs on behalf of ABB above the contract price.

(i)    Robinson had the right to bind ABB as principle.

(j)    ABB supplied tools and/or equipment used by Robinson and/or their subcontractors to perform their job.

(k)    Robinson was to provide a logistics plan as part of their management of the project.

(m)    No logistics plan was provided by Robinson.

(n)   Robinson did not provide a plan for lifting the generator from the lash barge to the railcar nor did they insure that their contractors were familiar with the equipment so that the lift could be safely executed.

(o)   The transportation of the equipment from the barge to the railcars was Robinson's responsibility.

(p)   Robinson's contractors hired to fulfill their responsibility to ABB to move the equipment did not know how to safely place the equipment on the railcar, and did not know how the equipment was configured or the accident would not have occurred.

(q)   ABB's common law indemnity claim is governed by a four (4) year statute of limitations.

(r)   ABB brought suit within the four (4) year time period.

(s)   E-mails were exchanged between Hamilton in Keller, Texas and ABB in Baden, Switzerland.

(t)   Plaintiffs claim that they had the right to control and controlled the details of Defendant's work;

(u)   Plaintiffs claim that they provided equipment and materials used by Defendant in performing their work;

(v)   Plaintiffs claim that Defendant had the authority to bind Plaintiffs for payments above the contract price to accomplish the work entrusted to Defendant;

(w)   Plaintiffs claim Defendant did in fact bind Plaintiffs to pay amounts beyond the contract price to accomplish the work entrusted to Defendant;

(x)   Plaintiffs claim that Defendant was its agent, subject to Plaintiffs controlling the details of Defendant's work for purposes of the work entrusted to Defendant;

(y)   Plaintiffs contend that Defendant was to have a plan in place, by the terms of the contract, for the lifting and movement of the equipment from the lash barge to railcars;

(z)   Plaintiffs contend no such plan was devised by Defendant;

(aa)  Plaintiffs contend that if a plan had been in place, the Zamora accident would not have occurred and Plaintiffs would not have faced liability in that lawsuit;

(bb)    Plaintiffs contend they were "vicariously liable" for the actions and inactions of Defendant;

(cc)    Plaintiffs contend that the claims against them brought by the Zamora family were claims that resulted from not having a plan in place to lift the equipment, not ensuring the subcontractors were familiar with the equipment and not properly supervising the lift by Defendant;

(dd)    Plaintiffs contend that the Zamora Plaintiffs claims of product liability and negligence, were claims for failure to warn and negligent supervision of the lift.

(ee)    Plaintiffs contend that if a lifting plan had been devised by Defendant to properly lift the railcar that no failure to warn claims would have existed.  The failure to warn claims was a direct result of Robinson not providing a lift plan.

(ff)    Plaintiffs contend that the claim by the Zamora Plaintiffs for negligence for failure to properly supervise the lift was a direct result of a breach of contract on Robinson's behalf.  Robinson was in charge of managing the lift by contract, if they had performed their tasks properly no claim against ABB would have been made.

(gg)    Plaintiffs contend Swiss law applies, that Swiss law does not require the establishment of an agency relationship or vicarious liability under the terms of this case as required by Texas law, that a ten (10) year statute of limitations controls the case and that to recover Plaintiffs' damages they need only prove a breach of contract which was the proximate cause of Plaintiffs' damages;

(hh)    Plaintiffs contend they paid $2,250,000.00 to Oscar Zamora, Jr. and his attorney; $1,500,000.00 to Graciela Zamora, Individually and on behalf of the estate of Oscar Zamora, Jr. and her attorney; $750,000.00 to Olivia Zamora, surviving mother of Oscar Zamora, Jr., and her attorney; $_____ in attorney's fees for the defense of the Zamora lawsuit alone with _____ in expenses;

(ii)    Plaintiffs contend that they are entitled to attorneys fees as a result of having to bring this action to recover their damages, and that the attorney's fees should be calculated as thirty-three percent (33%) of the amount recovered by Plaintiff plus expenses or attorney's fees should be awarded under the _____ method at an hourly rate determined by the court;

(jj)    Plaintiffs contend they are entitled to pre-judgment and post-judgment interest.

### b.    Contentions of Defendant C.H. Robinson Company

(1)    Texas law applies to all issues in this dispute;

(2)    Plaintiff ABB Alstom Power is barred from pursuing a breach of contract claim by the four-year statute of limitations;

(3)    Plaintiff ABB Kraftwerke had no contract with Defendant and therefore has no claim for breach of contract, regardless of the applicable limitations period;

(4)    Plaintiffs are barred from pursuing a breach of contract claim as Plaintiffs have never alleged facts to support a claim for breach of contract;

(5)    Plaintiffs are barred from pursuing a common-law indemnity claim by the two-year statute of limitations;

(6)    Plaintiffs have no cause of action for common-law indemnity against C.H. Robinson as no claimant in the underlying litigation made a claim for vicarious liability against either Plaintiff;

(7)    Even if a claim of vicarious liability had been made against Plaintiffs in the underlying litigation, Plaintiffs have no cause of action for indemnity against C.H. Robinson because claimants in the underlying litigation made claims for direct liability against Plaintiffs;

(8)    Even if Plaintiffs did settle only claims of vicarious liability in the underlying litigation, they cannot recover any damages from C.H. Robinson because C.H. Robinson was not the agent of either ABB Kraftwerke or ABB Alstom Power;

(9)    Plaintiffs were directly liable to the family of Oscar Zamora given their negligence and the product defects of the generator in question;

(10)    Plaintiffs are barred from pursuing a claim of indemnity given their agreement to drop the claim in the underlying litigation and C.H. Robinson's reliance on that agreement;

6.    **Admissions of Fact.**

    a.    *Plaintiffs ABB Kraftwerke Aktiengesellschaft and ABB Alstom Power (Switzerland) Ltd., formerly known as ABB Power Generation, Ltd., and Defendant C.H. Robinson Company admit the following facts:*

    (1)    No claim for vicarious liability as such was made against ABB Kraftwerke Aktiengesellschaft or ABB Alstom Power (Switzerland) Ltd. in the lawsuit styled, Cause No. 99-04-1644-E, *Graciela Zamora, et al. v. ABB Kraftwerke Aktiengesellschaft, et al.,* In the 357th Judicial District Court of Cameron County, Texas ("the Zamora Lawsuit"), by the Zamora family, by Brownsville Barge & Crane, or by any other party to the Zamora Lawsuit.

    (2)    On February 16, 1999, C.H. Robinson entered into a contract with ABB Power Generation Ltd. for the transportation of heavy components, including a generator, from Brownsville, Texas to Monterrey, Mexico. **Ex. 1,** *February 16, 1999 Contract between C.H. Robinson and ABB Power Generation.* The February 16, 1999 Contract is the only contract between C.H. Robinson and ABB Power Generation Ltd.

    (3)    C.H. Robinson did not enter into a contract with ABB Kraftwerke Aktiengesellschaft. *See* **Ex. 1.**

    (4)    ABB Kraftwerke Aktiengesellschaft manufactured the generator that ABB Power Generation Ltd. hired C.H. Robinson to transport.

    (5)    On March 23, 1999, during the performance of the Contract, a jacking plate fell from the generator while it was suspended over a rail car. The jacking plate hit Oscar Zamora, Sr. resulting in his death. The accident occurred at the Port of Brownsville. *Plaintiffs First Amended Original Complaint* at ¶¶ 14, 17.

    (6)    There is no choice of law provision in the Contract between C.H. Robinson and ABB Power Generation Ltd. **Ex. 1.**

    (7)    The subject matter of the Contract was the management of transportation of heavy components in Texas and Mexico. **Ex. 1.**

    (8)    Plaintiff ABB Kraftwerke Aktiengesellschaft is organized under the laws of the Republic of Germany. Plaintiff ABB Alstom Power is organized under the laws of Switzerland. *Plaintiff's First Amended Original Complaint* at ¶ 1.

(9)     C.H. Robinson is incorporated in Delaware.  Its domicile and principal place of business is in Minnesota.  *Deposition of Tom Ferguson taken February 25, 2005* at 5:20 – 6:3.  It had nine offices in Texas in 1999, including its Keller, Texas office.  *Id.* at 6:14 – 7:16; **Ex. 3,** *Affidavit of Thomas J. Sandstrom* at ¶ 6; *Anticipated Testimony of C.H. Robinson Representative.*

(10)    Oscar Zamora's family filed suit for wrongful death, in a suit styled Cause No. 99-04-1644-E, *Graciela Zamora, et al. v. ABB Kraftwerke Aktiengesellschaft, et al.,* In the 357th Judicial District Court of Cameron County, Texas (hereinafter "the Zamora Lawsuit").  The Zamora family made claims against ABB Alstom Power (Switzerland) Ltd., ABB Kraftwerke Aktiengesellschaft, C.H. Robinson, and Brownsville Barge & Crane.  **Ex. 13.**

(11)    Mr. Zamora's family settled its claims against ABB Kraftwerke Aktiengesellschaft and ABB Alstom Power (Switzerland) Ltd. in June 2000.  **Ex. 13,** *Plaintiffs' Thirteenth Amended Original Petition in Zamora Lawsuit;* **Ex. 14,** *Plaintiffs' Fourteenth Amended Original Petition in Zamora Lawsuit.*

(12)    Brownsville Barge & Crane filed a cross-claim against ABB Alstom Power (Switzerland) Ltd. and ABB Kraftwerke Aktiengesellschaft for contractual indemnity for legal fees it incurred in defending against the Zamora family's claims.  The Corpus Christi Court of Appeals affirmed the trial court's grant of summary judgment in favor of Brownsville Barge & Crane against ABB Alstom Power (Switzerland) Ltd. and ABB Kraftwerke Aktiengesellschaft.  **Ex. 19,** *ABB Kraftwerke AG v. Brownsville Barge & Crane, Inc.,* 115 S.W.3d 287 (Tex. App. – Corpus Christi 2003, pet. denied).

(13)    The indemnity agreement between Brownsville Barge & Crane and "ABB Company" was signed in Texas, interpreted in Texas by Texas courts, governed by Texas law, and adjudicated to final judgment in Texas courts.  **Ex. 19,** *ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.,* 115 S.W.3d 287 (Tex. App. – Corpus Christi 2003, pet. denied); *Plaintiffs' First Amended Original Complaint* at ¶¶ 13-14.

(14)    Plaintiffs' alleged injuries – which purportedly consist of payments made to the Zamora family and to Brownsville Barge & Crane – occurred in Texas.  *Plaintiffs' First Amended Original Complaint* at ¶¶ 9-18, 35-36; **Ex. 19,** *ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.,* 115 S.W.3d 287 (Tex. App. – Corpus Christi 2003, pet. denied).

(15)    The conduct causing Plaintiffs' alleged injuries, whether defined as the conduct causing the death of Mr. Zamora or the signing of the indemnity agreement between ABB Power Generation and Brownsville Barge & Crane, occurred in Texas.  *Plaintiffs' First Amended Original Complaint* at ¶¶ 13-14, 16-17.

(16)  Plaintiff ABB Kraftwerke Aktiengesellschaft has no contract with C.H. Robinson. *See* **Ex. 1.**

(17)  Plaintiff ABB Kraftwerke Aktiengesellschaft has no contract with C.H. Robinson. **Ex. 1.**

(18)  The Contract between C.H. Robinson and ABB Power Generation does not include an indemnity provision. **Ex. 1.**

(19)  Plaintiffs settled the Zamora family's claims against them in June 2000. **Ex. 13,** *Plaintiffs' Thirteenth Amended Original Petition*; **Ex. 14,** *Plaintiffs' Fourteenth Amended Original Petition*; *see also* **Ex. 15,** *Correspondence from Counsel for C.H. Robinson to Counsel for ABB Kraftwerke and ABB Alstom Power, dated June 5, 2000* (CHR ABB 000093).

(20)  Brownsville Barge & Crane brought a claim for contractual indemnity against ABB Alstom Power and ABB Kraftwerke seeking recovery of legal fees incurred in defending the Zamora Lawsuit. *ABB Kraftwerke AG v. Brownsville Barge & Crane, Inc.,* 115 S.W.3d 287, 294 (Tex. App. – Corpus Christi 2003, pet. denied).

(21)  Mr. Zamora's family made claims against ABB Alstom Power (Switzerland) Ltd. and ABB Kraftwerke Aktiengesellschaft for negligence, gross negligence, and product defects. **Ex. 13,** *Plaintiffs' Thirteenth Amended Original Petition in Zamora Lawsuit* at 4-5.

(22)  C.H. Robinson is an independent business. *Deposition of Todd Strever taken January 21, 2005* at 33:3-17; *Deposition of Tom Ferguson taken February 25, 2005* at 34:11-35:1.

(23)  C.H. Robinson provides transportation logistics services to other companies. C.H. Robinson subcontracts with other companies to provide truck, rail, ocean and air transportation to its customers. *Deposition of Jim Hamilton taken April 25, 2000* at 9:12-19; *Deposition of Tom Ferguson taken February 25, 2005* at 8:20 – 10:18, 6:22 – 8:11; 15:2 – 16:18; 23:13-22; 33:14-22; *Deposition of Todd Strever taken January 21, 2005* at 7:4-11; *Deposition of Todd Strever taken April 26, 2000* at 11:24 – 12:10.

(24)  Schaefer Stevedoring subcontracted with Brownsville Barge & Crane for the use of a floating crane, the "Atlantic Giant." *Plaintiffs' First Amended Complaint* at ¶ 10.

(25)  C.H. Robinson was hired for a limited period of time, to perform a specific task. **Ex. 1;** *Deposition of Todd Strever taken January 21, 2005* at 34:13-21.

(26)    Todd Strever, an employee of C.H. Robinson, was present at the Port of Brownsville when the accident occurred on March 23, 1999.

(27)    Roland Schneider, an employee of ABB Power Generation, was also present at the Port of Brownsville when the accident occurred on March 23, 1999. *Deposition of Roland Schneider taken April 7, 2000* at 21:1-5; *Deposition of Sandro Lepori taken April 7, 2000* at 6:1-10; *Deposition of Andreas Rebholz taken April 7, 2000* at 5:7-11; 8:7-11; *Deposition of Charles E. Cherrington taken January 7, 2000* at 18:24 – 19:8.

7.   **Contested Issues of Fact.**

    a.   *Plaintiffs ABB Kraftwerke Aktiengesellschaft and ABB Alstom Power (Switzerland) Ltd., formerly known as ABB Power Generation, Ltd., and Defendant C.H. Robinson Company state that the following material facts are the subject of a bona fide controversy:*

    (1)    Under the most significant relationship test, Switzerland has the most interest in this conflict between citizens of Switzerland and citizens of either Minnesota or Delaware;

    (2)    There is a conflict between Swiss law and Texas law regarding the statute of limitations and the concept of settling joint tortfeasor;

    (3)    Swiss law does not recognize the bar provided by the settling joint - tort feasor concept;

    (4)    Swiss law provided a ten (10) year statute of limitations for breach of contract claims;

    (5)    Robinson breached it contract with ABB by failing to provide a lifting plan for the movement of the generators and failing to properly manage their subcontractors and the lift;

    (6)    ABB had the right to control the details of Robinson's work;

    (7)    ABB controlled or directed various aspects of Robinson's work;

    (8)    Robinson had the authority to bind ABB to amounts above the contract price;

    (9)    That the contract and actions of the party resulted in Robinson acting as ABB's special agent for the purposes stated in the contract, the management of moving the equipment from Brownsville to the power plant location;

    (10)    Robinson therefore, acted as agent for the purposes of this project;

    (11)    The claims by the Zamora family resulted from Robinson's breach of contract.

    (12)    Robinson's failure to have a lift plan in place resulted in a failure to warn claim against ABB;

(13)   Robinson's failure to manage the lift or supervise the lift and their subcontractors resulted in a negligence claim against ABB;

(14)   The above claims are for vicarious liability because they arise as a result of what Robinson failed to do;

(15)   ABB's control of the details of Robinson work including directing the means of securing the generator, establish that Robinson did not act as an independent contractor;

(16)   ABB was vicariously liable for the actions and inactions of Robinson who acted as ABB's agent;

(17)   ABB brought suit within the four (4) year statute of limitations applicable to indemnity claims;

(18)   ABB is entitled to recover all monies paid in defense of and settlement of the Zamora litigation;

(19)   ABB is entitled to attorney's fees for the bringing of this suit;

(20)   ABB is entitled to both, pre-judgment and post-judgment interest.

(21)    Plaintiffs have failed to demonstrate a conflict between the laws of Texas and the laws of Switzerland. *Plaintiffs' Motion for Application of Swiss Law; Plaintiffs' Motion for Extension of Time to File Affidavits; Plaintiffs' Motion for Delay on Ruling; Plaintiffs' Motion to Attach Affidavit to Previously Filed Motion; Plaintiffs' Amended Motion for Rehearing on Application of Swiss Law.*

(22)    Plaintiffs have never provided copies of cases, statutes, or any other materials from which the Court might determine the basis for their contention that "the evidence presented proves a breach of contract" under Swiss law. *Plaintiffs' Motion for Application of Swiss Law; Plaintiffs' Motion for Extension of Time to File Affidavits; Plaintiffs' Motion for Delay on Ruling; Plaintiffs' Motion to Attach Affidavit to Previously Filed Motion; Plaintiffs' Amended Motion for Rehearing on Application of Swiss Law.*

(23)    The negotiation of the Contract took place predominantly through a series of correspondence originating in Texas and Switzerland, as is commonly the case in contract negotiations between companies operating in different countries. **Ex. 1 at CHR ABB 000238,** *Correspondence from C.H. Robinson's Keller, Texas office to ABB Power Generation's Baden, Switzerland office, dated January 30, 1999* ; **Ex. 1 at CHR ABB 000242,** *Transportation Bid Qualifications, faxed from C.H. Robinson's Keller, Texas office (as evidenced by 817 area code) on January 30, 1999* ; **Ex. 27,** *Correspondence from C.H. Robinson's Keller, Texas office to ABB Power Generation's Baden, Switzerland office, dated January 30, 1999* (CHR ABB 000239); **Ex. 28,** *Memorandum from ABB Power Generation to C.H. Robinson's Keller, Texas office concerning terms of contract, dated February 1, 1999*; *Deposition of Tom Ferguson taken February 25, 2005* at 38:1-13 (wherein Ferguson testified that "common sense" dictates that most of the negotiations took place "in the States," since "you wouldn't fly across the ocean to kind of whip something together and sign a big contract like this."); *see also id.* at 31:16-24 (wherein Ferguson testifies that the negotiations that led to the signing of the contract took place "[p]artly in Keller, Texas, and via e-mail, phone, fax, back and forth. I'd say the majority of it was negotiated over here in the States . . . ."); *see also Deposition of James Hamilton taken April 25, 2000* at 17:20 – 19:5 (testifying that the contract was negotiated via phone calls and the delivery of proposals and price quotations).

(24)    The Contract was performed in Texas and Mexico. No part of the Contract was performed in Switzerland. **Ex. 1.**

(25)    All alleged acts and omissions that give rise to Plaintiffs' purported claims for breach of contract occurred in Texas. *Plaintiff's First Amended Original Complaint* at ¶¶ 5-10, 13-18, 22-31.

(26)   The most critical portion of the Contract was securing rail clearances and permits. This portion of the Contract was performed in Texas. *Statement of Sandro Lepori taken February 14, 2005* at 3:37-41; 21:47-22:11.

(27)   The Contract between C.H. Robinson and ABB Power Generation was a contract for services. **Ex 1.**

(28)   Mr. David Huegin, counsel for ABB Switzerland Ltd., is an interested witness. *Plaintiffs' Motion to Attach Affidavit to Previously Filed Motion (including attached Affidavit of David Huegin);* **Ex. 22,** *Court's September 30, 2004 Order on Plaintiffs' Motion for Application and Defendant's Amended Motion to Dismiss* at 6-7.

(29)   Texas law applies to all procedural issues in this suit. **Ex. 22** at 12.

(30)   All alleged acts, omissions and events that give rise to Plaintiffs' purported claim for indemnity occurred in Texas. *Plaintiffs' First Amended Original Complaint* at ¶¶ 8-18, 35-36; **Ex. 19,** *ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.,* 115 S.W.3d 287 (Tex. App. – Corpus Christi 2003, pet. denied).

(31)   Plaintiffs filed this lawsuit against C.H. Robinson on July 16, 2003, more than four (4) years after any alleged breach of contract. *Plaintiffs' Original Complaint.*

(32)   Plaintiffs have pleaded no breach of contract by C.H. Robinson after July 16, 1999. *Plaintiffs' First Amended Original Complaint.*

(33)   C.H. Robinson did not breach its Contract with ABB Power Generation at any time after March 1999. **Ex. 23,** *Defendant C.H. Robinson Company's Amended Notice of Oral Deposition of Corporate Representative of ABB Kraftwerke Aktiengesellschaft;* **Ex. 24,** *Defendant C.H. Robinson Company's Amended Notice of Oral Deposition of Corporate Representative of ABB Alstom Power (Switzerland) Ltd.; Deposition of ABB Corporate Representative John Barry taken December 15, 2004* at 18:11 – 19:7.

(34)   C.H. Robinson had performed all requirements of the Contract before July 16, 1999. *Deposition of Tom Ferguson taken February 25, 2005* at 35:13 – 36:12; **Ex. 20,** *Invoice from C.H. Robinson (Jim Hamilton) to ABB Power Generation Ltd. (Sandro Lepori), dated July 19, 1999; see also Deposition of ABB Corporate Representative John Barry taken December 15, 2004* at 18:11 – 19:10.

(35)   Plaintiffs' claims for breach of contract are barred by limitations. *Plaintiffs' Original Complaint .*

(36)    The only contract between Plaintiff ABB Power Generation and C.H. Robinson is the written February 16, 1999 Contract for the transportation of heavy components from Brownsville, Texas to Monterrey, Mexico. **Ex. 1.**

(37)    Plaintiffs have never specified a provision in the Contract between C.H. Robinson and ABB Power Generation Ltd. that they contend C.H. Robinson breached, or in any way alleged a duty, owed under the Contract, that was breached. *Plaintiffs' First Amended Original Complaint.* All allegations of breach of contract are allegations, to the extent they allege any breach, of breaches of duties owed under the common law, and not under the Contract. Hence, they allege torts, and not breaches of contract. *Plaintiffs' First Amended Original Complaint.* Plaintiffs have therefore failed to plead facts sufficient to support a claim for breach of contract.

(38)    C.H. Robinson did not breach its Contract with ABB Power Generation. **Ex. 1.**

(39)    Neither Plaintiff has a claim for contractual indemnity against C.H. Robinson. **Ex. 1.**

(40)    Plaintiffs filed this lawsuit against C.H. Robinson on July 16, 2003, more than two (2) years after they settled with the Zamora family in the underlying litigation. *Plaintiffs' Original Complaint;* **Ex. 13,** *Plaintiffs' Thirteenth Amended Original Petition;* **Ex. 14,** *Plaintiffs' Fourteenth Amended Original Petition; see also* **Ex. 15,** *Correspondence from Counsel for C.H. Robinson to Counsel for ABB Kraftwerke and ABB Alstom Power, dated June 5, 2000* (CHR ABB 000093).

(41)    Plaintiffs' claim for indemnity for sums paid to the Zamora family is barred by limitations.

(42)    Immediately prior to the lift of the generator, a representative of Brownsville Barge & Crane presented Mr. Schneider with an indemnity agreement covering any accident that might occur during the lift of the generator. *Plaintiffs' First Amended Original Complaint* at ¶¶ 14-16. Mr. Schneider signed the agreement on behalf of "ABB Company." **Ex. 16,** *Lifting Services Agreement at Exhibit "A".* C.H. Robinson did not sign and was not obligated to sign the agreement. *Id.*

(43)    Brownsville Barge & Crane's judgment against ABB Alstom Power (Switzerland) Ltd. or ABB Kraftwerke Aktiengesellschaft was on a claim for contractual indemnity, and not a claim for vicarious liability. The judgment was affirmed on appeal. *ABB Kraftwerke Aktiengesellschaft v. Brownsville*

*Barge & Crane, Inc.*, 115 S.W.3d 287 (Tex. App. – Corpus Christi 2003, pet. denied).

(44)     Plaintiffs have produced no evidence to support a contention that they settled <u>only</u> claims of purely vicarious liability, or even <u>a</u> claim for vicarious liability.

(45)     On November 30, 1999, ABB Kraftwerke and ABB Alstom Power filed a cross-action for contribution and indemnity against C.H. Robinson. **Ex. 8.** In December 1999, counsel for ABB Kraftwerke and ABB Alstom Power agreed to non-suit these claims against C.H. Robinson in return for an agreement that C.H. Robinson assist ABB Kraftwerke and ABB Alstom Power by participating in informal discovery. **Ex. 9**; and *Anticipated Testimony of Tom Lockhart, Counsel for C.H. Robinson in Zamora Lawsuit.*

(46)     In reliance on ABB Kraftwerke and ABB Alstom Power's agreement to dismiss its cross-action for contribution and indemnity, C.H. Robinson did assist ABB Kraftwerke and ABB Alstom Power by participating in informal discovery. **Ex. 10,** *Correspondence from Counsel for ABB Kraftwerke and ABB Alstom Power to Counsel for C.H. Robinson, dated March 14, 2000* (CHR ABB 002215-2216); **Ex. 11,** *Correspondence from Counsel for C.H. Robinson to Counsel for ABB Kraftwerke and ABB Alstom Power, dated April 5, 2000* (CHR ABB 002218-2219); *Anticipated Testimony of Tom Lockhart, Counsel for C.H. Robinson in Zamora Lawsuit.*

(47)     Given Plaintiffs' agreement to dismiss its cross-action for contribution and indemnity and C.H. Robinson's reliance on that agreement, Plaintiffs are estopped from pursuing a claim for indemnity against C.H. Robinson. **Exs. 8-11**; *Anticipated Testimony of Tom Lockhart, Counsel for C.H. Robinson in Zamora Lawsuit.*

(48)     Given Plaintiffs' agreement to dismiss its cross-action for contribution and indemnity in exchange for C.H. Robinson's assistance in informal discovery, and Plaintiffs' subsequent motion to dismiss its cross-action for contribution and indemnity, Plaintiffs have waived any right to pursue a claim for indemnity against C.H. Robinson. **Exs. 8-11;** *Anticipated Testimony of Tom Lockhart, Counsel for C.H. Robinson in Zamora Lawsuit.*

(49)     Mr. Zamora's family made no claim against ABB Alstom Power (Switzerland) Ltd. and ABB Kraftwerke Aktiengesellschaft for vicarious liability. **Ex. 13,** *Plaintiffs' Thirteenth Amended Original Petition in Zamora Lawsuit;* **Ex. 14,** *Plaintiffs' Fourteenth Amended Original Petition in Zamora Lawsuit.*

(50)    Mr. Zamora's family settled its claims against C.H. Robinson for $1 million in December 1999. **Ex. 6**, *Compromise, Settlement and Release Agreement between C.H. Robinson and Zamora family* (CHR ABB 001950-1966); **Ex. 7**, *Judgment Approving Compromise, Settlement and Release Agreement between C.H. Robinson and Zamora family* (CHR ABB 002371-2381).

(51)    On November 30, 1999, ABB Kraftwerke and ABB Alstom Power filed a cross-action for contribution and indemnity against C.H. Robinson. **Ex. 8**, *Defendants ABB Kraftwerke Aktiengesellschaft and ABB Alstom Power (Switzerland) Ltd., Formerly Known as ABB Power Generation, Ltd.'s Cross-Action Against Defendant C.H. Robinson Company and Todd Strever, Individually and as Manager and Employee of C.H. Robinson Company (filed in Zamora Lawsuit)* (CHR ABB 002302-2305). In December 1999, counsel for ABB Kraftwerke and ABB Alstom Power agreed to a non-suit of these claims against C.H. Robinson in return for an agreement that C.H. Robinson assist ABB Kraftwerke and ABB Alstom Power by participating in informal discovery. **Ex. 9**, *Defendants ABB Kraftwerke Aktiengesellschaft and ABB Alstom Power (Switzerland) Ltd., Formerly Known as ABB Power Generation, Ltd.'s Notice of Non-Suit of Cross-Action Against Defendant C.H. Robinson Company and Todd Strever, Individually and as Manager and Employee of C.H. Robinson Company (filed in Zamora Lawsuit)* (CHR ABB 002345-2350); *Anticipated Testimony of Tom Lockhart.* C.H. Robinson did assist ABB Kraftwerke and ABB Alstom Power by participating in informal discovery. **Ex. 10**, *Correspondence from Counsel for ABB Kraftwerke and ABB Alstom Power to Counsel for C.H. Robinson, dated March 14, 2000* (CHR ABB 002215-2216); **Ex. 11**, *Correspondence from Counsel for C.H. Robinson to Counsel for ABB Kraftwerke and ABB Alstom Power, dated April 5, 2000* (CHR ABB 002218-2219).

(52)    Given Plaintiffs' agreement to dismiss its cross-action for contribution and indemnity and C.H. Robinson's reliance on that agreement, Plaintiffs are estopped from pursuing a claim for indemnity against C.H. Robinson. **Exs. 8-11**; *Anticipated Testimony of Tom Lockhart, Counsel for C.H. Robinson in Zamora Lawsuit.*

(53)    Given Plaintiffs' agreement to dismiss its cross-action for contribution and indemnity in exchange for C.H. Robinson's assistance in informal discovery, and Plaintiffs' subsequent motion to dismiss its cross-action for contribution and indemnity, Plaintiffs have waived any right to pursue a claim for indemnity against C.H. Robinson. **Exs. 8-11**; *Anticipated Testimony of Tom Lockhart, Counsel for C.H. Robinson in Zamora Lawsuit.*

(54)    The Zamora family settled its claims against ABB Kraftwerke and ABB Alstom Power. These claims did not include a claim for vicarious liability. **Ex. 13**, *Plaintiffs' Thirteenth Amended Original Petition in Zamora Lawsuit*

(alleging claims against ABB Kraftwerke and ABB Alstom Power for negligence and products liability based on a defects in design, manufacture and marketing); **Ex. 14,** *Plaintiffs' Fourteenth Amended Original Petition in Zamora Lawsuit* (establishing that all claims by the Zamora family against ABB Kraftwerke and ABB Alstom Power were settled except for a dispute concerning payment of court costs and deposition costs pursuant to the settlement agreement).

(55)   If the law allowed the parties to present evidence outside the pleadings in the Zamora Lawsuit in order to establish the nature of the claims made against ABB Kraftwerke and ABB Alstom Power by the Zamora family, the law would effectively eliminate defendant's motivation to settle. *Anticipated Testimony of Tom Lockhart, Counsel for C.H. Robinson in Zamora Lawsuit.*

(56)   Plaintiffs have produced no evidence to support a contention that they settled <u>only</u> claims of purely vicarious liability.

(57)   Neither ABB Kraftwerke nor ABB Alstom Power settled claims for vicarious liability. **Ex. 13,** *Plaintiffs' Thirteenth Amended Original Petition in Zamora Lawsuit* (alleging claims against ABB Kraftwerke and ABB Alstom Power for negligence and products liability based on a defects in design, manufacture and marketing); **Ex. 14,** *Plaintiffs' Fourteenth Amended Original Petition in Zamora Lawsuit* (establishing that all claims by the Zamora family against ABB Kraftwerke and ABB Alstom Power were settled except for a dispute concerning payment of court costs and deposition costs pursuant to the settlement agreement).

(58)   Neither ABB Kraftwerke nor ABB Alstom Power was vicariously liable for the acts or omissions of C.H. Robinson.

(59)   Evidence developed in the Zamora Lawsuit supports the Zamora family's allegations of direct liability against ABB Kraftwerke and ABB Alstom Power. *Deposition of Sandro A. Lepori taken May 1, 2001* at 4:5-11; 5:2-5; 8:7-20; 10:21-23 (establishing that ABB company manufactured and marketed generator in question); *Deposition of Roland Schneider taken April 7, 2000* at 5:16-22; 29:23 – 30:6 (wherein Schneider testified that he worked for ABB Alstom's predecessor and that "for the past 10, 12 years we've shipped worldwide 340 –380 generators in all ports of the world; very large numbers, in any event."); *Id.* at 20:19-22; 29:23 – 33:5 (establishing that no decals, warnings, or instructions concerning the jacking plate were in place at the time of the Zamora accident); *Deposition of Alfredo Arteaga taken March 13, 2000* at 9:10 – 10:18; 13:20-23 (wherein Arteaga, an AMFELS employee who was present at the scene of the accident, testifies, "But I still feel that this accident would not have happened if in the topside of the motor right here, they would have put a warning that these bolts were not fastened

on the unit."); *Deposition of Jose Cruz Garcia taken March 13, 2000* at 11:1-4; 14:8-13; 21:14 – 22:14 (wherein Cruz Garcia, an AMFELS employee who was present at the scene of the accident, testifies that there were no instructions, decals, or warning that only two bolts held the jacking plate in place); *Deposition of Andreas Rebholz taken April 7, 2000* at 4:24 – 5:2; 8:7-16; 12:12-19 (wherein Rebholz, an employee of ABB Alstom and Schneider's subordinate, testified that only two of the four bolts on the jacking plate actually held the plate in place, and that Schneider was present at the time of the accident to answer any questions about the configuration, and that part of Schneider's job was to advise that the jacking plates were being taken off incorrectly and unsafely, if he observed that the jacking plates were being taken off incorrectly or unsafely); *Deposition of Roland Schneider dated April 7, 2000* at 5:16-22; 24:24 – 26:9 (acknowledging that the accident might not have happened if Schneider, when he realized the nuts on the jacking plate had been loosened, had insisted that the nuts be put back on, or if, when he realized the nuts had been taken off, he had insisted that the bolts not be removed); *Deposition of Roland Schneider taken April 7, 2000* at 14:13 – 15:16; 26:21 – 27:16 (testifying that he realized prior to the accident that workers had either loosened or "all together removed" the nuts on the bolts securing the jacking places to the generator.)

(60)     ABB Kraftwerke did not ask C.H. Robinson to act as its agent, and C.H. Robinson did not agree to act as ABB Kraftwerke's agent.  There is no evidence of any agreement between C.H. Robinson and ABB Kraftwerke. *Deposition of Tom Ferguson taken February 25, 2005* at 32:20-22 (testifying that C.H. Robinson never agreed to act as ABB's agent).

(61)     There is also no evidence that ABB Alstom Power asked C.H. Robinson to act as its agent, or that C.H. Robinson agreed to act as ABB Alstom Power's agent.  Nothing in the Contract evidences an understanding between the parties that C.H. Robinson would act as ABB Power Generation's agent. *Deposition of Tom Ferguson taken February 25, 2005* at 32:20-22 (testifying that C.H. Robinson never agreed to act as ABB's agent).

(62)     C.H. Robinson, its subcontractors, and the subcontractors hired by C.H. Robinson's subcontractors, provided all tools and materials used in performing services for ABB Power Generation Ltd., other than the generator that was to be transported and some packing materials for the generator. *Deposition of Todd Strever taken January 21, 2005* at 33:14-24; *Deposition of Charles Cherrington taken January 7, 2000* at 15:11-17. C.H. Robinson secured the manpower, floating crane, rail cars, skidding equipment, gantry, tie downs, road and rail clearances and expertise to procure same. *Plaintiffs First Amended Original Complaint* at ¶ 8, 10-12; *Deposition of Sandro Lepori taken May 1, 2001* at 107:1-22; *Deposition of Tom Ferguson taken*

*February 25, 2005* at 7:25-8:11; 8:20-10:18; 23:8-22; 33:14-22; *Deposition of Todd Strever taken January 21, 2005* at 27: 8-13.

(63)     C.H. Robinson subcontracted with Schaefer Stevedoring to provide stevedoring services for the lift of the generator from a lash barge to a rail car at the Port of Brownsville. Schaefer hired several longshoremen, including Mr. Oscar Zamora, to assist in the lift of a generator from a barge to a rail car at the Port of Brownsville on March 23, 1999. *Plaintiffs' First Amended Complaint* at ¶¶ 10, 17.

(64)     C.H. Robinson was paid by the job, and not by time (hour, week or months) to perform the Contract. *Deposition of John Barry taken December 15, 2004* at 14:3 – 16:1; *Deposition of Sandro Lepori taken May 1, 2001* at 4:7-11; 14:17-23 (wherein Lepori testified as the ABB companies' representative that "ABB hire[d] C.H. Robinson on a fixed price...[a]nd for X number of dollars, they were to take the generator from its position on the LASH barge to its ultimate destination in Mexico."); *Deposition of Todd Strever taken January 21, 2005* at 34:13-21;   *Deposition of Tom Ferguson taken February 25, 2005* at 32:24 – 33:5.

(65)     C.H. Robinson had the right and the responsibility to control the execution of the Contract. *Deposition of John Barry taken December 15, 2004* at 25:14-16. C.H. Robinson was responsible for all requirements, and services necessary to move the generator from Brownsville to Monterrey. *Id.* at 14:16-17; 15:18-19; 15:25; 16:1-2; and 16:4-5. ABB Power Generation turned over control of the project to C.H. Robinson. *Statement of Sandro Lepori taken February 14, 2005* at 2:5-19. C.H. Robinson had the task to choose, control, and supervise subcontractors, their work, and how the transportation of the generator was carried out from Brownsville. *Id.* at 14:36-38. ABB did not control the specific details concerning the lift of the generator. *Id* at 35:1-2.

(66)     Mr. Schneider, on behalf of ABB Kraftwerke, ABB Power Generation, or ABB Alstom Power, did not have the right to control the details of the work performed by C.H. Robinson or by Schaefer Stevedoring. Mr. Schneider was present only as a consultant, to answer any questions concerning the generator. *Deposition of Roland Schneider taken April 7, 2000* at 20:23 – 21:12; 23:1-2; *Deposition of Todd Strever taken January 21, 2005* at 31:13-17 (testifying that Schneider's purpose in being present at the lift was "to advise on information that [C.H. Robinson] needed regarding the pieces themselves."). His purpose was to "act as a consultant double-checking with Todd Strever at all times with the subcontractors." *Deposition of Roland Schneider taken April 7, 2000* at 45:20-23. He did not give instructions. *Id.* at 43:19-21; *see also Deposition of Sandro Lepori taken April 7, 2000* at 5:24 – 6:10 (wherein Schneider's immediate supervisor states Schneider "was