there not to supervise but to answer questions"); *see also Statement of Sandro Lepori taken February 14, 2005* at 28:42-45 (Schneider was in Brownsville to supply information but not to supervise); *see also February 15, 2005 Statement of Roland Schneider* at 1:30-32 (stating that his job is to give advice to companies such as C.H. Robinson, if necessary) and 5:22-24 (stating that he could have decided to remove the jacking lugs when the generator was on the railroad car, but he was there to give advice, not commands).

(67)   Plaintiffs took the position in the Zamora Lawsuit that Schneider

>accompanied the equipment to Brownsville to provide technical advice about the equipment to C.H. Robinson, and to answer questions about its specifications, if any. Mr. Schneider was specifically prohibited from interfering in the manner of unloading as performed at the direction of C.H. Robinson. C.H. Robinson's employees and representatives asked no questions of Mr. Schneider. However, at one point in the transfer of the equipment from the lash barge to the rail car, Mr. Schneider noticed that the stevedores were removing the nuts which secure the lower bolts to the footplate of the generator. Although contractually prohibited from interfering with C.H. Robinson's performance of the transport of the generator, Mr. Schneider advised C.H. Robinson's representatives not to remove the bolts from the jacking plate and the footplate. Nonetheless, inexplicably, the bolts were removed, resulting in Mr. Zamora's death.

**Ex. 12**, *ABB Defendants' Response to Plaintiffs' Motion to Compel and for Sanctions (filed in Zamora Lawsuit)*

(68)   Plaintiffs' representations in the Zamora Lawsuit are contrary to the position Plaintiffs now assert, that is, that C.H. Robinson was their agent. Plaintiffs successfully maintained their position that C.H. Robinson was not their agent, as evidenced by the Zamora family's willingness to agree to indemnify C.H. Robinson "from and against each and every claim, demand, cause of action, lawsuit, judgment or award by or in favor of any other person or entity which relates to, results from, is based on or arises out of or in connection with any claim, cause of action, act, transaction, or occurrence which is the subject of this lawsuit and arises by, through or under the releasing parties." **Ex. 6** at 001956-1957. There is no evidence that Plaintiffs' statement were made due to fraud or duress. Therefore, Plaintiffs are judicially estopped from asserting that C.H. Robinson was its agent.

(69) Plaintiffs' representations in the Zamora Lawsuit constitute a judicial admission that C.H. Robinson was not the agent of either ABB Kraftwerke or ABB Alstom Power. Their judicial admission prevents them from now contending that C.H. Robinson was their agent. **Ex. 12,** *ABB Defendants' Response to Plaintiffs' Motion to Compel and for Sanctions (filed in Zamora Lawsuit)*.

(70) The settlement agreement between C.H. Robinson and the Zamora family included an indemnity provision. That indemnity provision required the Zamora family to

> "forever indemnify and hold harmless [C.H. Robinson], from and against each and every claim, demand, cause of action, lawsuit, judgment or award by or in favor of any other person or entity which relates to, results from, is based on or arises out of or in connection with any claim, cause of action, act, transaction, or occurrence which is the subject of this lawsuit and arises by, through or under the releasing parties whether asserted directly or indirectly, by way of contribution, *common law indemnity, contractual indemnity, statutory indemnity*, liens or otherwise, either in this suit or any other lawsuit".

**Ex. 6** at 001956-1957.

(71) ABB Power Generation controlled only the end sought to be accomplished under the Contract, and not the means and details of the accomplishment. . *Deposition of John Barry taken December 15, 2004* at 14:16-17; 15:18-19; 15:25; 16:1-2; 16:4-5; 25:14-16; *Statement of Sandro Lepori taken February 14, 2005* at 2:5-8; 14:32-42; 35:1-2.

(72) Nowhere in the Contract between C.H. Robinson and ABB Power Generation is C.H. Robinson given the ability to "bind" ABB Power Generation to costs incurred outside the Contract. **Ex. 1.**

(73) C.H. Robinson paid all its subcontractors directly, then billed those costs to ABB Alstom's predecessor. *Deposition of Sandro Lepori taken May 1, 2001* at 77:18-78:7; *Deposition of Todd Strever taken January 21, 2005* at 32:13-33:2; *Deposition of Tom Ferguson taken February 25, 2005* at 35:24-36:15.

(74) C.H. Robinson was an independent contractor, and not an agent of either ABB Kraftwerke or ABB Alstom Power. *Deposition of Tom Ferguson taken February 25, 2005* at 24:10-19.

(75) During the relevant time period, James "Jim" Hamilton and Todd Strever were employed by C.H. Robinson.

(76) During the relevant time period, Roland Schneider, Sandro Lepori, Andreas Rebholz, and Robert Schupp were employed by ABB Power Generation, the predecessor company to ABB Alstom Power.

(77) During the relevant time period, David Tsoi was a representative of Brownsville Barge & Crane.

(78) During the relevant time period, Charles Cherrington and Kenton E. "Ken" Schaeffer were representatives of Schaefer Stevedoring.

8. **Agreed Propositions of Law.**

    a. *Plaintiffs ABB Kraftwerke Aktiengesellschaft and ABB Alstom Power (Switzerland) Ltd., formerly known as ABB Power Generation, Ltd., and Defendant C.H. Robinson Company state that the following legal propositions are not in controversy:*

      (1)    Plaintiffs have no claim for contractual indemnity.

      (2)    Plaintiff ABB Kraftwerke has no claim for breach of contract.

      (3)    If Texas law applies, Plaintiff ABB Alstom Power's claim for breach of contract is barred by limitations.

      (4)    Plaintiffs have the burden to prove the substance of Swiss law to a reasonable certainty such that the district court could apply it. Plaintiffs also have the burden to demonstrate an actual conflict between Texas and Swiss law. *In re Avantel, S.A.*, 343 F.3d 311 (5th Cir. 2003).

      (5)    The only form of common-law indemnity that survived Texas' enactment of a comparative negligence scheme is indemnity for defendants whose liability is purely vicarious. Plaintiffs have no basis for a common law indemnity claim against Defendant C.H. Robinson unless they can prove that their liability in the underlying lawsuit was purely vicarious in nature.

      (6)    A forum state's conflict of laws rules are considered substantive law. A federal court sitting in diversity in Texas applies Texas choice-of-law-rules. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941); *see also Spence v. Glock, GmbH* 227 F.3d 308, 311 (5th Cir. 2000).

      (7)    In the absence of a choice of law contract clause, Texas law applies the "most significant relationship" test from the RESTATEMENT (SECOND) OF CONFLICT OF LAWS to determine what forum's laws will be applied to resolve the issue at hand. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421, 431 (Tex. 1984). The Court looks to the quality of the contacts with the forum. *Id.* at 421. Contacts are evaluated within the general framework of principals set out in section 6 of the Restatement. *Id.* at 42-21 n.5.

      (8)    Section 188 of the Restatement sets out specific factors for determining what law applies to contract cases. The factors are (a)

    the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188; *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 678-79 (Tex. 1990), *cert. denied* 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991) (adopting section 188 of the Restatement); *Access Telecom, Inc. v. MCI Telecommunications Corp.,* 197 F.3d 694, 705 (5th Cir. 1999). Contacts are to be evaluated according to their relative importance with respect to the particular issue." RESTATEMENT § 188.

(9)  Section 6 of the Restatement lists seven factors to consider in the "most significant relationship" test: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of these states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability, and uniformity of the result, and (g) ease in the determination and application of the law to be applied." RESTATEMENT § 6.

(10)  The number of contacts with a particular state is not determinative in a choice of law analysis. Selection of the applicable law depends on the qualitative nature of the particular contacts. *Duncan v. Cessna,* 665 S.W.2d at 421.

(11)  In addition to the Restatement factors in section 6, the "most significant relationship" test for torts, found in section 145 of the Restatement, is used to determine the applicable law for an indemnity claim. *See Torrington Co. v. Stutzman,* 46 S.W.2d 829, 848 (Tex. 2000). Those factors are (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation, and place of business of parties, and (d) the place where the relationship, if any between the parties is centered. RESTATEMENT § 145; *see also* RESTATEMENT § 173 cmt. b ("[A] right to indemnity in tort will usually be determined by the local law of the state of conduct and injury.")

(12)  Under Texas law, the limitations period for a breach of contract cause of action is four years. TEX. CIV. PRAC. & REM. CODE § 16.004(a)(5) (Vernon 2002); *Kansa Reinsurance Co., Ltd. v. Contressional Mortgage Corp of Texas,* 20 F.3d 1362, 1368 (5th Cir. 1994).

(13) Plaintiff ABB Kraftwerke Aktiengesellschaft has no claim for breach of contract against C.H. Robinson because it has not contract with C.H. Robinson. *Temple Eastex, Inc. v. Old Orchard Creek Partners, Ltd.*, 848 S.W.2d 724, 730 (Tex. App. – Dallas 1992, writ denied) ("Generally, only parties to a contract have the right to complain of its breach.").

(14) Neither Plaintiff has a claim for contractual indemnity against C.H. Robinson. *Hardy v. Gulf Oil Corp. v. Bouygues Offshore U.S.A., Inc.*, 949 F.2d 826, 830 (5th Cir. 1992) (holding that a claimant who has failed to secure an indemnity contract does not have a claim for contractual indemnity).

(15) A question of agency is generally one of fact, though where a set of facts is established, the existence of such a relationship can be determined as a matter of law. *Royal Mortg. Corp. v. Montague*, 41 S.W.3d 721, 733 (Tex. App.—Fort Worth 2001, no pet.).

(16) "The 'right to control' remains the 'supreme test'" of an agency relationship. *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 590 (Tex. 1964); RESTATEMENT (FIRST) OF AGENCY §1 (defining the agency relationship as that which results from the "consent by one person to another that the other shall act…subject to his control.").

9. **Contested Propositions of Law.**

    *a.*    *Plaintiffs ABB Kraftwerke Aktiengesellschaft and ABB Alstom Power (Switzerland) Ltd., formerly known as ABB Power Generation, Ltd., and Defendant C.H. Robinson Company state that the following questions of law are unresolved:*

(1)    Under the most significant relationship test, Swiss law applies to the facts of this case. Duncan v. Cessna Aircraft Co., 665 S.W.2d 414 (Tex. 1984).

(2)    The contract between ABB and Robinson was not a personal services contract but a management contract. Under the terms of the contract Robinson was to perform in more than one forum (Texas and Mexico).

(3)    Swiss law and Texas law conflict on the statute of limitations to be applied to a breach of contract case and on the concept of a bar under the settling joint-tort feasor doctrine.

(4)    ABB had the right to control the details of Robinson's work and in fact controlled the details of Robinson's work making Robinson ABB's agent for this project and preventing independent contractor status. Gutierrez v.Cayman Islands Firm of Deloitte & Touche, 100 S.W.3d 261 (Tex. App.–San Antonio 2002, no pet.).

(5)    ABB authorized Robinson to act on their behalf in managing the movement of their equipment from Brownsville to Monterrey. ABB retained the right to control the details of Robinson's work. Gutierrez.

(6)    Agency may be established outside the contract based on the parties words and conduct. ABB paid for charges above the contract price incurred by Robinson on their behalf. Robinson followed the directions of ABB with regard to securing the equipment and the choice of which Port to use as examples. Ross v. Texas One Partnership, 796 S.W.2d 206 (Tex. App.–Dallas 1990) writ denied.

(7)    Common law indemnity for vicarious liability of one's agent is recognized in Texas. Hardy v. Gulf Oil Corp., 949 F2d 826 (5th Cir. 1992)

(8)    The comparative fault system which eliminated the right of indemnity between joint tort feasors did not affect the right of a principle to recover for vicarious liability as a result of actions or inactions of their agent. B & B Auto Supply, Sand Pit & Trucking Co v.Central Freight Lines, Inc., 603 S.W.2d 814 (Tex. 1980)

JOINT PRETRIAL ORDER
32

(9) ABB controlled not just the end results of Robinson's work but the details or means of performing the work by Robinson. Gutierrez.

(10) Vicarious liability is the actions or inactions of another which give rise to liability on another's part. Hardy.

(11) Robinson's inactions resulted in the claims against ABB under both product liability and negligence theories which is the basis of Plaintiffs' claims that they were vicariously liable as a result of Robinson's inactions. Hardy.

(12) ABB's right to control the details of Robinson's work and control of the details of Robinson's work makes them ABB's agent, not an independent contractor. Walker Insurance Services v. Bottle Rock Power Corp., 108 S.W.2d 538 (Tex. Civ. App. [Houston 14th Dist.] 2003, no writ).

(13) Robinson was ABB's special agent, hired for the performance of a specific task. Clinkenbeard v. Central Southwest Gil Corp., 526 F2d 649 (5th Cir. 1976); Great American Cas. Co v. Richelberger, 37 S.W.2d 1050 (Tex.Civ. App.--Waco 1931) writ refused.

(14) No choice of law analysis is necessary in the absence of an actual conflict of laws. *Schneider Nat'l Transport v. Ford Motor Co.*, 281 F.3d 532, 536 (5th Cir. 2003); *W.R. Grace & Co. v. Cont'l Cas. Co.*, 896 F.2d 865, 874 (5th Cir. 1990) (when the substantive decisional law of all relevant jurisdictions is the same, a court need not "go through the motions" of making a choice of law).

(15) Plaintiffs have the burden to prove the substance of foreign law "to a reasonable certainty such that the district court could apply it," and to demonstrate an actual conflict between Texas and Swiss law. *In re Avantel, S.A.*, 343 F.3d 311, 321-22 (5th Cir. 2003), *citing Banque Libanaise Pour Le Commerce v. Khreich*, 915 F.2d 1000, 1006 (5th Cir. 1990); *Houston Casualty Co. v. Certain Underwriters at Lloyd's London*, 51 F.Supp.2d 789, 799 (S.D. Tex. 1999), *aff'd without published opinion*, 252 F.3d 1357.

(16) Absent sufficient proof to establish with reasonable certainty the substance of foreign law, the district court should apply the law of the forum. *In re Avantel, S.A.*, 343 F.3d at 321-22, *citing Seguros Tepeyac, S.A. Compania Mexicana de Seguros Generales v. Bostrom*,

347 F.2d 168, 174-5 n. 3 (5th Cir. 1965) (noting that it is generally agreed that "the law of the forum should apply when foreign law is not proved"); *Banque Libanaise*, 915 F.2d at 1006; *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1223-24 (10th Cir. 2000), *aff'd* 532 U.S. 588, 121 S.Ct. 1776, 149 L.Ed. 845 (2001).

(17) The location of offices other than headquarters and place of incorporation are considered in determining "the domicile, residence, nationality, place of incorporation and place of business of the parties." RESTATEMENT § 188; *See Perez v. Alcoa Fujikura, Ltd.*, 969 F.Supp. 991, 1004, 1005 (W.D. Tex. 1997) (in weighing section 188 factors and ultimately applying Texas law to a food services agreement, court noted that defendants were Mexican entities, but one entity had an office in Texas and the other entity's parent corporation had offices in Texas); *Bakhico Co. Ltd. v. Shasta Beverages, Inc.*, 1998 WL 614647 *3 (N.D. Tex. 1998) (unpublished opinion) (in weighing section 188 factors and ultimately applying Texas law, court noted that defendant Reynolds's principal place of business was in Virginia, but defendant was also authorized to do business in Texas and was a resident of Texas with a production facility located in Houston, Texas).

(18) Section 196 of the Restatement provides additional guidance for determining what law applies to contract cases where the contract is one for services. Section 196 states:

> The validity of a contract for the rendition of services and the rights created thereby are determined in the absence of an effective choice of law by the parties, by the local law of the state where the contract requires that the services, or a major portion of the services, be rendered, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

RESTATEMENT § 196. When an agreement provides for the performance of personal services in a single forum, this factor generally outweighs other factors and the law of the state in which the performance is to be tendered controls absent a more significant relationship with another state as revealed by section 6 of the Restatement. *See DeSantis*, 793 S.W.2d at 679.

JOINT PRETRIAL ORDER
34

(19)  Any interest Mexico may have in the application of its laws is attenuated given that none of the parties are residents of Mexico. *Pruitt v. Levi Strauss & Co.,* 932 F.2d 458, 461-62 (5th Cir. 1991).

(20)  Texas substantive law applies to Plaintiffs' breach of contract claim. *Court's September 30, 2004 Order on Plaintiffs' Motion for Application and Defendant's Amended Motion to Dismiss* at 10-12.

(21)  Texas law applies to all procedural issues in this suit. *Johansen v. E.I. DuPont de Nemours & Co.,* 810 F.2d 1377, 1381 (5th Cir. 1987); *Court's September 30, 2004 Order on Plaintiffs' Motion for Application and Defendant's Amended Motion to Dismiss* at 12. Statutes of limitation are procedural in nature. *Baker Hughes, Inc. v. Keco R&D, Inc.,* 12 S.W.3d 1, 4 (Tex. 1999).

(22)  Texas law applies to all claims and issues in this case. *Court's September 30, 2004 Order on Plaintiffs' Motion for Application and Defendant's Amended Motion to Dismiss* at 14.

(23)  The limitations period for a breach of contract cause of action runs from the date of the alleged breach. *Stine v. Stewart,* 80 S.W.3d 586, 592 (Tex. 2002). The statute of limitations begins to run from the time the alleged breach is committed "even where little, if any actual damage occurs immediately." *Hunton v. Guardian Life Ins. Co. of America,* 243 F.Supp.2d 686, 702-02 (S.D. Tex. 2002), *citing Atkins v. Crosland,* 417 S.W.2d 150, 153 (Tex. 1967).

(24)  Plaintiffs' claims for breach of contract are barred by limitations.

(25)  Plaintiff ABB Alstom Power has failed to plead a set of facts that would support a claim for breach of contract. *FDIC v. Ernst & Young,* 967 F.2d 166, 1172 (5th Cir. 1992).

(26)  Under Texas law, the limitations period for a claim of common law indemnity is two years. TEX. CIV. PRAC. & REM. CODE § 16.003 (Vernon 2002); *Advent Trust Co. v. Hyder,* 12 S.W.3d 534, 543 (Tex. App. – San Antonio 1999, pet. denied); *Powell v. Brantly Helicopter Corp.,* 396 F.Supp. 646, 652 (E.D. Tex. 1975); *Littlefield v. Scott,* 244 S.W. 824, 826 (Tex. Civ. App. – Beaumont 1922, writ ref'd).

(27)  The limitations period for an indemnity claim begins to run from the date of accrual. The claim accrues when the underlying litigation is settled or a judgment is rendered. *Advent Trust Co. v. Hyder,* 12 S.W.3d 534, 543 (Tex. App. – San Antonio 1999, pet. denied).

(28) Plaintiffs' claim for common law indemnity is barred by limitations. TEX. CIV. PRAC. & REM. CODE § 16.003 (Vernon 2002); *Advent Trust Co. v. Hyder*, 12 S.W.3d 534, 543 (Tex. App. – San Antonio 1999, pet. denied); *Powell v. Brantly Helicopter Corp.*, 396 F.Supp. 646, 652 (E.D. Tex. 1975); *Littlefield v. Scott*, 244 S.W. 824, 826 (Tex. Civ. App. – Beaumont 1922, writ ref'd).

(29) "The doctrine of equitable estoppel requires: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515-16 (Tex. 1998).

(30) Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming a right. *Bekins Moving & Storage Co. v. Williams*, 947 S.W.2d 568, 576 (Tex. App. – Texarkana 1997, no writ), *citing Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396, 401 (Tex. 1967).

(31) Texas law recognizes two categories of indemnity: contractual and common law. *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 830 (5th Cir. 1992); *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 819 (Tex. 1984) (recognizing survival of "a vestige of common-law indemnity," for purely vicarious liability); *B&B Auto Supply, Sand Pit & Trucking Co., v. Central Freight Lines, Inc.*, 603 S.W.2d 814, 817 (Tex. 1980) (holding that comparative fault system eliminated common law right of indemnity between joint tortfeasors, but did not bar contractual indemnity or indemnity for purely vicarious liability). Unlike contractual indemnity, common law indemnity in Texas is extremely circumscribed, and thus the general rule is that common law indemnity no longer exists in Texas. *See e.g., Cypress Creek Utility Serv. Co. v. Muller*, 640 S.W.2d 860, 864 (Tex. 1982).

(32) Common law indemnity is only available only to a defendant whose liability is **purely** vicarious in nature. *Hardy*, 949 F.2d at 831 (5th Cir. 1992) (emphasis added); *see also B&B Auto Supply v. Central Freight Lines, Inc.*, 603 S.W.2d 814 (Tex.1980) (holding that there is no common-law right to indemnity between joint tortfeasors and stating, "Our holding is not intended to bar indemnity in cases in which there is a contractual basis for indemnity or cases in which one party's liability is **purely** vicarious.") (emphasis added); *Vecellio Ins. Agency, Inc. v. Vanguard Underwriters Ins. Co.*, 127 S.W.3d 134, 138 (Tex. App. – Houston [1st Dist.] 2003, no pet.). ("Therefore, in

JOINT PRETRIAL ORDER

a case in which one defendant's liability is premised **solely** on *respondeat superior*, that defendant's liability is purely vicarious, and a claim for common law indemnity exists.") (emphasis added); *Compton v. Texaco, Inc.*, 42 S.W.3d 354, 361-362 (Tex. App. – Houston [14th Dist.] 2001, pet. denied) (holding common-law indemnity unavailable to party that settled claims of direct liability, as opposed to being held vicariously liable for the conduct of another), citing *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 819-20 (Tex. 1984); *St. Anthony's Hospital v. Whitfield*, 946 S.W.2d 174, 178 (Tex. App. – Amarillo 1997, writ denied) (holding that hospital's common-law claim for indemnity was not extinguished where **sole** theory of liability against hospital in underlying lawsuit was *respondeat superior* liability for negligence of employee) (emphasis added).

(33) Where a defendant is sued for its own, direct negligence, and not for vicarious liability, it may not pursue a claim for indemnity against its purported agent. See *St. Anthony's Hospital v. Whitfield*, 946 S.W.2d 174, 178 (Tex. App. – Amarillo 1997, writ denied).

(34) The only means of determining the nature of the claims against ABB Kraftwerke and ABB Alstom Power in the Zamora Lawsuit is through a review of the pleadings. *Id.* at 176, 178.

(35) The public policy of the State of Texas favors settlement. TEX. CIV. PRAC. & REM. CODE § 154.002; *Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171, 178 (Tex. 1997); *Elbaor v. Smith*, 845 S.W.2d 240, 250 (Tex. 1992).

(36) Neither ABB Kraftwerke nor ABB Alstom Power settled claims for vicarious liability. See *St. Anthony's Hospital v. Whitfield*, 946 S.W.2d 174, 175, 178 (Tex. App. – Amarillo 1997, writ denied).

(37) Neither ABB Kraftwerke nor ABB Alstom Power was vicariously liable for the acts or omissions of C.H. Robinson.

(38) Under the doctrine of judicial estoppel, a party who has made a sworn statement in a pleading, deposition, oral testimony, or affidavit in a judicial proceeding is barred from maintaining a contrary position in a subsequent proceeding. *Brown v. Lanier Worldwide, Inc.*, 124 S.W.3d 883, 898 (Tex. App. – Houston [14th Dist.] 2004, no writ). "Significantly, the doctrine is intended to protect the integrity of the judicial system and to prevent a party from 'playing fast and loose' with the courts to suit the party's purposes." *Id.* at 899. The elements of judicial estoppel are (1) a sworn, prior inconsistent statement made

(39) in a prior judicial proceeding; (2) the successful maintenance of the contrary position in the prior action; (3) the absence of inadvertence, mistake, fraud, or duress in the making of the prior statement; and (4) the statement was deliberate, clear, and unequivocal. *Id.*

(39) Pleadings in other actions that contain statements inconsistent with the party's present position can be received as judicial admissions. *Brown v. Lanier Worldwide, Inc.,* 124 S.W.3d 883, 900 (Tex. App. – Houston [14th Dist.] 2004, no pet.). A judicial admission is a statement of fact that conclusively disproves a right of recovery or defense currently asserted. *Id., citing Richards v. Comm'n for Lawyer Discipline,* 35 S.W.3d 243, 247 (Tex. App. – Houston [14th Dist.] 2000, no pet.). A" judicial admission must be (1) made in the course of a judicial proceeding; (2) contrary to an essential fact for the party's defense; (3) deliberate, clear, and unequivocal; (4) related to a fact upon which judgment for the opposing party could be based; and (5) the enforcement of the admission would be consistent with public policy." *Id., citing Richards v. Comm'n for Lawyer Discipline,* 35 S.W.3d 243, 247 (Tex. App. – Houston [14th Dist.] 2000, no pet.); *see also Horizon/CMS Healthcare Corporation v. Auld,* 34 S.W.3d 887, 905 (Tex. 2000). A judicial admission is conclusive on the party making it; thus, it relieves his adversary from proving the fact admitted to and further bars the party from disputing it. *Horizon/CMS Healthcare,* 34 S.W.3d at 905; *Brown v. Lanier,* 124 S.W.3d at 900. Statements made by a party's attorney qualify as judicial admissions. *Brown v. Lanier,* 124 S.W.3d at 900.

(40) In order for an agency relationship to exist, there must be an agreement between the parties, either express or implied, indicating that there was a meeting of the minds as to the agency relationship. *Northwinds Abatement, Inc. v. Employers Ins. of Wausau,* 258 F.3d 345, 351 (5th Cir. 2001); *Lone Star Partners v. NationsBank Corp.,* 893 S.W.2d 593, 599-600 (Tex. App.—Texarkana 1994, writ denied). Other factors used to determine whether such an agency relationship existed include (1) the independent nature of the business; (2) the obligation of the contractor to furnish necessary tools, supplies, and material to perform the job; (3) the right of control over the details and progress of the work, not including details as to final results; (4) the time for which the contractor is hired; and (5) the method of payment, whether it be by time or by the job. *Limestone Products Distribution, Inc. v. McNamara,* 71 S.W.3d 308, 312 (Tex. 2002); *Pitchfork Land & Cattle Co. v. King,* 346 S.W.2d 598, 603 (Tex. 1961); *Indust. Indemnity Exch. v. Southard,* 160 S.W.2d 905, 907 (Tex. 1942).

(41) The factors to consider in determining whether someone is an independent contractor, as opposed to an agent, are: (1) the independent nature of the business; (2) its obligation to furnish necessary tools, supplies, and material to perform the job; (3) its right to control the progress of the work, except as to final results; (4) the time for which the company is employed; and (5) the method of payment, whether by time or by the job. *Texas A&M Univ. v. Bishop*, 156 S.W.3d 580, 584-85 (Tex. 2005), *citing Indus. Indem. Exch. v. Southard*, 160 S.W.2d 905, 906 (Tex. 1942).

(42) The possibility that one of the Plaintiffs may have paid for spreader bars used in the lift of turbines pursuant to the contract between C.H. Robinson and ABB Power Generation does not create a fact issue on the issue of agency. *See Hoechst Celanese Corp v. Compton*, 899 S.W.2d 215, 221 (Tex. App. – Houston [14th Dist.] 1994, writ denied) (police officers hired by Celanese to direct traffic were independent contractors, where they brought their own uniforms and reflective vests to job site, but used ten traffic cones provided by Celanese).

(43) "Where one has the right to control the end sought to be accomplished but not the means and details of the accomplishment; that is, only what shall be done, not how it shall be done, the person employed acts as an independent contractor and not as an agent." *First Nat. Bank of Fort Worth v. Bullock*, 584 S.W.2d 548, 551-52 (Tex.Civ.App. – Austin 1979, writ ref'd n.r.e.). Where the only evidence of the principal's right to control more than the end result is (1) testimony that the principal could have told the purported agent anything it wanted done and the purported agent would have done it, and (2) testimony that the principal exercised some minimal control over one aspect of the job, this is no more than a scintilla of evidence of the requisite right of control. *Anchor Cas. Co. v. Hartsfield*, 390 S.W.2d 469, 471 (Tex. 1965).

(44) The sporadic action of an overzealous supervisor in directing the details of job does not make an independent contractor an agent. *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 588 (Tex. 1964). "A building contractor agreeing to construct a residence for a man and wife in accordance with written plans and specifications does not cease to be an independent contractor insofar as the building of the house is concerned, simply because the wife may, despite the written contract, give minute instructions as to how she wants her fireplace constructed." *Id.*

(45) A willingness to work to accommodate a customer's request does not equate to a right to control. *Schrum v. Land*, 12 F.Supp.2d 576, 582

JOINT PRETRIAL ORDER
39

(S.D.Tex. 1997); citing *Walker v. Federal Kemper Life Assur. Co.*, 828 S.W.2d 442, 452 (Tex. App. -- San Antonio 1992, writ denied); *Anchor Cas. Co.*, 390 S.W.2d at 471.

(46) In order to support the creation of a principal-agent relationship, a contract must evidence a meeting of the minds *as to the intent to create a principal-agent relationship*, not just a meeting of the minds. *A & S Elec. Contractors, Inc. v. Fischer*, 622 S.W.2d 601, 603-604 (Tex. App. – Tyler 1981, no writ) (emphasis added). Otherwise, every contract would establish a principal-agent relationship.

(47) Where there is no ambiguity in a contract, the parties' disagreement over the interpretation of the contract will not make it ambiguous. *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 727, 732 (Tex. 1981).

(48) C.H. Robinson was an independent contractor, and not an agent of either ABB Kraftwerke or ABB Alstom Power. *Northwinds Abatement, Inc. v. Employers Ins. of Wausau*, 258 F.3d 345, 351 (5th Cir. 2001); *Lone Star Partners v. NationsBank Corp.*, 893 S.W.2d 593, 599-600 (Tex. App.—Texarkana 1994, writ denied); *Limestone Products Distribution, Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002); *Pitchfork Land & Cattle Co. v. King*, 346 S.W.2d 598, 603 (Tex. 1961); *Indust. Indemnity Exch. v. Southard*, 160 S.W.2d 905, 907 (Tex. 1942); *Texas A&M Univ. v. Bishop*, 156 S.W.3d 580, 584-85 (Tex. 2005), *citing Indus. Indem. Exch. v. Southard*, 160 S.W.2d 905, 906 (Tex. 1942);

(49) There is no evidence to support Plaintiffs' alleged causes of action, and C.H. Robinson is entitled to judgment as a matter of law. FED. R. CIV. P. 52(c).

10. **Exhibits.**

    a. Plaintiffs ABB Kraftwerke Aktiengesellschaft and ABB Alstom Power (Switzerland) Ltd., formerly known as ABB Power Generation, Ltd. and Defendant C.H. Robinson Company have electronically filed together herewith their Exhibit Lists. **Exs. A and B.** Defendant C.H. Robinson provided Plaintiffs with copies of Defendant's exhibits on May 10, 2005.

11. **Witnesses.**

    a. ABB Kraftwerke Aktiengesellschaft and ABB Alstom Power (Switzerland) Ltd., formerly known as ABB Power Generation, Ltd., Plaintiffs, and C.H. Robinson Company, Defendant, have electronically filed herewith a copy of their witness lists with the names and addresses of witnesses who may be called, and a brief statement of the nature of their testimony. **Exs. C and D.**

    b. If other witnesses to be called at the trial become known, their names, addresses, and subject of their testimony will be reported to opposing counsel in writing as soon as they are known; this does not apply to rebuttal or impeachment witnesses.

12. **Settlements.**

    a. ABB Kraftwerke Aktiengesellschaft and ABB Alstom Power (Switzerland) Ltd., formerly known as ABB Power Generation, Ltd., Plaintiffs, and C.H. Robinson Company, Defendant, state that all settlement efforts have been exhausted, and the case will have to be tried.

13. **Trial**

    a. ABB Kraftwerke Aktiengesellschaft and ABB Alstom Power (Switzerland) Ltd., formerly known as ABB Power Generation, Ltd., Plaintiffs, and C.H. Robinson Company, Defendant, estimate that the length of trial will be five days.

    b. The only logistical problem of which the parties are aware is that three of C.H. Robinson's witnesses live out-of-state, and will require sufficient advance notice to appear at trial.

14. **Attachments.**

    a. On Tuesday, May 10, 2005, Defendant C.H. Robinson Company forwarded via federal express an original and two copies of its Proposed Conclusions of Law and of its Proposed Findings of Fact, along with a disk containing both

documents. At the request of Plaintiffs' counsel, Defendant included on the disk copies of Plaintiffs' Proposed Conclusions of Law and Proposed Findings of Fact

_____          Date: _____
UNITED STATES DISTRICT JUDGE

Approved:

*/s/ H. Williams*_____          Date: 5/12/2005
ATTORNEY-IN-CHARGE, PLAINTIFF

_*/s/ Stewart Watkins*_____          Date: 5/11/2005
ATTORNEY-IN-CHARGE,                                                           DEFENDANT