# EXHIBIT "A"

s held that
ainst [de-
16.003(b)
absolute 2-
tions, and
eath.' This
.01, which
withstand-
ntiff suing
necessarily
ring a law-
ires at the
years after

Tex.1995).
ons period,
eaches age
a minor to
nal injuries
le conclude
general toll-
nd §16.003
aim."
*Corp.*, 925
1996), *rev'd*
8). "[T]he
malpractice
and Ins. Im-
es not apply
sts between
suit filed by
e to protect
y the physi-
limitations

*Bonds*, ___
2). "We an-
seeks reim-
charges: the
he county is
rs, not when
ected by the

*itle*
4 S.W.2d 89,
1). "Actions

based upon tortious interference with an existing contract, tortious interference with business relations, and slander of title are all controlled by a two-year statute of limitations. [¶] A cause of action for tortious interference with an existing contract does not accrue until the contract is interfered with and harm caused to the plaintiff. Similarly, a cause of action for tortious interference with business relations does not accrue until existing negotiations, which are reasonably certain of resulting in a contract, are interfered with such that the negotiations terminate and harm to the plaintiff results. Likewise, a claim for slander of title does not accrue until there has been a loss of a specific sale."

*Wiretap Action*

***Collins v. Collins***, 904 S.W.2d 792, 804 (Tex.App.—Houston [1st Dist.] 1995), *writ denied*, 923 S.W.2d 569 (Tex.1996). "An action under the state wiretap statute sounds in tort and is controlled by a 2-year statute of limitations."

*Wrongful Death*

***Russell v. Ingersoll-Rand Co.***, 841 S.W.2d 343, 348 (Tex.1992). "If a wrongful death action exists, it accrues, not when the decedent was injured, but at his death, and the limitations period on that action begins to run at death. But if a wrongful death action does not exist because the decedent could not maintain an action in his own right immediately prior to his death, … then no wrongful death action ever accrues. If a decedent's own cause of action were barred by governmental immunity, or statute, or release, or res judicata, or any other affirmative defense, there is no wrongful death action to accrue…. Section 16.003(b) does not create a cause of action, or resurrect one that has expired with the decedent; it only defines the period within which statutory beneficiaries must sue if they have a claim."

*Discovery Rule*

***Velsicol Chem. Corp. v. Winograd***, 956 S.W.2d 529, 531 (Tex.1997). "The discovery rule applies if: (1) the injury is inherently undiscoverable; and (2) the evidence of the injury is objectively verifiable." Discovery rule did not save claims for lost income, rents, and profits, damages to business reputation, and other damages resulting from defendant's application of chlordane to the premises. Supreme Court expressed no opinion on when limitations period would have commenced if only abatement damages had been sought. *See also* ***S.V. v. R.V.***, 933 S.W.2d 1, 6-8 (Tex.1996).

***Larue v. Genescreen, Inc.***, 957 S.W.2d 958, 960 (Tex.App.—Beaumont 1997, pet. denied). "In order for the discovery rule to apply, the nature of the injury incurred must be inherently undiscoverable and the evidence of injury must be objectively verifiable. 'An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence.' An 'objectively verifiable' injury is one in which the facts upon which liability is asserted are demonstrated by direct, physical evidence."

**(a)** A person must bring suit on the following actions not later than four years after the day the cause of action accrues:

(1) specific performance of a contract for the conveyance of real property;

(2) penalty or damages on the penal clause of a bond to convey real property;

(3) debt;

(4) fraud; or

(5) breach of fiduciary duty.

**(b)** A person must bring suit on the bond of an executor, administrator, or guardian not later than four years after the day of the death, resignation, removal, or discharge of the executor, administrator, or guardian.

**(c)** A person must bring suit against his partner for a settlement of partnership accounts, and must bring an action on an open or stated account, or on a mutual and current account concerning the trade of merchandise between merchants or their agents or factors, not later than four years after the day that the cause of action accrues. For purposes of this subsection, the cause of action accrues on the day that the dealings in which the parties were interested together cease.

History of CPRC §16.004: Acts 1985, 69th Leg., ch. 959, §1, eff. Sept. 1, 1985. Amended by Acts 1999, 76th Leg., ch. 950, §1, eff. Aug. 30, 1999.
See also chart, Statutes of Limitations, p. 70.

---

***Jackson v. Thweatt***, 883 S.W.2d 171, 172 (Tex. 1994). "Under 12 USC §1821(d)(14), the FDIC has six years to bring suit on delinquent notes acquired from a failed bank. The issue presented in these … cases is whether purchasers of such notes from the FDIC obtain the benefit of this federal limitations period. *At 176:* [W]e conclude that, pursuant to federal common law,





the limitations provision of 12 USC §1821(d)(14) applies to actions brought by purchasers of assets from the FDIC." *See also Cadle Co. v. Henderson*, below.

*Taub v. Houston Pipeline Co.*, ___S.W.3d___(Tex. App.—Texarkana 2002, n.p.h.) (No. 06-01-00073-CV; 4-10-02). "The cause of action in a breach of contract accrues when the contract is breached, or when the claimant has notice of facts sufficient to place him or her on notice of the breach. [¶] As a general rule, a cause of action accrues when a wrongful act causes some legal injury, even if the fact of the injury is not discovered until later and even if all resulting damages have not yet occurred. The 'discovery rule' is an exception to the general rule that an action does not accrue until the plaintiff knew, or in the exercise of reasonable diligence should have known, of the wrongful act and resulting injury."

*In re Estate of Fawcett*, 55 S.W.3d 214, 218-19 (Tex. App.—Eastland 2001, pet. denied). "Accrual of a cause of action is deferred in two types of cases: (1) those involving fraud or fraudulent concealment and (2) those where the injury is 'inherently undiscoverable' and is 'objectively verifiable.' [¶] [T]he commission of fraud or fraudulent concealment works to estop a defendant from asserting limitations as a defense because 'a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run.' ... The Supreme Court ... has categorized fiduciary duty cases under the second type of cases, but the court holds that the injuries from a breach of fiduciary duty are presumed to be inherently undiscoverable. The result is the same. Breach of fiduciary duty cases are treated similarly to fraud cases in terms of deferral of the cause of action; the issue is when the plaintiff knew or should have known, with the exercise of reasonable diligence, of her injury." *See also Poth v. Small, Craig, & Werkenthin, L.L.P.*, 967 S.W.2d 511, 515 (Tex.App.—Austin 1998, pet. denied).

*Hunter v. Johnson*, 25 S.W.3d 247, 250 (Tex.App.—El Paso 2000, no pet.). "Because [defendant] sought dismissal based on the statute of limitations by filing a motion to dismiss for failure to state a cause without first filing a special exception, however, [plaintiff] was denied any opportunity to raise an argument as to why the limitations period may not have expired. We therefore hold ... that a trial court can not circumvent a plaintiff's opportunity to develop such 'defenses' to the statute of limitations when a defendant raises the affirmative defense in a motion to dismiss for failure to state a cause of action (as opposed to a motion for summary judgment) by granting a defendant's motion to dismiss for failure to state a cause of action without first allowing the plaintiff to amend his pleadings."

*Cadle Co. v. Henderson*, 982 S.W.2d 543, 546 (Tex. App.—San Antonio 1998, no pet.). "This case presents a new twist on the [*Jackson v.*] *Thweatt* [, 883 S.W.2d 171 (Tex.1994)] facts: in a case where the original assignment expressly did not convey the benefits of the expanded statute of limitations, what happens if the assignor and assignee execute an amendment after the assignee has filed suit *and* after the state statute of limitations has run? According to Cadle, the amendment to the contract is dispositive.... According to Henderson, the amendment has no force because it was filed after the state statute had expired. We believe Henderson has the better argument."

*Halliburton v. City of San Antonio*, 974 S.W.2d 779, 784 (Tex.App.—San Antonio 1998, no pet.). "'[W]here periodic payments are contractually required, the statute of limitations will bar only those payments due more than four years before the filing of suit, even though the original breach may have occurred more than four years before suit was filed.'"

### CPRC §16.0045. FIVE-YEAR LIMITATIONS PERIOD

**(a)** A person must bring suit for personal injury not later than five years after the day the cause of action accrues if the injury arises as a result of conduct that violates:

(1) Section 22.011, Penal Code (sexual assault); or

(2) Section 22.021, Penal Code (aggravated sexual assault).

**(b)** In an action for injury resulting in death arising as a result of conduct described by Subsection (a), the cause of action accrues on the death of the injured person.

**(c)** The limitations period under this section is tolled for a suit on the filing of a petition by any person in an appropriate court alleging that the identity of the defendant in the suit is unknown and designating the unknown defendant as "John or Jane Doe." The person filing the petition shall proceed with due diligence to discover the identity of the defendant and amend the

# EXHIBIT “B”

Exhibit B

and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest.

Should this court hold for plaintiffs on the merits and enjoin further increases in aircraft operations and further issuing of carrier permits pending the filing of an environmental impact statement, it is clear that Chicago is not needed to execute said relief. Further, no argument is seriously proffered that Chicago's absence leaves any of the persons already parties subject to multiple or inconsistent obligations.

We need only consider, then, whether Chicago's absence will, as a practical matter, impair or impede its ability to protect its interest relating to the subject of this action. We do not believe that it will. First, defendants' cries of economic deterioration and damage to the City of Chicago are fanciful; the proposed relief would essentially maintain the status quo pending the filing of an environmental impact statement. More significantly, it is inconceivable that either the F.A.A. or C.A.B. could produce a meaningful statement without consulting the City of Chicago for its views and without balancing in among the factors adduced the economic impact of any proposed action on the City of Chicago. The City of Chicago is not prejudiced by its absence, and we hold that the City is not a party to be joined if feasible.

There being no further arguments of merit to consider, we order that defendants shall answer or further plead to Counts I–V of the Complaint. The motions to intervene are granted subject to the conditions stated herein, and defendants' motion to dismiss is denied except as to Count VI.

**Mrs. Winifred POWELL et al.**
**v.**
**BRANTLY HELICOPTER CORPORATION.**
**Civ. A. No. 6522.**

United States District Court, E. D. Texas, Beaumont Division.

June 27, 1975.

Insurer of helicopter flying service brought action against helicopter manufacturer seeking subrogation or indemnification for amounts insurer paid under policies covering property damage and injuries arising out of use of helicopter. The District Court, Steger, J., held that applicable two-year statute of limitations began to run on subrogation claim for damage to helicopter from time of helicopter accident causing insured's loss; that claim for helicopter damage, filed more than two years after accident, was time barred; that personal injury and property damage claims asserted in insurer's amended plea of intervention were barred by statute of limitations since insurer's original plea was barred; and that insurer failed to prove that personal injury and property damage settlements were reasonable and prudent or that insured faced potential liability in Illinois.

Judgment accordingly.

1. Courts ⇐375(1)

A federal court in a diversity case must apply applicable statute of limitations of forum state.

2. Courts ⇐375(1)

A federal court may not give a cause of action a longer life than it would have in state court.

3. Courts ⇐375(2)

Court sitting in Texas and hearing subrogation claim by insurer against alleged tort-feasor would apply two-year

Texas statute of limitations applicable to subrogation claims. Vernon's Ann. Tex.Civ.St. art. 5526.

**4. Limitation of Actions ⟹126**

Filing of products liability complaint by helicopter passenger's family charging helicopter manufacturer with liability did not toll running of two-year statute of limitations for filing of subrogation claim by insurer against manufacturer to recover sums paid under policies insuring helicopter. Vernon's Ann. Tex.Civ.St. art. 5526.

**5. Limitation of Actions ⟹60(11)**

In that insurer of helicopter flying service had no greater rights against alleged tort-feasor than insured, statute of limitations on insurer's subrogation claim against alleged tort-feasor began to run from date of helicopter accident causing insured's loss and not from date of insurer's payment to insured.

**6. Limitation of Actions ⟹60(11)**

Subrogation claim by insurer against alleged tort-feasor, asserted on May 18, 1970 and based on insurer's payment under policy for property damage to insured helicopter arising out of accident that occurred on March 30, 1968, was barred by two-year state statute of limitations applicable to subrogation claims. Vernon's Ann.Tex.Civ. St. art. 5526.

**7. Limitation of Actions ⟹56(2)**

Where insurer asserted against alleged tort-feasor claims for sums it paid out under policy covering injuries and property damage arising out of use of insured helicopter by way of common-law indemnity, statute of limitations commenced running when insurer paid money to settle claims asserted against insured.

**8. Limitation of Actions ⟹28(1)**

In that action against helicopter manufacturer by insurer to recover sums insurer paid claimants under policy which covered property damage and bodily injury claims that insured was legally obligated to pay was in nature of an implied contract arising out of a tort, applicable state statute of limitations was two years.

**9. Courts ⟹375(1)**

If claims are time barred in state court, then federal court may not entertain them.

**10. Limitation of Actions ⟹124**

Under law of Texas, insurer's initial plea of intervention in products liability action against helicopter manufacturer by deceased helicopter passenger's family did not toll running of statute of limitations on insurer's amended claims against manufacturer seeking to recover amounts which insurer paid passenger's family in settlement of an action against insured.

**11. Limitation of Actions ⟹127(11)**

Under Texas law, only way a subsequent amendment can evade proscription of statute of limitations is if original cause of action was not subject to plea of limitation. Vernon's Ann.Tex. Civ. art. 5539b.

**12. Limitation of Actions ⟹127(5)**

Where original plea of intervention by insurer in products liability action against helicopter manufacturer by deceased helicopter passenger's family was barred by statute of limitations, claims asserted by insurer in amended plea of intervention seeking to recover amounts insurer paid passenger's family in settlement of action against insured and paid other persons claiming injuries due to helicopter accident were also barred. Vernon's Ann.Tex.Civ.St. art. 5539b.

**13. Indemnity ⟹15(7)**

Insurer which agreed under policy to pay all property damage and injury claims that insured became legally obligated to pay due to operation of helicopter and which voluntarily settled claims arising out of helicopter accident without having insured's liability for such claims judicially determined bore burden of proving facts that potentially would have rendered insured liable to claimants and proving that all settlements were reasonable and prudent in

order to be indemnified by alleged tort-feasor.

**14. Indemnity ⇐15(7)**

Investigation report made shortly after accident involving insured helicopter was insufficient to prove that settlements voluntarily paid by insurer to claimants under policy which obligated insurer to pay all sums that insured was legally obligated to pay were reasonable and prudent and paid because insured faced potential liability so as to allow insurer to recover settlement amounts by way of indemnification from alleged tort-feasor.

---

W. Douglas Matthews, Houston, Tex., Windle Turley, Dallas, Tex., for plaintiffs.

Richard H. Caldwell, Frank J. Knapp, Butler, Binion, Rice, Cook & Knapp, Houston, Tex., for defendant.

William A. Conners, Jr., Houston, Tex., for intervenor, Southern Marine & Aviation Underwriters.

Lawrence Louis Germer, Orgain, Bell & Tucker, Beaumont, Tex., for intervenor, Zurich-American Ins. Co.

*MEMORANDUM OPINION*

STEGER, District Judge.

The Intervenor herein, Southern Marine & Aviation Underwriters, is seeking by way of subrogation and indemnity from the Defendant, Brantly Helicopter Corporation, certain sums paid under two policies of insurance issued by it to Rotor-Craft, Inc. and Frank Babcock. One policy covered physical damage to the Brantly helicopter involved in this suit, and the other was a liability policy covering personal injuries and property damage arising out of the use of this helicopter by the insured. The details of these policies and the claims of Southern Marine will be discussed after a brief review of the facts of this case and its procedural history.

*BACKGROUND*

On March 30, 1968, Bruce Holmes Powell, a NBC-TV cameraman, was riding as a passenger in a Brantly Model 305 helicopter in Orange, Texas, filming the Waggoner Carr for Governor campaign. This helicopter was owned by Frank Babcock, who leased it to a firm named Rotor-Craft, Inc., which was based in Houston. On the occasion in question the helicopter was being piloted by Kenneth J. Harmon, an employee of Rotor-Craft.

On that date, after Harmon and his passengers took off from an enclosed area and climbed to a height of approximately 100 feet, the helicopter began to spin to the right so that Harmon was forced to make an emergency landing near a railroad platform. Just after touching down, the right landing gear broke under the stress, causing the helicopter to roll to the right. When this happened the rotor blades began striking the ground, one broke loose and crashed through the canopy, striking Bruce Powell and fatally injuring him.

As a result of Mr. Powell's death his wife and children filed suit in the United States District Court for the Northern District of Illinois, in October, 1968, naming Frank Babcock, Kenneth Harmon, Rotor-Craft, Inc., Lear Jet Industries, Inc., and Avco Lycoming Corporation as defendants. This suit was subsequently dismissed on jurisdictional grounds.

After this dismissal suit was refiled in Illinois state court and this ended with a voluntary dismissal on August 13, 1969. Mrs. Powell received a settlement paid by Rotor-Craft's insurer, Southern Marine, in the amount of $55,-000.00, which was to be divided between herself and Brian F. Powell, her minor son. Covenants not to sue were executed by Mrs. Powell, Bruce Powell, Jr. and Pamela Powell in favor of Frank Babcock, the pilot Harmon, Rotor-Craft and Waggoner Carr. These covenants

specifically reserved rights against all other persons and corporations.

Thereafter, on December 26, 1969, Mrs. Powell and her children instituted a diversity suit in this district and division against the Defendant herein, Brantly, and several other defendants, some of which were named in the original federal court suit in Illinois and others which were omitted. In the original complaint, the Plaintiffs alleged that the Defendants were negligent in the conception, design, manufacture, assembling and distribution of the helicopter in question.

Brantly was not served with this complaint until approximately one year later and they didn't file answer until February 1, 1971. In the meantime Southern Marine, the insurer for Frank Babcock and Rotor-Craft, filed a motion to intervene and four days later on May 22, 1970, Southern Marine was allowed to intervene. The Defendants who previously answered in the case filed a Motion for Reconsideration strongly opposing the intervention. In opposing the intervention the Defendants raised several points, principally that the action by Southern Marine was barred by the Texas two year statute of limitations, Article 5526, *Vernon's Ann.Civ.St.* However, on January 12, 1971, the Motion for Reconsideration was denied and Southern Marine was allowed to intervene under Rule 24(b)(2), Fed.R.Civ.P. Brantly did not file an answer in the case until after the intervention was allowed and the Motion to Reconsider was denied, and they were not served with a copy of the intervention until approximately seven months after the original motion to intervene was granted.

In its plea of intervention, after adopting the Plaintiffs' allegations, Southern Marine alleged that the Defendants were liable for $40,344.38, which represented a sum they paid to Rotor-Craft under hull damage policy. This amount was the difference between the fair market value of the helicopter before the accident (claimed to be $44,000.00) and the reasonable salvage value after the accident and the policy deductible.

The main case between Mrs. Powell and Brantly went to trial on February 4, 1974, on Plaintiffs' Amended Complaint naming Brantly only and alleging causes of action based on negligence and strict liability. The other Defendants orignally named had been previously dismissed on motion by the Plaintiffs. Some four days prior to the commencement of this trial, Southern Marine filed an Amended Plea of Intervention also naming Brantly only. In addition to the property damage claimed previously Southern Marine now asserted the $55,000.00 against Brantly that it had paid in settlement to Mrs. Powell in the Illinois state court case. Additionally, Southern Marine asserted numerous small property damage settlement payments it made to people around the crash site in Orange. Brantly promptly filed an answer to this intervention denying the claims of Southern Marine and setting up the two year statute of limitations as an affirmative defense. At a conference in chambers, it was decided that the intervention would be severed from the main lawsuit and evidence would be presented at a later date should the jury find in favor of the Plaintiffs. The case between the Plaintiffs and Brantly was submitted to the jury on a products liability theory and on February 8, 1974, the jury returned a general verdict for the plaintiffs against Brantly for damages in the total amount of $355,000.00 actual and $10,000.00 punitive. Thereafter, the action between Southern Marine and Brantly was tried before the Court on May 27, 1975, and briefs were submitted by both parties.

After a careful study of these briefs, and the evidence presented at trial, as well as the applicable authorities, the Court is of the opinion that all of the relief prayed for in the Amended Plea in Intervention should be denied and judgment should be entered in favor of Brantly on this last remaining portion

of the case. The reasons for this decision will be set forth below.

### *HELICOPTER DAMAGE*

On this portion of the intervention, Southern Marine contends that because the jury found Brantly's helicopter to be in a defective condition unreasonably dangerous on the occasion in question, they are entitled to the $40,344.38 they paid to Rotor-Craft, Inc. under the hull damage policy. Brantly's primary defense is the statute of limitations, aside its contention that this is an improper Rule 24(b)(2) intervention.

At the time of the crash Rotor-Craft had an Aircraft Hull Policy issued by Southern Marine which covered direct physical loss or damage to the 1965 Brantly Model 305 helicopter in the total amount of $44,000.00. There was a $4,400.00 deductible if the loss occurred while the rotors were in motion, as they were in this case. Pursuant to the terms of this Policy, Rotor-Craft duly executed a proof of loss claiming that a total loss of the helicopter occurred on March 30, 1968. Subsequently, Rotor-Craft submitted a supplemental proof of loss for F.A.A. charges, bringing the total amount claimed to $40,344.38. The Intervenor paid the insured this amount on June 15, 1968, and became subrogated to the rights of Rotor-Craft under the terms of the policy.[1]

[1-3] As noted previously, the Defendant's principal contention is that this intervention claim is barred by the statute of limitations. At the outset, it is clear that a federal court in a diversity case must apply the applicable statute of limitations of the forum state. *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). A federal court may not give a cause of action a longer life than it would have in state court. *Anderson v. Papillion*, 445 F.2d 841 (5th Cir. 1971); 3 *Moore's Federal Practice* para. 14.09 (1974). Here, the applicable state statute of limitations on this subrogation claim is two years. *Sheppard v. State Farm Mutual Automobile Ins. Co.*, 496 S.W.2d 216 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ); *Fishel's Fine Furniture v. Rice Food Market*, 474 S.W.2d 539 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ dism'd).

The Court in the *Fishel's Fine Furniture* case concisely summarized the law applicable to this subrogation claim:

> ". . . Subrogation 'is a doctrine of equity a substitution of another person in the place of the creditor so that the person in whose favor it is applied succeeds to the rights of the creditor in relation to the debt.' *Platte v. Securities Inv. Co.*, 55 S.W.2d 551 (Tex.Com.App.1932, jdgmt adopted). One entitled to subrogation must work through the creditor whose rights he claims. *Insurance Co. of No. America v. Fredonia State Bank*, 469 S.W.2d 248 (Tex.Civ.App.—Tyler 1971, no writ); 83 C.J.S. Subrogation § 14, p. 612 (1953). If the subrogor has no rights, then the subrogee can have none. *Platte v. Securities Inv. Co.*, supra; *Pugh v. Clark*, 238 S.W.2d 980 (Tex.Civ.App.—Galveston 1951, writ ref'd n. r. e.). 'The insurer's right of subrogation is derived from the rights of the insured, and is limited to those rights, and there can be no subrogation where the insured has no cause of action against the defendant.' *International Ins. Co. v. Medical-Professional Bldg.*, 405 S.W.2d 867, 869 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n. r. e.)." 474 S.W.2d at 541.

[4] In determining whether this claim is barred by the statute of limitations an examination of the relevant

1. "9. SUBROGATION.

"In the event of any payment under this Policy, the Underwriters shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights."

dates is in order. The accident occurred on March 30, 1968. Southern Marine paid for the damage to the helicopter on June 15, 1968, and their Motion to Intervene in this case was filed on May 18, 1970. An intervention such as that asserted by Southern Marine is commenced when the motion to intervene is filed. 3B *Moore's Federal Practice* para. 24.12 [1] n. 7 (1974). Therefore, the filing of Mrs. Powell's complaint would not toll the statute of limitations for Southern Marine.

This being so, the issue is squarely presented: Does the statute of limitations begin to run on this subrogation claim from the time of the occurrence causing the insured's loss or does it run from the time of the payment to Rotor-Craft? As may be seen from the dates just cited, if it begins to run from the time of the accident, the Intervenor's claim is barred, but if it is from the time of the payment, it is not barred by the statute of limitations.

The opinions in the *Fishel's Fine Furniture* and *Sheppard* cases cited above provide the answer. The intervention for sums paid for damage to the helicopter is time barred. In *Fishel's*, the insured sustained a fire loss on August 7, 1967, due to a fire at an adjoining store, Rice Food Market. Some three months later Fishel's sued its own insurance company, Mutual of Wausau, for their damage and they settled the case with Mutual on April 14, 1970. Thereafter, Mutual brought suit on April 9, 1971, against Rice for the sums paid to their insured for property damage. The sole question was whether the statute began to run from the date of the fire or the date of the settlement. The Court decided that the cause of action accrued at the time of the fire and since the insurer's rights of subrogation are derived from the rights of the insured and he has no greater rights than the insured, the action was barred. As in the present case, the insurance company cited certain workmen's compensation cases for authority that the statute did not begin to run until they paid the settlement. The Court quickly disposed of this argument by saying that these authorities are inapplicable because under the workmen's compensation law, the tolling of the statute is statutory. *Fishel's Fine Furniture v. Rice Food Market*, 474 S.W.2d at 541.

The *Sheppard* case cited previously was somewhat more complicated than *Fishel's* but the principles are equally applicable to the claim by Southern Marine. In that case the insured driver, Billy Johnson, and his wife and child had an accident with an uninsured motorist named Sheppard on October 17, 1968. About a year later on December 31, 1969, the Johnsons sued Sheppard but they did not serve him until the two years had passed. However, within two years from the time of the accident State Farm, the Johnson's insurer, intervened in the case asserting a sum against Sheppard that it had paid to Johnson for property damage to his car. However, State Farm did not get service on Sheppard until five days after the statute of limitations had run. In February, 1971, the Johnsons filed an amended complaint naming State Farm as a defendant under the uninsured motorist provision and at trial they took a non-suit as to Sheppard. The Court, on a finding of liability against Sheppard rendered judgment against State Farm and in favor of the Johnsons and gave State Farm a judgment in an equal amount over against Sheppard.

The Court of Civil Appeals affirmed the judgment against State Farm, but reversed the judgment against Sheppard except for the amount awarded for the minor child's damages. The Court rejected the insurer's argument that the statute of limitations should not begin to run until Sheppard was found liable, and found that as subrogee of the adult plaintiffs' cause of action against Sheppard, they were barred by the statute of limitations. As in *Fishel's*, supra, the Court rejected the at-

tempt by State Farm to analogize their claim to those arising under the workmen's compensation laws.

[5, 6] These recent cases conclusively show that the subrogation claim of Southern Marine for damage to the helicopter must be denied because it is barred by the two year statute of limitations. Southern Marine has no greater rights against Brantly than Rotor-Craft, and the statute of limitations began to run on the cause of action on March 30, 1968, the date of the accident. The Motion to Intervene was not filed until more than two years had passed, on May 18, 1970. Therefore, the claim for property damage to the helicopter is time barred.

## PERSONAL INJURY AND PROPERTY DAMAGE

As the Court has previously stated, Southern Marine issued a liability policy to Rotor-Craft and Frank Babcock covering personal injuries and property damages arising from the operation of the Brantly helicopter. The policy provided $2,000,000.00 coverage for property damage claims and bodily injury claims that the insured became "legally obligated to pay."[2]

The insurer paid several sums on behalf of Rotor-Craft under the liability policy. By far the largest sum was the $55,000.00 paid on August 22, 1969, to Mrs. Powell for her and her minor son, but there were other claims that were paid during late 1968, through April of 1969. All of these claims were paid on the recommendation of an adjuster and the submission of a proof of loss by persons claiming injury. It never judicially determined by any Court that Rotor-Craft was liable to Mrs. Powell or any of the other claimants. Further, Mrs. Powell did not assign any of her cause of action to Southern Marine or its insured, Rotor-Craft, when she executed the covenant not to sue.

[7, 8] Southern Marine is asserting these claims against Brantly by way of common law indemnity. As such, the statute of limitations would commerce running when Southern Marine paid the money to settle the claims. 3 *Moore's Federal Practice* ¶ 14.09 (1974); Annot., 57 A.L.R.3d 867, 884 (1974). Because this action is in the nature of an implied contract arising out of a tort the applicable statute of limitations would appear to be two years. *Littlefield v. Scott*, 244 S.W. 824 (Tex. Civ.App.—Beaumont 1922, err. ref'd); 30 Tex.Jur.2d Indemnity § 19 (1962).

[9] Of course, since the amended intervention was filed over four years from the time the settlements were paid, these claims would be barred even by the four year statute of limitations, unless the first motion to intervene tolls the running of the statute of limitations. In determining this question this Court must look to the law of Texas because if the additional claims would be time barred if asserted in state court, then a federal court may not entertain them. See *Ragan v. Merchants Transfer and Warehouse Company*, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949); *Anderson v. Papillion*, supra.

[10–12] It is the opinion of this Court that under the prevailing law in Texas the initial plea of intervention would not toll the running of the statute of limitations on the amended claims and therefore, they too are barred. Under the applicable state stat-

2. "COVERAGE D—SINGLE LIMIT—BODILY INJURY (INCLUDING PASSENGERS) AND PROPERTY DAMAGE LIABILITY.

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, other than the pilot or any member of the crew of the Aircraft whilst acting in their capacity as such, and for damages because of injury to or destruction of property, including loss of use thereof, caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft."

ute, *Vernon's Ann.Civ.St.* art. 5539b,[3] it is clear that the only way a subsequent amendment can evade the proscription of the statute of limitations is if the original cause of action was not subject to a plea of limitation. See *Leonard v. Texaco, Inc.*, 422 S.W.2d 160 (Tex.Sup.1967). The Court has previously found that the original plea was barred by the statute of limitations, therefore, the Court finds that the claims asserted in the amended intervention are also barred.

However, even if the subsequent claims were not time barred, it is the opinion of this Court that the Intervenor failed to carry its burden to prove facts that would entitle it to recover the sums paid to Mrs. Powell and the other claimants. Under the terms of the policy, Southern Marine was obligated to pay all sums that the insured, Rotor-Craft, was "legally obligated to pay." As noted previously, the $55,000.00 was paid to Mrs. Powell without any finding of liability in the state court suit on the part of Southern Marine's insured, Rotor-Craft. This applies equally to the other settlements paid by Southern Marine.

[13] Because Southern Marine voluntarily settled these claims for Rotor-Craft without having the liability of Rotor-Craft judicially determined, it bears the burden of proving facts which might have rendered the insured liable to the claimants in Illinois. Southern Marine is placed in the anomalous position of showing on one hand that its insured was potentially at fault in the Illinois case, but on the other hand proving in this case that Rotor-Craft was not at fault and that liability lay with Brantly. Furthermore, Southern Marine has the burden of proof to show that all the settlements were reasonable and prudent under the circumstances. See *Fireman's Fund Ins. Co. v. Commercial Stand. Ins. Co.*, 490 S.W.2d 818, 823 (Tex.Sup.1972); *Pan American Gas Co. v. Natural Gas Construction Corp.*, 418 S.W.2d 380 (Tex.Civ.App.—Waco 1967, writ ref'd n. r. e.); *Gulf, Colorado & Santa Fe Railway Co. v. McBride*, 159 Tex. 442, 322 S.W.2d 492 (Tex.Sup. 1958); *Mitchell's Inc. v. Friedman*, 157 Tex. 424, 303 S.W.2d 775 (Tex.Sup. 1957).

[14] The only proof offered by Southern Marine on these points is an investigation report by a man named Joseph Erwin that was made shortly after the accident. This report is simply insufficient to enable the Court to determine that the settlements paid by Southern Marine were reasonable and prudent under the circumstances, or that the insured faced potential liability in Illinois. Therefore, the Court is compelled to conclude that the payments made to Mrs. Powell and the other persons were voluntary and Southern Marine is not entitled to the relief prayed for in its Amended Plea of Intervention.

Judgment will be entered in accordance with the findings made herein in favor of Brantly Helicopter Corporation against the Intervenor, Southern Marine & Aviation Underwriters.

3. "Art. 5539b. Limitations as affecting amended and supplemental pleading

"Whenever any pleading is filed by any party to a suit embracing any cause of action, cross-action, counterclaim, or defense, and at the time of filing such pleading such cause of action, cross-action, counterclaim, or defense is not subject to a plea of limitation, no subsequent amendment or supplement changing any of the facts or grounds of liability or of defense shall be subject to a plea of limitation, provided such amendment or supplement is not wholly based upon and grows out of a new, distinct or different transaction and occurrence. Provided, however, when any such amendment or supplement is filed, if any new or different facts are alleged, upon application of the opposite party, the court may postpone or continue the case as justice may require."

# EXHIBIT "C"



when the person defamed learns of, or should by reasonable diligence have learned of, the existence of the credit report. We would not apply the discovery rule where the defamation is made a matter of public knowledge through such agencies as newspapers or television broadcasts." *See also* ***Roe v. Walls Regional Hosp., Inc.***, 21 S.W.3d 647, 651 (Tex.App.—Waco 2000, no pet.).

***Williamson v. New Times, Inc.***, 980 S.W.2d 706, 710 (Tex.App.—Fort Worth 1998, no pet.). Plaintiff "cannot avoid the application of the one-year statute of limitations [in CPRC §16.002(a)] simply by alleging that her [libel and slander] cause of action is one controlled by the two-year statute of limitations [in CPRC §16.003] if 'the primary gravamen of the tort [alleged] is an injury to [her] personal reputation.' *At 711:* The only facts and damages alleged in [plaintiff]'s pleadings were for the personal harm, if any, she suffered as a result of the alleged libelous and slanderous publications. Thus, because [plaintiff] failed to plead or prove that she suffered harm to a business or property interest separate and apart from the personal harm she allegedly suffered, we find that she is not entitled to pursue her claims under the two-year statute of limitations."

***Lang v. City of Nacogdoches***, 942 S.W.2d 752, 758 (Tex.App.—Tyler 1997, writ denied). Plaintiffs "assert ... that under the 'discovery rule' the statute of limitations [on their malicious prosecution claim] was tolled until ... their attorney informed them that the [criminal] case was favorably terminated by the dismissal. [¶] We conclude that the discovery rule is inapplicable ... since [plaintiffs] are charged with constructive notice of what could have been known by an examination of the records."

***Leal v. American Nat'l Ins. Co.***, 928 S.W.2d 592, 597 (Tex.App.—Corpus Christi 1996, writ denied). "[T]he appropriate rule [is] that when multiple indictments are sought for the same act or acts, the cause of action for malicious prosecution accrues when the last indictment is dismissed. The filing of a malicious prosecution claim at any time before such date would be premature. When two indictments are returned on the same set of facts, the quashing or disposition of one without disposing of the other indictment is not the termination of the prosecution in favor of the accused within the meaning of the rule relating to malicious prosecution."

***Marshall Field Stores, Inc. v. Gardiner***, 859 S.W.2d 391, 394 (Tex.App.—Houston [1st Dist.] 1993, writ dism'd). "A cause of action for slander accrues when the injured party learned of, or in exercise of reasonable diligence should have learned of, the defamatory communication. Each distinct publication of slander inflicts an independent injury from which a slander cause of action may arise." *See also* ***Akin v. Santa Clara Land Co.***, 34 S.W.3d 334, 340 (Tex.App.—San Antonio 2000, pet. denied).

***Laird v. Texaco, Inc.***, 722 S.W.2d 519, 521 (Tex. App.—Beaumont 1986, no writ). Plaintiff's "claim for tortious interference with business is, under this record, indistinguishable from his claim for libel and slander. Therefore, the same limitation period applies which is a one year statute."

(a) Except as provided by Sections 16.010 and 16.0045, a person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer not later than two years after the day the cause of action accrues.

(b) A person must bring suit not later than two years after the day the cause of action accrues in an action for injury resulting in death. The cause of action accrues on the death of the injured person.

History of CPRC §16.003: Acts 1985, 69th Leg., ch. 959, §1, eff. Sept. 1, 1985. Amended by Acts 1995, 74th Leg., ch. 739, §2, eff. June 15, 1995; Acts 1997, 75th Leg., ch. 26, §2, eff. May 1, 1997.

See also chart, Statutes of Limitations, p. 70.

### *Generally*

***Gant v. DeLeon***, 786 S.W.2d 259, 260 (Tex.1990). "To 'bring suit' within the 2-year limitations period prescribed by §16.003, a plaintiff must ... use diligence to have the defendant served with process. When a plaintiff files a petition within the limitations period, but does not serve the defendant until after the statutory period has expired, the date of service relates back to the date of filing if the plaintiff exercised diligence in effecting service. [¶] Plaintiffs' unexplained delay of 3 periods totaling 38 months in obtaining service on defendant establishes failure to use diligence as a matter of law." *See also* ***Belleza-Gonzalez v. Villa***, 57 S.W.3d 8, 11 (Tex. App.—Houston [14th Dist.] 2001, n.p.h.).

***First Gen. Rlty. Corp. v. Maryland Cas. Co.***, 981 S.W.2d 495, 501 (Tex.App.—Austin 1998, pet. denied).

"Generally, a cause of action accrues when a wrongful act causes some legal injury. However, an exception to this rule exists for continuing torts. A continuing tort involves wrongful conduct inflicted over a period of time that is repeated until desisted, and each day creates a separate cause of action. A cause of action for a continuing tort does not accrue until the defendant's tortious act ceases."

***Fisher v. Westmont Hospitality***, 935 S.W.2d 222, 225 (Tex.App.—Houston [14th Dist.] 1996, no writ). "By applying [TRCP] 4 and using a 'calendar month' to compute the time period, the courts are engaging in a legal fiction in which each month is 30 days, regardless of the true number of days in the month. [¶] The same rule applies in computing statutes of limitations based on years." Held: Under 2-year statute of limitation, when plaintiff was injured on 2-6-93 and filed suit on 2-7-95, filing was one day too late.

*Breach of Duty of Good Faith*

***Murray v. San Jacinto Agency, Inc.***, 800 S.W.2d 826, 827 (Tex.1990). "The statute of limitations [for a suit against an insurer for breach of duty of good faith] is set forth in [CPRC] §16.003(a). *At 829:* Limitations on a first party claim appropriately begins to run at denial, not the date a separate suit to determine coverage under the contract is resolved." Court modified its limitations holding in ***Arnold v. Nat'l Cty. Mut. Fire Ins. Co.***, 725 S.W.2d 165, 168 (Tex.1987).

*Conversion*

***Conoco, Inc. v. Amarillo Nat'l Bank***, 14 S.W.3d 325, 327-28 (Tex.App.—Amarillo 2000, no pet.). "In conversion cases, the general rule is that limitations begin to run at the time of the unlawful taking. However, if the original possession is lawful, the limitation period does not begin to run until the return of the property has been demanded and refused, or until the person in possession has unequivocally exercised acts of domination over the property inconsistent with the claims of the owner or the person entitled to possession." *See also* ***Varel Mfg. Co. v. Acetylene Oxygen Co.***, 990 S.W.2d 486, 498 (Tex. App.—Corpus Christi 1999, no pet.).

***Tanglewood Terrace, Ltd. v. City of Texarkana***, 996 S.W.2d 330, 342 (Tex.App.—Texarkana 1999, no pet.). "An action for money had and received, being in the nature of an action for conversion, is subject to a two-year statute of limitations."

*Damage to Land*

***Walton v. Phillips Pet. Co.***, 65 S.W.3d 262, 271-72 (Tex.App.—El Paso 2001, pet. denied). "[I]n determining when a cause of action for damages to land accrued ... a distinction must be drawn between a claim based upon permanent damages and one for temporary damages. An action for permanent damages to land accrues, for limitations purposes, upon the date of discovery of the first actionable injury, not on the date the damages to the land are fully ascertainable. Thus, an action to recover damages for permanent injury to land must be brought within two years from the date of discovery of the initial injury. In contrast, a suit to recover damages for temporary injuries, because they are transient in nature, may be brought for those injuries sustained within two years prior to filing of the suit. [¶] The character of an injury as either permanent or temporary is determined by its continuum. A permanent injury is constant and continuous as opposed to occasional, intermittent, or recurrent. [A] permanent injury results 'from an activity of such a character and existing under such circumstances that it will be presumed to continue indefinitely.' Temporary injuries, however, have been found where the injury is not continuous, but is sporadic and contingent upon some irregular force such as rain." *See also* ***Bates v. Schneider Nat'l Carriers***, ___ S.W.3d ___ (Tex.App.—Houston [1st Dist.] 2002, n.p.h.) (No. 01-00-01132-CV; 3-7-02); ***Nugent v. Pilgrim's Pride Corp.***, 30 S.W.3d 562, 567-68 (Tex. App.—Texarkana 2000, no pet.).

*Due Process Claim*

***Jackson v. H.I.S.D.***, 994 S.W.2d 396, 402 (Tex. App.—Houston [14th Dist.] 1999, no pet.). "The statute of limitations for a substantive due process claim brought under the Texas Constitution is two years."

*Latent Occupational Disease*

***Childs v. Haussecker***, 974 S.W.2d 31, 40-41 (Tex. 1998). We hold "in latent occupational disease cases [accrual is deferred] until a plaintiff's symptoms manifest themselves to a degree or for a duration that would put a reasonable person on notice that he or she suffers from some injury and he or she knows, or in the exercise of reasonable diligence should have known, that the injury is likely work-related. Thus, in cases involving latent occupational diseases, 'discovery of the injury' should not be equated with a plaintiff's discovery (1) of the precise name of the disease that is causing

his symptoms or (2) that the disease is permanent. The seriousness of a personal injury need not be fully apparent or even fully developed in order to commence the statute of limitations."

### *Legal Malpractice*

***Apex Towing Co. v. Tolin***, 41 S.W.3d 118, 120 (Tex. 2001). A "two-year statute of limitations governs legal-malpractice claims, whether they sound in tort, contract, or other theory. [¶] In ***Hughes***, we [held that the statute of limitations tolled] when an attorney commits malpractice ... until all appeals on the underlying claim are exhausted. [¶] [C]ontinued representation by the allegedly malpracticing attorney [is] not a requirement...."

***Nunez v. Caldarola***, 56 S.W.3d 812, 814 (Tex. App.—Corpus Christi 2001, no pet.). "A plaintiff may toll the statute of limitations [for legal malpractice claims] if he affirmatively pleads either: (1) the discovery rule, which provides that the statute does not begin to run until the claimant discovers or should have discovered the facts that establish the elements of the claim; or (2) the ***Hughes*** rule, which states that the statute does not begin to run until all appeals on the underlying claim are exhausted. [¶] Generally a legal malpractice cause of action accrues when the client sustains a 'legal injury' or in cases governed by the discovery rule, when the client discovers or should have discovered she had a cause of action. However, when an attorney allegedly commits malpractice while providing legal services in the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice claim against the attorney is tolled until all appeals on the underlying claim are exhausted or the litigation is otherwise finally concluded."

### *Loss of Consortium*

***Howard v. Fiesta Texas Show Park, Inc.***, 980 S.W.2d 716, 719 (Tex.App.—San Antonio 1998, no pet.). "Claims for loss of consortium and loss of services are derivative of the injured family member's cause of action for personal injuries and are subject to the same statute of limitations and defenses that preclude liability."

### *Medical Malpractice*

***Bala v. Maxwell***, 909 S.W.2d 889, 892-93 (Tex. 1995). "[W]hen a wrongful death action is based on medical negligence, the medical malpractice limitations statute, Article 4590i, §10.01, conflicts with §16.003. [¶] In this case, the court of appeals held that §16.003 governed the [plaintiff's] claims against [defendant] because '[t]he plain language of §16.003(b) reflects a clear legislative intent to adopt an absolute 2-year limitations period for wrongful death actions, and that period is triggered only by the event of death.' This reasoning ignores the clear language of §10.01, which applies to all health care liability claims *notwithstanding any other law*.... A wrongful death plaintiff suing on a medical negligence theory ... does not necessarily have 2 full years from the time of death to bring a lawsuit. Rather, the statute of limitations expires at the same time it would have for the decedent, 2 years after the alleged negligence occurred."

***Weiner v. Wasson***, 900 S.W.2d 316, 321 (Tex.1995). "Section 16.003 establishes a 2-year limitations period, but §16.001 tolls this period until the minor reaches age 18. Taken together, these sections require a minor to file a claim before reaching age 20 for personal injuries sustained during the period of minority. [W]e conclude that the limitations period provided by the general tolling and limitations provisions of §16.001 and §16.003 apply to Wasson's [medical malpractice] claim."

***Garcia v. Santa Rosa Health Care Corp.***, 925 S.W.2d 372, 379 (Tex.App.—Corpus Christi 1996), *rev'd on other grounds*, 964 S.W.2d 940 (Tex.1998). "[T]he limitations period placed on a medical malpractice cause of action under the Medical Liability and Ins. Improvement Act applies only to patients; it does not apply where no physician-patient relationship exists between plaintiff and defendant. Accordingly, a lawsuit filed by a non-patient against a physician for failure to protect him from exposure to a disease carried by the physician's patient is governed by the statute of limitations found [in] §16.003."

### *Reimbursement from County*

***Lubbock Cty. v. Trammel's Bail Bonds***, ___ S.W.3d ___ (Tex.2002) (No. 01-0406; 6-20-02). "We announce a new rule in cases in which a party seeks reimbursement from a county for unauthorized charges: the cause of action accrues when payment to the county is made because that is when the injury occurs, not when the claim has been presented to and rejected by the commissioners court."

### *Tortious Interference/Slander of Title*

***Hill v. Heritage Resources, Inc.***, 964 S.W.2d 89, 116 (Tex.App.—El Paso 1997, pet. denied). "Actions

s held that
ainst [de-
16.003(b)
bsolute 2-
tions, and
ath.' This
.01, which
*withstand-*
ntiff suing
ecessarily
ring a law-
ires at the
years after

Tex.1995).
ons period,
eaches age
a minor to
al injuries
le conclude
eneral toll-
nd §16.003
im."
*Corp.*, 925
1996), *rev'd*
8). "[T]he
alpractice
and Ins. Im-
es not apply
sts between
suit filed by
e to protect
the physi-
limitations

*Bonds*, ___
2). "We an-
seeks reim-
charges: the
he county is
rs, not when
ected by the

*itle*
4 S.W.2d 89,
). "Actions



based upon tortious interference with an existing contract, tortious interference with business relations, and slander of title are all controlled by a two-year statute of limitations. [¶] A cause of action for tortious interference with an existing contract does not accrue until the contract is interfered with and harm caused to the plaintiff. Similarly, a cause of action for tortious interference with business relations does not accrue until existing negotiations, which are reasonably certain of resulting in a contract, are interfered with such that the negotiations terminate and harm to the plaintiff results. Likewise, a claim for slander of title does not accrue until there has been a loss of a specific sale."

*Wiretap Action*

***Collins v. Collins***, 904 S.W.2d 792, 804 (Tex.App.—Houston [1st Dist.] 1995), *writ denied*, 923 S.W.2d 569 (Tex.1996). "An action under the state wiretap statute sounds in tort and is controlled by a 2-year statute of limitations."

*Wrongful Death*

***Russell v. Ingersoll-Rand Co.***, 841 S.W.2d 343, 348 (Tex.1992). "If a wrongful death action exists, it accrues, not when the decedent was injured, but at his death, and the limitations period on that action begins to run at death. But if a wrongful death action does not exist because the decedent could not maintain an action in his own right immediately prior to his death, … then no wrongful death action ever accrues. If a decedent's own cause of action were barred by governmental immunity, or statute, or release, or res judicata, or any other affirmative defense, there is no wrongful death action to accrue…. Section 16.003(b) does not create a cause of action, or resurrect one that has expired with the decedent; it only defines the period within which statutory beneficiaries must sue if they have a claim."

*Discovery Rule*

***Velsicol Chem. Corp. v. Winograd***, 956 S.W.2d 529, 531 (Tex.1997). "The discovery rule applies if: (1) the injury is inherently undiscoverable; and (2) the evidence of the injury is objectively verifiable." Discovery rule did not save claims for lost income, rents, and profits, damages to business reputation, and other damages resulting from defendant's application of chlordane to the premises. Supreme Court expressed no opinion on when limitations period would have commenced if only abatement damages had been sought. *See also S.V. v. R.V.*, 933 S.W.2d 1, 6-8 (Tex.1996).

***Larue v. Genescreen, Inc.***, 957 S.W.2d 958, 960 (Tex.App.—Beaumont 1997, pet. denied). "In order for the discovery rule to apply, the nature of the injury incurred must be inherently undiscoverable and the evidence of injury must be objectively verifiable. 'An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence.' An 'objectively verifiable' injury is one in which the facts upon which liability is asserted are demonstrated by direct, physical evidence."

### CPRC §16.004. FOUR-YEAR LIMITATIONS PERIOD

**(a)** A person must bring suit on the following actions not later than four years after the day the cause of action accrues:

(1) specific performance of a contract for the conveyance of real property;

(2) penalty or damages on the penal clause of a bond to convey real property;

(3) debt;

(4) fraud; or

(5) breach of fiduciary duty.

**(b)** A person must bring suit on the bond of an executor, administrator, or guardian not later than four years after the day of the death, resignation, removal, or discharge of the executor, administrator, or guardian.

**(c)** A person must bring suit against his partner for a settlement of partnership accounts, and must bring an action on an open or stated account, or on a mutual and current account concerning the trade of merchandise between merchants or their agents or factors, not later than four years after the day that the cause of action accrues. For purposes of this subsection, the cause of action accrues on the day that the dealings in which the parties were interested together cease.

History of CPRC §16.004: Acts 1985, 69th Leg., ch. 959, §1, eff. Sept. 1, 1985. Amended by Acts 1999, 76th Leg., ch. 950, §1, eff. Aug. 30, 1999.
See also chart, Statutes of Limitations, p. 70.

---

***Jackson v. Thweatt***, 883 S.W.2d 171, 172 (Tex. 1994). "Under 12 USC §1821(d)(14), the FDIC has six years to bring suit on delinquent notes acquired from a failed bank. The issue presented in these … cases is whether purchasers of such notes from the FDIC obtain the benefit of this federal limitations period. *At 176:* [W]e conclude that, pursuant to federal common law,